**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
PDV USA, INC.,                                          :
                                                        :
                    Plaintiff,                          :        COMPLAINT
                                                        :
v.                                                      :        Case No. 20-cv-3699
                                                        :
INTERAMERICAN CONSULTING INC.,                          :
                                                        :
Defendant.                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT

Plaintiff PDV USA, Inc. ("PDV USA" or "Plaintiff"), by and through its undersigned counsel, Willkie Farr & Gallagher LLP, alleges as follows in its Complaint against Defendant Interamerican Consulting Inc. ("Interamerican"):

## NATURE OF THE ACTION

1.      This is an action for breach of contract.  On March 21, 2017, PDV USA and Interamerican entered into a consulting agreement (the "Agreement") pursuant to which Interamerican would be paid $50 million in six installments over a three-month period to provide purported "strategic consulting services" for PDV USA's parent company, Petróleos de Venezuela, S.A. ("PDVSA").  PDVSA is the state-owned oil and natural gas company of the Bolivarian Republic of Venezuela, and, at that time, was controlled by the regime of Nicolas Maduro.  PDV USA was instructed by the parent company (PDVSA) of its parent company (PDV Holding, Inc.) to enter into the Agreement for the purported purpose of improving PDVSA's "long-term reputation and standing" in the United States.

2.      In January of 2019, the United States Government recognized Juan Guaidó, the President of Venezuela's National Assembly, as the Interim President of Venezuela, and at the

same time derecognized the Maduro regime and designated PDVSA as a "Specially Designated National" with whom no U.S. person may do business absent a license from the U.S. Department of Treasury.  The Guaidó Government, in turn, appointed an Ad Hoc Board of Directors of PDVSA to oversee the U.S. operations of PDVSA's U.S.-based subsidiaries, including PDV USA.  In August of 2019, the Delaware Court of Chancery ruled that under U.S. law, the Guaidó appointments to the PDVSA Ad Hoc Board were presumptively valid.

3.     Under the 2017 Agreement, Interamerican was supposed to develop and implement over a three-month period a strategic plan to improve PDVSA's reputation and standing among, and build relationships with, policy makers, opinion leaders, public officials, and targeted stakeholders.

4.     Among other things, in exchange for $50 million, the Agreement required Interamerican to provide at least seven bi-weekly reports detailing the work carried out during the relevant period and a final report that would include recommendations for monitoring the strategies implemented.  Instead, Defendant provided just two reports, totaling no more than five pages, much of which is duplicated.  These reports refer generically to a "strategic plan," "meetings," and "recommendations," but do not describe a single element of the alleged plan, identify meeting participants or meeting discussions, or specify what recommendations were made or to whom.

5.     Upon information and belief, Defendant performed no meaningful services under the Agreement, and certainly did not perform the level of services that might reasonably be expected for a fee of approximately $17 million per month.

6.     PDV USA was injured by the Defendant's breach of the Agreement.  PDV USA paid the first three invoices issued by Defendant, a total of $15 million, but received no evidence that any services were ever performed on behalf of PDV USA or PDVSA.

7.      In addition, Interamerican explicitly committed in the Agreement to indemnify PDV USA from and against any breach of the Agreement perpetrated by Interamerican, including by paying any expenses, court costs, and attorneys' fees associated with enforcing PDV USA's rights under the Agreement.

8.      Accordingly, PDV USA brings this action to recover the $15 million (plus interest) it has already paid Defendant, to release PDV USA from any further payment under the Agreement, and to recover any other compensatory damages in an amount to be addressed at trial, as well as all expenses, court costs, and attorneys' fees associated with enforcing its contractual rights.

## THE PARTIES

9.      PDV USA is a company incorporated in Delaware with its principal place of business located at 65 East 55th Street, Floor 21, New York, New York 10022.  PDV USA is a wholly-owned subsidiary of PDV Holding, Inc., which in turn is a wholly-owned subsidiary of PDVSA, which as noted above is the state-owned petroleum corporation of the Bolivarian Republic of Venezuela.

10.     Interamerican is a company incorporated in the State of Florida by former U.S. Congressman David Rivera ("Rivera").   Upon information and belief, Interamerican's principal place of business is Rivera's home, located at 10925 N.W. 43rd Lane, Miami, Florida, 33178.  Interamerican claims to be in the business of providing "strategic consulting services." According to publicly available information, Interamerican has only two employees: (1) Rivera, who serves as President and registered agent; and (2) Diana Rivera McKenzie (Rivera's sister), who serves as Vice President.

