# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

October 5, 2020

**VIA ECF**

Honorable John G. Koeltl
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   PDV USA, Inc. v. Interamerican Consulting, Inc., No. 20-cv-3699 (JGK)

Dear Judge Koeltl,

We represent PDV USA, Inc. ("PDV USA") in the above-captioned action and write in response to the September 27, 2020 letter of Interamerican Consulting, Inc. ("Interamerican") requesting a pre-motion conference on its proposed motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). For the reasons set forth below, Interamerican's bases for dismissing the Complaint are meritless.

### I.   Background

Interamerican is a Florida-based company founded by former U.S. Congressman David Rivera which employs only one other individual, Mr. Rivera's sister. (Compl. ¶ 10.) On March 21, 2017, PDV USA engaged Interamerican to provide "strategic consulting services" over a three-month period in exchange for a staggering $50 million (the "Agreement"). (*Id.* ¶¶ 1, 21.) Although PDV USA contracted for these "strategic consulting services," the Parties understood that the purpose of the Agreement was for Interamerican to assist PDV USA's ultimate parent company, Petróleos de Venezuela, S.A. ("PDVSA"), Venezuela's state-owned oil and natural gas company, which at the time was controlled by the regime of Nicolas Maduro.[1] (*Id.* ¶¶ 1, 17.)

Pursuant to the Agreement, Interamerican agreed to (1) develop a strategy to "inform policy makers and opinion leaders regarding CLIENT initiatives"; "reinforce CLIENT's standing among important public officials and opinion leaders"; and "enhance the long-term reputation and standing of CLIENT" with "targeted stakeholders" and (2) "identify opportunities to build long-term relationships among key third-

---

[1] In January 2019, however, the U.S. government recognized Maduro opposition leader Juan Guaidó as Venezuela's Interim President and placed PDVSA on OFAC's SDN list. (*Id.* ¶ 2.) In response, Guaidó's government appointed an Ad Hoc Board of Directors to oversee the operations of PDVSA's U.S.-based subsidiaries, including PDV USA. (*Id.*)

parties, opinion leaders and public officials." (Compl. ¶ 18.) Pursuant to the Agreement, Interamerican was required to complete the services "to PDV USA's sole satisfaction." (*Id*. ¶ 29.) Further, the Agreement required Interamerican to provide (1) bi-weekly reports "detailing the activities that it ha[d] carried out during that period"; (2) a final report "including recommendations for monitoring and following-up on the strategies implemented"; and (3) "supporting documentation" and "adequate and complete details of the Services rendered" with each invoice submitted. (*Id*. ¶¶ 20, 27.)

Despite receiving $15 million from PDV USA between March 21, 2017 and April 18, 2017, Interamerican did not provide the services required under the Agreement and did not complete any services to PDV USA's satisfaction. (*Id*. ¶¶ 30-32, 36, 38, 39, 43.) The promised reports also failed to "detail[] the activities" performed, as required. (*Id*. ¶¶ 22-26.) Similarly, the submitted invoices failed to attach the requisite supporting documents or details of services. (*Id*. ¶ 28.) Having paid $15 million and received nothing in return, PDV USA refused to pay the remaining $35 million contemplated by the Agreement. (*Id*. ¶ 37.)

On October 5, 2017, PDV USA and PDVSA sought to assign all rights in the Agreement from PDV USA to PDVSA (the "Assignment"). (*Id*. ¶ 39.) However, Interamerican refused to consent to the Assignment and for years afterward insisted that PDV USA was bound by the Agreement's terms. (*Id*.)

## II. Interamerican's purported bases for dismissal lack merit.

Interamerican's letter sets forth three purported bases for dismissal. Each is without merit.

