**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

PDV USA, INC.,

        Plaintiff,                               AMENDED COMPLAINT

v.                                                Case No. 20-cv-3699

INTERAMERICAN CONSULTING INC.,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AMENDED COMPLAINT

Plaintiff PDV USA, Inc. ("PDV USA" or "Plaintiff"), by and through its undersigned counsel, Willkie Farr & Gallagher LLP, alleges as follows in its Amended Complaint against Defendant Interamerican Consulting Inc. ("Interamerican"):

## NATURE OF THE ACTION

1. On March 21, 2017, PDV USA and Interamerican entered into a consulting agreement (the "Agreement") pursuant to which Interamerican would be paid $50 million in six installments over a three-month period to provide purported "strategic consulting services" for PDV USA's parent company, Petróleos de Venezuela, S.A. ("PDVSA"). A true and correct copy of the Agreement is annexed hereto as Exhibit 1.

2. PDVSA is the state-owned oil and natural gas company of the Bolivarian Republic of Venezuela, and, at that time, was controlled by the regime of Nicolas Maduro. PDV USA was instructed by the parent company (PDVSA) of its parent company (PDV Holding, Inc.) to enter into the Agreement for the purported purpose of improving PDVSA's "long-term reputation and standing" in the United States.

3. In January of 2019, the United States Government recognized Juan Guaidó, the President of Venezuela's National Assembly, as the Interim President of Venezuela, and at the same time derecognized the Maduro regime and designated PDVSA as a "Specially Designated National" with whom no U.S. person may do business absent a license from the U.S. Department of Treasury. The Guaidó Government, in turn, appointed an Ad Hoc Board of Directors of PDVSA to oversee the U.S. operations of PDVSA's U.S.-based subsidiaries, including PDV USA. In August of 2019, the Delaware Court of Chancery ruled that under U.S. law, the Guaidó appointments to the PDVSA Ad Hoc Board were presumptively valid.

4. Under the 2017 Agreement, Interamerican was supposed to develop and implement over a three-month period a strategic plan to improve PDVSA's reputation and standing among, and build relationships with, policy makers, opinion leaders, public officials, and targeted stakeholders.

5. Among other things, in exchange for $50 million, the Agreement required Interamerican to provide at least seven bi-weekly reports detailing the work carried out during the relevant period and a final report that would include recommendations for monitoring the strategies implemented. Instead, Defendant provided just two reports, totaling no more than five pages, much of which is duplicated. These reports refer generically to a "strategic plan," "meetings," and "recommendations," but do not describe a single element of the alleged plan, identify meeting participants or meeting discussions, or specify what recommendations were made or to whom.

6. Upon information and belief, Defendant performed no services under the Agreement, and certainly did not perform the level of services that might reasonably be expected for a fee of approximately $17 million per month. This was confirmed by Defendant's President, former U.S. Congressman David Rivera, after this lawsuit was filed. According to Mr. Rivera, in

statements he made to the press shortly after the filing of this lawsuit, Interamerican never intended to provide the strategic consulting services that were the subject of the Agreement, but instead the funds that were paid "went to the opposition for anti-Maduro protests in the summer of 2017." (Jay Weaver and Antonio Maria Delgado, *Rivera didn't register as a foreign agent in $50 million contract with Venezuela oil firm*, MIAMI HERALD, May 14, 2020). Mr. Rivera's claim appears to be that the Maduro regime, which controlled PDVSA at the time, agreed to funnel tens of millions of dollars to finance protests being organized by its political adversaries. This claim defies credulity, and PDV USA has been unable to locate any evidence, of any kind, supporting it.

7.   Mr. Rivera's claims in 2020 regarding the purpose of the Agreement are entirely inconsistent with Interamerican's two progress reports, which contain numerous representations concerning a consulting project for PDV USA to benefit PDVSA. Those 2020 claims also make clear that Interamerican falsely represented and warranted in Section 7 of the Agreement that "no portion of any payment to CONSULTANT by PDV USA pursuant to this Agreement shall be used as a bribe, kickback, rebate, illegal political contribution, or in violation of applicable foreign exchange control regulations, tax laws or regulations, or other laws or regulations of any jurisdiction."

