**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PDV USA, Inc.

        Plaintiff,

    v.

Interamerican Consulting, Inc.

        Defendant.

No. 20-cv-03699-JGK

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**
**FOR LACK OF SUBJECT-MATTER JURISDICTION**
**PURSUANT TO FED. R. CIV. P. 12(b)(1)**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ......................................................................................................................4

I.    Plaintiff Cannot Allege the Article III Requirement of Standing ..........................4

    A.   Plaintiff Assigned Away Its Enforcement Rights ...........................................5

        1.   The Contract Is Assignable and Consent Was Not Required .....................6

        2.   Interamerican's Consent Was Not an Essential Condition of the Assignment ............7

        3.   The Assignment Is Not a Novation ...........................................................8

    B.   Plaintiff Was Required to Have Standing at the Commencement of the Case ................9

    C.   Plaintiff Cannot Use Rule 17 to Cure the Standing Defect ...........................10

    D.   Plaintiff's Claimed Injury Is Not Redressable by this Court .........................10

II.   This Case Presents a Nonjusticiable Political Question ....................................13

CONCLUSION .................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*767 Third Ave. Assocs. v. Consulate Gen. of Socialist Fed. Republic of
    Yugoslavia,*
    218 F.3d 152 (2d Cir. 2000) ...................................................................14

*Ahmed v. Cissna,*
    327 F. Supp. 3d 650 (S.D.N.Y. 2018) ...........................................13, 14

*Allco Fin. Ltd. v. Klee,*
    861 F.3d 82 (2d Cir. 2017) .......................................................................5

*Baker v. Carr,*
    369 U.S. 186 (1962) .....................................................................13, 14, 15

*Brooklyn Union Gas Co. v. Exxon Mobil Corp.,*
    No. 17-cv-7476 (MKB), 2020 WL 5519188 (E.D.N.Y. Aug. 13, 2020) .................4

*Clarex Ltd. v. Natixis Secs. Am. LLC,*
    No. 12-cv-0722 (PAE), 2012 WL 4849146 (S.D.N.Y. Oct. 12, 2012) ..................10

*In re Adelphia Comm'ns Corp. Secs. & Derivative Litig.,*
    No. 03-md-1529 (LMM), 2011 WL 6434009 (S.D.N.Y. Dec. 21, 2011) ...............9

*In re Clinton Nurseries, Inc.,*
    608 B.R. 96 (Bankr. D. Conn. 2019) ......................................................12

*In re Refco Inc. Secs. Litig.,*
    826 F. Supp. 2d 478 (S.D.N.Y. 2011) ......................................................6

*Coal. of Watershed Towns v. U.S. E.P.A.,*
    552 F.3d 216 (2d Cir. 2008) ...................................................................12

*Davis v. Fed. Election Comm'n,*
    554 U.S. 724 (2008) .................................................................................9

*Doe No. 1 v. Putnam Cty.,*
    344 F. Supp. 3d 518 (S.D.N.Y. 2018) ...................................................1, 4

*Fund Liquidation Holdings LLC v. Citibank, N.A.,*
    399 F. Supp. 3d 94 (S.D.N.Y. 2019) ......................................................10

*Hirsch v. Qingdao Orien Equip. Co., Ltd.,*
    No. 12-cv-952 (RRM), 2015 WL 1014352 (E.D.N.Y. Mar. 6, 2015)............4, 6, 9

*House of Eur. Funding, I, Ltd. v. Wells Fargo Bank, N.A.*,
No. 14-cv-519 (RJS), 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) ................................. 3, 5

*Jiménez v. Palacios*,
2019 WL 3526479 (Del. Ch. Aug. 2, 2019) ............................................................ 9

*Koenig Iron Works, Inc. v. Sterling Factories, Inc.*,
No. 89-cv-4257 (THK), 1999 WL 178785 (S.D.N.Y. Mar. 30, 1999) ...................... 8, 9

*LCE Lux HoldCo S.a.r.l. v. Entretenimiento GM de Mexico S.A. de C.V.*,
287 F.R.D. 230 (S.D.N.Y. 2012) ........................................................................ 6, 7

*Triaxx Prime CDO 2006-1, Ltd. v. Bank of N.Y. Mellon*,
No. 16-cv-1597 (NRB), 2017 WL 1103033 (S.D.N.Y. Mar. 21, 2017) ...................... 5

*Makarova v. U.S.*,
201 F.3d 110 (2d Cir. 2000) ............................................................................... 4

