UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PDV USA, INC.,

                          Plaintiff,                    20-cv-3699 (JGK)

          - against -                                   MEMORANDUM OPINION
                                                        AND ORDER
INTERAMERICAN CONSULTING INC.,

                          Defendant.

JOHN G. KOELTL, District Judge:

     The plaintiff, PDV USA, Inc. ("PDV USA"), brought this

action against Interamerican Consulting Inc. ("Interamerican"),

asserting claims arising from a consulting agreement between the

parties for breach of contract, indemnity, unjust enrichment,

and declaratory relief.

     Interamerican moves to dismiss the complaint for lack of

subject matter jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(1) and for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6) and moves to strike

parts of the amended complaint pursuant to Federal Rule of Civil

Procedure 12(f). For the reasons stated below, all of the

motions are **denied.**

                                I

     The following facts are drawn from the amended complaint

("AC") and are accepted as true for the purposes of this motion.

PDV USA is a subsidiary of Petróleos de Venezuela, S.A.
("PDVSA"). AC ¶ 1. PDVSA is a Venezuelan state-owned oil and
natural gas company. AC ¶ 2. PDV USA was instructed by PDVSA to
enter into an agreement with Interamerican for the purpose of
improving PDVSA's "long-term reputation and standing" in the
United States (the "Consulting Agreement"). Id. According to the
Consulting Agreement signed on March 21, 2017 between PDV USA
and Interamerican, Interamerican agreed to provide "strategic
consulting services" for PDVSA in exchange for $50 million. AC
¶ 1. The Consulting Agreement set out the scope of services and
deliverables. AC, Ex. 1, at 6. Over a three-month period,
Interamerican agreed to develop and implement a strategic plan
to improve PDVSA's reputation, and build "relationships" with
policy makers, opinion leaders, public officials, and
stakeholders. AC ¶¶ 4, 20-25. Interamerican also agreed to
provide periodic "deliverables," such as updates, supporting
documentation for invoices, bi-weekly reports, and a final
report. AC ¶ 26. The Consulting Agreement also included a
payment schedule under which PDV USA was required to pay
Interamerican $5 million when the Consulting Agreement was
signed, four $5 million bi-weekly payments starting on April 4,
2017, and a final payment of $25 million before June 15, 2017.
AC, Ex. 1, at 7. PDV USA agreed to pay for the "complete,
satisfactory and timely performance of" the services set out in

the Consulting Agreement. Id. Interamerican also agreed to
"indemnify . . . PDVA USA . . . from and against any and all
breaches of this agreement by [Interamerican], direct or
indirect costs, damages, losses . . . including . . . all court
costs and attorneys' fees." Id. at 2.

PDV USA paid Interamerican the first three payments for a
total of $15 million and refused to pay the remaining $35
million because Interamerican did not perform the services as
required by the Consulting Agreement. AC ¶¶ 42-48. For example,
PDV USA alleges that Interamerican did not "identify
opportunities to build long-term relationships among key third-
parties, opinion leaders and public officials." AC ¶ 42(d). As
evidence of non-performance, PDV USA points to statements to the
press made by David Rivera, the President of Interamerican, that
the funds Interamerican received from PDV USA "went to the
opposition for anti-Maduro protests in the summer of 2017." AC
¶¶ 59, 61. PDV USA also did not receive all the reports it was
entitled to under the Agreement. AC ¶¶ 34-35. Interamerican also
failed to provide supporting documentation and details of
services rendered with the invoices submitted for payment, as
required by the Consulting Agreement. AC ¶ 40. Interamerican
requested the remaining payments from PDV USA. AC ¶¶ 49-50.

On October 5, 2017, PDV USA and PDVSA executed an
"Assignment and Assumption Consent Agreement" (the "Assignment

Agreement"). AC, Ex. 2, at 1. Under the Assignment Agreement, PDV USA "assign[ed], s[old], transfer[ed] and deliver[ed] to [PDVSA] all of the rights, obligations and liabilities under the Agreement." It also provided that "[t]his Assignment and Assumption shall be construed as a novation or a release of Assignor under the Agreement." Id. The agreement states: "Interamerican . . . hereby consents to this Assignment and Assumption Agreement," and provides that "WHEREAS, Consultant has agreed to consent to the terms and conditions of this Assignment and Assumption Agreement." Id. The Assignment Agreement includes an unexecuted signature block for Interamerican. Id. at 2.

