# EXHIBIT D

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                     :
PDV USA, INC.,
                                                     :
        Plaintiff,                                :      AMENDED COMPLAINT
                                                     :
v.                                                   :      Case No. 20-cv-3699
                                                     :
INTERAMERICAN CONSULTING INC.,                       :
                                                     :
Defendant.                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - x

## AMENDED COMPLAINT

Plaintiff PDV USA, Inc. ("PDV USA" or "Plaintiff"), by and through its undersigned counsel, Willkie Farr & Gallagher LLP, alleges as follows in its Amended Complaint against Defendant Interamerican Consulting Inc. ("Interamerican"):

## NATURE OF THE ACTION

1.     On March 21, 2017, PDV USA and Interamerican entered into a consulting agreement (the "Agreement") pursuant to which Interamerican would be paid $50 million in six installments over a three-month period to provide purported "strategic consulting services" for PDV USA's parent company, Petróleos de Venezuela, S.A. ("PDVSA").  A true and correct copy of the Agreement is annexed hereto as Exhibit 1.

2.     PDVSA is the state-owned oil and natural gas company of the Bolivarian Republic of Venezuela, and, at that time, was controlled by the regime of Nicolas Maduro.  PDV USA was instructed by the parent company (PDVSA) of its parent company (PDV Holding, Inc.) to enter into the Agreement for the purported purpose of improving PDVSA's "long-term reputation and standing" in the United States.

3.      In January of 2019, the United States Government recognized Juan Guaidó, the President of Venezuela's National Assembly, as the Interim President of Venezuela, and at the same time derecognized the Maduro regime and designated PDVSA as a "Specially Designated National" with whom no U.S. person may do business absent a license from the U.S. Department of Treasury.  The Guaidó Government, in turn, appointed an Ad Hoc Board of Directors of PDVSA to oversee the U.S. operations of PDVSA's U.S.-based subsidiaries, including PDV USA.  In August of 2019, the Delaware Court of Chancery ruled that under U.S. law, the Guaidó appointments to the PDVSA Ad Hoc Board were presumptively valid.

4.      Under the 2017 Agreement, Interamerican was supposed to develop and implement over a three-month period a strategic plan to improve PDVSA's reputation and standing among, and build relationships with, policy makers, opinion leaders, public officials, and targeted stakeholders.

5.      Among other things, in exchange for $50 million, the Agreement required Interamerican to provide at least seven bi-weekly reports detailing the work carried out during the relevant period and a final report that would include recommendations for monitoring the strategies implemented.  Instead, Defendant provided just two reports, totaling no more than five pages, much of which is duplicated.  These reports refer generically to a "strategic plan," "meetings," and "recommendations," but do not describe a single element of the alleged plan, identify meeting participants or meeting discussions, or specify what recommendations were made or to whom.

6.      Upon information and belief, Defendant performed no services under the Agreement, and certainly did not perform the level of services that might reasonably be expected for a fee of approximately $17 million per month.  This was confirmed by Defendant's President, former U.S. Congressman David Rivera, after this lawsuit was filed.  According to Mr. Rivera, in

statements he made to the press shortly after the filing of this lawsuit, Interamerican never intended to provide the strategic consulting services that were the subject of the Agreement, but instead the funds that were paid "went to the opposition for anti-Maduro protests in the summer of 2017." (Jay Weaver and Antonio Maria Delgado, *Rivera didn't register as a foreign agent in $50 million contract with Venezuela oil firm*, MIAMI HERALD, May 14, 2020). Mr. Rivera's claim appears to be that the Maduro regime, which controlled PDVSA at the time, agreed to funnel tens of millions of dollars to finance protests being organized by its political adversaries. This claim defies credulity, and PDV USA has been unable to locate any evidence, of any kind, supporting it.

7.      Mr. Rivera's claims in 2020 regarding the purpose of the Agreement are entirely inconsistent with Interamerican's two progress reports, which contain numerous representations concerning a consulting project for PDV USA to benefit PDVSA. Those 2020 claims also make clear that Interamerican falsely represented and warranted in Section 7 of the Agreement that "no portion of any payment to CONSULTANT by PDV USA pursuant to this Agreement shall be used as a bribe, kickback, rebate, illegal political contribution, or in violation of applicable foreign exchange control regulations, tax laws or regulations, or other laws or regulations of any jurisdiction."

8.      There is one conclusion that can readily be drawn from Mr. Rivera's admissions: Interamerican did not, and never intended to, provide the consulting services for which it contracted with PDV USA in the Agreement.

9.      PDV USA was injured by the Defendant's breach of the Agreement. PDV USA paid the first three invoices issued by Defendant, a total of $15 million, but did not receive the required services and has received no evidence that any services were ever performed on behalf of PDV USA or PDVSA.

10. Notwithstanding its failure to perform under the Agreement, Defendant insists that PDV USA owes it the remaining $35 million contemplated by the $50 million Agreement.

11. In addition, Interamerican explicitly committed in Section 10 of the Agreement to indemnify PDV USA from and against any breach of the Agreement perpetrated by Interamerican, including by paying any expenses, court costs, and attorneys' fees associated with enforcing PDV USA's rights under the Agreement.

12. Accordingly, PDV USA brings this action to recover the $15 million (plus interest) it has already paid Defendant, for a declaration that PDV USA does not owe Interamerican the remaining $35 million contemplated under the Agreement, and to recover any other compensatory damages in an amount to be addressed at trial, as well as all expenses, court costs, and attorneys' fees associated with enforcing its contractual rights.

13. In the alternative, to the extent that Mr. Rivera's statements in 2020 to the press are true, and the money paid to Interamerican was paid at the direction of PDVSA for a purpose other than the consulting services that are set forth in the Agreement, then no enforceable contract exists and Interamerican should be required to disgorge the $15 million it was paid under the doctrine of unjust enrichment and PDV USA should be entitled to a declaration that it does not owe Interamerican any further payments in relation to the Agreement.

## THE PARTIES

14. PDV USA is a company incorporated in Delaware with its principal place of business located at 65 East 55th Street, Floor 21, New York, New York 10022. PDV USA is a wholly-owned subsidiary of PDV Holding, Inc., which in turn is a wholly-owned subsidiary of PDVSA, which as noted above is the state-owned petroleum corporation of the Bolivarian Republic of Venezuela.

