April 18, 2022

**VIA ECF**

Honorable Judge Robert W. Lehrburger
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: PDV USA, Inc. v. Interamerican Consulting Inc., Case No.: 1:20-cv-03699-JGK-RWL

Dear Judge Lehrburger:

We represent Interamerican Consulting, Inc. ("Interamerican") in the above-referenced case. In accordance with Rules I.F and II.B. of the *Individual Practices of John G. Koeltl*, Local Civil Rule 37.2, and this Court's *Order* dated April 13, 2022, we file this letter in response to the letter submitted by PDV USA, Inc. ("PDV USA") requesting a pre-motion conference on April 5, 2022.

The primary issue for the Court's consideration is whether Interamerican's communications via WhatsApp with Raul Gorrin—a Venezuelan attorney—are privileged. David Rivera, the president of Interamerican, represented to counsel that Raul Gorrin served as counsel to Interamerican in connection with the consulting agreement at issue in this case (the "Contract"). Rivera explained that he executed a retainer letter agreement (the "Retainer Agreement"). Unfortunately, Rivera did not have a copy of the Retainer Agreement in his possession, custody or control. Nevertheless, in light of this representation, Interamerican withheld communications with Raul Gorrin as Interamerican endeavored to locate the Retainer Agreement. Because of Rivera's diligent efforts, a copy of the retainer agreement was ultimately procured from Gorrin[1] on the evening of April 15, 2022. A true and correct copy of the Retainer Agreement is attached as **Exhibit "A"**.

The Retainer Agreement shows that Rivera engaged Gorrin's services on March 21, 2017, expressly in connection with the Contract at issue in this case. *See* Ex. A at ¶ 1.

Before turning to the substance of the PDV USA's argument, Interamerican observes that even though Gorrin is a Venezuelan attorney, New York privilege law would still apply. "In determining which country's law applies to a privilege dispute involving foreign attorney-client communications, courts in this Circuit consider the country with which the communications 'touch base.'" *Anwar v. Fairfield Greenwich Ltd*., 306 F.R.D. 117, 119 (S.D.N.Y.), *aff'd*, 982 F. Supp. 2d 260 (S.D.N.Y. 2013) (citing *Gucci America, Inc. v. Guess?, Inc.* ("*Gucci I* "), 271 F.R.D. 58, 64–65 (S.D.N.Y.2010)). Under this analysis, "[w]here . . . alleged privileged communications took place in a foreign country or involved foreign attorneys or proceedings, this court defers to the law of the country that has the 'predominant' or 'the most direct and compelling interest' in

---

[1] Gorrin is presently based in Venezuela, making obtaining the Retainer Agreement especially difficult. It was produced to PDV USA on April 18, 2022.

1

whether those communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." *Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002) (quoting *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 519 (S.D.N.Y.1992)) (collecting cases). "The country with the predominant interest is either 'the place where the allegedly privileged relationship was entered into,' or 'the place in which that relationship was centered at the time the communication was sent.'" *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 99 (2d Cir. 2020) (quoting *Astra*, 208 F.R.D. at 98).

It is undeniable that American privilege law would apply. This is a diversity case involving two American companies and a dispute over a contract governed under New York law—in other words, the relationship was centered on events occurring in the United States, not Venezuela. More specifically, New York law applies because it is the forum state. *See Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975) ("It is not contested that, in a diversity case, the issue of privilege is to be governed by the substantive law of the forum state, here, New York." (citing *Massachusetts Mutual Life Ins. Co. v. Brei*, 311 F.2d 463, 465–66 (2d Cir. 1962)).

Notwithstanding PDV USA's conclusory assertion that Interamerican's relationship with Gorrin was purely transactional, Interamerican has offered evidence of an attorney-client relationship. "The attorney-client privilege protects confidential communications between a lawyer and client relating to legal advice sought by the client." *In re Nassau Cnty. Grand Jury Subpoena Duces Tecum Dated June 24, 2003*, 4 N.Y.3d 665, 678, 797 N.Y.S.2d 790, 830 N.E.2d 1118 (2005) (citing *Priest v. Hennessy*, 51 N.Y.2d 62, 68–69, 431 N.Y.S.2d 511, 409 N.E.2d 983 (1980)). "The critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client." *Spectrum Sys. Int'l Corp. v. Chem. Bank,* 78 N.Y.2d 371, 379, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991); *see also Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 100 (S.D.N.Y. 2009) ("The key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential." (quoting *United States v. Dennis,* 843 F.2d 652, 657 (2d Cir.1988)).

