# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

May 26, 2022

**VIA ECF**

The Honorable Robert W. Lehrburger
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:   <u>PDV USA, Inc. v. Interamerican Consulting, Inc., No: 1:20-cv-03699-JGK-RWL</u>

Dear Judge Lehrburger:

This letter follows Your Honor's April 19, 2022 Order denying plaintiff PDV USA Inc.'s ("PDV USA") letter motion to compel production of certain communications withheld by defendant Interamerican Consulting, Inc. ("Interamerican") on the basis of attorney-client privilege (the "Letter Motion," ECF No. 70). The Court denied the Letter Motion "without prejudice to renewal after [PDV USA] receive[d] a revised privilege log" from Interamerican. ECF No. 76. Interamerican produced revised privilege logs. PDV USA hereby renews its motion to compel with respect to seven WhatsApp messages involving Raul Gorrín described on pages 12–13 of Interamerican's amended privilege logs. Ex. 1 at 12-13 (the "Withheld Communications"). One message is from Mr. Gorrín to Mr. Rivera dated October 6, 2017, purportedly discussing the assignment of the contract at issue in this case (the "Agreement"). *Id.* at 12 (the "October 2017 Message"). The other six are messages involving purported Venezuelan attorney Jose Simon Elarba, Mr. Rivera, Mr. Gorrín, and Hugo Perera[1] dated November 10, 2017, described as "message[s] discussing proceedings before US Government Agency unrelated to specific claims in this litigation, implicating foreign legal issues." *Id.* (the "November 2017 Messages"). The Withheld Communications should be produced because (a) Interamerican has not demonstrated the elements of an attorney-client communication with Mr. Gorrín, (b) any privilege was waived by the presence of third parties on most of the Withheld Communications, and (c) in the alternative, the crime-fraud exception compels production or *in camera* review.

**The October 2017 Message must be produced because Interamerican has not demonstrated the elements of an attorney-client communication with Mr. Gorrín.** To support its privilege assertion, Interamerican relies exclusively on: (1) a purported engagement letter between Interamerican and Mr. Gorrín (Ex. 2) and (2) Mr. Rivera's "represent[ation] to counsel that Mr. Gorrin served as counsel to Interamerican in connection with the [Agreement]." ECF No. 75 at 1. However, the purported engagement letter is not admissible or reliable, and discovery in this case

---

[1] Hugo Perera was another associate of Mr. Rivera's, along with Esther Nuhfer and Raul Gorrín, to whom Mr. Rivera funneled millions of dollars from PDV USA.

Hon. Robert W. Lehrburger

casts serious doubt upon the credibility of Mr. Rivera's representation, including that the Withheld Communications were for legal rather than non-legal purposes.

*First*, the purported engagement letter is not admissible or reliable. *See Foresco Co., Ltd. v. Oh*, 2016 WL 11359167, at *2 (S.D.N.Y. May 23, 2016) ("a showing of privilege must be based on … admissible evidence"). The document contains no metadata. Interamerican has not explained how it was generated or maintained, or how Mr. Rivera supposedly obtained it from Mr. Gorrín. Although the letter is dated March 21, 2017, the earliest communication of any kind between Mr. Rivera and Mr. Gorrín on Interamerican's privilege logs is from more than six months later, in October 2017. The notion that Mr. Rivera and Mr. Gorrín formed an attorney-client relationship in March 2017 without having any communications within the scope of that engagement (or about the engagement itself) for more than six months strains credulity. Given that Mr. Rivera has been shown to have presented back-dated contracts to other third parties in this case, Letter Motion at 2, it is plausible that he and Mr. Gorrín did so here with this purported engagement letter. Under these circumstances, the court should not consider the purported engagement letter in determining whether Interamerican has met its burden. *Foresco*, 2016 WL 11359167, at *2.

*Second*, Interamerican has made inconsistent and contradictory claims to justify why in April and May of 2017 it funneled $3.75 million of PDV USA's money to a yacht managed by its purported attorney Mr. Gorrín. Letter Motion at 2. At the time, Mr. Rivera claimed these were payments pursuant to subcontracts, describing Mr. Gorrín, Ms. Nuhfer, and Mr. Perera as "subcontractor[s]," Ex. 3, and telling his accountant that the millions of dollars paid to Mr. Gorrín, Ms. Nuhfer, and Mr. Perera in 2017 were "subcontractor invoice payments," Ex. 4 at 1. Now, Mr. Rivera denies having ever entered into any subcontracts, Ex. 5 at 2, and claims that these payments were all "referral fees," ECF No. 75 at 3, a ludicrous proposition for which there is *zero* evidence.[2] Because Mr. Rivera cannot even credibly explain why he paid $3.75 million to Mr. Gorrín, the Court should not credit Mr. Rivera's "represent[ation] to counsel" in this action (ECF No. 75 at 1) that Mr. Gorrín provided legal advice about the Agreement.

