1           UNITED STATES DISTRICT COURT

2           SOUTHERN DISTRICT OF NEW YORK

3               CASE NO.:  20-CV-3699

4    PDV USA, INC.,

5                   Plaintiff,

6    vs.

7    INTERAMERICAN CONSULTING INC.,

8                   Defendant.

     _____/

9

10

11           VIDEOTAPED DEPOSITION OF

12        INTERGLOBAL YACHT MANAGEMENT, LLC

13              BY:  JOEL BRAKHA

14

15

16          Monday, February 28, 2022

              10:07 a.m. - 2:58 p.m.

17

18

19           Alexander F. Fox, P.A.

            1 Alhambra Plaza, Suite 1225

20             Coral Gables, Florida

21

22

23        Stenographically Reported By:

             Gina Rodriguez, RPR, CRR

24

25

```
 1    APPEARANCES:
 2

      On behalf of Plaintiff PDV USA, Inc.:
 3        WILLKIE FARR & GALLAGHER LLP
          787 Seventh Avenue
 4        New York, New York 10019
          (212)728-8000
 5        BY:  BRADY SULLIVAN, ESQUIRE
          bsullivan@willkie.com
 6        BY:  JEFFREY B. KORN, ESQUIRE
          jkorn@willkie.com
 7
 8
      On behalf of Defendant Interamerican Consulting
 9    Inc.:
          BYRD CAMPBELL
10        180 Park Avenue North
          Suite 2A
11        Winter Park, Florida 32789
          (407)392-2285
12        BY:  JASON JOHNSON, ESQUIRE
          jjohnson@byrdcampbell.com
13
14
15    On behalf of the Deponent Joel Brakha:
          ROBERT L. GARDANA, P.A.
16        12350 S.W. 132nd Court
          Suite 204
17        Miami, Florida 33186
          (305)358-0000
18        BY:  ROBERT L. GARDANA, ESQUIRE
          gardanalaw@gmail.com
19
          ALEXANDER F. FOX, P.A
20        1 Alhambra Plaza
          Suite 1225
21        Coral Gables, Florida 33134
          (305)448-1033
22        BY:  ALEXANDER F. FOX, ESQUIRE
          alexfox@alexanderfoxlaw.com
23
24
25
```

1    APPEARANCES CONTINUED:

2    ALSO PRESENT:

3    Michael Montalvo, Videographer

4    David Rivera

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    I N D E X
2    Examination                              Page
     JOEL BRAKHA
3    Direct            By Mr. Sullivan           7
     Cross             By Mr. Johnson          155
4    Cross             By Mr. Gardana          167
5                   E X H I B I T S
6    No.                                       Page
7    Exhibit 1     Subpoena to Testify at a       8
                   Deposition in a Civil Action
8
     Exhibit 2     Notice of Subpoena to         13
9                  Interglobal Yacht Management,
                   LLC for the Production of
10                 Documents
11   Exhibit 3     2017 Florida Limited          33
                   Liability Company Annual
12                 Report
13   Exhibit 4     2022 Florida Limited          33
                   Liability Company Annual
14                 Report
15   Exhibit 5     2017 Florida Limited          45
                   Liability Company Annual
16                 Report
17   Exhibit 6     2022 Florida Limited          45
                   Liability Company Annual
18                 Report
19   Exhibit 7     Consulting Agreement          59
20   Exhibit 8     Contract for Services         73
21   Exhibit 9     2017 Consulting Payments from 73
                   Interamerican Consulting,
22                 Inc. to Interglobal Yacht
                   Management, LLC
23
     Exhibit 10    Text messages                 92
24
25

1                    E X H I B I T S
2   No.                                                    Page
3   Exhibit 11    Contract for Services between    102
                  Interamerican Consulting,
4                 Incorporated and PG and
                  Associates, IYM SUPPLEMENTAL
5                 RESPONSE 000288
6   Exhibit 12    Contract for Services between    102
                  Interamerican Consulting,
7                 Incorporated and
                  Communicationg Solutions,
8                 SUPPLEMENTAL RESPONSE 000290
9   Exhibit 13    Ferrari S.p.A. - Sales           109
                  Experience Web Survey, email
10                dated 4/7/16, IYM
                  SUPPLEMENTAL RESPONSE 000153
11
    Exhibit 14    Yacht Management Contract        115
12                between Cascading
                  Investments, Ltd and
13                Interglobal Yacht Management,
                  LLC, IYM SUPPLEMENTAL
14                RESPONSE 000267- 286
15  Exhibit 15    LP Los Gastos Fijos email        120
                  dated 3/11/17, IYM
16                SUPPLEMENTAL RESPONSE 000082
17  Exhibit 16    Letter dated 10/19/21 from       127
                  Robert L. Gardana re Subpoena
18
    Exhibit 17    email dated 9/5/17, LP edo de    133
19                Cta a 9-1-17
20  Exhibit 18    Photo                            139
21  Exhibit 19    Interglobal Yacht Management,    139
                  LLC, M/Y La Pellegrina -
22                Escrow Account Ending
                  Balance:  $0.00, IYM
23                SUPPLEMENTAL RESPONSE 000186
                  - 264
24
25

