June 29, 2022
Honorable Robert E. Lehrburger
500 Pearl Street
New York, NY 10007-1312
RE: ***PDV USA, Inc. v. Interamerican Consulting, Inc., No. 20-cv3699 (JGK)***

Dear Judge Lehrburger:

This firm represents Interamerican Consulting Inc. ("Interamerican") in the above-referenced matter. In accordance with Local Civil Rule 37.2 and Section II(D) of Your Honor's Practices, we submit this letter-motion to respectfully request a pre-motion conference to resolve a discovery dispute between the parties. PDV USA has refused to provide adequate answers to several of Interamerican's Interrogatories (collectively, the "Interrogatories"), and produce relevant documents relating to PDV USA's hiring of third-party government relations firms.[1]

By way of background, Citgo Petroleum Corporation ("Citgo") was interested in hiring Interamerican, a Florida-based consulting company founded by former U.S. Congressman David Rivera, to develop a strategic plan to create a separate and distinct identity in the United States from its ultimate parent, Petroleos de Venezuela, S.A. ("PDVSA")—an oil and natural gas company controlled by the Bolivarian Republic of Venezuela. (*See* Counterclaim at ¶ 1). Citgo specifically sought out Interamerican and its principal, former U.S. Congressman David Rivera, because of his exceptional experience and expertise in the U.S. public and private sectors. (*Id.*). To entice Interamerican to accept the engagement, Citgo offered to pay Interamerican consulting fees of $50 million—considering the billions of dollars in oil revenues at stake, not an unreasonable fee, but an amount nevertheless unilaterally determined and offered by Citgo. (*Id.*).

On March 21, 2017, Citgo, acting through its United States-based affiliate, PDV USA, entered into a Contract ("Contract") with Interamerican for Interamerican to provide these strategic consulting services. (*Id.* at ¶ 2). PDV USA never expressed any dissatisfaction with Interamerican's performance. (*Id.*). It was not until PDV USA proposed assigning the Contract to PDVSA, a foreign entity, that Interamerican first encountered any resistance to receiving payments to which Interamerican was due under the Contract. (*Id.*).

Following consultation with the Department of Justice (the "DOJ"), and over three years after failing to assign the Contract, PDV USA brought this lawsuit, alleging—in an inconsistent and contradictory fashion—that Interamerican never actually performed under the Contract and that Interamerican was unjustly enriched because the Contract was always a sham. (Ex. A at 13; Am. Compl. at ¶¶ 6, 64–68, 73–78). PDV USA's own filings with this Court and conduct in discovery have since revealed the absurdity of PDV USA's theory. (*See* Ex. D at 2–3). PDV USA now apparently believes—without any evidence or legal support—that it should be able to recover funds it sent to Interamerican as part of an alleged phantom money laundering scheme. (*Id.*).

---

[1] A copy of the Interamerican's Second Set of Interrogatories to PDV USA is attached hereto as Exhibit "A." Interamerican served a deficiency letter (the "Deficiency Letter"), outlining the deficiencies in PDV USA's Responses and Objections to Defendant's Second Set of Interrogatories (the "Responses and Objections"), a true and correct version containing amendments irrelevant to this motion is attached as Exhibit "B." A true and correct copy of the Deficiency Letter is attached hereto as Exhibit "C." The parties held a meet-and-confer on June 23, 2022 and were unable to resolve the dispute. The parties, however, have agreed that all attachments to this letter may be filed publicly.

**VIA ECF**

In searching for any evidence to justify its outlandish claims, PDV USA has demanded that Interamerican engage in wide-ranging discovery, insisting that Interamerican run approximately 34 search terms across multiple platforms, including Rivera's current and former email accounts, WhatsApp account and text messages. Interamerican has produced over 18,000 text and WhatsApp messages, and hundreds of emails and other documents. Nothing in Interamerican's production even remotely suggests that Interamerican was engaged in illicit activity. If anything, the evidence has shown that PDV USA believed it still owed Interamerican amounts due under the Contract well after the expiration of the Contract in June 2017, and only stopped making payments after Interamerican refused to assign the Contract to an entity controlled by a foreign and—at least at the times—hostile government.

Nevertheless, PDV USA has refused to answer basic interrogatories about its alleged dissatisfaction with Interamerican's performance under the Contract, the involvement of the Department of Justice in bringing this lawsuit, and its hiring of third-party consultant firms— which Interamerican recommended as part of its services—to separate PDV USA from its foreign affiliate and to improve PDV USA's standing in the United States. Further, PDV USA has refused to produce documents relating to its hiring of third-party consultant firms, despite its prior representations that it would run searches for these documents. Interamerican addresses each of these items below:

**<u>Interrogatory No. 4</u>** seeks identification of internal communications "regarding any dissatisfaction with the performance of Interamerican under the Contract." (Ex. A at 5). In its Responses and Objections, PDV USA never actually identifies any communications regarding its alleged dissatisfaction with Interamerican's performance, or even if any such communications exist. (Ex. B at 7). Instead, PDV USA confusingly contends that PDV USA was "not the intended beneficiary of the Contract" and therefore, "communications . . . would not have occurred 'within' PDV USA." (*Id.*). This statement, however, is contrary to the allegations in PDV USA's Amended Complaint that (1) "Interamerican failed to perform any services 'to PDV USA's sole satisfaction,'" and (2) "PDV USA was not and is not satisfied with any services purported to be rendered to PDV USA under the Agreement." (Am. Compl. at ¶¶ 41, 42). Moreover—and at the risk of stating the patently obvious—PDV USA (not PDVSA or any other entity) was the only party with which Interamerican was in privity under the Contract.  PDV USA should be compelled to identify any documents or communications revealing its purported dissatisfaction with Interamerican's alleged nonperformance.[2]

