## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PDV USA, Inc.<br><br>        Plaintiff,<br><br>v.<br><br>Interamerican Consulting, Inc.<br><br>        Defendant. | No. 20-cv-03699-JGK<br><br>**ANSWER AND DEFENSES TO SECOND AMENDED COMPLAINT AND COUNTERCLAIM AND DEMAND FOR JURY TRIAL** |

Defendant, Interamerican Consulting, Inc. ("Interamerican" or "Defendant"), answers and asserts defenses to the Second Amended Complaint, and further counterclaims, as follows:

## ANSWER TO SECOND AMENDED COMPLAINT

### AS TO "THE NATURE OF THE CASE"

1.      Interamerican admits that on March 21, 2017, PDV USA, Inc. ("PDV USA") and Interamerican entered into the referenced Agreement but denies Plaintiff's characterization of the Agreement.[1]

2.      Interamerican lacks sufficient knowledge to either admit or deny the allegations of Paragraph 2 of the Second Amended Complaint, and therefore denies the same. Strict proof is demanded thereof. [2]

3.      Interamerican denies the allegations of Paragraph 3 of the Second Amended Complaint to the extent they alter, vary, or contradict the terms of the Agreement.  Interamerican

---

[1] PDV USA's Second Amended Complaint is littered with inflammatory, salacious, and fundamentally irrelevant allegations. Interamerican does not address these in its Answer.

[2] Many of the paragraphs in PDV USA's Second Amended Complaint include multiple allegations. This is not best practice and needlessly makes responding to the allegations raised therein more difficult. *See Politico v. Promus Hotels, Inc.*, 184 F.R.D. 232, 234 (E.D.N.Y. 1999) ("The complaint should, as much as possible, avoid multiple allegations per paragraph.").

further denies the characterization of the purpose of the Agreement. Interamerican also denies that it is unable to point to any evidence that it failed to perform under the Agreement.

4.    Interamerican admits it paid the amounts transferred to the entities identified in Paragraph 4 of the Second Amended Complaint as referral fees in connection with the solicitation and retention by PDV USA of Interamerican's services. Otherwise, Interamerican denies the allegations of Paragraph 4 of the Second Amended Complaint.

5.    Interamerican admits it paid referral fees in connection with the solicitation and retention by PDV USA of Interamerican's services but denies PDV USA's characterization of the role that Raul Gorrin, Hugo Perera, and Esther Nuhfer had in facilitating PDV USA's engagement and retention by PDV USA of Interamerican's services. Otherwise, Interamerican denies the allegations of Paragraph 5 of the Second Amended Complaint.

6.    Interamerican admits that certain documents described as subcontracts, which are referenced in Paragraph 6 of the Second Amended Complaint, were created in coordination with entities that received referral fees in connection with the solicitation and retention by PDV USA of Interamerican's services by PDV USA. Interamerican further admits that David Rivera signed these documents and that they were created in connection with its 2017 tax return. Otherwise, Interamerican denies the allegations of Paragraph 6 of the Second Amended Complaint.

7.    Interamerican admits the allegations of Paragraph 7 of the Second Amended Complaint, insofar as they allege that Interamerican received partial payments for services rendered to PDV USA under the Agreement and paid referral fees to third parties. Otherwise, Interamerican denies the allegations of Paragraph 7 of the Second Amended Complaint.

8.    Interamerican lacks sufficient knowledge to either admit or deny the allegations of Paragraph 8 of the Second Amended Complaint, including the characterization of actions by the

United States Government, the Venezuelan government, and the Delaware Court of Chancery, and therefore denies the same. Strict proof is demanded thereof.

9.      Interamerican denies the allegations of Paragraph 9 of the Second Amended Complaint to the extent they purport to be premised upon any legitimate basis for liability or recovery.

10.     Interamerican denies the allegations of Paragraph 10 of the Second Amended Complaint to the extent they purport to be premised upon any "alternative" theory for liability or recovery. Further, Interamerican denies having breached the Agreement or any liability for disgorgement. Rather, PDV USA breached the Agreement by failing to pay Interamerican $30 Million due to Interamerican under the Agreement.

## AS TO "THE PARTIES"

11.     Interamerican lacks sufficient knowledge to either admit or deny the allegations of Paragraph 11 of the Second Amended Complaint, including the characterization of the purpose of PDV USA, the residency of PDV USA's executives, or any action by the PDVSA Ad Hoc Board following imposition of sanctions against Venezuela, and, therefore, denies the same. Strict Proof is demanded thereof.

