**WILLKIE FARR & GALLAGHER** LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

December 15, 2022

**VIA ECF**

The Honorable Robert W. Lehrburger
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:     PDV USA, Inc. v. Interamerican Consulting, Inc., No: 1:20-cv-03699-JGK-RWL

Dear Judge Lehrburger:

We represent plaintiff PDV USA, Inc. ("PDV USA") in the above-captioned matter. Pursuant to Rule II.D of Your Honor's Individual Practices in Civil Cases, we submit this letter motion to seek relief from the Court in connection with a discovery dispute.

Last month, David Rivera, the sole owner and employee of defendant Interamerican Consulting, Inc. ("Interamerican") was indicted by a federal grand jury in the Southern District of Florida for his conduct in connection with the 2017 consulting contract between Interamerican and PDV USA (the "Agreement") that is the subject of this lawsuit. Ex. A (the "Indictment"). The Indictment was unsealed on December 5. The Indictment alleges, among other things, that Mr. Rivera and co-defendant Esther Nuhfer willfully conspired to act in the United States as agents of the government of Venezuela without registering with the Attorney General, and that they used the Agreement to "creat[e] the false appearance that they were providing consulting services to PDV USA." *Id.* at p. 5, ¶ 3.

The Indictment cites and quotes from dozens of text and WhatsApp messages and email communications to and from Mr. Rivera concerning the Agreement, the vast majority of which (***over fifty***) have ***never*** been produced to PDV USA by Interamerican in this litigation. Ex. B at 2–3 (listing fifty-three missing documents) (the "Missing Documents"). For example, the Missing Documents include over twenty messages from an "encrypted" "chat group" among Mr. Rivera, Ms. Nuhfer, Raul Gorrin, and Hugo Perera titled "MIA Chat Group," which Mr. Rivera apparently

Hon. Robert W. Lehrburger

used to secretly communicate about the Agreement.[1]  The Missing Documents also include other text messages and emails to or from David Rivera that relate to the Agreement and demonstrate that Interamerican was attempting to perform services for the Maduro regime (as PDV USA claims) and not for Citgo (as Interamerican claims).[2]  Thus, with fact discovery closed and summary judgment fast approaching, PDV USA is missing, through no fault of its own, some of the most important correspondence between Mr. Rivera and his co-conspirators that directly supports PDV USA's claims and defenses in this action.[3]

Interamerican's one-paragraph explanation for why the Missing Documents have not been produced is "we do not have them" and that "it is possible that many of the" Missing Documents were obtained by the government from Mr. Rivera's phone when it was "seized by the Government in November 2017" and allegedly never returned to Mr. Rivera.  Ex. D at 2.[4]  Assuming that is true, it is highly likely that Interamerican deliberately deleted the Missing Documents at some point after November 2017—during which Mr. Rivera would have been under an obligation to preserve them[5]—and is subject to spoliation sanctions under Fed. R. Civ. P. 37(e).

Even if Mr. Rivera no longer possesses his phone from 2017, that does not explain why the Missing Documents have not been produced; the most plausible explanation is that he deleted them in an effort to conceal them.  For example, Interamerican has previously produced in this action many other emails and text and WhatsApp messages from the exact same time period as the Missing Documents (in some instances from the *same day* as some of the Missing Documents), but the Missing Documents are conspicuously absent.  Thus, Mr. Rivera clearly retained *some* mobile data from 2017 on his phone until at least 2022.  In addition, it appears that Mr. Rivera encrypted many of the Missing Documents in order to conceal his illegal conduct—Indictment at p. 5, ¶ 3, p. 8, ¶ 11, p. 11, ¶ 1—which also demonstrates a strong motive to delete them.

Mr. Rivera has already admitted to the intentional deletion of other relevant (and incriminating) documents during the pendency of this litigation.  When asked at deposition "[d]id you deliberately at some point go through your files to delete some emails and leave others," Mr. Rivera answered "no."  Ex. E at 213:19–22; *see also* Ex. F at 419:24–420:3 (Q:  Since this litigation has been filed, did you go through your WhatsApp messages and attempt to delete or delete messages or

