**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PDV USA, INC.,

                Plaintiff,

v.

            Case No. 20-cv-3699

INTERAMERICAN CONSULTING INC.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PDV USA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR RECONSIDERATION</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND .....................................................................................................................3

ARGUMENT............................................................................................................................9

CONCLUSION........................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YYL Irrevocable Trust,*
    729 F.3d 99 (2d Cir. 2013)..................................................................................................9

*Was. Nat'l Ins. Co. v. OBEX Grp. LLC,*
    2019 WL 266681 (S.D.N.Y. Jan. 18, 2019) ..................................................................9

**Other Authorities**

Fed. R. Civ. P. 31(a)(5)..................................................................................................6

Fed. R. Civ. P. 45(d)(1).................................................................................................2

Fed. R. Civ. P. 60..........................................................................................................9

Local Civ. R. 6.3 .......................................................................................................1, 9

PDV USA, Inc. ("PDV USA") submits this Memorandum of Law in Support of its Motion For Reconsideration of the Court's July 7, 2023 Order (ECF No. 139, the "Order") granting Interamerican Consulting Inc.'s ("Interamerican") request for a carve-out of the stay to permit Interamerican to take the deposition of third party ▮▮▮▮▮▮▮▮ (John Doe).[1]

## PRELIMINARY STATEMENT

The Court previously rejected (twice) Interamerican's requests to lift the stay to depose ▮▮▮▮▮. In doing so, the Court expressly acknowledged that deposing an important third party witness *before* production of the Missing Documents—likely to be some of the most critical documents in the case—might result in future requests to reopen the deposition. The Court stated:

> **I don't want to have to come back and see additional discovery requested on top of what already is further discovery to be done, such as with respect to Mr. Doe because of what may come out in those additional documents** if they are indeed produced. And they certainly do seem like they – if they exist and are produced, that they could be very significant, and **it would be unwise and inefficient to proceed with the discovery, remaining discovery, until we see what happens with those**.

Ex. A at 19:1–10 (emphasis added).[2] As PDV USA previously argued (ECF No. 143 at 2), the Missing Documents are highly relevant to ▮▮▮▮▮▮. It is virtually certain that Interamerican will seek to question ▮▮▮▮▮ on the subject matters addressed by the Missing Documents, and accordingly, that PDV USA would seek to question ▮▮▮▮▮ about the same. And because ▮▮▮▮▮ resides beyond the subpoena power of this Court, his deposition may be the last

---

[1] The United States District Court for the Northern District of Georgia ordered that Mr. Doe's identity remain anonymous, after Mr. Doe requested anonymity for fear of safety and/or imprisonment by non-parties to this litigation. *Doe v. Interamerican Consulting, Inc.*, 22-cv-04558 (N.D. Ga.), ECF No. 18. This Court issued a similar sealing order. ECF No. 118. Accordingly, PDV USA is filing this motion under seal and redacting the accompanying exhibits accordingly.

[2] All citations to "Ex. __" refer to the exhibits appended to the Declaration of Brady M. Sullivan filed simultaneously herewith. PDV USA does not understand Local Rule 6.3—providing that no "affidavits" shall be filed with a motion for reconsideration—to prohibit transmittal declarations with exhibits.

1

opportunity for PDV USA to examine ▮▮▮▮▮ about the Missing Documents or the facts contained therein, including whether any of those documents definitively disprove the false allegations Interamerican has made about PDV USA and ▮▮▮▮▮. Allowing the deposition to proceed before PDV USA is granted access to the Missing Documents therefore risks significant prejudice to PDV USA, if it is required to proceed with ▮▮▮▮▮ deposition without them.

The only stated reason for lifting the stay to permit the deposition of ▮▮▮▮▮ is that the passage of more time risks diminishing ▮▮▮▮▮ memories of events in 2017. *See* Order. But ▮▮▮▮▮ has already been deposed once by written questions in this case (albeit before the unsealing of the Indictment), and therefore his recollection of the Agreement has been memorialized on the record. Any incremental loss of memory is owing entirely to Interamerican and Mr. Rivera's decisions to (a) wait more than a year after receiving notice of ▮▮▮▮▮ role in the Agreement (through PDV USA's initial disclosures) to notice his deposition, (b) refuse to participate in the deposition by written questions of ▮▮▮▮▮, (c) intentionally delete some of the most incriminating documents relevant to this case, and hide the fact that they have done so, which created the need for this case to be stayed in the first place, and (d) delay Mr. Rivera's arraignment for six months on grounds that he could not afford counsel unless the government lifted the liens on his assets.

