Honorable Judge Robert W. Lehrburger
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    **RE:**    <u>**PDV USA, Inc. v. Interamerican Consulting, Inc.**</u>
            **Case No.: 1:20-cv-03699-JGK-RWL**

Dear Judge Lehrburger:

    We represent Interamerican Consulting, Inc. ("<u>Interamerican</u>") in the above-referenced case. In accordance with Rule II.D. of Your Honor's Individual Practices, we submit this letter motion to compel discovery relating to communications between Plaintiff, PDV USA, Inc. ("<u>PDV USA</u>") and the United States Department of Justice (the "<u>DOJ</u>").[1]

    <u>**Background:**</u> On March 21, 2017, Citgo, acting through its affiliate, PDV USA, entered into an agreement with Interamerican for it to provide strategic consulting services for a total of $50 million (the "<u>Contract</u>"). (Doc. 111 at Pg. 20). Discovery has shown that PDV USA made three payments of $5 million to Interamerican between March 24, 2017, and April 19, 2017, and never expressed any dissatisfaction with Interamerican's performance. It was not until PDV USA proposed assigning the Contract to PDVSA that Interamerican first encountered any resistance to make payments due. *Id.* When Interamerican refused all entreaties to consent to assignment of the Contract, PDV USA refused to continue making payments. *Id.* On May 13, 2020, more than three years after making its last payment to Interamerican, PDV USA in consultation with the DOJ, brought this lawsuit based on a claim for breach of contract, claiming that Interamerican never performed services under the Contract. (Doc. 1; *see also* Ex. 1).

    PDV USA's theories of liability have since shifted dramatically. PDV USA now alleges—in an inconsistent and contradictory fashion—that Interamerican never actually performed under the Contract and that Interamerican was unjustly enriched because the Contract was always a sham (and that somehow it should be entitled to recover proceeds it sent as part of an allegedly illicit contract). (Doc. 104 at ¶¶ 83-99). To understand PDV USA's true motivation in bringing this lawsuit, and ultimately whether PDV USA was actually dissatisfied with its performance (or if it is suing to curry favor with the government), Interamerican must understand the extent that the DOJ has influenced this litigation. When Interamerican served its Second Set of Interrogatories, PDV USA refused to answer basic questions about whether it, or any of its affiliates, had met with the DOJ regarding the lawsuit. The Court ultimately compelled PDV USA to identify persons within the DOJ "with whom anyone within the PDV entities – including PDVSA – consulted prior to this lawsuit *about the subject matter of the lawsuit*." (Doc. 94 at ¶2) (emphasis in original).[2]

    PDV USA's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[1] Although the parties have discussed the issue of the DOJ communications at length, the parties' held a final meet and confer on this issue via telephone on April 17, 2024.
[2] PDV USA's position on this issue has not been consistent. It previously agreed it would produce communications with the DOJ but has since appeared to renege on that promise. (Ex. 2 at Pg. 1).

1

<u>**VIA ECF**</u>



The parties held a meet-and-confer on the issue of PDV USA's communications with the DOJ on November 17, 2022. Interamerican advised that it was prepared to move to compel these communications, but PDV USA insisted that the parties continue to negotiate and agreed not to take the position that a motion to compel filed by Interamerican concerning this issue would be improper because it was filed after the discovery deadline. (Ex. 5 at Pg. 3) (redacted to protect Mr. Doe's identity).[4] To facilitate further discussions, Interamerican provided a non-exhaustive list of examples representative of the discovery Interamerican sought. PDV USA indicated that it would review the list and provide a response. (*Id.* at Pg. 2). PDV USA never responded or explained its position, forcing Interamerican to seek its consent to modify the discovery schedule on December 13, 2022. (Ex. 6 at Pg. 1). On December 16, 2022, PDV USA responded, raising several baseless objections and threatening sanctions. (Ex. 7).

On January 3, 2023, Interamerican filed a motion for leave to take discovery of communications between PDV USA and the DOJ. (Doc. 128). The Court denied Interamerican's request "without prejudice for administrative reasons" but stated that the issue could "be raised, if warranted, after the stay is lifted." (Doc. 129 at ¶ 4). That same day the Court stayed the case "to provide time and opportunity for the production of certain text and other communications referred to as the 'Missing Documents.'" *Id.* at ¶ 1. After several extensions, the stay expired on April 16, 2024. Accordingly, Interamerican <u>renews its request</u> to depose PDV USA's corporate representative to inquire into the substance of PDV USA's communications with the DOJ.

