# Exhibit B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:22-mc-21372-JAL

PDV USA, INC.,

      Petitioner,

v.

COMMUNICATION SOLUTIONS, INC. and
ESTHER NUHFER,

      Respondents.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Respondent Esther Nuhfer's Corrected Memorandum in Support of Assertion of Attorney-Client Privilege and Work Product Privilege. (ECF No. 48). Petitioner noticed a discovery hearing arising from a dispute over a document withheld that is alleged to be protected by attorney-client privilege. The Court set a hearing on the dispute for November 22, 2022. (ECF No. 44). Prior to the hearing, Respondent Nuhfer filed a memorandum briefing the issue of attorney-client privilege regarding the withheld document. At the hearing, the Court ordered that Respondent Esther Nuhfer's Corrected Memorandum in Support of Assertion of Attorney-Client Privilege and Work Product Privilege be converted to a Motion for Protective Order over the withheld document. As such, this cause is before this Court on Respondent Esther Nuhfer's Motion for Protective Order.

This matter was referred to the undersigned by the Honorable Joan A. Lenard, United States District Court Judge, for an Order on all pretrial, non-dispositive matters and for a Report and Recommendation on any dispositive matters. (ECF No. 4). Petitioner filed a response to

1

Respondent's Motion (ECF No. 50); no reply was filed.  A hearing on the Motion was held on November 22, 2022.  Having considered the Motion, Response, supplemental briefing, the docket as a whole, and with the benefit of oral argument and *in camera* review of the withheld document, Respondent Nuhfer's Motion is **DENIED**.

## I.     BACKGROUND

Petitioner PDV USA, Inc. ("PDV" or "Petitioner") initiated a lawsuit in the United States District Court for the Southern District of New York against Interamerican Consulting, Inc. ("Interamerican") for breach of contract, indemnity, and unjust enrichment.  (ECF No. 1 at 2, 4). Petitioner alleged that Interamerican failed to render any consulting services as part of a 2017 Consulting Agreement ("Agreement") under which Petitioner was to pay $50 million to Interamerican over a three-month period in exchange for strategic consulting services.  (ECF No. 1 at 2); *see PDV USA, Inc. v. Interamerican Consulting Inc.*, No. 1:20-cv-03699 (S.D.N.Y. 2020). In response, Interamerican asserted counterclaims alleging it fully performed under the Agreement and is owed the unpaid balance by PDV USA.  (ECF No. 1 at 2).

Petitioner alleges that Interamerican funneled $4.5 million to Communication Solutions Inc. ("Communication Solutions") and Esther Nuhfer ("Nuhfer" and collectively, the "Respondents"), and as such, Respondents (who are non-parties in the Southern District of New York action) are likely to possess relevant documents.  *Id.*  On May 3, 2022, Petitioner initiated this action by filing the underlying Motion to Compel seeking an order enforcing compliance with the two subpoenas served on Respondents: a Subpoena to Produce Documents directed to Communication Solutions, and a Subpoena to Produce Documents directed to Esther Nuhfer

2

(collectively, the "Subpoenas").[1]   The Subpoenas seek information related to documents and communications concerning the Agreement and any related subcontracts and payments.   On August 18, 2022, this Court ordered Respondents to comply with the Subpoenas.  (ECF No. 25).

Respondent Nuhfer filed the present Motion seeking to preclude the disclosure of a legal memorandum prepared by the law firm Cozen O'Connor, P.C. ("Cozen O'Connor") in February 2018 (the "Memorandum").  Respondent Nuhfer broadly asserts attorney-client privilege, work product privilege, and the common interest exception over the Memorandum.  Respondent Nuhfer alleges that David Rivera (the owner of Interamerican), Hugo Perera, and Nuhfer decided to jointly hire Cozen O'Connor to obtain a legal analysis of litigation concerns surrounding the Agreement.