## JURISDICTION AND VENUE

11.     This court has diversity jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1332.  The parties are citizens of different states and the amount in controversy exceeds $75,000.

12.     Venue is proper in this Court because, pursuant to the Agreement, the parties agreed to "irrevocably submit to the exclusive jurisdiction of the State of New York" for the purpose of resolving disputes arising out of the Agreement.

13.     In addition, the parties specified in the Agreement that "it shall be deemed to be made under, and shall be construed in accordance with, the laws of the State of New York (without reference to choice of law doctrine)."

## FACTUAL BACKGROUND

**Interamerican Failed to Perform Under the Agreement**

14.     On March 21, 2017, PDV USA (at the direction of PDVSA) and Interamerican entered into the Agreement, pursuant to which PDV USA agreed to pay Interamerican $50 million in six installments in exchange for Interamerican's "complete, satisfactory and timely performance" of the services detailed in the Agreement.

15.     Those "strategic consulting services," as set out in Exhibit A to the Agreement, concerned the development of strategies to enhance the reputation and standing of PDV USA's ultimate parent entity, PDVSA, in the United States.

16.     PDVSA, rather than PDV USA, made the initial contact with Defendant regarding the contemplated agreement, and PDVSA, rather than PDV USA, selected Defendant, the contemplated payment amounts and timing of those payments, and the substance of the work to be performed.

4

17.     The principal purpose of the Agreement was for Defendant to provide services for PDVSA.  The authorized representative and main point of contact under the Agreement was Mr. Pio González, an employee of PDVSA.  The two brief progress reports provided by Interamerican under the Agreement also make clear that the consulting services were being provided to PDVSA.  The reports described that Interamerican had organized meetings that "allowed the Client to provide the Client's viewpoints and perspectives on current events in Venezuela and their interpretation in the United States."  Although "Client" is defined in the progress report as PDV USA, the reference to current events in Venezuela makes clear that PDVSA's interests were the subject of the strategic consulting services.

18.     Interamerican agreed to develop strategies that would (1) "inform policy makers and opinion leaders regarding [PDVSA] initiatives and achievements"; (2) "reinforce [PDVSA's] standing among important public officials and opinion leaders"; and (3) "enhance" PDVSA's "long-term reputation" and "standing" with "targeted stakeholders."  Interamerican further agreed to "identify opportunities to build long-term relationships among key third-parties, opinion leaders and public officials."

19.     Interamerican was required under the Agreement to provide detailed accounts of the work it would do to further PDVSA's interests in the United States.

20.     Specifically, Interamerican was required to provide: (1) updates regarding its strategic consulting services with adequate and complete details of the services rendered; (2) supporting documentation for all invoices submitted; (3) bi-weekly reports detailing its activities under the Agreement; and (4) a final report integrating all work product developed pursuant to the Agreement.

21.     The Agreement had a three-month term, beginning on the date of execution, March 21, 2017, and terminating on June 21, 2017.

22.     During that period, Interamerican was obligated by the Agreement to provide at least seven bi-weekly reports detailing the activities it had carried out during the applicable two-week period and one final report summarizing all the work performed under the Agreement and providing recommendations for monitoring the strategies implemented.

23.     Instead of providing these consistent reports, Rivera submitted only two reports in total: one "bi-weekly" report and a final report.  The reports totaled no more than five pages (collectively), much of which was duplicated, and failed to describe any meaningful work done on behalf of PDV USA or PDVSA or provide any evidence that work was actually performed.

24.     For example, the reports make numerous references to developing and implementing the "strategic plan," but do not describe what that plan entailed or how it was allegedly implemented.

25.     The reports also refer generically to meetings and discussions with "important policy makers and opinion leaders in the United States," "key public officials," "target stakeholders," "public sector stakeholders," and "private sector stakeholders," but fail to describe the purpose of those meetings, who attended, what was discussed, or what makes any of these leaders, officials or stakeholders important to Interamerican's "strategic plan."

26.     Similarly, the purported final report refers to recommendations, but does not explain what those recommendations are.

27.     The Agreement further required Interamerican to provide "supporting documentation" and "adequate and complete details of the Services rendered" with each invoice submitted to PDV USA.