*First*, Interamerican argues that PDV USA lacks standing to enforce the contract as a result of the Assignment. But Defendant ignores that, as pleaded in paragraph 39 of the Complaint, Defendant did not consent to the Assignment. On that basis, Interamerican has for years asserted that the Assignment was invalid and that PDV USA is bound by the Agreement. Contrary to Interamerican's assertions to the Court, Mr. Rivera made clear its position on this subject in a February 4, 2019 email, stating:

> As you know, Interamerican Consulting never agreed to or consented to any assignment of the contract from PDV USA to PDVSA. In fact, any suggestion of a reassignment of the contract was specifically rejected on two occasions. Our legal counsel has now reviewed this matter in depth, including the documented role of Citgo attorneys and corporate officers, and has concluded indisputably and categorically that any assignment by PDV USA to PDVSA was a unilateral decision arranged between PDV USA and PDVSA and, under State of New York contract law governing the consulting agreement, in no way absolves PDV USA of its contractual obligations to Interamerican Consulting.

*Second*, Interamerican's claim that the Complaint did not adequately plead a breach of contract claim also fails. "To make out a viable claim for breach of contract a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotations omitted). PDV USA has clearly met this low threshold at this stage of the litigation.

Jeffrey B. Korn
October 5, 2020
Page 3

The Complaint alleges: (1) the existence of the Agreement and each of the provisions that Defendant breached (Compl. ¶¶ 1, 18, 20, 21, 22, 27);[2] (2) that PDV USA adequately performed under the Agreement, specifically by paying Interamerican $15 million (*id.* ¶ 36); (3) that Defendant breached the Agreement by failing to (i) provide the required services to PDV USA or PDVSA, (ii) produce the requisite number of reports with the requisite level of detail; and (iii) provide details of services rendered in invoices and supporting documentation (*id.* ¶¶ 23-26, 28, 31, 38, 39, 43); and (4) damages, including PDV USA's $15 million payment for which it received nothing in return (*id.* ¶ 32).

*Third*, PDV USA has not waived its breach of contract claim. Contrary to Defendant's assertion, PDV USA never "concede[d] that it received 'services'"—much less to its sole satisfaction. Rather, PDV USA repeatedly alleged that Interamerican failed to perform under the contract and that it "is not satisfied with Interamerican's services." (*Id.* ¶¶ 23-26, 28, 30, 31, 38, 39, 43.) Interamerican simply has no basis to establish this affirmative defense on its motion to dismiss.

Finally, Mr. Rivera himself confirmed in public statements in response to the filing of this lawsuit that Interamerican did not honor its contractual obligations to PDV USA. Asked about the Agreement by the press, Mr. Rivera replied, "ask the boys of Citgo 6," a reference to Citgo Petroleum Corporation executives detained by the Maduro regime. "They handled that entire operation, including all the money, in coordination with the Venezuelan opposition . . . That's all I know." (*PDVSA denounces former U.S. congressman for Payment of $US15M*, CE NOTIFICIAS FINANCIERAS ENGLISH, May 13, 2020). Mr. Rivera told another publication: "All those funds went to the opposition for anti-Maduro protests in the summer of 2017. I never saw a penny of it." (Jay Weaver and Antonio Maria Delgado, *Rivera didn't register as a foreign agent in $50 million contract with Venezuela oil firm*, MIAMI HERALD, May 14, 2020). Putting aside the serious questions about the legality of Mr. Rivera's actions raised by these admissions, they make one thing clear—Interamerican did not and never intended to provide any "strategic consulting services" to PDV USA (or PDVSA) as required by the Agreement.

\* \* \*

For the reasons above, Interamerican's contemplated motion to dismiss will necessarily fail and needlessly delay litigation of this matter. We look forward to discussing these matters with Your Honor at the pre-motion conference.

Respectfully submitted,

Jeffrey B. Korn

---

[2] Contrary to Defendant's assertion, a "plaintiff is not required to attach a copy of the contract or plead its terms verbatim." *Fort Prods., Inc v. Men's Med. Clinic, LLC*, 2016 WL 797577, at *3 (S.D.N.Y. Feb. 23, 2016) (internal quotation omitted). Rather, it is sufficient to "set forth the terms of the agreement upon which liability is predicated." *Id*. (internal quotation omitted) (denying motion to dismiss where Amended Complaint "state[d] that Defendant retained Plaintiff for marketing and advertising services and that Defendant would pay the 'fair and reasonable value' for such services"). *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011), cited by Defendant, does not hold otherwise.