8.   There is one conclusion that can readily be drawn from Mr. Rivera's admissions: Interamerican did not, and never intended to, provide the consulting services for which it contracted with PDV USA in the Agreement.

9.   PDV USA was injured by the Defendant's breach of the Agreement. PDV USA paid the first three invoices issued by Defendant, a total of $15 million, but did not receive the required services and has received no evidence that any services were ever performed on behalf of PDV USA or PDVSA.

10. Notwithstanding its failure to perform under the Agreement, Defendant insists that PDV USA owes it the remaining $35 million contemplated by the $50 million Agreement.

11. In addition, Interamerican explicitly committed in Section 10 of the Agreement to indemnify PDV USA from and against any breach of the Agreement perpetrated by Interamerican, including by paying any expenses, court costs, and attorneys' fees associated with enforcing PDV USA's rights under the Agreement.

12. Accordingly, PDV USA brings this action to recover the $15 million (plus interest) it has already paid Defendant, for a declaration that PDV USA does not owe Interamerican the remaining $35 million contemplated under the Agreement, and to recover any other compensatory damages in an amount to be addressed at trial, as well as all expenses, court costs, and attorneys' fees associated with enforcing its contractual rights.

13. In the alternative, to the extent that Mr. Rivera's statements in 2020 to the press are true, and the money paid to Interamerican was paid at the direction of PDVSA for a purpose other than the consulting services that are set forth in the Agreement, then no enforceable contract exists and Interamerican should be required to disgorge the $15 million it was paid under the doctrine of unjust enrichment and PDV USA should be entitled to a declaration that it does not owe Interamerican any further payments in relation to the Agreement.

## THE PARTIES

14. PDV USA is a company incorporated in Delaware with its principal place of business located at 65 East 55th Street, Floor 21, New York, New York 10022. PDV USA is a wholly-owned subsidiary of PDV Holding, Inc., which in turn is a wholly-owned subsidiary of PDVSA, which as noted above is the state-owned petroleum corporation of the Bolivarian Republic of Venezuela.

15. Interamerican is a company incorporated in the State of Florida by former U.S. Congressman David Rivera ("Rivera"). Upon information and belief, Interamerican's principal place of business is Rivera's home, located at 10925 N.W. 43rd Lane, Miami, Florida, 33178. Interamerican claims to be in the business of providing "strategic consulting services." According to publicly available information, Interamerican has two employees: (1) Rivera, who serves as President and registered agent; and (2) Diana Rivera McKenzie (Rivera's sister), who serves as Vice President.

## JURISDICTION AND VENUE

16. This court has diversity jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1332. The parties are citizens of different states and the amount in controversy exceeds $75,000.

17. Venue is proper in this Court because, pursuant to the Agreement, the parties agreed to "irrevocably submit to the exclusive jurisdiction of the State of New York" for the purpose of resolving disputes arising out of the Agreement.

18. In addition, the parties specified in the Agreement that it "shall be deemed to be made under, and shall be construed in accordance with, the laws of the State of New York (without reference to choice of law doctrine)." (Exhibit 1 at § 16).

## FACTUAL BACKGROUND

**The Terms of the Agreement**

19. On March 21, 2017, PDV USA (at the direction of PDVSA) and Interamerican entered into the Agreement, pursuant to which PDV USA agreed to pay Interamerican in exchange for certain "strategic consulting services."

20. The Agreement had a three-month term, beginning on the date of execution, March 21, 2017, and terminating on June 21, 2017. (Exhibit 1 at § 2).

21. The services to be provided by Interamerican were set forth in Exhibit A to the Agreement ("Exhibit A"), "which, with any addendums or schedules thereto, [were] integrated into and made a part of" the Agreement. (Exhibit 1 at § 4).

22. Exhibit A provides that, "[i]t shall be the CONSULTANT's duty to provide strategic consulting services to the CLIENT as the CLIENT deems necessary and appropriate." (Exhibit 1 at 6).