*N.Y. Bankers Ass'n, Inc. v. City of New York*,
No. 13-cv-7212 (KPF), 2014 WL 4435427 (S.D.N.Y. Sept. 9, 2014) .................... 3, 5, 9

*Nagan Const., Inc. v. Monsignor McLancy Memoriam High Sch.*,
137 A.D.3d 986 (2d Dep't 2016) ......................................................................... 5

*Nastasi & Assocs., Inc. v. Bloomberg, L.P.*,
No. 18-cv-12361 (JMF), 2020 WL 2555281 (S.D.N.Y. May 20, 2020) ................... 10

*Nixon v. U.S.*,
506 U.S. 224 (1993) ...................................................................................... 3, 13

*Oetjen v. Cent. Leather Co.*,
246 U.S. 297 (1918) ......................................................................................... 13

*Oneida Indian Nation v. U. S. Dep't of Interior*,
336 F. Supp. 3d 37 (N.D.N.Y. 2018) ..................................................................... 5

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
895 F. Supp. 660 (S.D.N.Y. 1995) ........................................................................ 6

*Progressive Apparel Grp., Inc. v. Anheuser-Busch, Inc.*,
No. 95-cv-2794 (DLC), 1996 WL 50227 (S.D.N.Y. Feb. 8, 1996) .......................... 12

*Schlesinger v. Reservists Comm. to Stop the War*,
418 U.S. 208 (1974) .......................................................................................... 4

*Sharkey v. Quarantillo*,
541 F.3d 75 (2d Cir. 2008) ............................................................................... 6, 7

*Sporre S.A. de C.V. v. Int'l Paper Co.*,
No. 99-cv-2638 (HB), 1999 WL 1277243 (S.D.N.Y. Dec. 30, 1999) ...................... 8

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .................................................................................................. 3

*Vieth v. Jubelirer*,
541 U.S. 267 (2004) ........................................................................................... 3, 13

*Whiteman v. Dorotheum GmbH & Co. KG*,
431 F.3d 57 (2d Cir. 2005) ................................................................................... 14

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*,
215 F.3d 247 (2d Cir. 2000) ................................................................................... 1

## Statutes and Regulations

28 U.S.C. § 2201 .................................................................................................... 14

31 C.F.R. § 591.202(e) .......................................................................................... 11

31 C.F.R. § 591.303 .............................................................................................. 12

31 C.F.R. § 591.308 .............................................................................................. 12

31 C.F.R. § 591.309 ......................................................................................... 11, 14

31 C.F.R. § 591.407 .............................................................................................. 11

82 F.R. 41155 (E.O. 13808) ................................................................................... 2

83 F.R. 24001 (E.O. 13835) ............................................................................... 2, 11

83 F.R. 55243 (E.O. 13850) ......................................................................... 2, 11, 12

84 F.R. 38843 (E.O. 13884) ................................................................................. 11

## Other Authorities

Federal Rule of Civil Procedure 12(b)(1) ....................................................... 1, 4, 15

Federal Rule of Civil Procedure 17(a)(3) ........................................................ 9, 10

Defendant Interamerican Consulting, Inc. ("Interamerican") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

Plaintiff PDV USA, Inc. ("Plaintiff" or "PDV USA") seeks to recover for the purported breach of a contract (the "Agreement") it alleges it entered into at the direction of, and for the benefit of, its ultimate parent company, Petróleos de Venezuela, S.A. ("PDVSA"). *See* Am. Compl. (Dkt. No. 25) ¶¶ 1-2. According to Plaintiff, PDVSA was the "client" to which the services from Interamerican were provided, and a PDVSA employee was identified as the "authorized representative" of PDV USA under the Agreement. *See id.* ¶¶ 23-24. On May 10, 2017, PDV USA assigned its rights under the Agreement to PDVSA.[1] *See id.*, Ex. 2 (Dkt. 25-2); Rivera Decl., Ex. C.[2]

PDVSA is the state-owned oil and natural gas company of Venezuela. *See* Am. Compl. ¶¶ 1-2. Since January 2019, PDVSA has been classified by the U.S. government as a "Specially Designated National." *See id.* ¶ 3. Under that classification, U.S. persons are prohibited from transacting with PDVSA, and its property and interests in property that are subject to U.S. jurisdiction are blocked. *See* Press Release, U.S. Treasury Dep't, "Treasury Sanctions Venezuela's

---

[1] Email correspondence to Interamerican's President, David Rivera, makes clear that PDV USA's counsel is aware of this fact. *See* Rivera Decl., Ex. D.