On October 30, 2020, PDV USA and PDVSA, executed a rescission of the Assignment Agreement (the "Rescission"). AC, Ex. 3, at 1. The Rescission states that "for the avoidance of doubt" the parties agreed to "rescind[] the Assignment and Assumption Consent Agreement [and] [t]o the extent any rights, obligations or liabilities under the Consulting Agreement were previously transferred from PDV USA to PDVSA . . . PDVSA hereby transfers and assigns to PDV USA any such rights, obligations and liabilities . . . and PDV USA hereby accepts this transfer and assignment." Id.

## II

In deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a district court may consider evidence outside the pleadings. Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).[1] "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When evaluating whether a plaintiff has constitutional standing to sue, the courts "borrow from the familiar Rule 12(b)(6) standard, construing the complaint in plaintiff's favor and accepting as true all material factual allegations contained therein." Donoghue v. Bulldog Inv'rs Gen. P'ship, 696 F.3d 170, 173 (2d Cir. 2012).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

### III

Interamerican argues that the Court lacks subject matter jurisdiction because (a) PDV USA assigned the Consulting Agreement to PDVSA and therefore does not have Article III standing to sue, (b) PDV USA lacks Article III standing because

its injury is not redressable due to sanctions against Venezuela, and (c) the case presents a nonjusticiable political question.

### A

Interamerican argues that PDV USA does not have standing to sue under the Consulting Agreement because it assigned the Consulting Agreement to PDVSA. PDV USA argues that the Assignment Agreement was a novation and therefore it required Interamerican's consent, which Interamerican never provided and therefore, the novation was never finalized.[2]

"An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor." Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, Nat'l Asso., 731 F.2d 112, 125 (2d Cir. 1984); see also Acme Blacktop Paving Corp. v. Brown & Matthews, Inc., 294 N.Y.S.2d 826, 827 (App. Div. 1968). Under New York law "parties to an assignment are . . . free to agree by contract to virtually any form of assignment," ACLI Int'l Commodity Servs. v. Banque Populaire Suisse, 609 F. Supp. 434, 441-42 (S.D.N.Y. 1984); see also N.Y. Gen. Oblig. Law §§ 13-105 & -107, and "an assignment need not utilize any particular phraseology or form." Miller v. Wells Fargo Bank Int'l Corp.,

[2] The Consulting Agreement explicitly provides that it is to be construed in accordance with New York law, and the Assignment Agreement also provides that it is governed by New York law. The parties do not dispute that New York law governs the state law issues in this case.

540 F.2d 548, 557 (2d Cir. 1976). And ordinarily, the consent of
the counterparty to a contract is not necessary to make an
assignment of rights under the contract effective. See
Restatement (Second) of Contracts § 323, cmt. (a). But under New
York law, an assignment only transfers rights to the assignee,
and the assignor remains liable for any obligation not fulfilled
by the assignee. See Contemporary Mission, Inc. v. Famous Music
Corporation, 557 F.2d 918, 924 (2d Cir. 1977); Castiglia v.
Franchise Realty Interstate Corp., 486 N.Y.S.2d 519 (App. Div.
1985). In order for a party to be fully discharged of its
obligations under a contract, a novation of the contract must
occur, and that requires "an agreement of all parties to . . .
the extinguishment of the old contract; . . . a new contract;
and . . . consideration for the new contract." Trans-Orient
Marine Corp. v. Star Trading & Marine, Inc., 736 F. Supp. 1281,
1283 (S.D.N.Y. 1990); see also Town & Country Linoleum & Carpet
Co. v. Welch, 392 N.Y.S. 2d 517, 518 (App. Div. 1977).

In this case, the fact that Interamerican did not execute
the Assignment Agreement did not in itself preclude PDV USA
from assigning its rights under the Consulting Agreement to
PDVSA. Nonetheless, when the Assignment Agreement is "construed
so as to give full meaning and effect to all of its provisions,"
Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.,
773 F.3d 110, 114 (2d Cir. 2014), as the court must in