4

15. Interamerican is a company incorporated in the State of Florida by former U.S. Congressman David Rivera ("Rivera"). Upon information and belief, Interamerican's principal place of business is Rivera's home, located at 10925 N.W. 43rd Lane, Miami, Florida, 33178. Interamerican claims to be in the business of providing "strategic consulting services." According to publicly available information, Interamerican has two employees: (1) Rivera, who serves as President and registered agent; and (2) Diana Rivera McKenzie (Rivera's sister), who serves as Vice President.

## JURISDICTION AND VENUE

16. This court has diversity jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1332. The parties are citizens of different states and the amount in controversy exceeds $75,000.

17. Venue is proper in this Court because, pursuant to the Agreement, the parties agreed to "irrevocably submit to the exclusive jurisdiction of the State of New York" for the purpose of resolving disputes arising out of the Agreement.

18. In addition, the parties specified in the Agreement that it "shall be deemed to be made under, and shall be construed in accordance with, the laws of the State of New York (without reference to choice of law doctrine)." (Exhibit 1 at § 16).

## FACTUAL BACKGROUND

**The Terms of the Agreement**

19. On March 21, 2017, PDV USA (at the direction of PDVSA) and Interamerican entered into the Agreement, pursuant to which PDV USA agreed to pay Interamerican in exchange for certain "strategic consulting services."

20. The Agreement had a three-month term, beginning on the date of execution, March 21, 2017, and terminating on June 21, 2017. (Exhibit 1 at § 2).

21. The services to be provided by Interamerican were set forth in Exhibit A to the Agreement ("Exhibit A"), "which, with any addendums or schedules thereto, [were] integrated into and made a part of" the Agreement. (Exhibit 1 at § 4).

22. Exhibit A provides that, "[i]t shall be the CONSULTANT's duty to provide strategic consulting services to the CLIENT as the CLIENT deems necessary and appropriate." (Exhibit 1 at 6).

23. "CONSULTANT" is defined in the Agreement to mean Interamerican. "CLIENT" is not defined, but the parties understood that the services were intended for the benefit of PDVSA, not PDV USA. The defined term for PDV USA, Inc. in the Agreement is "PDV USA" and the rest of the Agreement, including Exhibit B, which sets out the payment terms, refers to "PDV USA" throughout.

24. Only Exhibit A, concerning the services to be provided by Interamerican, refers to the "CLIENT." The parties understood that PDVSA was the CLIENT. Indeed, Pio Gonzalez, a PDVSA employee, was identified in the Agreement as the "authorized representative" for PDV USA (Exhibit 1 § 14) and the two progress reports that were produced by Interamerican were sent to him.

25. Pursuant to Exhibit A, Interamerican agreed to: (1) "provide CLIENT with strategic consulting and assistance developing strategies to inform policy makers and opinion leaders regarding CLIENT initiatives and achievements;" (2) "develop and work with CLIENT to organize and implement a multi-faceted strategy to reinforce CLIENT's standing among important public officials and opinion leaders;" (3) "support CLIENT in the planning and execution of a strategic plan directed at targeted stakeholders to assist CLIENT with the development and implementation of a program to support efforts that will enhance the long-term reputation and

standing of CLIENT;" and (4) "identify opportunities to build long-term relationships among key third-parties, opinion leaders and public officials." (Exhibit 1 at 6).

26. Exhibit A enumerated specific "deliverables" that were to be provided by Interamerican. Specifically, Interamerican was required to provide: (1) "updates regarding the strategic consulting services;" (2) "supporting documentation" for all invoices submitted, as well as "adequate and complete details of the Services rendered;" (3) "bi-weekly report[s] detailing the activities that it has carried out during that period to achieve the stated goals and purposes of the Agreement;" and (4) "a final report integrating all work product including recommendations for monitoring and following up on the strategies implemented" pursuant to the Agreement. (Exhibit 1 at 6).

27. Exhibit B to the Agreement set out a payment schedule, pursuant to which PDV USA was to pay Interamerican a total of $50 million. (Exhibit 1 at 7).

28. Under the payment schedule, PDV USA was to pay Interamerican an "Initial Payment Installment" of $5 million on March 21, 2017. (Exhibit 1 at 7).

29. The payment schedule further instructed that, starting on April 4, 2017, another $20 million be paid in $5 million "Consecutive Payment Installments" every two weeks and that a "Final Payment Installment" of $25 million be paid before June 15, 2017.

30. However, the Agreement only required PDV USA to pay Interamerican as compensation for the "completion" of the services to PDV USA's "sole satisfaction." (Exhibit 1 at § 3).

31. Interamerican represented and warranted to PDV USA that "no portion of any payment to [Interamerican] by PDV USA pursuant to this Agreement shall be used as a bribe, kickback, rebate, illegal political contribution, or in violation of applicable foreign exchange

7

control regulations, tax laws or regulations, or other laws or regulations of any jurisdiction." (Exhibit 1 at § 7).

32.     Finally, Interamerican represented and warranted to PDV USA in the Agreement that "in connection with performing the Services, [Interamerican] and its Personnel [would] not violate any applicable laws or regulations of any jurisdiction."  (Exhibit 1 at § 7)  Interamerican also promised in the Agreement that it "shall comply with all federal, state and local laws, regulations and ordinances."  (Exhibit 1 at § 17).

**Interamerican Failed to Perform Under the Agreement**

33.     Interamerican failed to provide the services and deliverables set out in the Agreement.  In short, Interamerican provided no services to PDV USA.

34.     Interamerican failed to provide the seven bi-weekly reports "detailing the activities that it ha[d] carried out" during the applicable two-week period and the final report "integrating all work product including recommendations for monitoring and following-up on the strategies implemented," as required by Exhibit A.  (Exhibit 1 at 6).

35.     Instead, Rivera submitted only two reports in total: (1) one "bi-weekly" report on May 1, 2017, almost a month after the first report was due on April 4, 2017; and (2) a "final" report on December 31, 2017, more than six months after the Agreement's June 21, 2017 termination date.  These reports were not submitted to PDV USA, but to Mr. Pio González, an employee of PDVSA.

36.     The reports totaled no more than five pages (collectively), much of which was duplicated, and failed to describe any meaningful work done on behalf of PDV USA or PDVSA or provide any evidence that work was actually performed.  For example, the reports make

numerous references to developing and implementing the "strategic plan," but do not describe what that plan entailed or how it was allegedly implemented.

37.     The reports also refer generically to meetings and discussions with "important policy makers and opinion leaders in the United States," "key public officials," "target stakeholders," "public sector stakeholders," and "private sector stakeholders," but fail to describe the purpose of those meetings, who attended, what was discussed, or what makes any of these leaders, officials or stakeholders important to Interamerican's "strategic plan."