The most compelling evidence that an attorney-client relationship existed is the Retention Agreement itself—which makes clear that Interamerican retained Gorrin's services to represent Interamerican in connection with the Contract. *See* Ex. A at ¶ 1. David Rivera, the president of Interamerican, sought Gorrin's legal expertise to navigate the legal complexities of PDV USA's relationship with its ultimate parent company, Petroleos de Venezuela ("PDVSA"), and the legal mechanisms available to the Venezuelan Government to exert influence over various sectors of its largely nationalized oil and gas industry.

In light of the compelling evidence that an attorney-client relationship existed between Interamerican and Gorrin, Interamerican urges the Court to allow it to amend its privilege logs—as it has already promised PDV USA it will do—to adequately represent the substance of the withheld WhatsApp messages. Indeed, many of the WhatsApp messages contain clearly privileged attorney-client communications, only reaffirming the necessity of withholding these messages from production. For instance, the WhatsApp messages include discussion of PDV USA's attempts to assign the Contract and meetings involving policy makers. Such relief will enable PDV

USA to evaluate the privilege claim for each of the withheld WhatsApp messages. *See Edebali v. Bankers Standard Ins. Co.*, No. CV147095JSAKT, 2017 WL 3037408, at *8 (E.D.N.Y. July 17, 2017) (declining to make sweeping determination as to privilege determination and requiring Defendant to amend privilege log to include all documents that it is withholding on a claim of privilege); *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 43 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014) (allowing, out of an abundance of caution, defendants to amend privilege log to include required information for documents not reviewed *in camera*).

The only remaining issue concerning communications with Esther Nuhfer has been resolved. Although Interamerican reserves the right to raise any argument regarding its privileged communications with counsel, it concedes that some privileged communications identified in PDV USA's Letter Motion were disclosed to third-parties, namely, Esther Nuhfer. Interamerican has produced those documents to PDV USA that fall within the discovery period.

Finally, Interamerican disputes PDV USA's characterization of the facts. First, despite PDV USA's insistence that Interamerican never performed any services, the record evidence shows that PDV USA only ceased making payments because it wanted to assign the Contract to PDVSA in Venezuela, which Interamerican refused to do. Indeed, internal correspondence showed that PDV USA was ready to continue making payments well after the Contract had expired in June 2017, and there has been no record evidence that PDV USA was ever dissatisfied with Interamerican's performance during the term of the Contract.

Further, PDV USA's claim that Interamerican paid third-parties with the funds it received from PDVSA somehow shows Interamerican never performed any services is unavailing. Interamerican has consistently maintained that it paid these funds as referral fees in connection with the solicitation of its consulting services. The alleged subcontract PDV USA references in its Letter Motion between Interamerican and Interglobal Yacht Management, LLC, consists of largely boilerplate language, was never executed, and is not reflective of the intent of the parties.

For the reasons set forth herein, Interamerican respectfully requests that the Court deny the relief sought in PDV USA's letter.

Respectfully submitted,

*/s/ Jason Johnson*
**Tucker H. Byrd**
Florida Bar No. 381632
**Jason Johnson**
Florida Bar No. 186538

**BYRD CAMPBELL, P.A**.
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
Facsimile: (407) 392-2286
Primary Email: TByrd@ByrdCampbell.com
Primary Email: JJohnson@ByrdCampbell.com
*Counsel for Defendant/Counter-Plaintiff*

Henry L. Saurborn, Jr.
Kaiser, Saurborn & Mair
30 Broad St., 37th Floor
New York, New York 10001
Telephone: (212) 338-9100
saurborn@ksmlaw.com
*Counsel for Defendant/Counter-Plaintiff*