*Third*, Interamerican's claims in this litigation about its communications with Mr. Gorrín are equally inconsistent and implausible. Interamerican has represented that (a) "Interamerican engaged in privileged, attorney-client communications ***prior to, during, and after the term of the Agreement*** with Raul Gorrín," Ex. 6 at 4;[3] (b) Mr. Gorrín provided legal services to Interamerican ***at least into 2020 in connection with this case***, Ex. 7; and (c) privileged communications with Mr. Gorrín concerned "***meetings involving policy makers***," ECF No. 75 at 2. Remarkably, Interamerican's latest privilege logs undermine *all of these* prior representations: there is not a single communication with Mr. Gorrín on the privilege logs from "prior to" or "during" the term of the Agreement; there are no communications with Mr. Gorrin from 2020 at all, let alone "in connection with this case"; and none of the Withheld Communications concern "meetings

---

[2] In any event, even if Mr. Rivera paid Mr. Gorrín $3.75 million in referral fees, that would only further suggest that the October 2017 Message was a business communication rather than a discussion of legal advice, and that Mr. Rivera was not paying Mr. Gorrín for legal services.

[3] The term of the Agreement was March 21, 2017 to June 21, 2017.

involving policy makers." Again, these inconsistencies cast significant doubt on Mr. Rivera's representations about his relationship with Mr. Gorrín.[4]

**Even assuming Mr. Gorrín acted as an attorney for Mr. Rivera, the October 2017 Message must be produced because there is no indication that Mr. Gorrín was advising on Venezuelan law.** Interamerican concedes, as it must, that Mr. Gorrín could not have advised on American law, only Venezuelan law. ECF No. 75 at 1-2. Yet, the description of the October 2017 Message—"discussion of assignment of Consulting Agreement," Ex. 1 at 12—says nothing about Venezuelan law, and the Agreement and draft assignment are governed by New York law. Thus, Venezuelan law was not plausibly relevant to a "discussion of assignment" of the Agreement. Furthermore, Interamerican went out of its way to describe other privilege log entries as "implicating foreign legal issues," but did not do so for the October 2017 Message.

**The November 2017 Messages must be produced because any privilege was waived by the presence of third parties Hugo Perera and Raul Gorrín.** Even accepting Interamerican's representation that Jose Simon Elarba was "counsel for Interamerican/David Rivera," Ex. 1 at 12 n.5, all of the November 2017 Messages included Hugo Perera, who is not an attorney. The presence of third parties Mr. Perera (and Mr. Gorrín) waives any privilege.[5]

**In the alternative, the crime fraud exception compels disclosure.** Discovery in this case demonstrates probable cause to believe that a crime or fraud has been attempted or committed and that the Withheld Communications were in furtherance thereof. For example, in early 2018, a few months after the Withheld Communications, Mr. Gorrín (who would be indicted later that year) and Mr. Rivera attempted to fraudulently compel Mr. Gorrín's yacht manager to sign a back-dated sham subcontract in order to paper over $3.75 million that Mr. Rivera funneled to Mr. Gorrín. Letter Motion at 2. Furthermore, evidence suggests that Mr. Gorrín's purported law partner "Perdomo" (Ex. 2) was criminally involved in the yacht payments. "Perdomo" likely refers to either Maria Alexander Perdomo, Mr. Gorrín's wife and nominal owner of the same yacht used to conceal the $3.75 million, Ex. 9 at 50:5-51:7, 117:5-118:20, or Gustavo Perdomo, Mr. Gorrín's brother in law, who in 2017 served as a member of Interglobal Yacht Management, Ex. 9 at 110:17-113:2. Both Perdomos have been sanctioned by the U.S. government, including for purchasing yachts with illicit profits for a Venezuelan Treasurer. Ex. 10 at 3. In addition, Hugo Perera, a participant in the November 2017 Messages, invoked his Fifth Amendment privilege in response to every question at deposition concerning the Agreement, Mr. Rivera, and Mr. Gorrín, including questions concerning an email with Mr. Gorrín and Mr. Rivera about draft subcontracts from November 3, 2017, only one week before the November 2017 Messages.[6] Mr. Rivera himself is under criminal investigation pertaining at least in part to the Agreement. All of this evidence warrants production of the Withheld Messages under the crime-fraud exception or, at minimum, *in camera* review. *See Michael Grecco Prods. Inc. v. Alamy Inc.*, 2020 WL 5848613, at *2 (E.D.N.Y. Oct. 1, 2020).

---

[4] Judge Marcia G. Cooke of the Southern District of Florida recently entered judgment in favor of the Federal Election Commission against Mr. Rivera for $456,000 and found that Mr. Rivera's claim that he never received notice of the FEC claim was "**less than honest and forthright**," and observed that evidence in that case "**further undermine[d] [Mr. Rivera's] veracity**[.]" Ex. 8 at 8-9 (emphasis added).

[5] PDV USA asked for but never received an explanation for why Interamerican is withholding communications with Hugo Perera.

[6] Ex. 11 at 62:10-13. *See also id.* at 33:16-18; 34:1-4; 43:18-22.

Hon. Robert W. Lehrburger

        Respectfully submitted,

        WILLKIE FARR & GALLAGHER LLP
        By: */s/ Jeffrey B. Korn*

        Jeffrey B. Korn
        Brady M. Sullivan
        787 Seventh Avenue
        New York, NY 10019
        (212) 728-8000
        JKorn@willkie.com
        BSullivan@willkie.com

        *Attorneys for Plaintiff*

cc:  All counsel of record (by ECF)