1           THE VIDEOGRAPHER:  Good morning.  We're now

2      on the video record.  My name is

3      Michael Montalvo on behalf of Veritext Legal

4      Solutions.  Today is Monday, February 28, 2022.

5      And the time is 10:07 a.m.  This is the

6      deposition of Joel Brakha in the matter of

7      PDV USA Inc. versus Interamerican Consulting

8      Inc.

9           May counsel please state their appearances

10      for the record and after this the court reporter

11      will swear in the witness.

12           MR. SULLIVAN:  Brady Sullivan for PDV USA.

13           MR. JOHNSON:  Jason Johnson of the

14      Byrd Campbell firm of Winter Park, Florida for

15      Interamerican Consulting.

16           MR. GARDANA:  Robert Gardana and

17      Alexander Fox on behalf of the deponent.

18           MR. KORN:  Jeffrey Korn of Willkie Farr &

19      Gallagher.

20           THE COURT REPORTER:  Raise your right hand,

21      please.

22           Do you swear that the testimony you're

23      about to give will be the truth, the whole

24      truth, and nothing but the truth?

25           THE WITNESS:  Yes.

1    Thereupon:

2                        JOEL BRAKHA,

3    having been first duly sworn, was examined and

4    testified as follows:

5                     DIRECT EXAMINATION

6    BY MR. SULLIVAN:

7         Q.    Good morning, Mr. Brakha.

8         A.    Good morning.

9         Q.    Could you please state your full name for

10   the record.

11        A.    Joel Brakha.

12        Q.    What is your current occupation?

13        A.    Yacht broker.

14        Q.    For whom?

15        A.    Interglobal Yacht Sales.

16        Q.    Is there any reason you're not able to

17   provide truthful testimony today?

18        A.    No.

19        Q.    Do you understand that you're under oath

20   for today's deposition?

21        A.    Yes.

22        Q.    Ground rules for today are pretty simple.

23   I'll ask you questions, you'll answer them.  I'll

24   just ask that you please let me finish my question

25   before giving your answer, and, likewise, I'll try to

1          A.   I don't know if he's got a house in the
2     Bahamas or not.
3          Q.   What about the other locations?  Miami?
4          A.   Miami, yeah.
5          Q.   St. Martin?
6          A.   I don't know.  Not that I know of.
7          Q.   St. Barts?
8          A.   Not that I know of.  He might have.  I
9     don't know.
10          Q.   Dominican Republic?
11          A.   I don't know.
12          Q.   Curacao?
13          A.   I don't know.
14               MR. SULLIVAN:  I think I have no further
15          questions subject to any -- any other questions.
16               MR. GARDANA:  Do you have anything?
17               MR. JOHNSON:  I do.  I have some questions.
18               MR. GARDANA:  Why don't you go ahead.
19               MR. JOHNSON:  Sure.  Thank you.
20               You want to turn my mic on?  Okay.
21                    CROSS-EXAMINATION
22     BY MR. JOHNSON:
23          Q.   You testified that you met with
24     represent- -- excuse me -- representatives of the
25     United States Government with respect to the issues

1    you?

2         A.    I don't know.

3         Q.    And you stated that you only met Mr. Rivera

4    once before today, correct?

5         A.    Correct.

6         Q.    But you can still recognize him from this

7    photo, correct?

8         A.    Yes.

9         Q.    But not the woman who is standing to his

10   right in the photo, correct?

11        A.    Correct.

12        Q.    You testified that Mr. Gorrin told you that

13   you would be receiving payments from someone based on

14   a closed transaction, correct?

15             MR. SULLIVAN:   Objection, misstates

16        testimony.