**<u>Interrogatory No. 11</u>** seeks the identification of "the person or persons within the U.S. Department of Justice with whom anyone within the PDV entities consulted . . . as stated on the DOJ Presentation." (Ex. A at 6).[3] PDV USA answered and objected under a narrowed interpretation of Interrogatory No. 11 by stating "PDV USA states that no persons within any PDV

---

[2] Indeed, in PDV USA's Responses to Interamerican's Request for Admissions, PDV USA denies that it "never expressed any dissatisfaction with Interamerican's performance to Interamerican between March 21st 2017 and June 21st 2017." (Ex. E at 10).

[3] The "DOJ presentation" refers to the PDVSA 2019-2020 Presentacion de Resultados. It was attached as an exhibit to the Interrogatories, it shows this lawsuit was brought after consultation with the DOJ. (Ex. A at 13).

entity consulted, met with, discussed, or in any way communicated with the DOJ." (Ex. B at 13). Interamerican originally defined the term "PDV entities" as "PDV USA, PDVSA Ad Hoc Board, PDV Holding, Inc., and any other PDV subsidiary or affiliate in the world." (Ex. A at 4).   PDV USA, however, modified and limited the term "PDV entities" in its Responses and Objections to refer only to "PDV USA, the members of the PDVSA Ad Hoc Board, and PDV Holding, Inc.," omitting PDVSA from its definition. (Ex. B at 3–4). PDV USA should be compelled to answer this interrogatory under Interamerican's definition of the term "PDV entities."[4]

Further, this Court should reject PDV USA's contention that this interrogatory seeks irrelevant information. (Ex. B at 12). PDV USA has injected the relevance of communications with the DOJ into this lawsuit. Despite PDV USA's thinly-veiled attempt to frame this as a simple contract dispute, the Amended Complaint is riddled with allegations that the Contract itself is a "sham," and many of PDV USA's pleadings have suggested or outright accused Interamerican of illegal activity. PDV USA must be compelled to respond to the interrogatory under the proper definition of the term "PDV entities."

**Interrogatory No. 13** seeks identification of "documents, communications, meetings, or any and all communications, in which hiring third-party government relations firms . . . was discussed" and "personnel of PDV USA or any of the PDV entities who were involved in these communications." (Ex. A at 6). PDV USA objects, arguing that Interrogatory No. 13 is irrelevant. (Ex. B at 14). But this is contrary to PDV USA's allegations that Interamerican ". . . did not provide CLIENT with strategic consulting . . .;" ". . . did not develop and work with CLIENT to organize and implement a multi-faceted strategy. . .;" and ". . . did not identify opportunities to build long-term relationships among key third-parties. . ." (Am. Compl. at ¶ 42). As Interamerican has stated, several of the third-party government relations firms identified in this Interrogatory were hired in connection with Interamerican's services to PDV USA under the Contract. Further, PDV USA cannot simultaneously contend that Interamerican "did not perform any of the services it was contracted to perform" and complain that gathering information related to Interamerican's services is "unduly burdensome." Nor can PDV USA claim that the term "third-party government relations firms" is vague as Interrogatory No. 13 gives examples of firms to which it is referring.

**Third-party government relations firms:** Interamerican requested that PDV USA run search terms relating to its decision to hire third-party government relations firms. Interamerican has always maintained that it recommended several of these firms as part of its services to PDV USA under the Contract. PDV USA initially objected but ultimately—after much negotiation—agreed to run the search terms. Despite running the search terms, PDV USA has since refused to produce any documents relating to the hiring of third party consulting firms.  PDV USA must be compelled to produce documents for which it agreed to search.

For the foregoing reasons, Interamerican respectfully requests a pre-motion conference.

---

[4] PDV USA has recently represented that information relating to PDVSA is not in its client's custody, possession, or control. This argument strains reason. Not only does PDV USA's answer to Interrogatory No. 11 make clear that it has access to information for other PDV entities, but PDV USA cannot seriously contend that it does not have information relating to ultimate parent, especially when it also claims that PDV USA existed solely to provide shareholder services to PDVSA. (Ex. B at 4).

Respectfully submitted,

*/s/ Jason W. Johnson*
**Tucker H. Byrd**
Florida Bar No. 381632
**Jason Ward Johnson**
Florida Bar No. 186538
**BYRD CAMPBELL, P.A**.
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
Facsimile: (407) 392-2286
Primary Email: TByrd@ByrdCampbell.com
Primary Email: JJohnson@ByrdCampbell.com
*Counsel for Defendant/Counter-Plaintiff*

Henry L. Saurborn, Jr.
Kaiser, Saurborn & Mair
30 Broad St., 37th Floor
New York, New York 10001
Telephone: (212) 338-9100
saurborn@ksmlaw.com
*Counsel for Defendant/Counter-Plaintiff*

4