12.     Interamerican admits the allegations of Paragraph 12 of the Second Amended Complaint.

## AS TO "JURISDICTION AND VENUE"

13.     Interamerican admits the allegations of Paragraph 13 of the Second Amended Complaint for jurisdictional purposes only under 28 U.S.C. § 1332.

14.     Interamerican admits the allegations of Paragraph 14 of the Second Amended Complaint only for establishing venue in the U.S. District Court for the Southern District of New York.

15.     Interamerican denies the allegations of Paragraph 15 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.

## AS TO "FACTUAL BACKGROUND"

**As to "The Formation and Terms of the Agreement"**

16.     Interamerican admits that on March 21, 2017, Interamerican and PDV USA entered into the Agreement to provide "strategic consulting services."  Interamerican lacks sufficient knowledge to either admit or deny the allegations in the second sentence of Paragraph 16 of the Second Amended Complaint, and therefore denies the same. Strict proof is demanded thereof.

17.     Interamerican admits the allegations of Paragraph 17 of the Second Amended Complaint, insofar as they allege that Interamerican was approached by an executive of Citgo on behalf of PDV USA to solicit Interamerican's services for PDV USA, and that Interamerican was offered $50 million to render strategic consulting services to PDV USA. Otherwise, Interamerican denies the allegations of Paragraph 17 of the Second Amended Complaint.

18.     Interamerican admits the allegations of Paragraph 18 of the Second Amended Complaint, insofar as they allege that David Rivera served in the 112th Congress of the United States House of Representatives from 2011 through 2013. Otherwise, Interamerican denies the allegations of Paragraph 18 of the Second Amended Complaint.

19.     Interamerican denies the allegations of Paragraph 19 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.

20.     Interamerican denies the allegations of Paragraph 20 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.

21.     Interamerican denies the allegations of Paragraph 21 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement. Interamerican further denies that David Rivera drafted Exhibit A to the Agreement.

22.     Interamerican denies the allegations of Paragraph 22 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.  Interamerican further denies the word "CLIENT" refers to PDVSA.

23.     Interamerican denies the allegations of Paragraph 23 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.  Interamerican further denies the word "CLIENT" refers to PDVSA, but admits the Agreement identified Pio Gonzalez as the "authorized representative" for PDV USA to whom progress reports were sent. Interamerican admits that the Agreement appears to have been signed by Guillermo Blanco in his capacity as president of PDV USA and Guillermo Blanco appears to have had a PDVSA email address. Interamerican lacks knowledge sufficient to either admit or deny PDV USA's allegation that Guillermo Blanco "functionally served in the Office of the President of PDVSA," and, therefore denies the same. Strict proof is demanded thereof.  Interamerican further admits it was directed to provide all reports to Pio Gonzalez. Otherwise, Interamerican denies the allegations of Paragraph 23 of the Second Amended Complaint.

24.     Interamerican denies Paragraph 24 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.

25.     Interamerican denies the allegations of Paragraph 25 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.  Interamerican further denies the specific allegation that it was required to provide "*written* 'bi-weekly report[s] detailing the activities that it has carried out during that period to achieve the stated goals and purposes of the

Agreement.'" (emphasis added). The Agreement includes no such requirement and PDV USA conspicuously did not include in the term "written" in any provision of the Agreement that it quoted because no such requirement exists.

26. Interamerican denies the allegations of Paragraph 26 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.

27. Interamerican denies the allegations of Paragraph 27 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.

28. Interamerican denies the allegations of Paragraph 28 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.

29. Interamerican denies the allegations of Paragraph 29 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.

30. Interamerican denies the allegations of Paragraph 30 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.

31. Interamerican denies the allegations of Paragraph 31 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.  Interamerican further denies that it breached the Agreement.

**As to "Interamerican Failed to Perform Under the Agreement and Breached Numerous Provisions of the Agreement"**

32. Interamerican denies the allegations in the first sentence of Paragraph 32 of the Second Amended Complaint. Interamerican admits the allegations in the second sentence of Paragraph 32 of the Second Amended Complaint but denies any implication or characterization that Interamerican never provided services required under the Agreement.

33. Interamerican denies the allegations of Paragraph 33 of the Second Amended Complaint.

34. Interamerican admits submitting all reports required under the Agreement, including oral reports and services over the phone to PDV USA. Interamerican lacks sufficient knowledge to either admit or deny the allegations in the fourth sentence of Paragraph 34 of the Second Amended Complaint, relating to internal documents within Citgo or PDV USA or within public and private stakeholders, and therefore denies the same. Strict proof is demanded thereof. Otherwise, Interamerican denies the allegations in Paragraph 34 of the Second Amended Complaint.