---

[1] *See, e.g.*, Indictment at p. 8, ¶ 11; p. 15, ¶ 19; p. 17, ¶ 32; p. 24, ¶ 74.
[2] *See, e.g.*, Indictment at p. 18, ¶ 38; p. 18, ¶ 41.
[3] The Missing Documents are indisputably relevant and responsive to PDV USA's document requests.  *See, e.g.*, Ex. C at 3 ("All Documents and Communications concerning the Agreement[.]"); *id.* at 3–4.  None of the Missing Documents appear on Interamerican's privilege logs.
[4] Many of the Missing Documents appear to be WhatsApp messages, and Mr. Rivera still has access to his WhatsApp account, which exists separate and apart from any physical device.  Indeed, WhatsApp has a clear and permissive policy for downloading account data.  *See How to request your account information*, WHATSAPP, https://faq.whatsapp.com/526463418847093/?cms_platform=iphone&helpref=faq_content (last visited Dec. 14, 2022).  Furthermore, Interamerican offers no explanation for why the emails included in the Missing Documents have not been produced; those too would reside on an email server separate from Mr. Rivera's phone.
[5] *See Doubleline Capital LP v. Odebrecht Finance*, 2021 WL 1191527, at *6 (S.D.N.Y. Mar. 30, 2021) (preservation obligation applied when defendants knew their "bribery scheme was the subject of . . . investigations by United States authorities") (cleaned up).

information involving Raul Gorrin?  A:  I just said no.").[6]  Yet, when PDV USA continued to press the issue of spoliation after the deposition, ███████████████████████████████████████████████████████████████████████████████████████████████ Ex. H at 2–3.  Thus, Mr. Rivera has demonstrated his willingness to violate his preservation obligations and give false testimony regarding those obligations to cover up his misconduct.[7]

Interamerican should not be permitted to disclaim knowledge of dozens of obviously relevant and incriminating communications sent and received by its client.  At a minimum, Interamerican should be compelled to (a) produce any Missing Documents in its possession, custody, or control, and explain to PDV USA and this Court why those documents were never produced; (b) explain to PDV USA and this Court whether Mr. Rivera or someone else deleted the Missing Documents and describe what steps Interamerican has taken to investigate possible spoliation; (c) make David Rivera available for a second deposition to answer questions about the Missing Documents, which PDV USA did not have the opportunity to do at Mr. Rivera's first deposition; and (d) comply with PDV USA's discovery request that Interamerican produce for inspection all devices (such as phones and computers) that Mr. Rivera has in his possession so that PDV USA can perform its own forensic analysis to determine whether any of the Missing Documents have been deleted and if so, when and by whom.[8]

PDV USA reserves all rights to seek sanctions under Rule 37 or any other applicable rule or law once PDV USA has had an opportunity to fully investigate the extent of what appears to be sanctionable discovery misconduct.

---

[6] When asked at deposition "[h]ave you provided information to the FBI," Mr. Rivera testified that the FBI "ha[s] the same information [PDV USA] ha[s]." Ex. F at 334:4–5.  Furthermore, Interamerican never mentioned anything about the government seizing Mr. Rivera's phone in 2017 when it represented to PDV USA earlier this year that it had "'wholly or substantially' produced to PDV USA all documents produced [by Interamerican] to the government." Ex. G at 5.

[7] This is not the first time that Mr. Rivera has engaged in bad faith litigation conduct.  A federal court in Florida recently fined Mr. Rivera $450,000 for violating the United States campaign finance laws.  In that case, Mr. Rivera swore in an affidavit that he "never saw" a letter and email from the FEC putting him on notice of the FEC's claims, which assertions the court found "**lack[ed] credibility**," contradicted evidence submitted by the FEC, and **left "the court with the inescapable conclusion that [Mr. Rivera] is, once again, being less than honest and forthright**." *FEC v. Rivera*, 2022 WL 1400874, at *5 & n.2–4 (S.D. Fla. Mar. 24, 2022) (emphases added).

[8] PDV USA previously served a request for full and unaltered copies of Mr. Rivera's phone, but Interamerican refused. Ex. I.

Hon. Robert W. Lehrburger

        Respectfully submitted,

        WILLKIE FARR & GALLAGHER LLP
        By: */s/ Jeffrey B. Korn*

        Jeffrey B. Korn
        Brady M. Sullivan
        787 Seventh Avenue
        New York, NY 10019
        (212) 728-8000
        JKorn@willkie.com
        BSullivan@willkie.com

        Michael J. Gottlieb
        1875 K Street, N.W.
        Washington, D.C. 20006
        (202) 303-1000
        MGottlieb@willkie.com

        *Attorneys for Plaintiff*

cc:  All counsel of record (by ECF)