Given that ▮▮▮▮▮ is already slated to be deposed twice in this case, forcing his deposition to go forward before the production of the Missing Documents risks a *third* deposition of a third party witness, something the parties and the Court are obligated to avoid. *See* Fed. R. Civ. P. 45(d)(1) (parties and courts have an obligation to "take reasonable steps to avoid imposing undue burden or expense on a [third party] subject to the subpoena").

2

In short, the Court's rationale for applying the stay to all aspects of discovery—including the deposition of non-party ▊▊▊▊—applies with the same force today as it did when the stay was initially entered. The risk of prejudice to PDV USA and/or ▊▊▊▊ remains exactly the same. What has changed is that the motion practice concerning Mr. Rivera's assets in the criminal matter has been resolved, and so there is no reason why the criminal proceeding should not move forward. Accordingly, PDV USA respectfully requests that the Court reconsider its decision to except this single deposition from the stay.

## BACKGROUND

This case concerns a March 21, 2017 consulting agreement between Interamerican and PDV USA, pursuant to which Interamerican, a one-person consulting firm run by former U.S. Congressman David Rivera, would be paid $50 million in six installments over a three-month period to provide purported "strategic consulting services" for the benefit of PDV USA's ultimate parent company, Petróleos de Venezuela, S.A. ("PDVSA") (the "Agreement"). PDV USA paid Interamerican $15 million at the beginning of the Agreement's term, but received nothing from Interamerican in exchange. Third party discovery has revealed that most of the $15 million was funneled to third parties that have been indicted or are under criminal investigation. PDV USA alleges that Interamerican breached the Agreement or, in the alternative, that the Agreement is a void instrument of illegality, which PDV USA entered into at the direction of PDVSA when it was controlled by the regime of Nicolás Maduro. Intermaerican maintains a $30 million counterclaim.

In November 2022, Mr. Rivera was indicted by a federal grand jury in the Southern District of Florida for his conduct in connection with the Agreement. Ex. B (the "Indictment"). The Indictment alleges, among other things, that Mr. Rivera and co-defendant Esther Nuhfer used the Agreement to "creat[e] the false appearance that they were providing consulting services to PDV

USA," when in reality they were working for the government of Venezuela and PDVSA without registering with the Attorney General.  Indictment at p. 5, ¶ 3.

The Indictment cites and quotes from dozens of text and WhatsApp messages and email communications to and from Mr. Rivera concerning the Agreement, the vast majority of which (over fifty) have never been produced to PDV USA by Interamerican in this litigation.  Ex. C at 2–3 (listing fifty-three missing documents) (the "Missing Documents").  Interamerican first told PDV USA that it did not "possess" any of the Missing Documents because Mr. Rivera's phone was seized by the criminal authorities in November 2017.  Now, Interamerican claims the Missing Documents "could have been lost for a variety of reasons," including the seizure of Mr. Rivera's phone, but it does not offer any other explanations.  ECF No. 138 at 2, n.2.

The record strongly suggests that, instead, Interamerican deleted the Missing Documents as part of a deliberate effort to conceal Mr. Rivera's misconduct from the government and from PDV USA.  Interamerican's justification concerning the seizure of Mr. Rivera's phone does not explain why non-mobile data, such as emails, are missing.  Interamerican has previously produced in this action many other emails and text and WhatsApp messages from the *exact same time period* as the Missing Documents (in some instances from the *same day* as some of the Missing Documents), but the Missing Documents are conspicuously absent.  Thus, Mr. Rivera clearly retained some mobile data from 2017 on his phone until at least 2022, but deleted other data.  ECF No. 122 at 2–3.  Mr. Rivera encrypted many of the Missing Documents in order to conceal his illegal conduct.  Indictment at p. 5, ¶ 3, p. 8, ¶ 11, p. 11, ¶ 1.  And to boot, Mr. Rivera has already