**Argument:** None of PDV USA's objections should preclude Interamerican from inquiring into the timing, nature, substance, subject matter, parties involved and other issues related to PDV USA's communications with the DOJ. First, PDV USA claims that these communications are irrelevant, but this position makes little sense. (Ex. 7 at Pgs. 1-2). PDV USA entered into the Contract, which required Interamerican to provide services to PDV USA's sole satisfaction. Never once did PDV USA express any dissatisfaction. It was only three years later, after multiple communications with the DOJ, that PDV USA claimed Interamerican did not perform to its satisfaction. These communications will almost certainly shed light on whether PDV USA was truly dissatisfied, as it alleges, or simply acting at the behest of the DOJ. And, it appears that cooperation between PDV USA has continued to this

---

[3]

[4] Prior to the deposition of PDV USA's corporate representative, PDV USA had agreed that if the corporate representative could not adequately address the substance of its communications with the DOJ, it would produce ▬▬▬▬ to testify to these issues.

day. For example, on March 13, 2024, the DOJ took the unprecedented step of agreeing to produce documents referenced in the indictment of David Rivera in Florida. (Ex. 8 at Pg. 4).[5]

This Court should also reject PDV USA's claims that these communications are privileged. (Ex. 7 at Pgs. 2-3). It is well-settled that "[t]he attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services. Advice from an attorney to his or her client is also protected by the privilege." *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 811 F. Supp. 2d 713, 736 (S.D.N.Y. 2011), *amended on reconsideration* (Aug. 8, 2011) (footnotes omitted). Willkie's communications with third parties, including the DOJ, are clearly not within this privilege. And none of the cases upon which PDV USA relies suggest these communications should be protected from disclosure; they simply stand for the unremarkable proposition that parties should be limited to discovery that is relevant to the underlying litigation. *See In re Weatherford Intern. Securities Litig.*, 2013 WL 5788687, at *3 (S.D.N.Y. Oct. 28, 2013); *Ft. Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 111 (S.D.N.Y. 2013).

Relatedly, PDV USA should not be permitted to label every relevant communication with the DOJ as privileged because it conducted these communications through its attorneys. "[W]here the attorney acts as a negotiator or business agent for his client, the confidential communications between them are not privileged." *J. P. Foley & Co. v. Vanderbilt*, 65 F.R.D. 523, 526 (S.D.N.Y. 1974) (collecting cases). It is, therefore, "permissible to question either the client or the attorney regarding the general nature of the attorney's services to his client, the scope of his authority as agent and the substance of matters which the attorney, as agent, is authorized to pass along to third parties." *Id.* at 526–27 (S.D.N.Y. 1974) (collecting cases). To the extent Willkie acted as an agent for PDV USA (or any of its affiliates) in communicating with the DOJ, Interamerican should be permitted to probe these communications to discern PDV USA's true motives. *Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 504 (E.D.N.Y. 1986) (collecting cases) ("[C]ommunications to an attorney who is merely a conduit for information that eventually finds its way . . . to a third party, are not privileged because they lack confidentiality.").[6]

For the foregoing reasons, Interamerican respectfully requests that this Court enter an order: (a) granting leave for Interamerican to take a second deposition of PDV USA's corporate representative (and any attorney representing PDV USA or its affiliates) to inquire into the timing, nature, substance, subject matter, parties involved and other issues related to any communications between PDV USA or its affiliates and the DOJ; (b) requiring PDV USA to produce any documents between the DOJ and PDV USA (or any of its affiliates and attorneys) relating to this litigation that it has not already produced; and (c) modifying the discovery schedule in this case to facilitate any additional discovery.

---

[5] The DOJ only walked back its agreement to produce after criminal counsel for David Rivera and his co-defendant, Esther Nuhfer, highlighted the unprecedented and legally unfounded nature of the DOJ's position. (Ex. 8 at Pgs. 1-3).

[6] To the extent PDV USA argues that Interamerican should not be able to conduct discovery related to the DOJ communications because the Missing Documents have yet to be produced, this Court should reject this argument for the same reasons it rejected PDV USA's request to extend the stay of the case—PDV USA could have and should have sought these documents long ago. (Doc. 171).

3

**VIA ECF**

Respectfully submitted,

/s/ Jason Johnson
Tucker H. Byrd
Florida Bar No. 381632
Jason Johnson
Florida Bar No. 186538
BYRD CAMPBELL, P.A.
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
Facsimile: (407) 392-2286
Primary Email: TByrd@ByrdCampbell.com
Primary Email: JJohnson@ByrdCampbell.com
Counsel for Defendant/Counter-Plaintiff

Henry L. Saurborn, Jr.
Kaiser, Saurborn & mair
30 Broad St., 37th Floor
New York, New York 10001
Telephone: (212) 338-9100
saurborn@ksmlaw.com
Counsel for Defendant/Counter-Plaintiff

CC: All counsel of record (by ECF)

**VIA ECF**