## II.   DISCUSSION

Because Nuhfer has not substantiated her claim of attorney-client privilege, work product privilege, or the common interest exception with respect to the Memorandum, Respondent Nuhfer's Motion is denied.

Respondent Nuhfer supports her assertion of privilege with two affidavits: Respondent Nuhfer's October 2021 Affidavit (the "October 2021 Affidavit") and Respondent Nuhfer's November 2022 Affidavit (the "November 2022 Affidavit").

Respondent Nuhfer produced the October 2021 Affidavit to Petitioner approximately three weeks prior to the filing of Respondent's Motion.  (ECF No. 55-1 at 6).  In the October 2021 Affidavit, Nuhfer asserts that she participated in the decision to hire Cozen O'Connor "in connection with a memorandum the firm prepared."  (ECF No. 48-1 at ¶ 1).  She asserts she

---

[1] Petitioner, in its Response, asserts the reason for requesting documents from third parties, like Respondent Nuhfer, is because in the underlying litigation "a large number of emails and other documents that should be in Interamerican's document production are not."  (ECF No. 55-1 at 5).  "Interamerican recently propounded an interrogatory response in which it admitted to knowingly deleting responsive documents during the pendency of this litigation.  Some of the most important emails that PDV USA has uncovered during discovery in the [u]nderlying [l]itigation have come from third parties such as Ms. Nuhfer and Mr. Perera—likely owing to Interamerican's spoliation efforts."  (*Id.*).

"authorized the use of funds to provide part of the retainer to hire Cozen O'Connor" and that when Cozen O'Connor was no longer retained, Nuhfer received her share of the unused portion of the retainer. (*Id.* at ¶¶ 2–3). With regard to the Memorandum, Nuhfer claims she was aware the Memorandum was privileged, confidential, and protected by attorney-client privilege. (*Id.* at ¶ 4). Additionally, Nuhfer admits that she "did not contribute to any content in the memorandum and [has] never met with the attorneys at Cozen O'Connor about this memorandum." (*Id.* at ¶ 5).

After Respondent Nuhfer produced the October 2021 Affidavit, Petitioner deposed Nuhfer. Petitioner asked Nuhfer questions regarding the October 2021 Affidavit. (ECF No. 55-1 at 89). Petitioner asked if Nuhfer recognized the October 2021 Affidavit, to which Nuhfer responded, "I'm not answering the question based on my right to invoke the Fifth Amendment." (*Id.*). Petitioner asked who wrote the October 2021 Affidavit. (*Id.*). Nuhfer again invoked the Fifth Amendment. (*Id.*). Nuhfer invoked the Fifth Amendment for several questions, including whether she had signed the October 2021 Affidavit, and if she had possession of other copies of it. (*Id.*). After interjection from counsel, Nuhfer then changed her response and refused to answer questions based on attorney-client privilege. (*Id.* at 89–90). Petitioner asked if Nuhfer had any communications with Cozen O'Connor in connection with the Memorandum referenced in the October 2021 Affidavit. Nuhfer's counsel responded, "[s]ame objection as to attorney-client privilege and she should not answer." (*Id.* at 90). Petitioner asked Nuhfer questions regarding the contents of the October 2021 Affidavit, such as what she meant when she stated she participated in the decision to hire Cozen O'Connor or what she meant when she stated she authorized the use of funds as part of the retainer to hire Cozen O'Connor. (*Id.*). Nuhfer's counsel interjected the same objection and Nuhfer accordingly refused to answer. (*Id.*).

Accompanying the present Motion, Respondent Nuhfer provided the November 2022 Affidavit. In the November 2022 Affidavit, Nuhfer asserts that she met with an attorney at Cozen O'Connor in 2017 and 2018 to discuss hiring the firm and "to receive advice regarding the receipt of money by David Rivera's company Interamerican." (ECF No. 48-2 at ¶ 1). Nuhfer claims that she "contributed to the legal fees charged by the law firm by agreeing to assign money that [she] had not yet received to the law firm." (*Id.* at ¶ 2). She asserts that the funds that were not used by Cozen O'Connor were returned to her. (*Id.* at ¶ 3).