28.     Interamerican provided no supporting documentation or detail whatsoever with the invoices submitted for payment.

29.     Pursuant to the Agreement, Interamerican was required to complete the services "to PDV USA's sole satisfaction."

30.     PDV USA never expressed satisfaction with, and is not satisfied with, Interamerican's services.

31.     Indeed, upon information and belief, Interamerican did not provide any meaningful services at all.

**PDV USA Paid Interamerican for Services that Were Never Performed**

32.     Notwithstanding Interamerican's failure to provide the contracted-for services, PDV USA paid Interamerican $15 million.

33.     The Agreement set out a payment schedule, pursuant to which PDV USA was to pay Interamerican an "Initial Payment Installment" of $5 million on March 21, 2017.

34.     PDV USA paid Interamerican $5 million on March 21, 2017, as set out in the Agreement.

35.     The payment schedule further instructed that, starting on April 4, 2017, another $20 million be paid in $5 million "Consecutive Payment Installments" every two weeks and that a "Final Payment Installment" of $25 million be paid before June 15, 2017.

36.     PDV USA paid Interamerican $5 million on each of April 4, 2017 and April 18, 2017.  Together with the initial installment payment made on March 21, 2017, PDV USA paid a total of $15 million.

37.     PDV USA refused to pay the final three Interamerican invoices that Rivera submitted, which totaled $35 million.

7

38.     Even though Interamerican did not provide services as required under the Agreement, and despite the involvement of the Maduro regime, and extreme disproportionality between the price of the contract and the services to be rendered, Rivera has repeatedly requested payment for the outstanding invoices from PDV USA.

39.     In light of the fact that Defendant had not performed, and did not contemplate performing, any services on behalf of PDV USA, PDV USA and PDVSA jointly sought Defendant's consent to assign the Agreement from PDV USA to PDVSA.  Defendant declined to provide consent.  Instead, Defendant continued to demand that PDV USA provide payment of the $35 million that was not paid.

**Interamerican Agreed to Indemnify PDV USA for its Breach of the Agreement**

40.     Under the Agreement, Interamerican agreed to "indemnify . . . PDV USA . . . from and against any and all breaches of this Agreement by [Interamerican]," including "all such expenses, court costs, and attorneys' fees in the enforcement of PDV USA's rights" under the Agreement.

<u>**COUNT ONE: BREACH OF CONTRACT**</u>

41.     PDV USA repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

42.     Defendant Interamerican entered into the Agreement, pursuant to which Interamerican agreed to perform certain services identified above.

43.     Defendant failed to perform those services and therefore breached its agreement with Plaintiff.

44.     As a direct and proximate result of Defendant's breach, Plaintiff has incurred substantial damages.

8

45.     Plaintiff is entitled to recover the $15 million (plus interest) that it paid to Defendant and to be released from any further payment under the Agreement.

## COUNT TWO:  INDEMNITY

46.     PDV USA repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

47.     Defendant Interamerican agreed to indemnify PDV USA for any damages resulting from its breach of the Agreement, including expenses, court costs, and attorneys' fees.

48.     Defendant breached the Agreement.

49.     Plaintiff is entitled to recover all damages resulting from Defendant's breach of the Agreement, including expenses, courts costs, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, PDV USA requests that the Court:

a.     Adjudge and decree that Defendant is liable for breach of contract, as alleged herein;

b.     Enter a judgment against Defendant that awards PDV USA $15 million (plus interest), relieves Plaintiff from any further payments under the Agreement, awards any further compensatory damages (plus interest) at an amount to be determined at trial; and awards expenses, costs, and attorneys' fees; and

c.     Grant such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff PDV USA hereby demands a trial by jury on all issues raised in the Complaint herein.

Dated: New York, New York
       May 13, 2020

**WILLKIE FARR & GALLAGHER LLP**


By: /s/ Jeffrey B. Korn

    Jeffrey B. Korn
    787 Seventh Avenue
    New York, New York 10019
    (212) 728-8000
    JKorn@willkie.com


    Michael Gottlieb
    Sarah Wastler
    1875 K Street, N.W.
    Washington, D.C. 20006
    (202) 303-1000
    MGottlieb@willkie.com
    SWastler@willkie.com


    *Attorneys for Plaintiff PDV USA, Inc.*