23. "CONSULTANT" is defined in the Agreement to mean Interamerican. "CLIENT" is not defined, but the parties understood that the services were intended for the benefit of PDVSA, not PDV USA. The defined term for PDV USA, Inc. in the Agreement is "PDV USA" and the rest of the Agreement, including Exhibit B, which sets out the payment terms, refers to "PDV USA" throughout.

24. Only Exhibit A, concerning the services to be provided by Interamerican, refers to the "CLIENT." The parties understood that PDVSA was the CLIENT. Indeed, Pio Gonzalez, a PDVSA employee, was identified in the Agreement as the "authorized representative" for PDV USA (Exhibit 1 § 14) and the two progress reports that were produced by Interamerican were sent to him.

25. Pursuant to Exhibit A, Interamerican agreed to: (1) "provide CLIENT with strategic consulting and assistance developing strategies to inform policy makers and opinion leaders regarding CLIENT initiatives and achievements;" (2) "develop and work with CLIENT to organize and implement a multi-faceted strategy to reinforce CLIENT's standing among important public officials and opinion leaders;" (3) "support CLIENT in the planning and execution of a strategic plan directed at targeted stakeholders to assist CLIENT with the development and implementation of a program to support efforts that will enhance the long-term reputation and

standing of CLIENT;" and (4) "identify opportunities to build long-term relationships among key third-parties, opinion leaders and public officials." (Exhibit 1 at 6).

26. Exhibit A enumerated specific "deliverables" that were to be provided by Interamerican. Specifically, Interamerican was required to provide: (1) "updates regarding the strategic consulting services;" (2) "supporting documentation" for all invoices submitted, as well as "adequate and complete details of the Services rendered;" (3) "bi-weekly report[s] detailing the activities that it has carried out during that period to achieve the stated goals and purposes of the Agreement;" and (4) "a final report integrating all work product including recommendations for monitoring and following up on the strategies implemented" pursuant to the Agreement. (Exhibit 1 at 6).

27. Exhibit B to the Agreement set out a payment schedule, pursuant to which PDV USA was to pay Interamerican a total of $50 million. (Exhibit 1 at 7).

28. Under the payment schedule, PDV USA was to pay Interamerican an "Initial Payment Installment" of $5 million on March 21, 2017. (Exhibit 1 at 7).

29. The payment schedule further instructed that, starting on April 4, 2017, another $20 million be paid in $5 million "Consecutive Payment Installments" every two weeks and that a "Final Payment Installment" of $25 million be paid before June 15, 2017.

30. However, the Agreement only required PDV USA to pay Interamerican as compensation for the "completion" of the services to PDV USA's "sole satisfaction." (Exhibit 1 at § 3).

31. Interamerican represented and warranted to PDV USA that "no portion of any payment to [Interamerican] by PDV USA pursuant to this Agreement shall be used as a bribe, kickback, rebate, illegal political contribution, or in violation of applicable foreign exchange

7

control regulations, tax laws or regulations, or other laws or regulations of any jurisdiction." (Exhibit 1 at § 7).

32. Finally, Interamerican represented and warranted to PDV USA in the Agreement that "in connection with performing the Services, [Interamerican] and its Personnel [would] not violate any applicable laws or regulations of any jurisdiction." (Exhibit 1 at § 7) Interamerican also promised in the Agreement that it "shall comply with all federal, state and local laws, regulations and ordinances." (Exhibit 1 at § 17).

**Interamerican Failed to Perform Under the Agreement**

33. Interamerican failed to provide the services and deliverables set out in the Agreement. In short, Interamerican provided no services to PDV USA.

34. Interamerican failed to provide the seven bi-weekly reports "detailing the activities that it ha[d] carried out" during the applicable two-week period and the final report "integrating all work product including recommendations for monitoring and following-up on the strategies implemented," as required by Exhibit A. (Exhibit 1 at 6).

35. Instead, Rivera submitted only two reports in total: (1) one "bi-weekly" report on May 1, 2017, almost a month after the first report was due on April 4, 2017; and (2) a "final" report on December 31, 2017, more than six months after the Agreement's June 21, 2017 termination date. These reports were not submitted to PDV USA, but to Mr. Pio González, an employee of PDVSA.