[2] A defendant challenging subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may bring a fact-based challenge and "proffer[ ] evidence outside the pleadings." *Doe No. 1 v. Putnam Cty.*, 344 F. Supp. 3d 518, 526-27 (S.D.N.Y. 2018); *see Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

State-Owned Oil Company Petroleos de Venezuela, S.A.," Jan. 28, 2019 ("Treasury Dep't Press Release").[3]  The Treasury Department made the designation pursuant to Executive Order 13850, which highlighted the "actions by the Maduro regime and associated persons to plunder Venezuela's wealth for their own corrupt purposes, degrade Venezuela's infrastructure and natural environment through economic mismanagement and confiscatory mining and industrial practices, and catalyze a regional migration crisis by neglecting the basic needs of the Venezuelan people." *See* 83 F.R. 55243 (2018) ("E.O. 13850").[4]  PDVSA thus may not receive funds from a U.S. entity—vis-à-vis a money judgment or otherwise—absent a license from the Treasury Department's Office of Foreign Assets Control ("OFAC").  *See* Treasury Dep't Press Release.  In addition, under Executive Order 13808, for "any entity in which [the Government of Venezuela] owns, directly or indirectly, a 50 percent or greater interest, U.S. persons are prohibited from engaging in any activity or transaction with such blocked persons unless exempt or otherwise authorized by OFAC."  *See* U.S. Dep't of Treasury Frequently Asked Questions Regarding Venezuela Sanctions ("Treasury FAQs") at FAQ 508; 82 F.R. 41155 (2017).[5]  For these purposes, the definition of "the Government of Venezuela" includes PDVSA.  *See* 83 F.R. 24001 (2018) ("E.O. 13835").[6]  PDV USA is a Delaware corporation wholly owned by PDV Holding, Inc., which is wholly owned by PDVSA, *see* Am. Compl. ¶ 14, so PDVSA indirectly owns a 100 percent interest in PDV USA.  PDV Holding, Inc. also wholly owns Citgo Holding, Inc., which wholly

---

[3] https://home.treasury.gov/news/press-releases/sm594, last accessed on December 17, 2020.

[4] https://www.treasury.gov/resource-center/sanctions/Programs/Documents/venezuela_eo_13850.pdf, last accessed on December 17, 2020.

[5] https://home.treasury.gov/policy-issues/financial-sanctions/faqs/topic/1581, last accessed on December 17, 2020.

[6] https://www.treasury.gov/resource-center/sanctions/Programs/Documents/venezuela_eo_13835.pdf, last accessed on December 17, 2020.

owns CITGO Petroleum Corp. ("CITGO"). *See* PDV Holding.[7]

PDV USA lacks standing under Article III. First, because PDV USA assigned away its rights under the contract over two years ago and has acted in accordance with that assignment, it cannot now claim an injury in fact. *See House of Eur. Funding, I, Ltd. v. Wells Fargo Bank, N.A.*, No. 14-cv-519 (RJS), 2014 WL 1383703, at *16 (S.D.N.Y. Mar. 31, 2014). Moreover, the constitutional requirement of standing at the *inception* of a lawsuit bars Plaintiff from curing that fatal defect by re-assigning its rights back to itself now. *See* Am. Compl., Ex. 3; *N.Y. Bankers Ass'n, Inc. v. City of New York*, No. 13-cv-7212 (KPF), 2014 WL 4435427, at *8 (S.D.N.Y. Sept. 9, 2014).

Second, Plaintiff lacks standing because the alleged harm is not redressable by means of this lawsuit. To effect the remedy Plaintiff seeks, monetary damages, this Court would have to order Interamerican, which is incorporated under the laws of the State of Florida, *see* Am. Compl. ¶ 15, to violate U.S. law by directing money to an entity that is wholly owned by an SDN. Accordingly, Plaintiff does not and cannot allege the minimum constitutional requirements for Article III standing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998).

Finally, determination of Plaintiff's case presents a nonjusticiable political question, because it would require the Court to decide a question for which there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department." *Nixon v. U.S.*, 506 U.S. 224, 228 (1993). If the Court were to grant the relief Plaintiff seeks, it would be forced to second-guess the determination already made by the Executive in the form of the sanctions to prohibit money judgments for the direct or indirect (through PDV USA) benefit of PDVSA. *See Vieth v. Jubelirer*, 541 U.S. 267, 277-78 (2004).

---

[7] https://www.pdvholding.com, last accessed on December 17, 2020.