construing a contract, it is plain that the Assignment Agreement was not a mere attempt to assign PDV USA's rights under the Consulting Agreement, but rather a failed attempt at a novation of the Consulting Agreement. In its preamble, the Assignment Agreement stated that "WHEREAS, Consultant has agreed to consent to the term and conditions of this Assignment and Assumption Agreement, and therefore, fully release Assignor for all past, present, and future obligations," that "Assignor hereby assigns, sells, transfers and delivers to Assignee all of the rights, obligations and liabilities under that Agreement," and that the "Assignment and Assumption shall be construed as a novation or a release of Assignor under the [Consulting] Agreement." AC, Ex. 2, at 2. Not only does the Assignment Agreement expressly state that it should be construed as a novation but it was also intended to release PDV USA of all obligations—something that a mere assignment of rights could not have accomplished under New York law and requires a novation of the contract. Trans-Orient, 736 F. Supp. at 1283. And because a novation would have required Interamerican's consent, the fact that Interamerican did not execute the Assignment Agreement,[3] means that it never went into effect. Therefore, rescinding the Assignment Agreement was

---

[3] Nor can it be said that Interamerican gave implied consent through its conduct. In fact, in its correspondence with PDV USA, Interamerican stated that it does not and never did consent to the assignment of the contract, and that its consent was required. AC ¶ 55.

unnecessary because the Assignment Agreement was never effective.

Accordingly, Interamerican's argument that the assignment of the contract by PDV USA to PDV SA deprives PDV USA of standing to sue is without merit.

B

Interamerican argues that the Court does not have subject matter jurisdiction because the sanctions imposed by the United States government against Venezuela prevent the Court from redressing the alleged injury, thus depriving PDV USA of Article III standing.

The International Emergency Economic Powers Act ("IEEPA") empowers the President to "regulate, . . . nullify, void, prevent or prohibit, any acquisition, . . . use, transfer, . . . or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country . . . has any interest." 50 U.S.C. § 1702(a)(1)(B). In 2015, President Obama declared a national emergency under the IEEPA as the political situation in Venezuela escalated. See Exec. Order No. 13,692, 80 Fed. Reg. 12,747 (Mar. 8, 2015). On August 5, 2019, President Trump issued Executive Order No. 13,884, which provides that "all property and interests in property of the Government of Venezuela that are in the United States . . . are blocked and may not be

transferred, paid, exported, withdrawn, or otherwise dealt in."
Exec. Order No. 13,884, 84 Fed. Reg. 38,843, 38,843 (2019) (Aug.
5, 2019).

Treasury Department's Office of Foreign Assets Control
("OFAC") has issued regulations applying the terms of those
orders to litigation against the Venezuelan government. The
regulations provide that "the entry into a settlement agreement
or the enforcement of any lien, judgment, arbitral award,
decree, or other order through execution, garnishment, or other
judicial process purporting to transfer or otherwise alter or
affect property or interests in property blocked . . . is
prohibited unless authorized pursuant to a specific license
issued by OFAC pursuant to this part." 31 C.F.R. § 591.407.

Interamerican relies on this guidance to argue that the
sanctions prohibit any judgment in this case. But in further
guidance, the agency has explained that "[a] specific license
from OFAC is not ordinarily required to initiate or continue
U.S. legal proceedings against a person designated or blocked
pursuant to OFAC's Venezuela sanctions program, or for a U.S.
court, or its personnel, to hear such a case." OFAC FAQ 808,
Frequently Asked Questions, U.S. Dep't of the Treasury (Dec. 9,
2019). Rather, the Treasury Department has determined that a
license is required only for "the entry into a settlement
agreement or the enforcement of any lien, judgment, or other

order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests" blocked by the President's orders. Id.

Courts interpreting these regulations have held that while a court "is prohibited from seizing, attaching, encumbering, or freezing such assets to enforce a judgment . . . a party is not prohibited from litigating to obtain a judgment . . . [because] a judicial determination of the parties' rights and obligations under a contract does not, in and of itself, cause any transfer of property." Contrarian Cap. Mgmt., L.L.C. v. Bolivarian Republic of Venezuela, No. 19-cv-11018, 2020 WL 5849013, at *3-4 (S.D.N.Y. Oct. 1, 2020); see also Koch Mins. Sarl v. Bolivarian Republic of Venezuela, No. 17-CV-2559, 2020 WL 7646764, at *16 (D.D.C. Dec. 23, 2020); Nat'l Oil Corp. v. Libyan Sun Oil Co., 733 F. Supp. 800, 809 (D. Del. 1990) (concluding that foreign blocking regulations bar only those judicial proceedings that effect a transfer of foreign property or property interests); Nat'l Airmotive Corp. v. Gov't & State of Iran, 499 F. Supp. 401, 405 (1980) (concluding the same regarding sanctions against Iran).