38.     Similarly, the purported final report refers to recommendations, but does not explain what those recommendations are.

39.     While the reports do not show that Interamerican provided the services for which it was engaged, neither do they support Mr. Rivera's 2020 claims as to the purpose of the Agreement.  Nothing in any report claims, or remotely suggests, that the money provided to Interamerican was being used for the purpose of making political contributions to opposition figures or leaders in Venezuela.  Nor is PDV USA aware of any communication to, from, or copying any representative of PDV USA suggesting that the payments to Interamerican were contemplated for such purpose.

40.     Interamerican also failed to provide "supporting documentation" and "adequate and complete details of the Services rendered" with each invoice submitted to PDV USA, as required by Exhibit A.  (Exhibit 1 at 6).  Indeed, Interamerican provided no supporting documentation or detail whatsoever with the invoices submitted for payment.

41.     As a result of these multiple failures, Interamerican failed to perform any services "to PDV USA's sole satisfaction."  (Exhibit 1 at § 3).  To be clear, PDV USA never

expressed satisfaction with the services provided by Interamerican, and is not satisfied with Interamerican's services.

42.　　Simply put, Interamerican did not perform any of the services that it contracted to perform, much less to PDV USA's satisfaction:

       a.　Interamerican did not "provide CLIENT with strategic consulting and assistance developing strategies to inform policy makers and opinion leaders regarding CLIENT initiatives and achievements." (Exhibit 1 at 6).

       b.　Interamerican did not "develop and work with CLIENT to organize and implement a multi-faceted strategy to reinforce CLIENT's standing among important public officials and opinion leaders." (*Id.*)

       c.　Interamerican did not "support CLIENT in the planning and execution of a strategic plan directed at targeted stakeholders to assist CLIENT with the development and implementation of a program to support efforts that will enhance the long-term reputation and standing of CLIENT." (*Id.*)

       d.　Interamerican did not "identify opportunities to build long-term relationships among key third-parties, opinion leaders and public officials." (*Id.*)

43.　　Finally, to the extent that Mr. Rivera's press statements are true or that the money Interamerican received under the Agreement was used for other purposes, then Interamerican also violated its representations and warranties under Section 7 of the Agreement that "no portion of any payment to CONSULTANT by PDV USA pursuant to this Agreement shall be used as a bribe, kickback, rebate, illegal political contribution, or in violation of applicable

foreign exchange control regulations, tax laws or regulations, or other laws or regulations of any jurisdiction."

**PDV USA Paid Interamerican for Services that Were Never Performed**

44. Notwithstanding Interamerican's failure to provide the contracted-for services, PDV USA initially began making payments to Interamerican.

45. Specifically, PDV USA paid Interamerican the "Initial Payment Installment" of $5 million on March 24, 2017.

46. PDV USA also began to pay Interamerican the "Consecutive Payment Installments" of $5 million on each of April 10, 2017 and April 19, 2017.

47. Together with the initial installment payment made on March 24, 2017, PDV USA paid Interamerican a total of $15 million by April 19, 2017. These payments all predated the receipt of any interim reports from Interamerican, the first one of which was not received until May 1, 2017. PDV USA made no further payments following receipt of these interim reports. PDV USA was not and is not satisfied with any services purported to be rendered to PDV USA under the Agreement—which were nonexistent.

48. In addition, PDV USA refused to pay the final three Interamerican invoices that Rivera submitted, which totaled $35 million.

**Notwithstanding Its Breach Of The Agreement, Interamerican Insists That PDV USA Owes The Balance Under The Agreement**

49. Even though Interamerican did not provide services as required under the Agreement, Interamerican repeatedly requested payment for the outstanding invoices at various times through 2019, including on September 11, 2018, December 18, 2018, and February 4, 2019.

50. Interamerican continues to assert that PDV USA is liable to Interamerican for the $35 million balance under the Agreement. Indeed, Defendant has represented to this Court

that their "position as to the performance and obligations under the contract" is that those
obligations "remained with and do remain with PDV USA, the party to the contract." (Tr. 12:11-
14, Oct. 8, 2020). And Defendant asserts that PDV USA was obliged, and is still obliged, "to pay
that $50 million." (*Id*. at 15:23-24).

**PDV USA Has Not Assigned The Agreement Because Interamerican Refused To Consent
To The Assignment**

51. On October 5, 2017, in light of the fact that Defendant had not performed,
and did not contemplate performing, any services on behalf of PDV USA, PDV USA and
PDVSA jointly sought Defendant's consent to assign the Agreement from PDV USA to PDVSA.
To that end, PDV USA and PDVSA both signed an "Assignment and Assumption Consent
Agreement To 'Consulting Agreement, Dated March 21, 2017'" (the "Assignment and
Assumption Consent Agreement"). Interamerican was identified as a third party to the
Assignment and Assumption Consent Agreement for purposes of granting consent to its terms,
which the parties agreed was to constitute a novation or release for PDV USA, and a signature
block was provided for Interamerican's consent. But Interamerican refused to consent to the
Assignment and Assumption Consent Agreement and never signed it. Accordingly, the
Assignment and Assumption Consent Agreement was never fully executed. A true and correct
copy of the Assignment and Assumption Consent Agreement is annexed hereto as Exhibit 2.

52. Interamerican's written consent was an essential condition of the formation
of the Assignment and Assumption Consent Agreement. Indeed, in the recitals of the Assignment
and Assumption Consent Agreement, the parties stated as one of the underlying bases for their
agreement that "Consultant has agreed to consent to the terms and conditions of this Assignment
and Assumption Agreement, and therefore, fully release Assignor for all past, present, and future

obligations under the Agreement." (Exhibit 2 at 1). This made clear that the assignment would only become effective if Interamerican consented to its terms.

53.     Plaintiff did not, and would not have agreed to, assign its rights under the Agreement unless it received Interamerican's consent and a release from its obligations. Thus, in paragraph 1 of the Assignment and Assumption Consent Agreement, PDV USA stated that the "Assignment and Assumption shall be construed as a novation or a release of Assignor under the Agreement." *Id.* For that reason, Interamerican was required to execute the Assignment and Assumption Consent Agreement and a signature block was included on page 2 for its signature.

54.     Because Interamerican never executed the Assignment and Assumption Consent Agreement, the agreement was never formed and the assignment and assumption reflected therein was never effective. The right to enforce the Agreement therefore belongs to PDV USA notwithstanding the Assignment and Assumption Consent Agreement.