17        A.    I don't know if it was a closed

18   transaction, ongoing transaction.   I know it was a

19   transaction from what he told me.

20   BY MR. JOHNSON:

21        Q.    And was it your understanding that those

22   payments, while coming from someone else, were

23   payments to Interglobal Yacht Management on behalf of

24   Mr. Gorrin?

25        A.    I didn't know where they were coming from.

1    He -- go ahead.

2        Q.   But was it your understanding that whoever

3    was making the payments, they were payments to your

4    company for amounts that Mr. Gorrin owed?

5        A.   Yes.

6        Q.   Okay.  And payments that Interglobal Yacht

7    Management received from Interamerican Consulting

8    were received all in 2017, correct?

9        A.   Yes.

10       Q.   And so when Mr. Gorrin told you, you were

11   going to be receiving payments, wouldn't that

12   conversation have had to have taken place prior to

13   you receiving the payments from

14   Interamerican Consulting?

15       A.   I would assume so.

16       Q.   Well, if not, then, is it possible he was

17   referring to some other entity that was going to pay

18   money to you?

19       A.   No, he didn't mention an entity per se.

20       Q.   Okay.

21       A.   He just mentioned a name.  As I said

22   before, Mr. Rivera's, as his partner, going to be

23   paying -- depositing.

24       Q.   Okay.

25            You understood that the monies that

1  Interamerican Consulting paid to Interglobal Yacht
2  Management were not solely for amounts that
3  Mr. Gorrin already owed to your company, but were
4  also for future amounts he might owe for servicing
5  of the yacht; is that correct?
6      A.   Could -- repeat.
7      Q.   You understood that the monies that my
8  client's company paid you, Interamerican Consulting,
9  were not solely for amounts that Mr. Gorrin already
10  owed, but were also for amounts that he would owe in
11  the future; is that correct?
12     A.   I mean, it depends on the time, whatever
13  the credit was.  I don't know . . .
14     Q.   Well, let's just talk about that because
15  that's kind of reflected in this Exhibit 19 that we
16  just went through, right?
17     A.   Uh-huh.
18     Q.   This escrow ledger, this escrow account
19  ledger shows a negative balance on March 24th, 2017,
20  of $196,001 and some odd cents.  The last digit is
21  cut off.
22     A.   Okay.
23     Q.   That's the last entry before the first
24  payment by Interamerican Consulting, right?
25     A.   Uh-huh.

1    the negative.  Outside of those $50,000 in

2    miscellaneous credits, the only money coming into

3    this account to fund the boat were the payments from

4    Interamerican Consulting; is that right?

5         A.    Well, there were supposed to be one payment

6    not coming, you know, in separate, that's how they

7    came, that's how they -- we accounted them for.

8    There was supposed to be a one payment or one wire --

9         Q.    Okay.

10        A.     -- coming in to take care of, and, of

11   course, if the boat was in positive, we didn't really

12   need to have more deposits if it was not negative or

13   coming to a negative amount.

14        Q.    Well, regardless of how many --

15        A.    So that's why the only money that funded

16   was that money for that period of time.

17        Q.    So regardless of how many deposits

18   Interamerican Consulting made, they made a certain

19   chunk of money deposited.  I think the number was

20   $3.75 million, right?

21        A.    Yes.

22        Q.    And your ledger reflects that that money

23   was used to fund the servicing and operation of the

24   yachts, correct?

25        A.    Correct.

1          Q.    Mr. Gorrin's yachts?

2          A.    Yes.

3          Q.    So all the monies received by

4    Interglobal Yacht Management from

5    Interamerican Consulting were used to service

6    Mr. Gorrin's yachts?

7          A.    Correct.

8          Q.    And none of it was paid directly to

9    Mr. Gorrin, correct?

10         A.    Zero.

11         Q.    Okay.  You refer in some of these emails to

12   Mr. Gorrin as "mi rey," and I don't speak Spanish,

13   it's not my --

14         A.    No, it's a slang for --

15         Q.    Does it mean "my king"?

16         A.    Yeah, but it's like "my brother" or

17   whatever.

18         Q.    It is a term of endearment?

19         A.    No.

20         Q.    Does it -- do you know what that means?

21   It's an expression of closeness with somebody?

22         A.    Extra dear.  Like extra dear, you mean?

23         Q.    Well, a term of endearment would be like me

24   calling my wife "my darling" or something like that.

25   It's an expression of a close relationship.