35. Interamerican denies the allegations of Paragraph 35 of the Second Amended Complaint.

36. Interamerican specifically denies PDV USA's characterization of its lawful payment of referral fees to third-party entities as "funneling money" but admits facilitating a meeting between PDV USA executives and Exxon Mobil. Interamerican otherwise denies the allegations of Paragraph 36 of the Second Amended Complaint, including PDV USA's characterization of the meeting referenced therein.

37. Interamerican admits the meeting referenced in Paragraph 37 of the Second Amended Complaint never occurred. Otherwise, Interamerican denies the allegations of Paragraph 37 of the Second Amended Complaint.

38. Interamerican denies the allegations of paragraph 38 of the Second Amended Complaint.

39. Interamerican admits the allegations of Paragraph 39 of the Second Amended Complaint insofar as they allege Interamerican submitted all required reports to an authorized representative for PDV USA. Otherwise Interamerican denies the allegations of Paragraph 39.

40.     Interamerican admits submitting all required reports but denies PDV USA's characterization of the reports in Paragraph 40 of the Second Amended Complaint.  Interamerican further denies that the level of detail in the reports failed to comply with the Agreement, or that it otherwise had failed to inform PDV USA of the efforts undertaken.

41.     Interamerican admits submitting all required reports but denies PDV USA's characterization of the reports in Paragraph 41 of the Second Amended Complaint.  Interamerican further denies that the level of detail in the reports failed to comply with the Agreement, or that it otherwise had failed to inform PDV USA of the efforts undertaken.

42.     Interamerican admits submitting all required reports but denies PDV USA's characterization of the final report in Paragraph 42 of the Second Amended Complaint. Interamerican further denies that the level of detail in the final report failed to comply with the Agreement, failed to inform PDV USA of the efforts undertaken, or failed to explain what Interamerican's recommendations were.

43.     Interamerican denies the allegations of Paragraph 43 of the Second Amended Complaint.  Interamerican further denies it failed to provided services for which it was engaged by PDV USA.

44.     Interamerican admits the allegations of Paragraph 44 insofar as they allege Interamerican provided invoices for payment to PDV USA that described services it rendered as "strategic consulting services." Otherwise, Interamerican denies the allegations of Paragraph 44.

45.     Interamerican denies the allegations of Paragraph 45 of the Second Amended Complaint.  Interamerican further denies that PDV USA ever expressed any dissatisfaction with Interamerican's performance under the Agreement. In fact, PDV USA demonstrated its satisfaction with Interamerican's performance under the Agreement by, among other things,

paying some amounts owed to Interamerican and offering to pay the remaining amounts due to Interamerican if Interamerican would agree to assign the Agreement to a foreign entity.

46.     Interamerican lacks sufficient knowledge to either or admit or deny the allegation in Paragraph 46 of the Second Amended Complaint that PDV USA was unaware that Interamerican allegedly breached Section 18 of the Agreement, and therefore denies the same. Strict proof is demanded thereof. Otherwise, Interamerican denies Paragraph 46 of the Second Amended Complaint.

47.     To the extent Paragraph 47 of the Second Amended Complaint refers to written subcontracts, Interamerican admits that certain documents entitled subcontracts were created in coordination with entities that received referral fees in connection with the solicitation and retention by PDV USA of Interamerican's services but denies that any of these entities or any person affiliated with these entities ever performed services—as a subcontractor or otherwise—in connection with the Agreement. Otherwise, Interamerican denies the allegations in Paragraph 47 of the Second Amended Complaint.

48.     Interamerican denies the allegations of Paragraph 48 of the Second Amended Complaint.

49.     Interamerican lacks sufficient knowledge to either admit or deny the allegations in Paragraph 49 of the Second Amended Complaint, and therefore denies the same. Strict proof is demanded thereof.

50.     Interamerican admits that Esther Nuhfer has engaged in business with Mr. Rivera. Otherwise, Interamerican lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 50 of the Second Amended Complaint and therefore denies the same. Strict proof is demanded thereof.

51.     Interamerican lacks sufficient knowledge to either admit or deny the allegations in Paragraph 51 of the Second Amended Complaint, and therefore denies the same. Strict proof is demanded thereof.

52.     Interamerican admits the allegations of Paragraph 52 insofar as they allege Interamerican having received partial payments for services rendered to PDV USA under the Agreement and that Interamerican paid the amounts identified in Paragraphs 52(a)-(c) of the Second Amended Complaint as referral fees in connection with the solicitation and retention by PDV USA of Interamerican's services. Otherwise, Interamerican denies the allegations of Paragraph 52 of the Second Amended Complaint.