4

admitted to the intentional deletion of other relevant (and incriminating) documents, including

WhatsApp messages, during the pendency of this litigation.[3]

As this Court has since acknowledged (Ex. A at 19:6–10), the Missing Documents appear

to be highly relevant to PDV USA's claims and defenses in this action.  For example, the Missing

Documents demonstrate that Interamerican was attempting to perform services for Maduro (as

PDV USA claims, ECF No. 104 at p. 11, ¶ 36; p. 22–23, ¶ 78) and *not* for Citgo Petroleum

Corporation ("Citgo") (as Interamerican claims, ECF No. 50 at p. 12–13, ¶ 2).  *See, e.g.*, Indictment

at p. 8, ¶ 11; p. 15, ¶ 19; p. 17, ¶ 32; p. 24, ¶ 74.  In addition, the Missing Documents further

support PDV USA's claims that Interamerican breached the Agreement by subcontracting its

services to Raul Gorrín (an indicted fugitive accused of orchestrating a multi-billion dollar bribery

scheme in Venezuela), Esther Nuhfer (Mr. Rivera's co-defendant in the Indictment), and Hugo

Perera (a convicted drug trafficker and supposed FBI informant) without PDV USA's knowledge

or consent.  Indictment, "Overt Acts," ¶¶ 1, 14, 19–22, 24, 27, 32, 48–53, 56, 59, 65–68, 70–72,

74.

The Missing Documents also implicate key issues relevant to ███████, such as an

additional $5 million payment that Interamerican received under the Agreement from PDVSA,

which Interamerican claims (falsely) was brokered by ███████ (Ex. D at 244:7–247:6), and the

---

[3] When asked at deposition "[d]id you deliberately at some point go through your files to delete some emails and leave others," Mr. Rivera answered "no." Ex. D at 213:19–22; *see also* Ex. E at 419:24–420:3 ("Q: Since this litigation has been filed, did you go through your WhatsApp messages and attempt to delete or delete messages or information involving Raul Gorrin? A: I just said no.").  Yet, when PDV USA continued to press the issue of spoliation after the deposition, Interamerican was forced to contradict its own testimony and admit in an interrogatory response that, during the pendency of this litigation, certain responsive and incriminating WhatsApp messages with Mr. Gorrín "must have been deleted." Ex. F at 2–3.  Thus, Mr. Rivera has demonstrated his willingness to violate his preservation obligations and give false testimony regarding those obligations to cover up his misconduct.

"progress reports" Interamerican sent to PDV USA, which Interamerican claims (falsely) were

terse and vague based on ███████ instructions to Mr. Rivera (Ex. G at 3).  The Missing

Documents are therefore directly relevant to the questions that Interamerican is *certain* to ask

███████ at his deposition, and the questions PDV USA would likely ask.[4]

███████, former ███████ for Citgo and ███████ of PDV USA, communicated

with Mr. Rivera as part of the negotiations leading up to the Agreement, helped draft the

Agreement, and has knowledge of the decision by PDV USA, Citgo, and PDVSA to assign the

Agreement to PDVSA.  ███████ was already deposed in this case through Rule 31 written

questions served by PDV USA, but Interamerican refused to participate by serving its own written

questions, and insisted instead on noticing and taking its own Rule 30 deposition.[5]  On December

1, 2022, prior to the unsealing of the Indictment, the United States District Court for the Northern

District of Georgia denied ███████ motion to quash Interamerican's Rule 30 deposition

subpoena, and ordered that *each side*, Interamerican and PDV USA, be afforded two hours each

---

[4] Indeed, Interamerican's counsel—who claims "we don't really know" what the Missing Documents say—made clear during the Court's January 3, 2023 hearing on PDV USA's motion to stay that Interamerican reserves the right to re-depose ███████, depending on what the Missing Documents contain. Ex. A at 16:9–16 ("I guess the only thing I would add as a cautionary is that if, in fact, the discovery that is dug up one way or the other, if it opens new lines of inquiry, you know, I suppose we might come back to you and say, look, this has come up, we need to investigate this further.").