### a. Attorney-Client Privilege

The attorney-client privilege "protect[s] confidential communications between client and lawyer made for the purpose of securing legal advice." *In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992).[2] The proponent of the privilege must demonstrate the existence of the privilege "by a preponderance of the evidence." *MapleWood Partners, L.P. v. Indian Harbor Ins.*, 295 F.R.D. 550, 584 (S.D. Fla. 2013) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993)). As an initial matter, the Court recognizes that a formal retainer agreement is not necessary to establish an attorney-client relationship. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1281 (11th Cir. 2004). And Nuhfer does not provide one between herself and Cozen O'Connor.

To determine whether an attorney-client relationship exists, the test "is a subjective one and hinges upon the client's belief that [she] is consulting a lawyer in that capacity and [her]

---

[2] The Court need not address the issue of whether federal law or Florida law applies here because the Court's ruling in this instance is unaffected by the choice of law. *See, e.g.*, *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, 519 F. Supp. 3d 1184, 1196 (S.D. Fla. 2021) ("As a practical matter, for the issues presented here, there is no material distinction between the attorney-client privilege available under Florida state law and federal common law."). Further, no party has argued that the Court should follow federal law, Florida law, or the law of another state. (ECF Nos. 48, 50, 55).

manifested intention is to seek professional legal advice." *Id.* at 1281–83 (emphasis omitted). The client's belief that an attorney-client relationship exists must "be a reasonable one." *Id.* at 1281.

Respondent Nuhfer contends that she jointly agreed with David Rivera and Hugo Perera "to have lawyers provide advice and/or to receive legal advice." (ECF No. 48 at 5). Petitioner argues the attorney-client privilege ran between Interamerican, David Rivera, and Cozen O'Connor, and does not extend to Nuhfer. (ECF No. 55-1 at 10–11). Upon review of the evidence[3] advanced in support of Respondent's claim that Nuhfer sought and received legal advice from the lawyers who authored the Memorandum, I find her averments too conclusory to be credited, particularly in light of conflicting record evidence.

In the October 2021 Affidavit, Respondent Nuhfer claims she "participated in the decision to hire Cozen O'Connor in connection with a memorandum the firm prepared." (ECF No. 48-1 at ¶ 1). She claims she "authorized the use of funds" to retain Cozen O'Connor and received her share of the unused funds at the end of its retention. (*Id.* at ¶¶ 2–3). In the November 2022 Affidavit, Nuhfer claims she met with an attorney at Cozen O'Connor in 2017 and 2018 "to discuss hiring the law firm," "contribut[ing] to the legal fees," and receiving distribution of unused funds. (ECF No. 48-2). Respondent Nuhfer has demonstrated that her funds were used to pay for a portion of Cozen O'Connor's fees and that the unused funds she put forward were returned to her. Review of the Memorandum further reveals that, in connection with the legal advice Cozen O'Connor provided to David Rivera, her participation in certain events was contemplated, at least insofar as the Memorandum does in fact mention Nuhfer.[4] Notwithstanding, the Memorandum

---

[3] Petitioner challenges Nuhfer's right to rely on the October 2021 Affidavit, about which she refused to answer any questions at deposition. Petitioner has the better argument on this point, as discussed below; even considering this Affidavit, however, I reach the same conclusion.

[4] Respondent Nuhfer provided the Memorandum for this Court to conduct an *in camera* review. Review of the Memorandum *in camera* does not alter the Court's findings.

offers no indication that Cozen O'Connor was asked to provide legal advice to Nuhfer. Rather, the evidence suggests that Cozen O'Connor was retained by and gave advice solely to Rivera and Interamerican.