36. The reports totaled no more than five pages (collectively), much of which was duplicated, and failed to describe any meaningful work done on behalf of PDV USA or PDVSA or provide any evidence that work was actually performed. For example, the reports make

8

numerous references to developing and implementing the "strategic plan," but do not describe what that plan entailed or how it was allegedly implemented.

38. The reports also refer generically to meetings and discussions with "important policy makers and opinion leaders in the United States," "key public officials," "target stakeholders," "public sector stakeholders," and "private sector stakeholders," but fail to describe the purpose of those meetings, who attended, what was discussed, or what makes any of these leaders, officials or stakeholders important to Interamerican's "strategic plan."

38. Similarly, the purported final report refers to recommendations, but does not explain what those recommendations are.

39. While the reports do not show that Interamerican provided the services for which it was engaged, neither do they support Mr. Rivera's 2020 claims as to the purpose of the Agreement. Nothing in any report claims, or remotely suggests, that the money provided to Interamerican was being used for the purpose of making political contributions to opposition figures or leaders in Venezuela. Nor is PDV USA aware of any communication to, from, or copying any representative of PDV USA suggesting that the payments to Interamerican were contemplated for such purpose.

40. Interamerican also failed to provide "supporting documentation" and "adequate and complete details of the Services rendered" with each invoice submitted to PDV USA, as required by Exhibit A. (Exhibit 1 at 6). Indeed, Interamerican provided no supporting documentation or detail whatsoever with the invoices submitted for payment.

41. As a result of these multiple failures, Interamerican failed to perform any services "to PDV USA's sole satisfaction." (Exhibit 1 at § 3). To be clear, PDV USA never

expressed satisfaction with the services provided by Interamerican, and is not satisfied with Interamerican's services.

42. Simply put, Interamerican did not perform any of the services that it contracted to perform, much less to PDV USA's satisfaction:

    a. Interamerican did not "provide CLIENT with strategic consulting and assistance developing strategies to inform policy makers and opinion leaders regarding CLIENT initiatives and achievements." (Exhibit 1 at 6).

    b. Interamerican did not "develop and work with CLIENT to organize and implement a multi-faceted strategy to reinforce CLIENT's standing among important public officials and opinion leaders." (*Id.*)

    c. Interamerican did not "support CLIENT in the planning and execution of a strategic plan directed at targeted stakeholders to assist CLIENT with the development and implementation of a program to support efforts that will enhance the long-term reputation and standing of CLIENT." (*Id.*)

    d. Interamerican did not "identify opportunities to build long-term relationships among key third-parties, opinion leaders and public officials." (*Id.*)

43. Finally, to the extent that Mr. Rivera's press statements are true or that the money Interamerican received under the Agreement was used for other purposes, then Interamerican also violated its representations and warranties under Section 7 of the Agreement that "no portion of any payment to CONSULTANT by PDV USA pursuant to this Agreement shall be used as a bribe, kickback, rebate, illegal political contribution, or in violation of applicable

foreign exchange control regulations, tax laws or regulations, or other laws or regulations of any jurisdiction."

**PDV USA Paid Interamerican for Services that Were Never Performed**

44. Notwithstanding Interamerican's failure to provide the contracted-for services, PDV USA initially began making payments to Interamerican.

45. Specifically, PDV USA paid Interamerican the "Initial Payment Installment" of $5 million on March 24, 2017.

46. PDV USA also began to pay Interamerican the "Consecutive Payment Installments" of $5 million on each of April 10, 2017 and April 19, 2017.

47. Together with the initial installment payment made on March 24, 2017, PDV USA paid Interamerican a total of $15 million by April 19, 2017. These payments all predated the receipt of any interim reports from Interamerican, the first one of which was not received until May 1, 2017. PDV USA made no further payments following receipt of these interim reports. PDV USA was not and is not satisfied with any services purported to be rendered to PDV USA under the Agreement—which were nonexistent.