"[E]ither the absence of standing or the presence of a political question suffices to prevent the power of the federal judiciary from being invoked by the complaining party." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974). Accordingly, this case must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## ARGUMENT

### I. Plaintiff Cannot Allege the Article III Requirement of Standing

Article III limits the jurisdiction of federal judges to "cases' and 'controversies.'" *Hirsch v. Qingdao Orien Equip. Co., Ltd.*, No. 12-cv-952 (RRM), 2015 WL 1014352, at *6 (E.D.N.Y. Mar. 6, 2015) (quoting *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012)). To satisfy Article III, a plaintiff must establish three things: "(1) an 'injury in fact—an invasion of a legally protected interest which is . . . concrete and particularized and actual or imminent, not conjectural or hypothetical,' (2) 'a causal connection between the injury and the conduct complained of,' and (3) redressability of the injury 'by a favorable decision.'" *Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, No. 17-cv-7476 (MKB), 2020 WL 5519188, at *6 (E.D.N.Y. Aug. 13, 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). Here, it cannot satisfy the injury-in-fact or redressability requirements.

"[T]he minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim." *Hirsch*, 2015 WL 1014352, at *6. "Absent such legal title or proprietary interest, a litigant lacks a legally-protected interest, and therefore has no standing." *Id.* "The injury-in-fact requirement is meant to ensure that the plaintiff has a personal stake in the outcome of the controversy, and is the proper party to bring [the] suit." *Doe No. 1 v. Putnam Cty.*,

344 F. Supp. 3d 518, 528-29 (S.D.N.Y. 2018) (quotations and citations omitted). This ensures "that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *N.Y. Bankers Ass'n, Inc.*, 2014 WL 4435427, at *8 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 192 (2000)).

"The requirement that an injury be redressable aims to ensure 'that the harm alleged be redressable by a favorable decision.'" *Oneida Indian Nation v. U. S. Dep't of Interior*, 336 F. Supp. 3d 37, 45 (N.D.N.Y. 2018) (quoting *E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 450 (2d Cir. 2014)). "To satisfy the redressability requirement of Article III standing, the plaintiff must show that 'it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 96 (2d Cir. 2017) (quoting *Friends of the Earth, Inc.*, 528 U.S. at 180-81).

"The issue of standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" *N.Y. Bankers Ass'n, Inc.*, 2014 WL 4435427, at *8 (quoting *Kiryas Joel All. v. Vill. of Kiryas Joel*, 495 F. App'x 183, 188 (2d Cir. 2012)).

### A. Plaintiff Assigned Away Its Enforcement Rights

This Court does not have subject-matter jurisdiction because Plaintiff is not the proper party to this action. Plaintiff and PDVSA executed an assignment and assumption agreement (the "Assignment") effective May 10, 2017. *See* Am. Compl., Ex. 2 (Dkt. No. 25-2). Under the Assignment, PDV USA "assign[ed], s[old], transfer[ed] and deliver[ed] to [PDVSA] all of the rights, obligations and liabilities under the Agreement." *See id.* "A party that has assigned away its rights under a contract lacks standing to sue for breach of that contract." *House of Eur. Funding, I, Ltd*, 2014 WL 1383703, at *16; *see Triaxx Prime CDO 2006-1, Ltd. v. Bank of N.Y. Mellon*, No. 16-cv-1597 (NRB), 2017 WL 1103033, at *3-4 (S.D.N.Y. Mar. 21, 2017); *Nagan Const., Inc. v.*

*Monsignor McLancy Memoriam High Sch.*, 137 A.D.3d 986, 987 (2d Dep't 2016). When PDV USA assigned its rights to PDVSA, PDVSA became the only party with any interest in the Agreement or any right to bring the lawsuit. *See generally*, Assignment.

Plaintiff attempts to backpedal and contends in the Amended Complaint that it did not assign its rights to PDVSA, alleging several legal arguments in support of that claim. *See* Am. Compl. ¶¶ 51-54. These are legal conclusions "couched as [ ] factual allegations," and "on a motion to dismiss, courts are not bound to accept [them] as true." *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) (citation and quotation omitted). Regardless, Plaintiff's argument that the Assignment is ineffective—premised on the fact that Interamerican did not sign the Assignment—is wrong. The Assignment of the right to enforce the Agreement through this lawsuit is valid absent Interamerican's signature. *See LCE Lux HoldCo S.a.r.l. v. Entretenimiento GM de Mexico S.A. de C.V.*, 287 F.R.D. 230, 235 (S.D.N.Y. 2012)

Finally, Plaintiff's post-hoc attempt to "cure" the lack of standing due to its May 2017 assignment by *re*-assigning all rights back to PDV USA in the Amended Complaint fails as a matter of law. *See Hirsch*, 2015 WL 1014352, at *6.