Interamerican's only argument in reply is that OFAC's guidance in FAQ 808 and the courts interpreting it only addressed the initiation of a suit by a non-blocked entity against blocked entities and assets, whereas this action was

brought by a subsidiary of a blocked entity and would result in money moving to a blocked entity. But Interamerican does not explain or cite any authority to show why this distinction makes any difference. The OFAC guidance and cases interpreting the Venezuelan sanctions and similar blocking regulations stand for the proposition that merely hearing a case related to Venezuelan subjects or property does not run afoul of sanctions because it does not result in "transfer or otherwise alter or affect property or interests in property blocked," 31 C.F.R. § 591.407. This reasoning holds regardless of whether the suit is brought by a blocked entity or a non-blocked entity.

Accordingly, the sanctions against Venezuela do not deprive PDV USA of standing and this Court of subject matter jurisdiction.

c

Interamerican also argues that, because of the sanctions imposed by the United States government, the case presents a political question that is not justiciable under Baker v. Carr, 369 U.S. 186, 217 (1962). However, this argument is purely derivative of the argument that Interamerican advanced with respect to the impact of the sanctions on PDV USA's standing. For the same reasons, it has no merit and the Court has subject matter jurisdiction over this action.

# IV

Interamerican moves to dismiss the complaint for failure to state a claim.

# A

Interamerican argues that the breach of contract claim must be dismissed because (i) the amended complaint fails to plead performance by the plaintiff, (ii) the allegations of breach are barred by waiver, (iii) the amended complaint fails to plead that PDV USA complied with conditions precedent, (iv) the amended complaint fails to plead lack of performance by the defendant, (v) the amended complaint fails to plead the breach Section 7 of the agreement, and (vi) the amended complaint fails to plead any damages. All of these arguments are without merit.

To state a claim for breach of contract under New York law, the plaintiff must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Orchard Hill Master Fund Ltd. v. SBA Commc'ns. Corp., 830 F.3d 152, 156 (2d Cir. 2016). "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." Id. "Under New York law, a contract is ambiguous if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and

who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A., 773 F.3d 110, 114 (2d Cir. 2014).

The plaintiff in this case alleges sufficient facts to state a claim of breach of contract. In sum, the amended complaint alleges that that there was a contract between the parties and includes a copy of the Consulting Agreement. The complaint further alleges that the plaintiff performed under the contract by making three payments totaling $15 million and ceased making the payments when it became apparent that the defendant was not performing in accordance with the contract, which the plaintiff alleges was something the contract permitted. The plaintiff further alleges with specificity how the services it received from the defendant did not comply with the requirements of the contract, thus constituting a breach and, as a result, that it suffered $15 million in damages. Accordingly, the plaintiff sufficiently stated a breach of contract claim.

The defendant's argument that the plaintiff failed to plead satisfaction of a condition precedent is without merit. A condition precedent, is "an act or event . . . which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." Sohm v. Scholastic Inc., 959

F.3d 39, 46 (2d Cir. 2020); see also Oppenheimer & Co. v.
Oppenheim, Appel, Dixon & Co., 660 N.E.2d 415, 418 (N.Y. 1995).
"Conditions precedent are not readily assumed [and] must be
expressed in unmistakable language." Sohm, 959 F.3d. at 46.
Nonetheless, "specific, talismanic words are not required [and]
linguistic conventions of condition—such as 'if,' 'on condition
that,' 'provided that,' 'in the event that,' and 'subject to'—
can make plain a condition precedent." Id. The defendant has
failed to show that there were any conditions precedent in the
contract that were not satisfied.

The defendant argues that certain provisions in the
Consulting Agreement were conditions precedent, namely, that the
plaintiff was required to specify what "services . . . the
CLIENT deem[ed] necessary and appropriate" and provide the
defendant the contents of a "strategic plan" that the defendant
was to execute. However, when viewed in context, it is at best
ambiguous whether these provisions were conditions precedent to
the defendant's performance under the contract. First, the
Consulting Agreement listed several provisions describing in
detail the services the defendant was required to perform and a
short execution schedule, thus making it less plausible that the
phrase "services . . . the CLIENT deems necessary and
appropriate" was a condition precedent that needed to occur
before any services were to be performed. Moreover, from the

provision "CONSULTANT will support CLIENT in the planning and execution of a strategic plan" a reasonable reader could conclude that the development of a "strategic plan" was within the defendant's scope of services in the contract, rather than a condition precedent. Accordingly, the breach of contract claim cannot be dismissed based on the plaintiff's alleged failure to satisfy a condition precedent.