55.     Until this lawsuit was filed, Defendant's position has also been that no assignment was ever effected and it has continued to demand payment from Plaintiff. A February 4, 2019 email from Mr. Rivera makes this clear:

> As you know, Interamerican Consulting never agreed to or consented to any assignment of the contract from PDV USA to PDVSA. In fact, any suggestion of a reassignment of the contract was specifically rejected on two occasions. Our legal counsel has now reviewed this matter in depth, including the documented role of Citgo attorneys and corporate officers, and has concluded indisputably and categorically that any assignment by PDV USA to PDVSA was a unilateral decision arranged between PDV USA and PDVSA and, under State of New York contract law governing the consulting agreement, in no way absolves PDV USA of its contractual obligations to Interamerican Consulting.

56.     In any event, for the avoidance of doubt, to the extent any rights, obligations or liabilities under the Agreement were transferred from PDV USA to PDVSA pursuant to the Assignment and Assumption Consent Agreement—which they were not— PDVSA has agreed to rescind such transfer and, if necessary, transfer such rights, obligations or

liabilities back to PDV USA. Accordingly, on October 30, 2020, PDV USA and PDVSA entered into a Rescission of Assignment and Assumption Consent Agreement To "Consulting Agreement, Dated March 21, 2017," in which, "to the extent any rights, obligations or liabilities under the Consulting Agreement were previously transferred from PDV USA to PDVSA pursuant to the Assignment and Assumption Consent Agreement, PDVSA hereby transfers and assigns to PDV USA any such rights, obligations and liabilities to PDV USA, and PDV USA hereby accepts this transfer and assignment." A true and correct copy of the Rescission Agreement is annexed hereto as Exhibit 3.

**After This Lawsuit Was Filed, Interamerican Has Admitted That It Never Intended To Perform Services Under The Agreement And Claims The Agreement Is A Sham**

57.     After this lawsuit was filed, Interamerican's President made several statements to the press about this lawsuit and the parties' Agreement.

58.     In response to press inquiries, Mr. Rivera replied, "ask the boys of Citgo 6," a reference to Citgo Petroleum Corporation executives detained by the Maduro regime. "They handled that entire operation, including all the money, in coordination with the Venezuelan opposition . . . That's all I know." (*PDVSA denounces former U.S. congressman for Payment of $US15M*, CE NOTIFICIAS FINANCIERAS ENGLISH, May 13, 2020).

59.     Mr. Rivera also told the Miami Herald: "All those funds went to the opposition for anti-Maduro protests in the summer of 2017. I never saw a penny of it." (Jay Weaver and Antonio Maria Delgado, *Rivera didn't register as a foreign agent in $50 million contract with Venezuela oil firm*, MIAMI HERALD, May 14, 2020).

60.     On information and belief, these statements are false. PDV USA could locate no evidence supporting these claims. The transfer of funds from PDV USA went directly to a bank account controlled by Interamerican. It defies credulity to assert that PDVSA, which at

the time was controlled by the Maduro Regime, directed its U.S. subsidiaries to hire Interamerican to funnel millions of dollars to the political adversaries of the Regime.

61.     To the extent that Interamerican did use the funds it received from PDV USA under the Agreement for the purpose of financing the political opposition of the Maduro Regime, that would prove that Interamerican did not and never intended to perform the strategic consulting services contemplated by the Agreement.  It would further prove that the two progress reports submitted by Rivera to PDV USA contained numerous false, material statements regarding purported services that Rivera claimed Interamerican had performed.  For example, if Rivera's 2020 claims are true, then each of the following statements contained in the progress reports were knowingly and intentionally false when made to PDV USA to support Interamerican's claims for payment:

> a.   April 18:  "The Consultant organized meetings for the Client with important policy makers and opinion leaders in the United States as part of the strategy to build long-term relationships among key public sector stakeholders in the United States.  These meetings allowed the Client to provide the Client's viewpoints and perspectives on current events in Venezuela and their interpretation in the United States, focusing on Client initiatives and achievements."

> b.   May 16:  "The Consultant has had multiple discussions with important interlocutors associated with the target private sector organizations and has advised these interlocutors as to the Client's desire and willingness to pursue reconciliation and resolution of outstanding issues."

     c.    June 13: "The Consultant has held meetings and discussions with key public officials to express details as to the willingness of the Client to make good faith efforts and concessions in pursuit of facilitating a positive relationship with interested parties in the United States."

62.    To the extent that the position of Interamerican is that the Agreement was a sham from the outset, however, then Interamerican received payments to which it was not lawfully entitled and it would be unjustly enriched if it were permitted to profit from them.

**Interamerican Agreed to Indemnify PDV USA for its Breach of the Agreement**

63.    Under the Agreement, Interamerican agreed to "indemnify . . . PDV USA . . . from and against any and all breaches of this Agreement by [Interamerican]," including "all such expenses, court costs, and attorneys' fees in the enforcement of PDV USA's rights" under the Agreement.  (Exhibit 1 § 10).

## <u>COUNT ONE: BREACH OF CONTRACT</u>

64.    PDV USA repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

65.    Defendant Interamerican entered into the Agreement, pursuant to which Interamerican agreed to perform certain services identified above.

66.    Defendant failed to perform those services and therefore breached its agreement with Plaintiff.

67.    As a direct and proximate result of Defendant's breach, Plaintiff has incurred substantial damages.

68.    Plaintiff is entitled to recover the $15 million (plus interest) that it paid to Defendant and to be released from any further payment under the Agreement.

## COUNT TWO: INDEMNITY

69.     PDV USA repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

70.     Defendant Interamerican agreed to indemnify PDV USA for any damages resulting from its breach of the Agreement, including expenses, court costs, and attorneys' fees.

71.     Defendant breached the Agreement.

72.     Plaintiff is entitled to recover all damages resulting from Defendant's breach of the Agreement, including expenses, courts costs, and attorneys' fees.

## COUNT THREE: UNJUST ENRICHMENT

73.     PDV USA repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

74.     Mr. Rivera has stated publicly that the Agreement was a sham.

75.     Although PDV USA disputes the accuracy of Mr. Rivera's claim regarding the purpose of the Agreement, to the extent that discovery shows that the Agreement was a sham for the reasons he provided or for other reasons, then no enforceable contract was formed between PDV USA and Interamerican.

76.     Plaintiff paid Defendant Interamerican $15 million.

77.     There is no justification for Interamerican to retain these payments, and its doing so is unjust and inequitable.