53.     Interamerican admits the allegations of Paragraph 53 insofar as they allege that certain documents described as subcontracts, which are referenced Paragraph 53 of the Second Amended Complaint, were created in coordination with entities that received referral fees in connection with the solicitation and retention by PDV USA of Interamerican's services. Otherwise, Interamerican denies the allegations in Paragraph 53 of the Second Amended Complaint.

54.     Interamerican denies the allegations of Paragraph 54 of the Second Amended Complaint to the extent they alter, vary, or contradict the terms of the documents referenced in this paragraph. Interamerican further denies PDV USA's characterization of the terms of these documents to the extent PDV USA alleges that they refer to anything other than referral fees in connection with the solicitation and retention by PDV USA of Interamerican's services.

55.     PDV USA has not alleged Paragraph 55 of the Second Amended Complaint with sufficient particularity. Interamerican is unsure to which communications or payments this paragraph refers and therefore denies the same. Strict proof is demanded thereof.

56.     Interamerican admits that Raul Gorrin assisted it in coordinating a meeting between representatives of Exxon and PDV USA but denies that this was in coordination with any subcontracting agreement. Otherwise, Interamerican denies the allegations of Paragraph 56 of the Second Amended Complaint.

57.     Interamerican lacks sufficient knowledge to either admit or deny the allegations in the first sentence of Paragraph 57 of the Second Amended Complaint, and therefore denies the same. Strict proof is demanded thereof. Otherwise, PDV USA denies the allegations of Paragraph 57 of the Second Amended Complaint.

58.     Interamerican admits that it retained Raul Gorrin to provide legal services during the term of the Agreement but denies that Mr. Rivera ever made payments to anyone who was an SDN at the time any payments by Interamerican were made. Interamerican further admits that it entered certain back-dated agreements to reflect referral fees paid to various entities in connection with the solicitation and retention by PDV USA of Interamerican's services, but denies that it ever defrauded a financial institution or executed these documents to defraud a financial institution. Finally, Interamerican admits that David Rivera sent a text stating: "the concert ticket is $15, not 20, as we said last night," but denies that this was a reference—clear or otherwise—to a bribe or that this text message was related to a meeting between Exxon and PDVSA officials. Otherwise, Interamerican denies the allegations of Paragraph 58 of the Second Amended Complaint.

59.     Interamerican denies the allegations of Paragraph 59 of the Second Amended Complaint.

**As to "PDV USA Paid Interamerican for Services that Were Never Performed"**

60.     Interamerican admits the allegations of the first sentence of Paragraph 60 of the Second Amended Complaint insofar as they allege Interamerican received partial payments for

services rendered to PDV USA under the Agreement. Otherwise, Interamerican denies the allegations of the first sentence of Paragraph 60 of the Second Amended Complaint. Interamerican lacks sufficient knowledge to either admit or deny the allegations in Paragraph 60 of the Second Amended Complaint, and therefore denies the same. Strict proof is demanded thereof.

61.     Interamerican admits Paragraph 61 of the Second Amended Complaint.

62.     Interamerican admits Paragraph 62 of the Second Amended Complaint.

63.     Interamerican admits receiving payments totaling $20 Million under the Agreement.   Otherwise, Interamerican denies the allegations of Paragraph 63 of the Second Amended Complaint.

64.     Interamerican admits PDV USA has failed to pay the balance due under the Agreement totaling $30 Million.  Otherwise, Interamerican denies the allegations of Paragraph 64 of the Second Amended Complaint.

65.     Interamerican admits receiving $5 million in October 2017 but lacks sufficient knowledge to either admit or deny the allegation in Paragraph 65 of the Second Amended Complaint that this amount was received from PDVSA, and therefore denies the same. Strict proof is demanded thereof. Interamerican believed then, and continues to believe, that all amounts received under the Agreement were paid to Interamerican by PDV USA, as PDV USA was the only counterparty to the Agreement.

**As to "Notwithstanding its Breach of the Agreement, Interamerican Insists that PDV USA Owes the Balance Under the Agreement"**

66.     Interamerican admits demanding payment of the balance due under the Agreement totaling $30 Million. Otherwise, Interamerican denies the allegations of Paragraph 66 of the Second Amended Complaint.

67.     Interamerican admits Paragraph 67 of the Second Amended Complaint.

**As to "PDV USA Sought to Assign the Agreement Because of Compliance and Risk Management Concerns But the Assignment Was Never Consummated Because Interamerican Refused to Consent to the Assignment"**

68.     Interamerican lacks sufficient knowledge to either admit or deny the allegations in Paragraph 68 of the Second Amended Complaint, and therefore denies the same. Strict proof is demanded thereof.