[5] In October 2022, more than a year after PDV USA served its initial disclosures listing ███████, Interamerican contacted ███████ counsel to ask if Interamerican could interview ███████. ███████ counsel declined, but provided counsel for Interamerican a summary of what ███████ would likely say about the Agreement if deposed.  In response, counsel for Interamerican told counsel for ███████ that they had considered the matter, and "decided not to depose ███████." Ex. H at 3.  Shortly thereafter, PDV USA subpoenaed ███████ to preserve his testimony for trial, given that ███████ resides in Georgia and is beyond the subpoena power of this Court. PDV USA noticed ███████ deposition on written questions. PDV USA afforded Interamerican an opportunity to submit its own questions under Fed. R. Civ. P. 31(a)(5), but Interamerican refused, and then changed its mind about deposing ███████. ███████ moved to quash Interamerican's request for an oral subpoena, on the grounds that he did not want to be deposed twice, but the court in the Northern District of Georgia denied the motion to quash.

to depose ███████. *Doe v. Interamerican Consulting, Inc.*, 22-cv-04558 (N.D. Ga.), ECF No.

20.

After Interamerican represented to the Court on December 20, 2022 that it did not possess

the Missing Documents (ECF No. 123), PDV USA moved for a stay "until such time that

Mr. Rivera receives the Missing Documents in discovery in the criminal proceeding against him,"

ECF No. 127, and the Court granted PDV USA's motion, ECF No. 129.  The Court observed at

the hearing that the Missing Documents "certainly do seem like they – if they exist and are

produced, that they could be very significant, and it would be unwise and inefficient to proceed

with the discovery, remaining discovery, until we see what happens with those."  Ex. A at 19:6–

10.  "Remaining discovery" included Interamerican's request that it be allowed to pursue a fact

deposition of ███████, which the Court expressly rejected on the grounds that proceeding with

the deposition of ███████ before completing document production would risk a future request

to re-depose him.  Ex. A at 17–19 (the Court: "I don't want to have to come back and see additional

discovery requested on top of what already is further discovery to be done, such as with respect to

Mr. Doe because of what comes out of those additional documents if they are indeed produced");

*see also id.* ("I do think a stay is appropriate for just the reasons that [counsel for PDV USA] has

explained," including that "the right order should be to finish the document productions and then

move into the depositions").

On January 3, 2023, the Court granted a stay for 90 days.  ECF No. 129.  "The purpose of

the stay is to provide time and opportunity for the production of" the Missing Documents.  *Id.*  On

April 4, 2023, with the Missing Documents not yet produced, the Court extended the stay for an

additional 90 days, once again rejecting Interamerican's argument that the stay should be lifted so

it could depose ▮▮▮▮▮▮.  ECF No. 133.[6]  On June 26, 2023, PDV USA moved to extend the

stay for an additional 90 days.  Mr. Rivera had not (and still has not) even been arraigned in his

criminal proceeding because he insisted that in order to pay his defense counsel he needed to lift

the government's *lis pendens* on his assets.  *United States v. Rivera, et. al.*, 22-20552 (S.D. Fla.),

ECF No. 54 at 3.  In other words, despite the fact that Mr. Rivera was able to pay counsel *in this*

*matter* to pursue his civil claims and defenses—as well as other civil matters, such as the FEC

action seeking monetary penalties against Mr. Rivera, *Federal Election Commission v. Rivera*,

17-22643 (S.D. Fla.)—Mr. Rivera claimed to be unable to retain counsel in his criminal matter

absent access to his frozen property.  Interamerican represented to PDV USA that it intended to

oppose an additional stay extension for the "same reasons" as before, which it did.  ECF Nos. 137,

138.

On July 7, the Court extended the stay for an additional 90 days, but partly lifted the stay

to permit Interamerican to depose ▮▮▮▮▮▮.  ECF No. 139.  The Court reasoned that it "shares

Mr. Rivera's concerns about potential fading of memories as more time passes."  ECF No. 139.

The day before the Court's Order, the Florida court granted Mr. Rivera's motion for release of *lis*

*pendens*, and Mr. Rivera's arraignment remains scheduled for August 14, 2023.  *United States v.*

*Rivera, et. al.*, 22-20552 (S.D. Fla.), ECF Nos. 72, 75. [7]

---

[6] PDV USA's letter brief in further support of a stay extension reiterated why the Court should deny Interamerican's request for a "limited carve out" of the stay to depose ▮▮▮▮▮▮, including because at least one of the Missing Documents involved ▮▮▮▮▮▮.  ECF No. 134 at 2.