In the underlying litigation, Interamerican took the position that Nuhfer was outside the attorney-client relationship, specifically, by admitting that it had waived attorney-client privilege over certain emails because the emails "were disclosed to third-parties, namely, Esther Nuhfer." (ECF No. 55-1 at 39). It is apparent Interamerican and David Rivera are holders of the attorney-client privilege with regard to communications with Cozen O'Connor. Interamerican is named in the retainer agreement with Cozen O'Connor and Interamerican is David Rivera's company. (ECF No. 48 at 2, 5–6). While Rivera and Interamerican's position on the relationship is not determinative of whether Nuhfer reasonably believed she too enjoyed a privileged relationship with Cozen O'Connor, nothing in the record meaningfully refutes their position or supports her averred belief.

The evidence Respondent Nuhfer does provide in support of her claim of privilege, the October 2021 and November 2022 Affidavits, present a credibility issue as they contain inconsistencies. The October 2021 Affidavit states Nuhfer "participated in the decision to hire Cozen O'Connor *in connection with a memorandum* the firm prepared," but also asserts Nuhfer "did not contribute to any content in the memorandum" nor did she meet "with the attorneys at Cozen O'Connor about this memorandum." (ECF No. 48-1 at ¶¶ 1, 5) (emphasis added). The October 2021 Affidavit mentions "participating" in the decision to hire Cozen O'Connor, but the November 2022 Affidavit states Nuhfer met with an attorney at Cozen O'Connor in 2017 and 2018 to discuss hiring the law firm. (ECF No. 48-1 at ¶ 1); (ECF No. 48-2 at ¶ 1). These inconsistencies

undermine the Court's ability to contextualize Respondent's already vague and conclusory statement that she met with the attorney for the purpose of receiving legal advice.

The only legal advice put forward to this Court as evidence of an attorney-client relationship is the Memorandum, which is solely addressed to David Rivera. (ECF No. 48 at 4). Respondent Nuhfer is mentioned in the Memorandum, but only in the third person. The Memorandum's analysis is specifically tailored towards providing advice to David Rivera. Even the Retainer Agreement with Cozen O'Connor was only signed by Interamerican, David Rivera's company. (*Id.* at 6). The Memorandum only further supports the attorney-client relationship between Cozen O'Connor, Interamerican, and David Rivera, but does not show Respondent Nuhfer's place within that privilege.

Respondent Nuhfer also asserts that the Memorandum is covered by attorney-client privilege because the Memorandum was made and distributed "in confidence." (ECF No. 48 at 5). While "[a] key element of the privilege is whether the communications is made in confidence," that privilege is lost "if there is a disclosure inconsistent with maintaining the confidential nature the attorney-client relationship, such as the release of otherwise privileged communication to a third party." *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 270 F. Supp. 3d 1332, 1338 (S.D. Fla. 2017). In this instance, Respondent Nuhfer has demonstrated that the Memorandum was released to a third party when it was disclosed to her. Interamerican in the underlying litigation stated Nuhfer was a third party. (ECF No. 55-1 at 39) ("[Interamerican] concedes that some privileged communications identified in PDV USA's Letter Motion were disclosed to third-parties, namely, Esther Nuhfer."). While Interamerican may have wanted to keep the Memorandum confidential, Respondent Nuhfer has not shown the confidential nature of the Memorandum was kept intact when disclosed to her.

Respondent Nuhfer does not provide a sufficient evidentiary basis for an attorney-client relationship between her and Cozen O'Connor.  Accordingly, Respondent Nuhfer's assertion of attorney-client privilege over the Memorandum is unsubstantiated.

**b. Work Product Protection**

Respondent Nuhfer also claims that the work product privilege protects the Memorandum from disclosure.[5]  Compared to the attorney-client privilege, the work product doctrine is distinct and broader.  *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975).  Federal Rule of Civil Procedure 26(b)(3) governs the discoverability of work product and provides, in part, as follows:

> (A) *Documents and Tangible Things*.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> (B) *Protection Against Disclosure*.  If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3); *see also Kemm v. Allstate Prop. & Cas. Ins.*, No. 08–CV–299–T–30EAJ, 2009 WL 1954146, at *2 (M.D. Fla. July 7, 2009) (stating that federal law provides the primary decisional framework for the application of the work product doctrine in federal diversity cases).