48. In addition, PDV USA refused to pay the final three Interamerican invoices that Rivera submitted, which totaled $35 million.

**Notwithstanding Its Breach Of The Agreement, Interamerican Insists That PDV USA Owes The Balance Under The Agreement**

49. Even though Interamerican did not provide services as required under the Agreement, Interamerican repeatedly requested payment for the outstanding invoices at various times through 2019, including on September 11, 2018, December 18, 2018, and February 4, 2019.

50. Interamerican continues to assert that PDV USA is liable to Interamerican for the $35 million balance under the Agreement. Indeed, Defendant has represented to this Court

that their "position as to the performance and obligations under the contract" is that those obligations "remained with and do remain with PDV USA, the party to the contract." (Tr. 12:11-14, Oct. 8, 2020). And Defendant asserts that PDV USA was obliged, and is still obliged, "to pay that $50 million." (*Id*. at 15:23-24).

**PDV USA Has Not Assigned The Agreement Because Interamerican Refused To Consent To The Assignment**

51. On October 5, 2017, in light of the fact that Defendant had not performed, and did not contemplate performing, any services on behalf of PDV USA, PDV USA and PDVSA jointly sought Defendant's consent to assign the Agreement from PDV USA to PDVSA. To that end, PDV USA and PDVSA both signed an "Assignment and Assumption Consent Agreement To 'Consulting Agreement, Dated March 21, 2017'" (the "Assignment and Assumption Consent Agreement"). Interamerican was identified as a third party to the Assignment and Assumption Consent Agreement for purposes of granting consent to its terms, which the parties agreed was to constitute a novation or release for PDV USA, and a signature block was provided for Interamerican's consent. But Interamerican refused to consent to the Assignment and Assumption Consent Agreement and never signed it. Accordingly, the Assignment and Assumption Consent Agreement was never fully executed. A true and correct copy of the Assignment and Assumption Consent Agreement is annexed hereto as Exhibit 2.

52. Interamerican's written consent was an essential condition of the formation of the Assignment and Assumption Consent Agreement. Indeed, in the recitals of the Assignment and Assumption Consent Agreement, the parties stated as one of the underlying bases for their agreement that "Consultant has agreed to consent to the terms and conditions of this Assignment and Assumption Agreement, and therefore, fully release Assignor for all past, present, and future

obligations under the Agreement." (Exhibit 2 at 1). This made clear that the assignment would only become effective if Interamerican consented to its terms.

53. Plaintiff did not, and would not have agreed to, assign its rights under the Agreement unless it received Interamerican's consent and a release from its obligations. Thus, in paragraph 1 of the Assignment and Assumption Consent Agreement, PDV USA stated that the "Assignment and Assumption shall be construed as a novation or a release of Assignor under the Agreement." *Id.* For that reason, Interamerican was required to execute the Assignment and Assumption Consent Agreement and a signature block was included on page 2 for its signature.

54. Because Interamerican never executed the Assignment and Assumption Consent Agreement, the agreement was never formed and the assignment and assumption reflected therein was never effective. The right to enforce the Agreement therefore belongs to PDV USA notwithstanding the Assignment and Assumption Consent Agreement.

55. Until this lawsuit was filed, Defendant's position has also been that no assignment was ever effected and it has continued to demand payment from Plaintiff. A February 4, 2019 email from Mr. Rivera makes this clear:

> As you know, Interamerican Consulting never agreed to or consented to any assignment of the contract from PDV USA to PDVSA. In fact, any suggestion of a reassignment of the contract was specifically rejected on two occasions. Our legal counsel has now reviewed this matter in depth, including the documented role of Citgo attorneys and corporate officers, and has concluded indisputably and categorically that any assignment by PDV USA to PDVSA was a unilateral decision arranged between PDV USA and PDVSA and, under State of New York contract law governing the consulting agreement, in no way absolves PDV USA of its contractual obligations to Interamerican Consulting.