### 1. The Contract Is Assignable and Consent Was Not Required

Contracts in New York are freely assignable "[i]n the absence of clear language *expressly* prohibiting assignment." *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 895 F. Supp. 660, 667-68 (S.D.N.Y. 1995) (citations omitted) (emphasis added); *see In re Refco Inc. Secs. Litig.*, 826 F. Supp. 2d 478, 494 (S.D.N.Y. 2011) ("Under New York law, contracts are freely assignable absent language which expressly prohibits assignment"). Moreover, even if a contract prohibits an assignment without consent, an assignment under that contract without consent is void "'only if the contract contains clear, definite and appropriate language declaring the invalidity of such

assignments.'" *LCE Lux HoldCo S.a.r.l*, 287 F.R.D. at 235.  Absent such "talismanic" language, the violation of an anti-assignment provision would "give[] rise only to a claim for damages against the assignor for violation" of that provision.  *Id.*  Where, as here, the Agreement contains no such language, *see generally* Agreement, an assignment of rights without consent remains valid.

### 2. Interamerican's Consent Was Not an Essential Condition of the Assignment

Plaintiff also claims that "Interamerican's written consent was an essential condition" of the Assignment.  Am. Compl. ¶ 52.  As a legal conclusion, the Court need not accept this allegation as true.  *See Sharkey*, 541 F.3d at 83.  In addition, the actions of PDV USA and PDVSA demonstrate that they did not consider Interamerican's consent an essential condition.  According to the Amended Complaint, "PDV USA and PDVSA jointly sought [Interamerican]'s consent to assign the Agreement from PDV USA to PDVSA" on October 5, 2017.  *See* Am. Compl. ¶ 51. This statement apparently refers to an email that Arnaldo Arcay, a Legal Advisor at CITGO,[8] sent to Interamerican's President, David Rivera on behalf of PDV USA and PDVSA.  *See* Rivera Decl., Ex. B.  In the email, Arcay attaches the Assignment, already executed by both PDV USA and PDVSA, and informs Rivera that "the effective date of the assignment is May 10, 2017, which corresponds to the date on which the Parties agreed to the assignment in question."[9]  *See id.*

On December 28, 2018, Alejandro Escarrá, also of CITGO, reiterated the effectiveness of

---

[8] Interamerican's President, David Rivera, initially discussed the possibility of a consulting agreement with representatives of CITGO, and CITGO's representatives were responsible for drafting the Agreement with PDV USA as the contracting party.  *See* Rivera Decl. ¶ 7.

[9] On May 31, 2017, Arcay sent an email to Rivera attaching the unsigned assignment agreement between PDV USA and PDVSA and requesting Interamerican's signature on it "[f]ollowing instructions from our Management."  *See* Rivera Decl., Ex. A.

the Assignment, telling Rivera: "As you know, the Consulting Agreement dated March 21, 2017 was assigned from PDV USA to PDVSA as of May 10, 2017. From that point forward PDV USA has had no rights, obligations, or liabilities under the Agreement." Rivera Decl., Ex. C. Escarrá directed Rivera to PDVSA to discuss any questions. *See id.* And on February 18, 2019, Judith Colbert, CITGO's General Counsel, made this statement again, telling Rivera that "PDV USA assigned [the Agreement] to PDVSA in May 2017." She directed further questions to Michael Gottlieb, at Willkie Farr, who was copied on the email and whose firm also represents Plaintiff here. *See* Rivera Decl., Ex. D. All told, PDV USA has disclaimed responsibility for the Agreement numerous times for over three years. It cannot now reverse course for the purpose of bringing this lawsuit.

### 3. The Assignment Is Not a Novation

Plaintiff contends that Interamerican's consent was necessary because the Assignment described itself as a "novation." *See* Am. Compl. ¶¶ 52-53. Whether a novation would have required Interamerican's consent is of no moment, because the Assignment is not a novation. "A novation requires the following elements: (1) a previously valid obligation; (2) an agreement of all parties to an extinguishment of the old contract and original obligations; (3) an agreement of the parties to a new contract; and (4) a valid new contract." *Koenig Iron Works, Inc. v. Sterling Factories, Inc.*, No. 89-cv-4257 (THK), 1999 WL 178785, at *7 (S.D.N.Y. Mar. 30, 1999). It "must never be presumed." *Sporre S.A. de C.V. v. Int'l Paper Co.*, No. 99-cv-2638 (HB), 1999 WL 1277243, at *4 (S.D.N.Y. Dec. 30, 1999).