The defendant also argues that the plaintiff waived the breach of contract claim when it did not object to the defendant's performance or cease its own performance. However, this argument is belied by the plaintiff's allegation that the plaintiff stopped making payment after the first three payments due to the defendant's lack of performance. Accordingly, the plaintiff cannot be said to have waived the breach of contract claim.

Because the plaintiff has sufficiently pleaded facts that address all elements of a breach of contract claim and because the defendant's related arguments are meritless, the motion to dismiss the breach of contract claim is denied.[4]

---

[4] The defendant alleges that the plaintiff has failed to plead adequately that the defendant breached Section 7 of the Consulting Agreement which prohibits bribes, kickbacks, and illegal political contributions. The Amended Complaint does in fact allege facts to plead such a breach. See AC ¶¶ 43, 57-59. But in any event, the AC also alleges breaches of contract for failure to provide the "deliverables" that were otherwise due while the plaintiff paid the initial payments in the amount of $15 million.

**B**

Interamerican argues that the indemnity claim should be dismissed because there is no third-party action to indemnify against and because it is duplicative of the breach of contract claims or a redundant fee-shifting provision.

These arguments are unpersuasive. The indemnity provision in the Consulting Agreement includes compensation by Interamerican to PDV USA for all costs resulting directly or indirectly from Interamerican's breach of the Consulting Agreement. An indemnification for suits between parties to a contract is permissible so long as the language of the indemnification provision clearly extends to disputes among the parties. See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 178-79 (2d Cir. 2005). Because the indemnification provision in this case expressly covers breaches of the contract itself by Interamerican, it was plainly not limited to third party actions.

Furthermore, the indemnity claim is not entirely duplicative of a breach of contract claim or a redundant fee-shifting provision. "Where a claimant is entitled to a particular category of damages on one claim but not the other, the claims are not duplicative." NetJets Aviation, Inc. v. LHC Communs., LLC, 537 F.3d 168, 175 (2d Cir. 2008). "Under New York law it is well settled that . . . attorneys' fees and the legal

expenses necessarily incurred in carrying on a lawsuit are not generally . . . recoverable as general or special damages." Amusement Indus. v. Stern, 786 F. Supp. 2d 741, 756 (S.D.N.Y. 2011); see also Coopers & Lybrand v. Levitt, 384 N.Y.S.2d 804, 806 (App. Div. 1976). In contrast, the indemnity provision in the Consulting Agreement includes compensation of "direct or indirect costs, damages, losses . . . including . . . all court costs and attorneys' fees." As a result, under the indemnity provision, the plaintiff could recover categories of damages that it could not recover under the breach of contract claim, including attorney's fees and costs. As a result, the indemnity claim is not duplicative of the breach of contract claim. See Myers Indus. v. Schoeller Arca Sys., Inc., 171 F. Supp. 3d 107, 123 (S.D.N.Y. 2016) ("Because the indemnity claim provides for recovery of indirect injuries and attorney's fees, which are not ordinarily included in . . . breach of contract claims . . . the Plaintiffs' claim for contractual indemnification is not duplicative of . . . their . . . breach of contract claims.").

Accordingly, the motion to dismiss the indemnity claim is denied.

C

Interamerican argues that the unjust enrichment claim should be dismissed because it is not pleaded with sufficient

specificity and because it is duplicative of the breach of contract claim.

"To state a claim for unjust enrichment in New York, a plaintiff must allege that (1) [the] defendant was enriched; (2) the enrichment was at [the] plaintiff's expense; and (3) the circumstances were such that equity and good conscience require [the] defendants to make restitution." Labajo v. Best Buy Stores, L.P., 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007). Unjust enrichment "is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon N.Y., Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012). "Unjust enrichment is a quasi-contractual claim that ordinarily can be maintained only in the absence of a valid, enforceable contract." Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 202 (S.D.N.Y. 2011). But "[w]here there is a bona fide dispute as to whether a relevant contract exists or covers the disputed issue, however, courts have permitted plaintiffs to pursue both unjust enrichment and breach of contract claims." Marshall v. Hyundai Motor Am., 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014).