78.     Defendant Interamerican therefore has been unjustly enriched to the extent it obtained any payments from Plaintiff.  All such amounts should be returned to Plaintiff, with interest.

## COUNT FOUR:  DECLARATORY JUDGMENT

79.     PDV USA repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

80.     As alleged herein, an actual and ripe controversy exists between the parties in that Defendant has asserted, and will continue to assert, that Plaintiff breached the Agreement when it refused to pay the remaining $35 million contemplated by the Agreement and that Plaintiff therefore owes Defendant $35 million.

81.     Plaintiff's position is that no such money is owed in light of Defendant's breach of the Agreement.

82.     Accordingly, Plaintiff and Defendant have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment on the disputed matters raised herein.

83.     Plaintiff is therefore entitled to a declaration pursuant to 28 U.S.C. § 2201, C.P.L.R. § 3001, and Rule 57 of the Federal Rules of Civil Procedure that PDV USA does not owe Interamerican any money under the Agreement because Interamerican breached the Agreement.

84.     Alternatively, to the extent that discovery shows that the Agreement was a sham, Plaintiff is entitled to a declaration pursuant to 28 U.S.C. §2201, C.P.L.R. § 3001, and Rule 57 that PDV USA owes Interamerican no money under the Agreement because no enforceable contract was formed between PDV USA and Interamerican.

## PRAYER FOR RELIEF

WHEREFORE, PDV USA requests that the Court:

a.      Adjudge and decree that Defendant is liable for breach of contract and unjust enrichment, as alleged herein;

b.     Declare that PDV USA does not owe Defendant any money under the Agreement;

c.     Enter a judgment against Defendant that awards PDV USA $15 million (plus interest), relieves Plaintiff from any further payments under the Agreement, awards any further compensatory damages (plus interest) at an amount to be determined at trial; and awards expenses, costs, and attorneys' fees; and

d.     Grant such further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff PDV USA hereby demands a trial by jury on all issues raised in the Complaint herein.

Dated: New York, New York
October 30, 2020


**WILLKIE FARR & GALLAGHER LLP**


By: /s/ Jeffrey B. Korn

Jeffrey B. Korn
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
JKorn@willkie.com


Michael J. Gottlieb
Sarah Wastler
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
MGottlieb@willkie.com
SWastler@willkie.com


*Attorneys for Plaintiff PDV USA, Inc.*

# EXHIBIT 1

# CONSULTING AGREEMENT

This Agreement is made and entered into as of March 21st, 2017, by and between PDV USA, Inc., a Delaware company ("PDV USA"), located at 65 East 55th Street, Floor 21, New York, New York, 10022, and Interamerican Consulting, Incorporated("CONSULTANT"), located at 10925 N.W. 43rd Lane, Miami, Florida, 33178.

WHEREAS, PDV USAdesires the "Services," as hereinafter defined, of CONSULTANT and CONSULTANT has all the experience, expertise, and skills to perform the same and has expressed its interest in entering into this Agreement;

NOW, THEREFORE, in consideration of the premises and of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. PDV USA hereby engages CONSULTANT to perform the Services during the term of this Agreement, and CONSULTANT accepts such engagement, upon the terms and conditions set forth herein.

2. **Term.**The term of this Agreement shall commence on March 21st, 2017 and shall end on June 21st, 2017, unless sooner terminated as provided herein. Either party may terminate this Agreement at any time, with or without cause, upon five calendar days prior written notice to the other party. Such termination shall not apply to Services or Deliverables already accepted by CONSULTANT.

3. **Compensation and Services.**During the term of this Agreement, PDV USA shall pay CONSULTANT as compensation for the completion of the Services, to PDV USA's sole satisfaction, in accordance with the attached Exhibit A, which, with any addendums or schedules thereto, shall be integrated into and made a part of this Agreement. CONSULTANT must include with the invoiceall supporting documentation, and set out adequate and complete details of the Services rendered. CONSULTANT shall be solely responsible for, and shall report, all payments received from PDV USA to the appropriate federal, state and local taxing authorities.

4. **Personnel.**During the term of this Agreement, CONSULTANT shall devote all of the time of CONSULTANT's members and employees (hereinafter referred to as "Personnel") that is reasonable and necessary to perform independent consulting services (the "Services") for PDV USA which shall include, but are not limited to, the Services set forth in **Exhibit A** which with any addendums or schedules thereto, shall be integrated into and made a part of this Agreement. CONSULTANT shall make its Personnel available to perform the Services upon reasonable request by PDV USA, and the Services shall be rendered at such times as shall be mutually determined and shall be coordinated through the PDV USA Authorized Representative. This Agreement is entered into by PDV USA in reliance upon CONSULTANT and the qualifications of the Personnel. With the exception of clerical, bookkeeping, and secretarial work, CONSULTANT and its Personnel shall perform the Services and may not be substituted without the prior consent of PDV USA.

5. **Independent Contractor**. In the performance of the Services, CONSULTANT and its Personnel shall act solely as an independent contractor and nothing herein shall at any time be construed to create the relationship of employer and employee, partnership, principal and agent, or joint venture as between PDV USA and CONSULTANT or PDV USA and CONSULTANT's Personnel. CONSULTANT and its Personnel shall have no right or authority, and shall not attempt, to enter into any contract, commitment, or agreement, or incur any debt or liability, of any nature, in the name of or on behalf of PDV USA, its subsidiaries, or affiliates.

**CONSULTING AGREEMENT**

6. **Confidential Information.** CONSULTANT and its Personnel shall hold in strictest confidence any information, data and material which is related to PDV USA's business or is designated as proprietary and confidential or is otherwise provided or made available by PDV USA in connection with the Services performed hereunder ("Confidential Information"). CONSULTANT and its Personnel shall not, without PDV USA's prior written consent, disclose to others any Confidential Information disclosed to CONSULTANT and its Personnel by PDV USA or any Confidential Information which comes into the possession of CONSULTANT and its Personnel as a result of this Agreement. CONSULTANT shall not to make use of the Confidential Information other than for the performance of the Services under this Agreement. Confidential information includes, but is not limited to, information related to research, development, pricing, trade secrets, customer lists, salaries, technical data, procedures, or business affairs of PDV USA, its subsidiaries and affiliated companies. The Confidential Information shall remain the property of PDV USA and PDV USA may request the return of the Confidential Information at any time upon written request to CONSULTANT. The obligations in this section shall apply to any information, data and material that constitutes "Confidential Information" as defined herein which was provided or made available to CONSULTANT and its Personnel prior to the effective date of this Agreement.