69.     Interamerican lacks sufficient knowledge to either admit or deny the allegations in Paragraph 69 of the Second Amended Complaint, and therefore denies the same. Strict proof is demanded thereof.

70.     Interamerican admits refusing to consent to the Assignment and Assumption Consent Agreement annexed to the Second Amended Complaint.  Otherwise, Interamerican denies the allegations of Paragraph 70 of the Second Amended Complaint.  As Interamerican was not involved with the drafting of the Assignment and Assumption Consent Agreement, and was not a signatory to it, Interamerican is unable to admit allegations related to the agreement of the parties therein, or the intentions of the respective parties therein.

71.     Interamerican lacks sufficient knowledge to either admit or deny the allegations in Paragraph 71 of the Second Amended Complaint, and therefore denies the same. Strict proof is demanded thereof.  However, Interamerican admits the purported Assignment and Assumption Consent Agreement lacked enforceability.  Moreover, Interamerican asserts that PDV USA remains liable under the Agreement.

72.     Interamerican lacks sufficient knowledge to either admit or deny the allegations in Paragraph 72 of the Second Amended Complaint, and therefore denies the same. Strict proof is demanded thereof.  However, Interamerican admits the purported Assignment and Assumption Consent Agreement lacked enforceability.  Moreover, Interamerican asserts PDV USA remains liable under the Agreement.

73.     Interamerican admits Paragraph 73 of the Second Amended Complaint to the extent the purported Assignment and Assumption Consent Agreement lacked enforceability.

74.     Interamerican denies the allegations of Paragraph 74 of the Second Amended Compliant, to the extent that its allegation that "[u]ntil this lawsuit was filed" infers that Interamerican's position on the enforceability of the Assignment and Assumption Consent Agreement changed upon the filing of this lawsuit.  For the avoidance of all doubt, Interamerican has always asserted that the Assignment and Assumption Consent Agreement is wholly unenforceable with respect to Interamerican.

75.     Interamerican lacks sufficient knowledge to either admit or deny the allegations in Paragraph 75 of the Second Amended Complaint, and therefore denies the same. Strict proof is demanded thereof.  However, Interamerican admits the purported Assignment and Assumption Consent Agreement lacked enforceability.   Moreover, Interamerican asserts that PDV USA remains liable under the Agreement.

**As to "In the Alternative, the Agreement Is Void as a Matter of Public Policy and Interamerican Was Unjustly Enriched"**

76.     Interamerican lacks sufficient knowledge to either admit or deny the allegation in Paragraph 76 of the Second Amended Complaint that PDV USA was allegedly unaware that the Agreement was allegedly a "cover for illegal transactions" and denies the same. Strict proof is demanded thereof. Otherwise, Interamerican denies the allegations of Paragraph 76 of the Second Amended Complaint.

77.     Interamerican admits that purpose of the Agreement was to help Citgo disengage from its ultimate parent, PDVSA, but denies PDV USA's characterization of Mr. Rivera's claims. Otherwise, Interamerican denies the allegations of Paragraph 77 of the Second Amended Complaint.

78.     Interamerican lacks sufficient knowledge to either admit or deny PDV USA's specific allegations in Paragraph 78 of the Second Amended Complaint relating to the motives of the Maduro regime, whether PDVSA directed its subsidiary to hire Interamerican or earmarked funds to hire Interamerican, and whether PDV USA's sole corporate purpose was to provide shareholder services, and therefore denies the same. Strict proof is demanded thereof. Otherwise, Interamerican denies the allegations in Paragraph 78 of the Second Amended Complaint.

79.     Interamerican specifically denies PDV USA's characterization of the referral fees it paid to third-party entities as "funneling" money but admits to having received partial payments by PDV USA for services rendered by Interamerican to PDV USA under the Agreement, and Interamerican also admits that it paid referral fees to various entities in connection with the solicitation and retention by PDV USA of Interamerican's services. Otherwise, Interamerican denies Paragraph 79 of the Second Amended Complaint.

80.     Interamerican denies Paragraph 80 of the Second Amended Complaint.

81.     Interamerican lacks sufficient knowledge to either admit or deny the allegation in Paragraph 81 of the Second Amended Complaint that PDV USA was allegedly unaware of a purported scheme on the part of Mr. Rivera and therefore denies the same. Strict proof is demanded thereof. Interamerican admits to having received partial payments for services rendered to PDV USA. under the Agreement. Otherwise, Interamerican denies the allegations of Paragraph 81 of the Second Amended Complaint.