[7] PDV USA is continuing to learn the full extent of Interamerican's discovery misconduct in this action.  Just a few days ago, PDV USA learned through government filings in the criminal proceeding that Interamerican received over $5 million from Raul Gorrín in 2019, allegedly in exchange for attempting to have Mr. Gorrín removed from U.S. sanctions.  *United States v. Rivera, et. al.*, 22-20552 (S.D. Fla.), ECF No. 81 at 10.  PDV USA received no documents from Interamerican reflecting these dealings with Mr. Gorrín, despite Interamerican's agreement to produce "responsive documents as to its interactions with Raúl Gorrín that are within its possession, custody or control," Ex. I at 4, and Interamerican's prior representation to PDV USA

**ARGUMENT**

A motion for reconsideration should be granted if the movant identifies "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YYL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013). Reconsideration "should be granted . . . when the Court has overlooked facts . . . that might have altered the conclusion reached in the earlier decision." *Was. Nat'l Ins. Co. v. OBEX Grp. LLC*, 2019 WL 266681, at *2 (S.D.N.Y. Jan. 18, 2019). *See also* Fed. R. Civ. P. 60; S.D.N.Y. Local Civ. R. 6.3.

As the Court previously acknowledged, "I don't want to have to come back and see additional discovery requested on top of what already is further discovery to be done, such as with respect to Mr. Doe because of what may come out in those additional documents if they are indeed produced." Ex. A at 19:1–10. Indeed, as PDV USA previously articulated (ECF No. 134 at 2), at least some of the Missing Documents appear to be highly relevant to ████████, and therefore it would be imprudent to proceed with his deposition before the parties have access to the full contents of the Missing Documents. It is virtually certain that Interamerican will seek to question ████████ on the precise subject matters covered in the Missing Documents; and, accordingly, PDV USA has the right to cross-examine ████████ using the Missing Documents and to ask its own questions with its allotted two hours. That is especially so because ████████—the *only*

---

that it had "'wholly or substantially' produced to PDV USA all documents produced [by Interamerican] to the government." Ex. J. And earlier this year, PDV USA learned that Interamerican deliberately excluded from its privilege log a memorandum about the Agreement that it received from outside counsel, which Interamerican then disclosed to Esther Nuhfer and Hugo Perera, thereby waiving attorney-client privilege. *See* ECF No. 137 at 3. Accordingly, the Missing Documents are not the only documents relevant to PDV USA's claims and defenses (and Interamerican's counterclaims) that Interamerican has failed to produce.

employee (now former) of PDV USA whom Interamerican has noticed for deposition—resides

beyond the subpoena power of this Court, and therefore his deposition may be a trial deposition.

Below are a few examples of Missing Documents that PDV USA needs to obtain and

review in full before the deposition of ███████:

- A few of the Missing Documents likely prove that Mr. Rivera and his co-conspirators received an additional $5 million from PDVSA as payment for attempting to de-designate the nephew of Maduro's wife from U.S. sanctions, *not* because ████████ attempted to induce Mr. Rivera to agree to assign the Agreement to PDVSA, as Interamerican contends. *See* Indictment, "Overt Acts," ¶¶ 66, 74–76; Ex. D at 244:7–247:6.

- At least one of the Missing Documents appears have ████████ on it: an email from Mr. Rivera to Ms. Nuhfer, forwarding an email from ██████ to Mr. Rivera about PDV USA's attempt to assign the Agreement to PDVSA. Indictment, "Overt Acts," ¶ 45. There are likely other Missing Documents that reference ████████ that PDV USA is unaware of without seeing the documents.

- The Missing Documents include communications about the origins and contents of Interamerican's "progress reports" that directly undermine Mr. Rivera's testimony that he received instruction from ████████ as to the level of detail Mr. Rivera should include in the reports and more broadly the types of consulting work Mr. Rivera was to perform. Indictment, "Overt Acts," ¶ 74; Ex. E at 379:22–380:1 ("I was constantly talking to Orsoni or ████ . . . regarding the background of these [progress] reports"). For example, the Missing Documents reveal that Mr. Rivera was taking instruction from Raul Gorrín about the contents of the progress reports. Indictment, "Overt Acts," ¶ 74.