Respondent Nuhfer contends that her assertion of work product protection is satisfied by showing that she sought "legal advice in 2018, after the actions alleged by PDV USA were said to have occurred" in conjunction with Nuhfer's criminal and civil litigation concerns.  (ECF No. 48

---

[5] While "the work product doctrine protects materials prepared by an attorney acting for his client" and this Court has found there was not an attorney-client relationship, the Court will address the argument nonetheless.  *See Schulte v. NCL (Bahamas) Ltd.*, No. 10-23265-CIV, 2011 WL 256542, at *2 (S.D. Fla. Jan. 25, 2011).

at 8–9).  Respondent Nuhfer asserts her criminal and civil litigation concerns are demonstrated by the Memorandum, the underlying litigation, and her being identified as a target of a grand jury investigation.  (*Id.*).

For the work product doctrine to apply, "the party asserting the doctrine must demonstrate that at the time the materials were created or drafted, the entity must have anticipated litigation." *Schulte*, 2011 WL 256542, at *2.  As noted above, the evidence fails to show that the Memorandum was produced *for Respondent Nuhfer*, in anticipation of her own concerns of litigation. Respondent Nuhfer is not a defendant in the underlying civil action, and it was not until four years after the Memorandum was created that Respondent Nuhfer was even mentioned in the underlying litigation.  *See PDV USA*, 20-cv-3699, (ECF No. 104 at ¶ 4).  With respect to her criminal exposure, Respondent Nuhfer argues that she "did not seek advice from Cozen O'Connor for no reason," (ECF No. 48 at 7); asking the Court to assume the reason will not carry her burden here.  It remains unsubstantiated, moreover, that Nuhfer *did* seek advice from Cozen O'Connor, as she now contends.

Respondent Nuhfer cites to excerpts from Petitioner's pleadings in *this* action to support her argument that she reasonably anticipated litigation.  Excerpts from Petitioner's Motion to Compel do not substantiate her reasonable anticipation of litigation in 2018, nor does review of the docket.  Respondent Nuhfer is involved in this action as a witness, not as a defendant. Respondent Nuhfer's vague assertions coupled with contradictory evidence do not sufficiently demonstrate the work product doctrine applies.

As Petitioner notes, the work product privilege may only be asserted over work product for whom the work product was prepared.  *Green v. Sauder Mouldings, Inc.*, 223 F.R.D. 304, 306 (E.D. Va. 2004) ("Rule 26(b)(3) is limited in its application to those facts or opinions marshaled

by a party's representative . . . after he is retained by the litigating party and only when prepared in anticipation of *that party's* litigation.").   Nuhfer has not provided sufficient evidence to demonstrate she has standing to claim that the work product was prepared for her.[6]

Notwithstanding, Respondent Nuhfer argues that disclosure to her should not operate as a waiver of the work product protection as the Memorandum was clearly prepared in anticipation of litigation, albeit by Rivera and Interamerican.   Nuhfer argues that they had no adversarial relationship, such that disclosure to her was not tantamount to revealing it to opposing counsel. Nuhfer lacks standing to object to a waiver of the work product protection.

Accordingly, Respondent Nuhfer fails to meet her burden of asserting work product privilege over the Memorandum.