56. In any event, for the avoidance of doubt, to the extent any rights, obligations or liabilities under the Agreement were transferred from PDV USA to PDVSA pursuant to the Assignment and Assumption Consent Agreement—which they were not— PDVSA has agreed to rescind such transfer and, if necessary, transfer such rights, obligations or

liabilities back to PDV USA.  Accordingly, on October 30, 2020, PDV USA and PDVSA entered into a Rescission of Assignment and Assumption Consent Agreement To "Consulting Agreement, Dated March 21, 2017," in which, "to the extent any rights, obligations or liabilities under the Consulting Agreement were previously transferred from PDV USA to PDVSA pursuant to the Assignment and Assumption Consent Agreement, PDVSA hereby transfers and assigns to PDV USA any such rights, obligations and liabilities to PDV USA, and PDV USA hereby accepts this transfer and assignment."  A true and correct copy of the Rescission Agreement is annexed hereto as Exhibit 3.

**After This Lawsuit Was Filed, Interamerican Has Admitted That It Never Intended To Perform Services Under The Agreement And Claims The Agreement Is A Sham**

57. After this lawsuit was filed, Interamerican's President made several statements to the press about this lawsuit and the parties' Agreement.

58. In response to press inquiries, Mr. Rivera replied, "ask the boys of Citgo 6," a reference to Citgo Petroleum Corporation executives detained by the Maduro regime.  "They handled that entire operation, including all the money, in coordination with the Venezuelan opposition . . . That's all I know."  (*PDVSA denounces former U.S. congressman for Payment of $US15M*, CE NOTIFICIAS FINANCIERAS ENGLISH, May 13, 2020).

59. Mr. Rivera also told the Miami Herald:  "All those funds went to the opposition for anti-Maduro protests in the summer of 2017. I never saw a penny of it."  (Jay Weaver and Antonio Maria Delgado, *Rivera didn't register as a foreign agent in $50 million contract with Venezuela oil firm*, MIAMI HERALD, May 14, 2020).

60. On information and belief, these statements are false.  PDV USA could locate no evidence supporting these claims.  The transfer of funds from PDV USA went directly to a bank account controlled by Interamerican.  It defies credulity to assert that PDVSA, which at

the time was controlled by the Maduro Regime, directed its U.S. subsidiaries to hire Interamerican to funnel millions of dollars to the political adversaries of the Regime.

61.  To the extent that Interamerican did use the funds it received from PDV USA under the Agreement for the purpose of financing the political opposition of the Maduro Regime, that would prove that Interamerican did not and never intended to perform the strategic consulting services contemplated by the Agreement.  It would further prove that the two progress reports submitted by Rivera to PDV USA contained numerous false, material statements regarding purported services that Rivera claimed Interamerican had performed.  For example, if Rivera's 2020 claims are true, then each of the following statements contained in the progress reports were knowingly and intentionally false when made to PDV USA to support Interamerican's claims for payment:

   a. April 18:  "The Consultant organized meetings for the Client with important policy makers and opinion leaders in the United States as part of the strategy to build long-term relationships among key public sector stakeholders in the United States.  These meetings allowed the Client to provide the Client's viewpoints and perspectives on current events in Venezuela and their interpretation in the United States, focusing on Client initiatives and achievements."

   b. May 16:  "The Consultant has had multiple discussions with important interlocutors associated with the target private sector organizations and has advised these interlocutors as to the Client's desire and willingness to pursue reconciliation and resolution of outstanding issues."

      c.    June 13: "The Consultant has held meetings and discussions with key public officials to express details as to the willingness of the Client to make good faith efforts and concessions in pursuit of facilitating a positive relationship with interested parties in the United States."

62. To the extent that the position of Interamerican is that the Agreement was a sham from the outset, however, then Interamerican received payments to which it was not lawfully entitled and it would be unjustly enriched if it were permitted to profit from them.

**Interamerican Agreed to Indemnify PDV USA for its Breach of the Agreement**

63. Under the Agreement, Interamerican agreed to "indemnify . . . PDV USA . . . from and against any and all breaches of this Agreement by [Interamerican]," including "all such expenses, court costs, and attorneys' fees in the enforcement of PDV USA's rights" under the Agreement. (Exhibit 1 § 10).