The Assignment cannot meet the elements to constitute a novation. It does not constitute "a valid new contract" because it expressly provides for the original contract to remain in place. *See* Assignment § 1 ("All other terms and conditions of the Agreement, including any dully [sic]

approved amendment or change order, shall continue and remain unchanged."). Such "language does not suggest an extinguishment of the old contract, but, instead, refers to it." *Koenig Iron Works, Inc.*, 1999 WL 178785, at *8.

## B. Plaintiff Was Required to Have Standing at the Commencement of the Case

Plaintiff attempts to remedy its assignment of its rights and resultant lack of standing by claiming that, as of October 30, 2020, it has rescinded the assignment it made. *See* Am. Compl. ¶ 56; Am. Compl., Ex. 3.[10] This lawsuit, however, was initiated on May 13, 2020, *see* Dkt. No. 1, and "standing 'must exist at the commencement of litigation.'" *N.Y. Bankers Ass'n, Inc.*, 2014 WL 4435427, at *8 (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008)); *see Hirsch*, 2015 WL 1014352, at *7 ("standing must exist at the *inception* of a lawsuit" (emphasis in original)). Plaintiff "cannot manufacture standing retroactively if none existed when [it] commenced this action." *Id.* at *9; *see In re Adelphia Comm'ns Corp. Secs. & Derivative Litig.*, No. 03-md-1529 (LMM), 2011 WL 6434009, at *5 (S.D.N.Y. Dec. 21, 2011) ("The relevant date for measuring whether a plaintiff has standing is the date on which the suit commenced"). This Court cannot "rely on events that post-date the filing of the [Amended] Complaint to determine whether standing existed *ab initio*," because otherwise, "plaintiff[s] [could] file [ ] placeholder action[s], and hope that the intervening events were sufficient to confer standing." *N.Y. Bankers Ass'n, Inc.*, 2014 WL 4435427 at *10. Because the purported rescission was executed after the filing of this lawsuit, it cannot cure the fundamental defect that PDV USA did not have standing to sue Interamerican when it did so.

---

[10] The authority of Luis A. Pacheco, PDVSA's signatory on the purported rescission, to execute such a document on behalf of PDVSA also is questionable. *See Jiménez v. Palacios*, 2019 WL 3526479 (Del. Ch. Aug. 2, 2019).

### C. Plaintiff Cannot Use Rule 17 to Cure the Standing Defect

Federal Rule of Civil Procedure 17(a)(3) provides that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). However, courts in this district have held that Rule 17 cannot be used to cure a standing deficiency if there was no Article III standing at the inception of the case, reasoning that "'Rule 17 does not affect jurisdiction and relates only to the determination of proper parties and the capacity to sue.'" *Clarex Ltd. v. Natixis Secs. Am. LLC*, No. 12-cv-0722 (PAE), 2012 WL 4849146, at *7 (S.D.N.Y. Oct. 12, 2012) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193-94 (2d Cir. 2003)); *see Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, No. 18-cv-12361 (JMF), 2020 WL 2555281, at *3 (S.D.N.Y. May 20, 2020) ("joining or substituting the [real party in interest] at this point cannot cure [Plaintiff]'s lack of standing at the case's inception"). Although the Second Circuit has yet to articulate a bright line rule, it "has observed in dictum [that], 'in the absence of a plaintiff with standing there is no lawsuit for the real party in interest to ratify, join, or be substituted into under Rule 17(a)(3) or otherwise. Whether the real party in interest made a mistake by not suing originally does not even enter into consideration.'" *Fund Liquidation Holdings LLC v. Citibank, N.A.*, 399 F. Supp. 3d 94, 104 (S.D.N.Y. 2019) (quoting *Klein ex rel. Qlik Techs., Inc. v. Qlik Techs, Inc.*, 906 F.3d 215, 227 n.7 (2d Cir. 2018) (quotations and alterations omitted)). Rule 17, therefore, does not offer Plaintiff a solution to its standing problem.