In this case, Interamerican argues that PDV USA waived any claim of breach of contract and asserts that PDV USA has not complied with conditions precedent and that, as a result, PDV USA's breach of contract claim must fail. By doing so, Interamerican has put the enforceability of the contract in dispute. Accordingly, PDV USA can appropriately maintain its unjust enrichment claim in the alternative. See Bridgeway Corp. v. Citibank, N.A., 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001) ("Because there is a dispute as to [the] defendant's obligations under the contract, however, [the] plaintiff's unjust enrichment claim survives, although solely as an alternative to the breach of contract claim.").

As a result, the motion to dismiss the unjust enrichment claim is denied.

**D**

Interamerican argues that the declaratory judgment claim should be dismissed because it is insufficiently pleaded and because rescission is not appropriate.

The Declaratory Judgment Act provides that district courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In order to decide whether to entertain an action for declaratory judgment, courts are instructed to consider: "(1) whether the

judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005).

In this case, the plaintiff seeks a declaration that it does not owe the defendant any money because the defendant breached the agreement. This is distinct from the remedy sought in the breach of contract claim, namely, the recovery of the $15 million that the plaintiff already paid the defendant. Accordingly, the declaratory relief would serve a useful purpose and further clarify the legal issues between the parties. See RJ Cap., S.A. v. Lexington Cap. Funding III, Ltd., No. 10-cv-24, 2011 WL 3251554, at *15 (S.D.N.Y. July 28, 2011) (denying a motion to dismiss a claim for declaratory relief where a breach of contract claim would settle only one aspect of the controversy). Accordingly, the motion to dismiss the declaratory relief claim is denied.

**V**

The defendant moves to strike certain allegations in the amended complaint pursuant to the Federal Rule of Civil Procedure 12(f). The defendant argues that the allegations in the amended complaint that quote statements that Rivera made to

the press have no relevance to the breach of contract claim other than to suggest some vague wrongdoing.[5]

Rule 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). But "Rule 12(f) motion to strike are disfavored [and] . . . should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." Porsch v. LLR, Inc., 380 F. Supp. 3d 418, 429 (S.D.N.Y. 2019).

The allegations at issue here are neither so lacking in relevance to the controversy nor so prejudicial to warrant striking. Contrary to the defendant's assertions, the news reports are relevant to the plaintiff's claim, because they provide a basis to believe that the funds were used in a way that would be inconsistent with the explicit terms of the contract. Furthermore, there is nothing unfairly prejudicial about the allegations, because they are based on public

---

[5] The allegations at issue state: "In response to press inquiries, Mr. Rivera replied, 'ask the boys of Citgo 6,' a reference to Citgo Petroleum Corporation executives detained by the Maduro regime. 'They handled that entire operation, including all the money, in coordination with the Venezuelan opposition . . . That's all I know.' (PDVSA denounces former U.S. congressman for Payment of $US15M, CE Notificias Financieras English, May 13, 2020)." AC ¶ 58. "Mr. Rivera also told the Miami Herald: 'All those funds went to the opposition for anti-Maduro protests in the summer of 2017. I never saw a penny of it.' (Jay Weaver and Antonio Maria Delgado, Rivera didn't register as a foreign agent in $50 million contract with Venezuela oil firm, Miami Herald, May 14, 2020)." AC ¶ 59.

reporting that is easily accessible by anyone with internet access. Neither does the fact that the news reports constitute hearsay warrant striking, because admissibility of an allegation is not a concern at the motion to dismiss stage. See Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 378 (S.D.N.Y. 2006) ("[I]t is inappropriate at [the motion to dismiss] stage to consider whether or not the factual support underlying [the plaintiff]'s claim . . . constitutes hearsay.").

Accordingly, the motion to strike is denied.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the motion to dismiss for lack of subject matter jurisdiction is **denied**; the motion to dismiss for failure to state a claim is **denied**; and the motion to strike is **denied**.

The Clerk of the Court is directed to close docket numbers 29, 30, and 31.

**SO ORDERED.**

**Dated:**     **New York, New York**
          **June 22, 2021**

                                    _____
                                         **John G. Koeltl**
                                 **United States District Judge**