7. **Warranty.** CONSULTANT hereby represents and warrants to PDV USA, with the intention that PDV USA rely thereon in entering into this Agreement, that: (a) CONSULTANT has the present capacity and will take all steps necessary to maintain the capacity to perform the Services hereunder; (b) each of CONSULTANT's Personnel assigned to perform Services hereunder has the proper skill, training, and background so as to be able to perform such Services in a competent and professional manner; (c) CONSULTANT and each of its Personnel are properly registered and licensed to perform the Services hereunder and shall maintain any such registration and licenses during the term of this Agreement; (d) in connection with performing the Services, CONSULTANT and its Personnel will not violate any applicable laws or regulations of any jurisdiction; (e) no portion of any payment to CONSULTANT by PDV USA pursuant to this Agreement shall be used as a bribe, kickback, rebate, illegal political contribution, or in violation of applicable foreign exchange control regulations, tax laws or regulations, or other laws or regulations of any jurisdiction; and (f) the execution and performance by CONSULTANT of this Agreement does not and will not violate or conflict with or result in a breach of any of the terms, conditions, duties, or obligations to which CONSULTANT is bound to any third party or any other rights of any third party.

8. **PDV USA Rules.** CONSULTANT and its Personnel shall comply with any policy and procedures of PDV USA in the event they apply to the performance of the Services. CONSULTANT shall be notified by PDV USA when such compliance is required.

9. **Personnel Expertise**. CONSULTANT warranties that its Personnel has the experience, expertise, and skills to perform the Services.

10. **Indemnity.** CONSULTANT shall protect, defend (at CONSULTANT's expense and by counsel satisfactory to PDV USA), indemnify, save and hold harmless PDV USA, its subsidiaries and affiliates and its and their agents, directors, officers, shareholders, employees, representatives, successors, and assigns, from and against any and all breaches of this Agreement by CONSULTANT, its Personnel, direct or indirect costs, damages, losses, obligations, lawsuits, claims, liabilities, fines, or penalties (whether or not ultimately defeated) in connection with, arising out of, relating to, incidental to, or resulting from any act or omission or any alleged act or omission by CONSULTANT or its Personnel, including in each instance, but not limited to, all costs and expenses of investigation and defending any claim at any time arising and any final judgments, compromises, settlements, court costs and attorneys' fees, whether foreseen or unforeseen (including all such expenses, court costs, and attorneys' fees in the enforcement of PDV USA's rights hereunder)

**CONSULTING AGREEMENT**

incurred by PDV USA directly or indirectly.

11.    **Insurance.** In the event PDV USA considers appropriate and applicable, and after proper notification to CONSULTAT, CONSULTANT shall be responsible for providing the following insurance coverages:

a.    Workers' compensation and employer's liability insurance covering all of CONSULTANT's Personnel in accordance with the statutory requirements of the state of hire in which the Services are to be performed. CONSULTANT's employers' liability insurance covering its Personnel shall have a limit of <u>five hundred thousand dollars ($500,000)</u> per occurrence.

b.    Comprehensive general liability insurance with contractual liability providing for a combined single limit of <u>five hundred thousand dollars ($500,000)</u> for personal injury, death or property damage resulting from each occurrence and covering all of CONSULTANT's operations involved in the performance of the Services hereunder. The aforesaid insurance shall cover, but not be limited to, loss of or damage to PDV USA's, and to CONSULTANT's, property, members, and employees.

c.    Business automobile liability insurance covering owned, non-owned and hired motor vehicles, with combined single limits of at least <u>five hundred thousand dollars ($500,000)</u> for personal injury, death, or property damage, resulting from each occurrence.

In addition, PDV USA shall be named as an 'additional insured' with respect to comprehensive general liability coverage and automobile liability insurance coverage. Each respective insurance carrier shall waive subrogation rights with respect to PDV USA. CONSULTANT shall provide PDV USA with certificates evidencing the required coverage as soon as possible but in no event later than ten (10) days after this Agreement is executed. The insurance limits provided hereunder are those minimum limits to be provided by CONSULTANT and do not limit the liabilities for which CONSULTANT is responsible under this Agreement

12.    **Title to Work Product.** All work performed hereunder, and any and all materials and products developed or prepared for PDV USA by CONSULTANT, including any Deliverables, are the property of PDV USA and all title and interest therein shall vest in PDV USA and shall be deemed to be made in the course of the Services rendered hereunder. To the extent that title to any such works may not, by operation of law, vest in PDV USA, all rights, title and interest therein are hereby irrevocably assigned to PDV USA. All such materials and products shall belong exclusively to PDV USA; with PDV USA having the right to obtain and hold in its own name, copyrights, patents, registrations or such other protection as may be appropriate to the subject matter thereof. PDV USA may use any of the work, materials, and products, Services or Deliverables in its sole discretion without additional compensation to CONSULTANT. CONSULTANT shall give PDV USA and any person designated by PDV USA reasonable assistance, at PDV USA's expense, required to perfect the rights defined in this Paragraph. Unless otherwise requested by PDV USA, upon completion of the Services to be performed hereunder, CONSULTANT shall immediately turn over to PDV USA all materials and products developed pursuant hereto.

13.    **Audit.** PDV USA, its Accountant, Corporate Auditor and/or any third person representing PDV USA, shall have the right to inspect and/or audit, during the CONSULTANT's normal business hours, the books, records, internal controls and procedures and other information with respect to (a) CONSULTANT's performance of its obligations under this Agreement, and (b) information used by the CONSULTANT in determining the amounts payable by PDV USA under this Agreement. PDV USA shall provide reasonable notice to CONSULTANT of its plan to audit. CONSULTANT shall

## CONSULTING AGREEMENT

retain all such records for a period of two years following the last day of each calendar year, in an orderly fashion, to facilitate the audit process.

14. **Authorized Representative and Notices**.  Any notice hereunder shall be in writing and shall be effective when delivered by email, personally or when deposited in the mail, postage prepaid, registered or certified and addressed as follows:

        If to CONSULTANT:
           Interamerican Consulting, Incorporated
           10925 N.W. 43rd Lane
           Miami, Florida 33178
           Attention:  David Rivera

        If to PDV USA:
           Mr. Pío González
           Edificio Petróleos de Venezuela, Torre Este,
           La Campina, Caracas – Venezuela 1060
           Email: gonzalezpu@pdvsa.com
           Phone Number: +582127083700

15. **Publicity**.  CONSULTANT shall not issue a press release regarding this Agreement or the Services provided or use PDV USA's or its affiliates' names in any advertising or publicity, without PDV USA's prior written consent.