**As to "Interamerican Agreed to Indemnify PDV USA for its Breach of the Agreement"**

82.     Interamerican denies the allegations of Paragraph 82 of the Second Amended Complaint to the extent they alter, vary, or contradict the Agreement.

## RESPONSE TO COUNT ONE: ALLEGED BREACH OF CONTRACT

83.     Defendant admits or denies paragraphs 1 through 82 in the same respect as all preceding paragraphs incorporated therein by reference.

84.     Interamerican admits Paragraph 84 of the Second Amended Complaint.

85.     Interamerican denies Paragraph 85 of the Second Amended Complaint.

86.     Interamerican denies Paragraph 86 of the Second Amended Complaint.

87.     Interamerican denies Paragraph 87 of the Second Amended Complaint.

88.     Interamerican denies Paragraph 88 of the Second Amended Complaint.

89.     Interamerican denies Paragraph 89 of the Second Amended Complaint.

## RESPONSE TO COUNT TWO: ALLEGED INDEMNITY

90.     Defendant admits or denies paragraphs 1 through 82 in the same respect as all preceding paragraphs incorporated therein by reference.

91.     Interamerican denies Paragraph 91 of the Second Amended Complaint.

92.     Interamerican denies Paragraph 92 of the Second Amended Complaint.

93.     Interamerican denies Paragraph 93 of the Second Amended Complaint.

## RESPONSE TO COUNT THREE: ALLEGED UNJUST ENRICHMENT

94.     Defendant admits or denies paragraphs 1 through 82 in the same respect as all preceding paragraphs incorporated therein by reference.

95.      Interamerican denies Paragraph 95 of the Second Amended Complaint.

96.     Interamerican denies Paragraph 92 of the Second Amended Complaint. PDV USA actually paid Interamerican $20 Million.

97.     Interamerican lacks sufficient knowledge to either admit or deny the allegations in Paragraph 97 of the Second Amended Complaint, and therefore denies the same. Strict proof is demanded thereof.

98.     Interamerican denies Paragraph 98 of the Second Amended Complaint.

99.     Interamerican denies Paragraph 99 of the Second Amended Complaint.

### RESPONSE TO COUNT FOUR: ALLEGED DECLARATORY JUDGMENT

100.    Defendant admits or denies paragraphs 1 through 82 in the same respect as all preceding paragraphs incorporated therein by reference.

101.    Interamerican admits the allegations of Paragraph 101 insofar as they allege that PDV USA has failed and refused to pay the balance due under the Agreement totaling $30 Million. Otherwise, Interamerican denies the allegations of Paragraph 101.

102.    Interamerican denies Paragraph 102 of the Second Amended Complaint.

103.    Interamerican denies Paragraph 103 of the Second Amended Complaint.

104.    Interamerican denies Paragraph 104 of the Second Amended Complaint.

105.    Interamerican denies Paragraph 105 of the Second Amended Complaint.

### GENERAL DENIAL

Defendant denies all allegations contained in the Second Amended Complaint (including headings and captions) not specifically admitted in this Answer.

### DEFENSES

Defendant asserts the following defenses and reserves the right to assert other defenses or claims when and if they become appropriate and/or available in this action and hereby reserves all rights to amend and/or supplement all defenses set forth herein.  The statement of any defense

herein does not assume the burden of proof for any issue as to which the applicable law places the burden of proof on Plaintiff.

### FIRST AFFIRMATIVE DEFENSE
(*Discharge by Prior Breach*)

PDV USA's prior breach of the Agreement in failing and refusing to pay Interamerican the amounts due under the Agreement excused and discharged Interamerican from further having to perform under the Agreement.

### SECOND DEFENSE
(*Waiver*)

PDV USA waived any alleged failure by Interamerican to performance its obligations under the Agreement by failing to object to any such nonperformance, failing to declare a default, and failing to terminate the Agreement.

### THIRD DEFENSE
(*Ratification*)

PDV USA, with knowledge and assent, ratified and accepted any performance by Interamerican under the Agreement notwithstanding any alleged failure to Interamerican to perform its obligations.

### FOURTH DEFENSE
(*Estoppel*)

Plaintiff's claims are barred by the doctrine of estoppel.

### FIFTH DEFENSE
(*Laches*)

Plaintiff's claims are barred by the doctrine of laches.

### SIXTH DEFENSE
(*Unclean Hands*)

Plaintiff's claims are barred by the doctrine of unclean hands.

### SEVENTH DEFENSE
#### (*Express Contract*)

Plaintiff's claims for unjust enrichment fails because there is an express contract between PDV USA and Interamerican.

### EIGHTH DEFENSE
#### (*Mitigation of Damages*)

Plaintiff's claims are barred because, and to the extent, it failed to mitigate its alleged damages.