- The Missing Documents also reveal that, rather than servicing Citgo, as Interamerican claims, Mr. Rivera was (a) attempting to lobby the U.S. government on behalf of PDVSA and the Venezuelan government and (b) subcontracting with Mr. Gorrín, Ms. Nuhfer, and Mr. Perera to do so, in direct violation of the Agreement.[8] Interamerican disputes PDV USA's claim that PDV USA had no visibility into what, if any services Mr. Rivera was providing under the Agreement. PDV USA will want to question ████████ about these activities so that he can testify about PDV USA's knowledge regarding them in order to

---

[8] *See, e.g.*, Indictment, "Overt Acts" at ¶ 63 (text message from David Rivera to Esther Nuhfer: "Tell [Hugo Perera] to tell his new BFF the bus driver [code word for Maduro] to pay us for the mtg w [Senator Marco Rubio]. Since there will b no turkey wout him."); ¶ 53 (text message from David Rivera to Raul Gorrín: "let's continue with the goals of the contract in order to take it where they want"); ¶ 48 (text message from David Rivera to Raul Gorrín: "They are calling me from the White House about the possible flight of [White House Advisor 1] in your airplane next week. Is that still a possibility?"); ¶ 44 (text message from Esther Nuhfer to David Rivera: "we should not have to return a penny").

bolster PDV USA's defense that neither ▓▓▓▓▓ nor PDV USA were aware of Mr. Rivera's subcontracting schemes, as reflected in the Missing Documents.[9]

Nor is the possibility that ▓▓▓▓▓ memory might fade a reason to permit this deposition to go forward. *See* Order. ▓▓▓▓▓ has already been deposed once in this case. Prior to the unsealing of the Indictment, PDV USA took ▓▓▓▓▓ deposition by written questions, and Interamerican refused to participate by serving its own written questions. If Interamerican were concerned about preserving ▓▓▓▓▓ testimony without the passage of additional time, it could have served its own written deposition questions when afforded the opportunity to do so. Interamerican could also have noticed ▓▓▓▓▓ deposition much sooner, but again it chose not to do so until after PDV USA sought his testimony through written questions. Indeed, in September 2021, PDV USA included ▓▓▓▓▓ on its initial disclosures, placing Interamerican on notice that ▓▓▓▓▓ had knowledge of, among other topics, assignment of the consulting agreement, which is exactly the topic on which Intermaerican now seeks testimony from ▓▓▓▓▓.

### CONCLUSION

For the foregoing reasons, PDV USA respectfully requests that this Court grant reconsideration of the Order and reinstate the stay of this action in full.

---

[9] PDV USA cannot rely exclusively on the excerpts of the Missing documents quoted in the Indictment. PDV USA is entitled to understand the full factual story presented in these fifty-plus documents, which are likely part of broader text and email threads not quoted in the Indictment. Furthermore, Interamerican has suggested that it will argue that the Spanish to English translations in the Indictment are faulty—or even that the Missing Documents are fabricated by the government (ECF No. 123 at 3; ECF No. 133 at 1, n.1; ECF No. 138 at 2). PDV USA wishes to avoid a situation where it asks ▓▓▓▓▓ questions based on the excerpts of the Missing Documents, only to later have Interamerican contest the validity of those excerpts and potentially necessitate re-deposing ▓▓▓▓▓.

Dated: New York, New York
       July 20, 2023

**WILLKIE FARR & GALLAGHER LLP**

By: */s/ Jeffrey B. Korn*
    Jeffrey B. Korn
    Brady M. Sullivan
    787 Seventh Avenue
    New York, New York 10019
    (212) 728-8000
    JKorn@willkie.com
    BSullivan@willkie.com

    Michael J. Gottlieb (admitted *pro hac vice*)
    1875 K Street, N.W.
    Washington, D.C. 20006
    (202) 303-1000
    MGottlieb@willkie.com

    *Attorneys for Plaintiff PDV USA, Inc.*