### c.  Common Interest Exception

Respondent Nuhfer argues that if the Memorandum is not protected from disclosure under attorney-client privilege directly, the Memorandum is protected from disclosure by the common-interest exception.   The common interest exception is an "exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party."   *In re Photochromic Lens Antitrust Litig.*, No. 10-MD-2173-T-27EAJ, 2013 WL 12316874, at *2 (M.D. Fla. June 11, 2013)) (citing *Cavallaro v. U.S.*, 284 F.3d 236, 250 (1st Cir. 2002)).   A party may share its work with a third party "when the parties have a shared interest in actual or potential litigation against a common adversary, and the nature of their common interest is legal, and not solely commercial." *Spencer v. Taco Bell, Corp.*, No. 12-CV-387-T-23TBM, 2013 WL 12156093, at *5–6 (M.D. Fla. Apr. 23, 2013).   The party asserting the privilege has the burden to demonstrate

---

[6]  The Court further notes that neither Rivera nor Interamerican moved in this Court's proceedings to preclude Nuhfer from producing the Memorandum on the basis that disclosure to her did not waive their right to assert protection.  *See, e.g.*, *Lesniak v. Geico Gen. Ins.*, 219CV494, 2020 WL 5878022, at *4 (M.D. Fla. Apr. 17, 2020) ("[W]ork-product protection belongs not only to the attorney, but the client.").

(1) "an agreement (though not necessarily in writing) to cooperate through a common enterprise towards an identical legal strategy;" (2) "the communications were given in confidence, and the client reasonably understood this;" (3) "the joint strategy was more than 'merely the impression of one side.'" *Pensacola Firefighters' Relief Pension Fund Bd. of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.,* No. 09CV53/MCR/MD, 2011 WL 3512180, at *6 (N.D. Fla. July 7, 2011), *report and recommendation adopted*, No. 09CV53/MCR/MD, 2011 WL 3511069 (N.D. Fla. Aug. 10, 2011) (citing *Denny v. Jenkins & Gilchrist*, 362 F. Supp. 2d 407, 415 (S.D.N.Y. 2004)).

Even after *in camera* review of the Memorandum, Respondent's privilege log, and the remaining record evidence, Respondent Nuhfer has not provided evidence to demonstrate that an agreement to cooperate was made between her, David Rivera, and/or Interamerican. As noted above, the Memorandum was addressed to Rivera, who appears to be the original privilege holder. The evidence fails to show that Rivera's disclosure of the Memorandum to Respondent Nuhfer was pursuant to a common interest agreement. Nuhfer's claim the Memorandum was shared with her as part of this common interest is further undermined by the evidence that, in communications between Rivera and his counsel, Nuhfer is not mentioned or copied, but rather Rivera sometimes "blind-copies" (*i.e.*, "bcc's") or forwards an email to Nuhfer instead. (ECF No. 55-1 at 5).

Respondent Nuhfer argues that even if Rivera considered her a third party, "she is not an adverse party to Rivera." (ECF No. 48 at 9). Nuhfer asserts she has demonstrated "a common interest with Rivera . . . and was so closely allied with Rivera that she co-funded the preparation of the Memorandum because of the joint interest he shared with her." (*Id.*). Accepting the fact that their interests were similar if not precisely common, without evidence of a joint strategy and agreement to preserve the confidentiality of the communications, this alignment of interest is insufficient to substantiate Nuhfer's claim of common interest privilege.

Respondent Nuhfer argues that "[i]t would be to the detriment of both Rivera and Nuhfer if the confidential nature of the Memorandum was comprised, and thus both had a reasonable basis for believing that the materials disclosed would be kept confidential." (ECF No. 48 at 12). While it is tempting to assume, as Respondent Nuhfer invites, that sharing this compromising Memorandum with Nuhfer evidences Rivera's belief that he and Nuhfer shared a common interest, Nuhfer has failed to support this argument with competent evidence. Petitioner by contrast advances evidence that Nuhfer herself did *not* believe she shared a common interest with Rivera. Petitioner argues that her retention of a private investigator to investigate Rivera suggests that she did not trust him or view their interests as aligned. Without deciding which scenario is true, I find only that Respondent Nuhfer cannot carry her burden here with argument in the absence of evidence.