## COUNT ONE: BREACH OF CONTRACT

64. PDV USA repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

65. Defendant Interamerican entered into the Agreement, pursuant to which Interamerican agreed to perform certain services identified above.

66. Defendant failed to perform those services and therefore breached its agreement with Plaintiff.

67. As a direct and proximate result of Defendant's breach, Plaintiff has incurred substantial damages.

68. Plaintiff is entitled to recover the $15 million (plus interest) that it paid to Defendant and to be released from any further payment under the Agreement.

## COUNT TWO: INDEMNITY

69. PDV USA repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

70. Defendant Interamerican agreed to indemnify PDV USA for any damages resulting from its breach of the Agreement, including expenses, court costs, and attorneys' fees.

71. Defendant breached the Agreement.

72. Plaintiff is entitled to recover all damages resulting from Defendant's breach of the Agreement, including expenses, courts costs, and attorneys' fees.

## COUNT THREE: UNJUST ENRICHMENT

73. PDV USA repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

74. Mr. Rivera has stated publicly that the Agreement was a sham.

75. Although PDV USA disputes the accuracy of Mr. Rivera's claim regarding the purpose of the Agreement, to the extent that discovery shows that the Agreement was a sham for the reasons he provided or for other reasons, then no enforceable contract was formed between PDV USA and Interamerican.

76. Plaintiff paid Defendant Interamerican $15 million.

77. There is no justification for Interamerican to retain these payments, and its doing so is unjust and inequitable.

78. Defendant Interamerican therefore has been unjustly enriched to the extent it obtained any payments from Plaintiff. All such amounts should be returned to Plaintiff, with interest.

## COUNT FOUR:  DECLARATORY JUDGMENT

79. PDV USA repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

80. As alleged herein, an actual and ripe controversy exists between the parties in that Defendant has asserted, and will continue to assert, that Plaintiff breached the Agreement when it refused to pay the remaining $35 million contemplated by the Agreement and that Plaintiff therefore owes Defendant $35 million.

81. Plaintiff's position is that no such money is owed in light of Defendant's breach of the Agreement.

82. Accordingly, Plaintiff and Defendant have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment on the disputed matters raised herein.

83. Plaintiff is therefore entitled to a declaration pursuant to 28 U.S.C. § 2201, C.P.L.R. § 3001, and Rule 57 of the Federal Rules of Civil Procedure that PDV USA does not owe Interamerican any money under the Agreement because Interamerican breached the Agreement.

84. Alternatively, to the extent that discovery shows that the Agreement was a sham, Plaintiff is entitled to a declaration pursuant to 28 U.S.C. §2201, C.P.L.R. § 3001, and Rule 57 that PDV USA owes Interamerican no money under the Agreement because no enforceable contract was formed between PDV USA and Interamerican.

## PRAYER FOR RELIEF

WHEREFORE, PDV USA requests that the Court:

a. Adjudge and decree that Defendant is liable for breach of contract and unjust enrichment, as alleged herein;

    b.  Declare that PDV USA does not owe Defendant any money under the Agreement;

    c.  Enter a judgment against Defendant that awards PDV USA $15 million (plus interest), relieves Plaintiff from any further payments under the Agreement, awards any further compensatory damages (plus interest) at an amount to be determined at trial; and awards expenses, costs, and attorneys' fees; and

    d.  Grant such further relief as the Court deems just and proper.

## **JURY DEMAND**

    Plaintiff PDV USA hereby demands a trial by jury on all issues raised in the Complaint herein.

Dated: New York, New York
October 30, 2020

**WILLKIEFARR & GALLAGHER LLP**

By: /s/ Jeffrey B. Korn

    Jeffrey B. Korn
    787 Seventh Avenue
    New York, New York 10019
    (212) 728-8000
    JKorn@willkie.com

    Michael J. Gottlieb
    Sarah Wastler
    1875 K Street, N.W.
    Washington, D.C. 20006
    (202) 303-1000
    MGottlieb@willkie.com
    SWastler@willkie.com

    *Attorneys for Plaintiff PDV USA, Inc.*