### D. Plaintiff's Claimed Injury Is Not Redressable by this Court

Even if Plaintiff were the proper party to this action, a judgment for PDV USA would not remedy Plaintiff's alleged harm because the sanctions against Venezuela also apply to all entities

owned, directly or indirectly, by PDVSA, which includes PDV USA. *See* Am. Compl. ¶ 14 ("PDV USA is a wholly-owned subsidiary of PDV Holding, Inc., which in turn is a wholly-owned subsidiary of PDVSA."). In other words, PDVSA is classified by the Treasury Department as a Specially Designated National, *see* Treasury Dep't Press Release; E.O. 13850, and is considered equivalent to the "Government of Venezuela" for purposes of the sanctions. *See* E.O. 13835. For "any entity in which [the Government of Venezuela] owns, directly or indirectly, a 50 percent or greater interest, U.S. persons are prohibited from engaging in any activity or transaction with such blocked persons unless exempt or otherwise authorized by OFAC." *See* Treasury FAQs at FAQ 508. Accordingly, U.S. persons, like Interamerican, are prohibited from engaging in any activity or transaction with PDV USA, in which PDVSA owns a 100 percent interest. *See also* 84 F.R. 38843 (2019) ("E.O. 13884") ("all property and interests in property of the Government of Venezuela that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in").[11]

"Property" and "property interest" include "judgments." 31 C.F.R. § 591.309. "[T]he enforcement of any . . . judgment or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201, as referenced in § 591.506(c), is prohibited unless authorized pursuant to a specific license issued by OFAC pursuant to this part." 31 C.F.R. § 591.407. Indeed, 31 C.F.R. § 591.202(e) explains that "[u]nless licensed [by OFAC] pursuant to this part, any attachment, *judgment*, decree, lien, execution, garnishment, *or other judicial process* is null and void with

---

[11] https://www.treasury.gov/resource-center/sanctions/Programs/Documents/13884.pdf, last accessed on December 17, 2020.

respect to any property and interests in property blocked pursuant to § 591.201" (emphasis added).

For a harm to be redressable, a court must be able to order relief that would remediate the harm. *See Coal. of Watershed Towns v. U.S. E.P.A.*, 552 F.3d 216, 218 (2d Cir. 2008). But it is axiomatic that a court cannot order a party to violate the law. *See In re Clinton Nurseries, Inc.*, 608 B.R. 96, 119-20 (Bankr. D. Conn. 2019) (explaining that for a court to order a party to violate the law would directly contradict the oath that all justices and judges of the United States take to uphold the Constitution and laws of the United States). Plaintiff's proposed remedy would require this Court to do just that, because Plaintiff seeks payment from Interamerican, either as compensatory damages or as disgorgement.[12] *See* Am. Compl. ¶¶ 68, 78. The OFAC sanctions specifically preclude this result. Interamerican, as a U.S. corporation, is a U.S. "person" to whom the sanctions apply. *See* 31 C.F.R. § 591.308 ("The term *person* means an individual or entity") (emphasis in original); 31 C.F.R. § 591.303 ("The term *entity* means a partnership, association, trust, joint venture, corporation, group, subgroup, or other organization") (emphasis in original). As a result, it cannot provide money to Plaintiff. Because there is no remedy available to Plaintiff from this Court, Plaintiff fails to meet the requirements of Article III, and its case must be dismissed.[13]

---

[12] Plaintiff also seeks a declaratory judgment. *See* Am. Compl. ¶¶ 79-84. However, "[a]n action for declaratory relief . . . may ordinarily be brought only if subject matter jurisdiction would exist in a coercive action between the parties." *Progressive Apparel Grp., Inc. v. Anheuser-Busch, Inc.*, No. 95-cv-2794 (DLC), 1996 WL 50227, at *2 (S.D.N.Y. Feb. 8, 1996).

[13] CITGO's General Counsel, Judith Colbert, raised this issue in an email to Rivera on February 18, 2019, writing that "it is not clear that any payment could be made to or accepted by Interamerican Consulting with respect to the Consulting Agreement without violating federal law" and citing E.O. 13850. "As a result [of E.O. 13850]," she said, "U.S. persons may not provide funds, goods, or services to PDVSA, as a blocked entity, absent an appropriate license."

## II.  This Case Presents a Nonjusticiable Political Question

"Th[e political question] doctrine precludes courts from deciding controversies where 'there is a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it.'" *Ahmed v. Cissna*, 327 F. Supp. 3d 650, 662-63 (S.D.N.Y. 2018) (quoting *Nixon*, 506 U.S. at 228). Courts consider six bases on which an issue may be a political question: (i) "a textually demonstrable constitutional commitment of the issue to a coordinate political department;" (ii) "a lack of judicially discoverable and manageable standards for resolving it;" (iii) "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;" (iv) "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of the government;" (v) "an unusual need for unquestioning adherence to a political decision already made; or" (vi) "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Vieth*, 541 U.S. at 277-78 (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)). Each *Baker* factor is independent and if even one is met, dismissal is warranted. *See Vieth*, 541 U.S. at 277-78.

This case squarely implicates each of those considerations.

First, "the conduct of the foreign relations of our Government is committed by the Constitution to the Executive and Legislative—'the political'—Departments of the Government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision." *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918). "Because the nonjusticiability of political questions is primarily a function of the constitutional separation of powers[,] the dominant consideration in any political question inquiry is whether there is a textually demonstrable constitutional commitment of the issue to a coordinate political

13

department." *767 Third Ave. Assocs. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia*, 218 F.3d 152, 160 (2d Cir. 2000) (quotation and alteration omitted). As memorialized in Executive Orders and in the Code of Federal Regulations, the Executive Branch exercised its constitutional power to conduct foreign affairs when it sanctioned PDVSA and its indirect subsidiaries, like Plaintiff, and prohibited them from benefitting from any judgment or transfer of money from the United States. *See* Section I(D), *supra*.

Furthermore, no judicially discoverable or manageable standards are available to fashion a remedy in favor of PDVSA or its affiliates without "re-writing" an exception to the sanctions. *See Ahmed*, 327 F. Supp. 3d at 663.[14] In asking for adjudication of a contract in favor of an entity whose beneficiary is an SDN, *see* Am. Compl. ¶¶ 1-3, Plaintiff asks this Court to reconsider or find an exception to the foreign policy determination made by the Executive Branch when it sanctioned PDVSA, thereby meeting the third prong of the analysis.

The fourth, fifth, and sixth prongs of the *Baker* analysis are easily met here. Adjudication of Plaintiff's claims in favor of a sanctioned entity's contract—a contract intended to benefit the "reputation" of an SDN—is impossible "without expressing lack of the respect due" the Executive Branch which asserted its foreign policy interests with respect to PDVSA via express Executive Orders and regulations targeting the Venezuelan oil industry. *See Whiteman v. Dorotheum GmbH & Co. KG*, 431 F.3d 57, 72-73 (2d Cir. 2005). Moreover, with respect to the Venezuelan sanctioned entities, they have been singled out by Executive Orders that take into consideration the foreign policy interests of the United States; there exists "an unusual need for unquestioning

---

[14] Plaintiff's request for declaratory relief, *see* Am. Compl. ¶¶ 79-84, poses the same problem: 28 U.S.C. § 2201 defines declaratory relief as a "judgment," and, accordingly, it would also be subject to the sanctions. *See* 31 C.F.R. § 591.309.

adherence to a political decision already made." *Baker*, 369 U.S. at 217. Finally, adjudication of a contract purportedly intending to benefit the reputation of the Venezuelan oil company that has been pronounced an SDN by the Executive Branch, *see* Am. Compl. ¶ 3, could result in a contrary pronouncement by the judiciary, resulting in embarrassment. *See Baker*, 369 U.S. at 217.

As the Supreme Court explained in *Baker*, "not only does resolution of [foreign policy] issues frequently turn on standards that defy judicial application, or involve the exercise of a discretion demonstrably committed to the executive or legislature; but many such questions uniquely demand single-voiced statement of the Government's views." 369 U.S. at 211. Such is the case here.

## CONCLUSION

This Court does not have subject-matter jurisdiction over this case because there is no standing under Article III, and this case presents a nonjusticiable political question. Accordingly, it must be dismissed pursuant to Rule 12(b)(1).

Dated: December 18, 2020
      New York, New York

Respectfully submitted,

Kathryn Lee Boyd
Shira Lauren Feldman
Alan Alvela
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
(646) 502-9515
(646) 480-1453
(646) 480-1406
lboyd@hechtpartners.com
sfeldman@hechtpartners.com
aalvela@hechtpartners.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Section II(D) of the Individual Practices of the Honorable John G. Koeltl, I, Kathryn Lee Boyd, certify on this 18th day of December, 2020, that the foregoing Memorandum of Law is 4,707 words and complies with all formatting requirements as provided in Judge Koeltl's Individual Practices.

Kathryn Lee Boyd
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
(646) 502-9515
lboyd@hechtpartners.com