16. **Choice of Law and Venue:**This Agreement shall be deemed to be made under, and shall be construed in accordance with, the laws of the State of New York (without reference to choice of law doctrine). The parties irrevocably submit to the exclusive jurisdiction of the State of New York for purposes of any suit, action or proceedings relating to this Agreement.

17. **Compliance With Laws.**  To the extent applicable, CONSULTANT shall comply with all federal, state and local laws, regulations and ordinances.

18. **Assignment and Subcontracting.**This Agreement is entered into by PDV USA in reliance upon the personal qualifications of CONSULTANT's Personnel and, therefore, CONSULTANT shall not assign this Agreement voluntarily, involuntarily, or by operation of law without the express written consent of PDV USA.  CONSULTANT may not subcontract any portion of the Services without the prior written consent of the PDV USA Authorized Representative.

19. **Miscellaneous**.  No waiver of any provision of this Agreement, or a breach hereof, shall be effective unless it is in writing and signed by both parties.  No waiver of a breach of this Agreement (whether express or implied) shall constitute a waiver of a subsequent breach.  All provisions of this Agreement are severable, and the unenforceability or invalidity of any of them shall not affect the enforceability or validity of the remaining provisions of this Agreement.  Any provision of this Agreement which by the nature of its terms would survive any termination or expiration of this Agreementshall continue to apply to the parties and remain in full force and effect.The headings in this Agreement are inserted for convenience only and shall not be used in the interpretation hereof.  Both parties have reviewed, and have had an opportunity for comment upon, this Agreement.  Any rule or principle of contractual construction that would otherwise require any aspect of this Agreement to be interpreted against the party primarily responsible for

## CONSULTING AGREEMENT

its drafting shall not be employed in the interpretation hereof. This Agreement shall not be modified, altered, amended, or revoked except in writing duly executed by the parties.

20. **Exhibits and Entirety.** This Agreement contains all agreements of any kind or nature (oral or written) between the parties and all prior or contemporaneous promises, representations, agreements, or understandings are expressly merged herein and superseded hereby. Any and all additional and different terms contained in CONSULTANT's proposals are herein rejected. This Agreement shall include the following exhibits ("Exhibits") attached hereto and incorporated herein by reference:

   Exhibit A    Scope of Services and Deliverables
   Exhibit B    Compensation and Payment Schedule

   This Consulting Agreement and the Exhibits are collectively referred to as the "Contract Documents". To the extent of any inconsistency or conflicting terms and/or conditions between this Agreement and any of the Exhibits, this Agreement shall govern and control. The Exhibits will have the same priority in the event of an irreconcilable conflict in the order in which they are listed above.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first shown above.

| PDV USA, Inc. | | Interamerican Consulting | |
|---|---|---|---|
| By: | | By: | |
| Name: | **GUILLERMO BLANCO** | Name: | **DAVID RIVERA** |
| Title: | **President** | Title: | **President** |
| Date: | **March 21st, 2017** | Date: | **March 21st, 2017** |

## CONSULTING AGREEMENT

### EXHIBIT A
of
Consulting Agreementby and Between
PDV USA, Incand
Interamerican Consulting, Incorporated
March 21st, 2017

### SCOPE OF SERVICES AND DELIVERABLES

The **Services** in general shall include, but not limited to:

It shall be the CONSULTANT's duty to provide strategic consulting services to the CLIENT as the CLIENT deems necessary and appropriate.

CONSULTANT will provide CLIENT with strategic consulting and assistance developing strategies to inform policy makers and opinion leaders regarding CLIENT initiatives and achievements.

CONSULTANT will develop and work with CLIENT to organize and implement a multi-faceted strategy to reinforce CLIENT's standing among important public officials and opinion leaders.

CONSULTANT will support CLIENT in the planning and execution of a strategic plan directed at targeted stakeholders to assist CLIENT with the development and implementation of a program to support efforts that will enhance the long-term reputation and standing of CLIENT.

CONSULTANT will identify opportunities to build long-term relationships among key third-parties, opinion leaders and public officials.

Consultant Deliverables are:

The CONSULTANT will provide the CLIENT with updates regarding the strategic consulting services provided by the CONSULTANT, and include with the invoice all supporting documentation, and set out adequate and complete details of the Services rendered.

CONSULTANT shall provide CLIENT with a bi-weekly report detailing the activities that it has carried out during that period to achieve the stated goals and purposes of the Agreement as well as a final report integrating all work product including recommendations for monitoring and following-up on the strategies implemented.

**CONSULTING AGREEMENT**

**EXHIBIT B**
of
Consulting Agreement by and Between
PDV USA, Incand
Interamerican Consulting, Incorporated
March 21ˢᵗ, 2017

<u>COMPENSATION AND PAYMENT SCHEDULE</u>

CONSULTANT agrees to accept and PDV USA agrees to pay for the complete, satisfactory and timely performance of the Services in strict accordance with all requirements contained in this Agreement. The total compensation for the Services provided by CONSULTANT, as per the terms and conditions herein provided, is U.S. Dollars 50,000,000.00.

<u>PAYMENT SCHEDULE:</u>

Initial Payment Installment for US$ 5,000,000.00 on March 21ˢᵗ, 2017

Consecutive Payment Installments for US$ 5,000,000.00 every two weeks starting on April 4ᵗʰ, 2017 until reaching the total amount of US$ 25,000,000.00 by May 16ᵗʰ, 2017

Final Payment Installment for US$ 25,000,000.00 before June 15ᵗʰ, 2017.

<u>INVOICING:</u>

Consultant shall submit an invoice for the Service completed and accepted, (as approved by the PDV USA Representative indicated in Section 14 of the Consulting Agreement), in triplicate, to the address shown below. The invoice shall reference the Consulting Agreement Number, PDV USAauthorized personnel responsible for accepting the services provided, and banking instructions.

Invoices shall be submitted by email to:

Mr. Pío González
Email: gonzalezpu@pdvsa.com
PhoneNumber: +582127083700

# EXHIBIT 2

## ASSIGNMENT AND ASSUMPTION CONSENT AGREEMENT TO
## "Consulting Agreement, Dated March 21, 2017"

This Assignment and Assumption Agreement (the "Assignment and Assumption Agreement") is made and entered into as of May, 10, 2017 (the "Assignment Effective Date"), by and between **PDV USA, Inc**, a Delaware company ("PDV USA"), located at 65 East 55th Street, Floor 21, New York, New York, 10022, United States of North America ("Assignor"), and **Petróleos de Venezuela, S.A.**, located at Avenida Libertador, Edificio Petróleos de Venezuela, S.A., Caracas, Venezuela, a company organized under the laws of the República Bolivariana de Venezuela ("Assignee").

**Interamerican Consulting, Incorporated** ("Consultant"), located at 10925 N.W. 43rd Lane, Miami, Florida, 33178, hereby consents to this Assignment and Assumption Agreement.

WHEREAS, Assignor and Consultant are parties to that certain Consulting Agreement, dated as of March 21, 2017 (the "Agreement").

WHEREAS, Assignor has agreed to assign all rights, obligations and liabilities under the Agreement to Assignee, and Assignee has agreed to unrestrictedly assume such rights and obligations of Assignor under the Agreement, as set forth therein;

WHEREAS, Consultant has agreed to consent to the terms and conditions of this Assignment and Assumption Agreement, and therefore, fully release Assignor for all past, present, and future obligations under the Agreement.

NOW THEREFORE, for and in consideration of the premises and the mutual covenants contained herein, and for the other good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, the Parties do hereby agree as follows:

1. Assignment and Assumption. As of the Assignment Effective Date, Assignor hereby assigns, sells, transfers and delivers to Assignee all of the rights, obligations and liabilities under the Agreement. Assignee hereby accepts the assignment and assumption and agrees to observe and perform all of the past, present and future duties, obligations and covenants of, and to pay and discharge, all of the rights, obligations and liabilities under the Agreement. This Assignment and Assumption shall be construed as a novation or a release of Assignor under the Agreement. All other terms and conditions of the Agreement, including any dully approved amendment or change order, shall continue and remain unchanged.




Page 1

## ASSIGNMENT AND ASSUMPTION CONSENT AGREEMENT TO
## "Consulting Agreement, Dated March 21, 2017"

2. Further Actions. Each of the Parties hereto covenants and agrees, at its own expense, to execute and deliver, at the request of the other Party hereto, such further instruments of transfer and assignment and assumption and to take such other action as such other Party may reasonably request to more effectively consummate the assignments and assumptions contemplated by this Assignment and Assumption Agreement.

3. General. This Assignment and Assumption Agreement sets forth the entire agreement as to the assignment and assumption of the Agreement and there are no other agreements, modifications or understandings except as set forth herein. In the event any parts of this Assignment and Assumption Agreement are rendered null or void, those parts shall be severed and the remaining agreement shall remain valid. This Assignment and Assumption Agreement shall be governed by the laws of the State of New York. This Assignment and Assumption Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement. Subject to the provisions hereto, this Assignment and Assumption Agreement shall be binding upon and inure to the benefit of and be enforceable by the Parties hereto, and, in the case of Assignee, its successors and assigns. Nothing herein shall create a third party beneficiary.

**ASSIGNOR**

PDV USA, Inc

BY: _____

Name: Guillermo Blanco

Title: Presidente.

Date: 05- Octubre - 2017

**ASSIGNEE**

Petróleos de Venezuela, S,A.

BY: _____

Name: Guillermo Blanco

Title: Vicepresidente Refinación

Date: 05-Octubre-2017

**CONSENTED BY:**

Interamerican Consulting, Incorporated

By: _____

Name: _____

Title: _____

Date: _____

# EXHIBIT 3

## RESCISSION OF ASSIGNMENT AND ASSUMPTION CONSENT AGREEMENT TO "CONSULTING AGREEMENT, DATED MARCH 21, 2017"

This Rescission of Assignment and Assumption Consent Agreement To "Consulting Agreement, Dated March 21, 2017" (the "Rescission Agreement"), is made by and between **Petroleos de Venezuela, S.A. (PDVSA)**, a company organized under the laws of the Republica Bolivariana de Venezuela ("PDVSA"), and **PDV USA, Inc.,** a Delaware company ("PDV USA"), located at 65 East 55th Street, Floor 21, New York, New York, 10022, United States of North America.

WHEREAS, PDV USA and Interamerican Consulting, Incorporated ("Interamerican") are parties to that certain Consulting Agreement, dated as of March 21, 2017 (the "Consulting Agreement");

WHEREAS, on or about October 5, 2017, PDV USA and PDVSA signed that certain "Assignment and Assumption Consent Agreement To 'Consulting Agreement, Dated March 21, 2017'" (the "Assignment and Assumption Consent Agreement");

WHEREAS, by its terms, the Assignment and Assumption Consent Agreement was intended to be "construed as a novation or a release" of PDV USA under the Agreement and required the consent of Interamerican;

WHEREAS, Interamerican did not provide its consent, never executed the Assignment and Assumption Consent Agreement, and objected to its terms;

WHEREAS, as the Assignment and Assumption Consent Agreement was never fully executed, it was not formed and did not become effective or transfer any rights, obligations or liabilities to PDVSA under the Consulting Agreement;

WHEREAS, for the avoidance of doubt, in the event that any rights, obligations or liabilities under the Consulting Agreement were transferred from PDV USA to PDVSA pursuant to the Assignment and Assumption Consent Agreement, PDVSA now seeks to rescind such transfer and, if necessary, transfer such rights, obligations or liabilities back to PDV USA;

**NOW, THEREFORE**, the parties hereto, intending to be legally bound, do hereby agree as follows:

1.    Assignment and Assumption. PDVSA hereby rescinds the Assignment and Assumption Consent Agreement. To the extent any rights, obligations or liabilities under the Consulting Agreement were previously transferred from PDV USA to PDVSA pursuant to the Assignment and Assumption Consent Agreement, PDVSA hereby transfers and assigns to PDV USA any such rights, obligations and liabilities to PDV USA, and PDV USA hereby accepts this transfer and assignment. All other terms and conditions of the Consulting Agreement, including any duly approved amendment or change order, shall continue and remain unchanged.

2.    General. In the event any parts of this Rescission Agreement are rendered null or void, those parts shall be severed, and the remaining agreement shall remain valid. This

Rescission Agreement shall be governed by the laws of the State of New York. This Rescission Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement. Subject to the provisions hereto, this Rescission Agreement shall be binding upon and inure to the benefit of and be enforceable by the Parties hereto. Nothing herein shall create a third-party beneficiary.

**Petroleos de Venezuela, S.A.**

BY: _____

Name: Luis A. Pacheco
Title: President Junta Administradora ad hoc
    de PDVSA
Date: October 30, 2020

**PDV USA, Inc.**

BY: _____
Name: _____
Title: _____
Date: 10/30/2020

- 2 -