### PRAYER FOR RELIEF

WHEREFORE, Defendant prays for relief and judgment, as follows:

A.      Denying Plaintiff's prayer for relief;

B.      Entering judgment for Defendant;

C.      Dismissing the Second Amended Complaint with prejudice;

D.      Granting Defendant such other and further relief to which it may be entitled, or which the Court deems just and proper.

### COUNTERCLAIM

Defendant/Counter-Plaintiff, Interamerican Consulting, Inc. ("Interamerican"), sues Plaintiff/Counter-Defendant PDV USA, Inc. ("PDV USA"), and alleges:

### INTRODUCTION

1.      With the intent of improving its standing in the United States, Citgo Petroleum Corporation ("Citgo") was interested in hiring Interamerican as a consultant to develop a strategic plan to create a separate and distinct identity and to disengage from its ultimate parent, Petroleos de Venezuela, S.A. ("PDVSA")—an oil and natural gas company owned and controlled by the Bolivarian Republic of Venezuela. Citgo specially sought out Interamerican and its principal,

former U.S. Congressman David Rivera, because of his exceptional experience, expertise, and skills in the U.S. public and private sectors. To entice Interamerican to accept the engagement, Citgo offered to pay the sum of $50 Million. Considering the billions of dollars at stake with Citgo's public and business stature in jeopardy, Citgo obviously deemed the fee reasonable because the proposed fee originated from Citgo without prompting or input from Interamerican.

2.      After some discussions, Interamerican and Citgo, acting through its affiliate PDV USA, entered into an agreement on March 21, 2017, for Interamerican to provide these strategic planning consulting services for the benefit of Citgo. Interamerican accepted the unsolicited engagement and began performing the required consulting services. At no time did Citgo ever express dissatisfaction with Interamerican's performance. Indeed, not until Interamerican refused to allow the agreement to be assigned from PDV USA to PDVSA—a move which would have undermined Interamerican's strategic recommendation that Citgo emphasize its independent identity from its Venezuelan parent—did Interamerican experience any resistance from PDV USA to make the payments due. Even then, PDV USA never notified Interamerican of any alleged dissatisfaction, never declared Interamerican in default, and never even terminated or revoked the agreement. As an enticement (and as a clear indication of PDV USA's satisfaction with Interamerican's performance), Interamerican was offered to be paid the balance of the agreement—then totaling $35 Million—in advance of the contractually mandated payment schedule if Interamerican simply consented to the assignment of the agreement from PDV USA to PDVSA. When that enticement did not persuade Interamerican, an additional $5 Million payment was made, but Interamerican still refused to relent on the issue of contract assignment.

3.      Only after Interamerican refused all entreaties and would not consent to the assignment request did problems with the agreement arise. First, PDV USA failed to make the

remaining payments due under the agreement, prompting Interamerican to make repeated demands for payment.  Thereafter, attempting an obvious preemptive strike, PDV USA filed the instant action (almost three years after Interamerican refused to consent to the assignment), for the first time making unsubstantiated allegations of breach.

4.      PDV USA, not Interamerican, breached the agreement.  Interamerican owes PDV USA nothing under the agreement. Rather, PDV USA owes Interamerican the balance due under the agreement totaling $30 Million.

## JURISDICTION AND THE PARTIES

5.      This is a compulsory counterclaim under Fed. R. Civ. P. 13(a) because it arises out of the transaction or occurrence that is the subject matter of PDV USA's Second Amended complaint and does not require adding another party over whom the Court cannot acquire jurisdiction.

6.      The parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

7.      Counterdefendant PDV USA is a corporation incorporated in Delaware with its principal place of business in New York, New York.

8.      Counterplaintiff Interamerican is a corporation incorporated in Florida with its principal place of business is principal place of Miami, Florida.

## FACTUAL BACKGROUND

9.      In March of 2017, Citgo contacted Interamerican to potentially hire it as a strategic planning consultant to develop an independent identity and to disengage from its Venezuelan parent. Citgo hoped that this would improve Citgo's standing in the United States.

10.     The president of Interamerican, David Rivera, proved to be the perfect person for the consulting role.  As a former U.S. Congressman with more than 20 years of experience in governmental affairs and strategic planning (which includes previously working for the U.S. State Department and serving as an elected official at the state and local levels), Rivera had the experience, expertise, and skills to help Citgo implement a strategic plan to develop an independent identity and to disengage from its Venezuelan parent.

11.     After several unsolicited phone calls and emails discussing the scope of the engagement, Citgo informed Interamerican that it wanted to proceed with entering into a consulting agreement. Citgo, however, entered into the contract using one of its U.S.-based affiliates PDV USA. Citgo then prepared the draft agreement in its entirety and sent it to Interamerican for its review and consideration.

12.     On March 21, 2017, Interamerican accepted Citgo's draft agreement with no changes. Interamerican and PDV USA signed the agreement and started the contractual relationship between Citgo and Interamerican ("Agreement"). A copy of the Agreement is attached as Exhibit "A."

13.     Under the Agreement, PDV USA agreed to pay Interamerican $50 million dollars in exchange for Interamerican's strategic planning consulting services for the benefit of Citgo to develop an independent identity for Citgo and to disengage from its Venezuelan parent, which in turn, would improve Citgo's standing in the United States.

14.     Interamerican provided all the consulting services contemplated under the Agreement, including setting up, facilitating, and participating in critical business communications, as well as providing all required reports discussing the activities that

Interamerican performed during each reporting period to achieve the goals and purposes of the Agreement.

15.    Despite providing all the services for the benefit of Citgo under the Agreement, PDV USA failed to pay the remaining $30 million owed under the Agreement.

16.    All conditions precedent to the filing of this action have occurred, been waived, or have otherwise been excused.

**Count One**
**(Breach of Contract)**

17.    Interamerican repeats and restates the allegations in all the preceding paragraphs as if fully set forth herein.

18.    Interamerican entered into the Agreement under which Interamerican agreed to perform certain consulting services to PDV USA for the benefit of Citgo in exchange for PDV USA's agreement to pay Interamerican $50 million.

19.    Even though Interamerican provided all the services to PDV USA for the benefit of Citgo under the Agreement, PDV USA only paid $20 million and refused to pay the remaining $30 million.

20.    As a result of PDV USA's refusal to pay the remaining $30 million, PDV USA breached the Agreement.

21.    As a direct and proximate result of PDV USA's breach, Interamerican has incurred direct and consequential damages.

**Count Two**
**(Unjust Enrichment)**

22.    Interamerican repeats and restates the allegations in all the preceding paragraphs as if fully set forth herein.

23.     Interamerican pleads this claim for unjust enrichment in the alternative should there be a finding that no relevant contract exists that covers the issues in this case.

24.     PDV USA has been enriched because of Interamerican's services.

25.     The enrichment was at Interamerican's expense.

26.     The circumstances are such that equity and good conscience require PDV USA to make restitution.

### Count Three
**(Declaratory Judgment)**

27.     Interamerican repeats and restates the allegations in all the preceding paragraphs as if fully set forth herein.

28.     An actual and ripe controversy exists between the parties in that PDV USA has asserted, and will continue to assert, that Interamerican breached the Agreement by not providing all the services required under the Agreement and that Interamerican must therefore return the funds it previously paid to Interamerican.

29.     Interamerican's asserts that it provided all the services required under the Agreement, entitling it to retain the $20 million that PDV USA previously paid to Interamerican, and that PDV USA owes Interamerican the remaining balance of $30 million.

30.     Interamerican and PDV USA have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment on the disputed matters raised herein.

31.     Interamerican has a right to a declaration under 28 U.S.C § 2201, C.P.L.R § 3001, and Fed. R. Civ. P. 57, that PDV USA owes Interamerican $30 million because PDV USA breached the Agreement.

### Prayer for Relief

Wherefore, Interamerican requests that the Court:

a.      Adjudge and decree finding PDV USA liable for breach of contract or unjust enrichment;

b.      Declare that PDV USA owes Interamerican $30 million;

c.      Enter judgment against PDV USA in favor of Interamerican for damages in the principal sum of $30 million (plus interest), and award any further compensatory damages (plus interest) at an amount to be determined at trial, and awards expenses and costs; and

d.      grant such further relief as the Court deems just and proper.

## **JURY DEMAND**

Interamerican hereby demands a trial by jury on all issues raised in the Counterclaim herein.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on September 20, 2022, a copy of the foregoing has been furnished via electronic mail to all counsel of record.

s/ Tucker H. Byrd
_____

**Tucker H. Byrd**
Florida Bar No. 381632
**Jason W. Johnson**
Florida Bar No. 186538
**BYRD CAMPBELL, P.A.**
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
Facsimile: (407) 392-2286
TByrd@ByrdCampbell.com
JJohnson@ByrdCampbell.com

Henry L. Saurborn, Jr.
Kaiser, Saurborn & Mair
30 Broad St., 37th Floor
New York, New York 10001
Telephone: (212) 338-9100
saurborn@ksmlaw.com

*Counsel for Defendant/Counter-Plaintiff*