Respondent Nuhfer argues the common interest exception applies as "[t]he Memorandum clearly addressed the involvement of each participant and that all of them had knowledge and involvement in actions the opposing parties might use against them, such that a defense of Rivera would benefit Nuhfer and Perera as well." (ECF No. 48 at 12). Knowledge of each other's actions that could be used against each other in the future does not necessarily make the common interest exception applicable. The Memorandum does mention defenses for Rivera that could possibly also be applicable to Respondent Nuhfer's own case. However, the possibility of overlapping available defenses does not demonstrate a common interest agreement between David Rivera and Respondent Nuhfer.

Accordingly, Respondent Nuhfer fails to meet her burden of asserting the common interest exception applies over the Memorandum.

### d. Reliability of the Affidavit Evidence

Petitioner argues that Respondent Nuhfer must be barred from relying on the October 2021 Affidavit in her Motion for a Protective Order because she refused to answer any questions about the averments in the affidavit at deposition.  (ECF No. 55-1 at 11–12).  Respondent Nuhfer invoked her Fifth Amendment right against self-incrimination when refusing to answer questions related to the October 2021 Affidavit and the Memorandum.  Petitioner asked Nuhfer if she recognized the October 2021 Affidavit.  (ECF No. 55-1 at 89).  Nuhfer responded, "I'm not answering the question based on my right to invoke the Fifth Amendment."  (*Id.*).  Petitioner asked about who wrote the October 2021 Affidavit.  (*Id.*).  Nuhfer again invoked the Fifth Amendment.  (*Id.*).  Nuhfer invoked the Fifth Amendment for several questions, such as whether she ever signed the October 2021 Affidavit or if she had possession of other copies of it.  (*Id.*).  Nuhfer similarly refused to answer additional questioning based on asserted attorney-client privilege.

Petitioner contends that Respondent Nuhfer cannot invoke the Fifth Amendment as a shield against questions regarding the October 2021 Affidavit, and then using the same October 2021 Affidavit, with a new November 2022 Affidavit with essentially the same information, as a sword to avoid disclosure of the Memorandum.

The Fifth Amendment right against self-incrimination cannot be invoked to oppose discovery and then discarded for the purpose of supporting a party's assertions.  *Glock, Inc. v. Glob. Guns & Hunting, Inc.*, No. 12-CV-136, 2015 WL 13614255, at *3 (N.D. Ga. Mar. 30, 2015).  A party faces the dilemma of choosing silence or presenting a defense.  *S.E.C. v. Zimmerman*, 854 F. Supp. 896, 899 (N.D. Ga. 1993) (citing *United States v. Rylander*, 460 U.S. 752, 759 (1983)).  A party cannot selectively waive testimonial privileges and choose when they would like to disclose discoverable material.  *Glock, Inc.*, 2015 WL 13614255, at *3 (collecting cases).

Here, Respondent Nuhfer attempts to do just that. Respondent Nuhfer invoked her Fifth Amendment right in the underlying action and refused to answer any questions about the October 2021 Affidavit at the November 3, 2022 deposition, as is her right; however, having deprived Petitioner of the ability to discover even the most basic predicate facts about the averments in the Affidavit, she cannot now argue the Affidavit's meaning and how it supports her assertion of privilege. For example, she was asked to explain her averment that she participated in the decision to hire the firm, but she refused on the assertion of privilege. Yet her arguments in the present Motion rely on facts not fairly disclosed in either Affidavit, but rather would offer to expound upon or clarify those uncrossed averments. Notwithstanding, I have considered the Affidavits, as noted above, and reach the conclusion that they do not carry her burden.

## III. CONCLUSION

Considering the Motion, Response, record evidence, supplemental briefing, *in camera* review of the Memorandum, and arguments presented at the November 22, 2022 hearing, the Court finds that the

Memorandum is not protected by the attorney-client privilege, the work-product doctrine, or the common interest exception.

Accordingly, Respondent Nuhfer's Motion is **DENIED**. Respondent Nuhfer shall produce to Petitioner the Memorandum within seven (7) days of the entry of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of February, 2023.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE