# Exhibit 24

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                       FORT LAUDERDALE DIVISION
                         CASE NO. 24-CV-20456
 3

 4   PDV USA, INC.,                              Miami, Florida

 5              Plaintiff,                       April 19, 2024

 6         vs.                                   9:05 A.M. - 9:24 A.M.

 7   DAVID RIVERA,

 8              Defendant.                       Pages 1 to 17
     _____
 9
                       TRANSCRIPT OF RECORDED HEARING
10           BEFORE THE HONORABLE LAUREN FLEISCHER LOUIS
                    UNITED STATES MAGISTRATE JUDGE
11

12

13

14

15

16

17
     STENOGRAPHICALLY REPORTED BY:
18
                         AMBER GABEL, COURT REPORTER
19                       BAILEY ENTIN REPORTING, LLC

20

21

22

23

24

25
```

```
 1    APPEARANCES:

 2    FOR THE PETITIONER:            Brady Sullivan, Esquire
                                     Willkie Farr and Gallagher, LLP
 3                                   787 Seventh Avenue
                                     New York , New York 10019
 4
                                     Eliot Pedrosa, Esquire
 5                                   Jones Day
                                     600 Brickell Ave
 6                                   Ste 3300
                                     Miami, FL 33131-3072
 7
      FOR THE RESPONDENT:            Jason Ward Johnson
 8                                   Byrd Campbell, P.A.
                                     180 N Park Ave
 9                                   Suite 2A
                                     Winter Park, Florida 32789-7401
10
                                     Edward Shohat, Esquire
11                                   David Weinstein, Esquire
                                     Walker Jones, LLP
12                                   201 South Biscayne Boulevard
                                     Suite 3000
13                                   Miami, Florida 33131

14    FOR THE GOVERNMENT:            Harold Schimkat, Esquire
                                     U.S.  Attorney's Office
15                                   99 Northeast 4th Street
                                     Miami, Florida 33132

16

17
      ALSO PRESENT:                  A. Margot Moss, Esquire
18                                   Markus/Moss PLLC
                                     40 NW 3rd Street
19                                   PH 1
                                     Miami, Florida 33128
20

21

22

23

24

25
```


```
 1                  (Call to the Order of the Court.)
 2          THE COURT:  The United States District Court for the
 3  Southern District of Florida is now in session.  The Honorable
 4  Lauren Louis presiding.  Calling Case Number 24-20456, civil,
 5  Judge Damian.  PDV USA Inc. Versus Rivera.
 6          Counsel, would you please note your appearances for the
 7  record beginning with the plaintiff.
 8          MR. SULLIVAN:  Good afternoon, Your Honor.  Brady
 9  Sullivan with the law firm of Willkie Farr and Gallagher on
10  behalf of petitioner, PDV USA Incorporated.
11          MR. JOHNSON:  Good afternoon, Your Honor.  Jason
12  Johnson of Byrd Campbell in Winter Park, Florida for
13  respondent, David Rivera.
14          MR. PEDROSA:  Good afternoon, Your Honor.  Eliot
15  Pedrosa from Jones Day also on behalf of the petitioner.
16          MR. SCHIMKAT:  Good afternoon, Your Honor.  Harry
17  Schimkat representing the Government.
18          THE COURT:  Thank you, Mr. Schimkat.
19          MR. SHOHAT:  Good afternoon, Your Honor.  Ed Shohat,
20  Jones Walker, LLP.  I represent Mr. Rivera in the criminal
21  case, at the present time, on a temporary appearance.
22          MR. WEINSTEIN:  Good afternoon, Your Honor.  David
23  Weinstein also of Jones Walker, LLP.  I am in the same position
24  as in regards to Mr. Rivera, in the criminal case, as is my
25  partner Mr. Shohat.
```

```
 1              THE COURT:  Who is speaking for Mr. Rivera in this
 2   action?
 3              MR. JOHNSON:  I am, Your Honor.
 4              THE COURT:  Say that again?
 5              MR. JOHNSON:  Jason Johnson.
 6              THE COURT:  Mr. Johnson.  Okay.
 7              All right.  I have to ask AMM is who?
 8              MR. SULLIVAN:  It's counsel for Esther Nuhfer in the
 9   criminal proceeding, Your Honor.
10              MS. MOSS:  Good afternoon, Your Honor.  Margot Moss on
11   behalf of Esther Nuhfer, who we represent on a temporary basis,
12   in the criminal proceeding.
13              THE COURT:  Okay.  The -- okay.
14              And Mr. Feldman.  And Jones Walker.
15              MR. FELDMAN:  And good afternoon, Your Honor.  Forgive
16   me, I am out of uniform.  I'm visiting my grandson up --
17              THE COURT:  I'm less concerned about (sic) as I am --
18   are you counsel or a party?
19              MR. FELDMAN:  I am temporary counsel for Mr. Rivera in
20   the criminal matter.
21              THE COURT:  Okay.
22              MR. FELDMAN:  But I'm here as an observer today.
23              THE COURT:  Okay.
24              MR. SHOHAT:  And, Your Honor, Jones Walker, that's my
25   paralegal at the office taking notes.  Her name is Duchess
```

```
 1  Weiner.
 2          THE COURT:  I ask because we are limited these days in
 3  our ability to broadcast proceedings beyond parties or their
 4  attorneys, and, of course, there is no recording of federal
 5  court proceedings.  So I give the admonition particularly when
 6  I can't see who is behind the mystery.
 7          So you and paralegal, Mr. Shohat, understand the
 8  admonition; correct?
 9          MR. SHOHAT:  Of course.  She's not recording it, Judge.
10  She's typing notes out.
11          THE COURT:  I discharge my obligation to make sure
12  everybody knows the rules.
13          MR. SHOHAT:  100 percent.
14          THE COURT:  Okay.  So Mr. Schimkat, I had a chance to
15  review your petition that you filed in the criminal proceeding,
16  for which I thank you, and I suppose at this point, I need to
17  hear from Mr. Johnson to understand now if and why you oppose
18  the motion.
19          MR. JOHNSON:  Your Honor, our opposition to the motion
20  was and is because of the existence of the protective order in
21  the criminal proceeding.  If Your Honor grants the government's
22  request to release everything, then I'm not sure our objection
23  remains in place.
24          I mean, this all stems from litigation in the Southern
25  District of New York that PDV USA has against Mr. Rivera's
```

```
 1   company Interamerican Consulting.  After they asked for a
 2   number of documents from us in that case, after we informed
 3   them that we did not have those documents, many of which are
 4   more than six years old, they moved to stay the New York
 5   litigation in January of this year.  We're a year into that
 6   stay with no indication as to any independent action by PDV USA
 7   to obtain those documents.  The New York (inaudible) granted
 8   one final extension through March 15th but refused the request
 9   to compel Interamerican to produce those documents.  They have
10   come down here, in front of Your Honor, rather than going
11   directly to criminal proceedings and seeking some relief from
12   that protective order, and basically tried to do an end run
13   around the criminal procedure rules, in my opinion, and filed
14   motions to compel our compliance with the subpoenas in the New
15   York case.
16           We don't have the documents to produce, Your Honor.
17   The documents were produced by the Government, under a
18   protective order, to Mr. Rivera's counsel in the criminal
19   proceedings and under the language of that protective order,
20   they where only authorized to share with Mr. Rivera those
21   documents to the extent they felt it necessary to assist in
22   their limited representation of Mr. Rivera at that time.  I
23   have not seen the documents.  I don't know exactly what is in
24   the documents, so I have nothing to produce to PDV USA if the
25   Court compels my compliance or client's compliance at this
```

1 time. Now, if the Court grants an application, by the
2 Government relief to give everything that it has, then that's a
3 different story. But as of right now, with the existing
4 protective order, there's nothing for me to give.
5         THE COURT: Okay. Mr. Schimkat, if I can put you on
6 the spot for a minute.
7         MR. SCHIMKAT: Yes, Your Honor.
8         THE COURT: Your petition says you produced documents,
9 can you tell me the vehicle, the medium that you used to
10 produce documents and to whom?
11        MR. SCHIMKAT: You mean like hard copy versus
12 electronic or --
13        THE COURT: Dropbox, thumb drive.
14        MR. SCHIMKAT: Yeah, so what we do is, they're stored
15 here at the U.S. Attorney's Office electronically. We uploaded
16 them through our uploading service, and defense counsel was
17 able to download it to their own computers at their respective
18 law firms.
19        THE COURT: Okay. So you used Box?
20        MR. SCHIMKAT: I'm not sure off the top of my head, I
21 believe so.
22        THE COURT: Mr. Weinstein is nodding readily. They
23 give us Box.
24        And who had -- who did you give credentials to to
25 download?

1            MR. SCHIMKAT:  Various attorneys an other personnel at
2    both the Jones Walker law firm as well as David Marcus' law
3    firm.
4            THE COURT:  Okay.
5            MR. SCHIMKAT:  Let me, if I can, I just want to be
6    crystal clear about something because I'm not sure it came
7    across to the Court in what Mr. Johnson was saying.
8            So we filed our petition, obviously, since we got a
9    subpoena.  We had produced a large number of documents as part
10   of the forfeiture litigation.  The subpoena served on us is
11   fairly narrow and the materials we believe are responsive are a
12   somewhat small subset of the discovery we previously provided
13   to defense counsel in the criminal case.
14           I'm not as familiar with respect to the subpoena that's
15   really at issue in the present proceeding today.  The subpoena
16   that was served on the Mr. Rivera personally.  I've looked at
17   it.  It was served even before we had produced any discovery in
18   the criminal case, so to the extent that Mr. Johnson is
19   suggesting that if we fulfill our obligations, under our
20   subpoena, it would take care of any issues with respect to
21   Mr. Rivera's subpoena, that's at issue here, I don't know that
22   that's the case because Mr. Rivera's subpoena might, having
23   looked at it, include items that we did not believe were
24   responsive to the subpoena that we received.  So it may be
25   broader and more inclusive then ours.  And I just want to be

```
 1  clear to that with the Court.
 2          THE COURT:  I hear you.  I'll let Mr. Sullivan address
 3  that.  But thank you, Mr. Schimkat.
 4          When were the documents -- and I don't mean a
 5  particular date, but as far back as or as recently as, how long
 6  do you know if the documents, that you produced to defense
 7  counsel, were they pulled down?
 8          MR. SCHIMKAT:  We made our initial productions, I
 9  believe in August of 2023, and it continued through, at least
10  the beginning of September 2023.  So generally, August,
11  September of 2023.
12          THE COURT:  Okay.  Last question, the documents that
13  you would view responsive to the subpoena, that the Government
14  is responding to, are those subsumed within the productions
15  that you made on August or September of 2023?  Or are there any
16  documents you're contemplating producing that weren't also
17  produced in that timeframe?
18          MR. SCHIMKAT:  No, Your Honor.  Everything that --
19  based on the language of the subpoena that we got, which was
20  pretty narrow, everything that we are producing, we are only
21  producing materials that are copies of materials previously
22  provided to defense counsel.
23          THE COURT:  Okay.  Thank you, Mr. Schimkat.
24          All right.  Mr. Sullivan, are you or Mr. Pedrosa
25  addressing -- yeah.
```

1       MR. SULLIVAN: Yes, Your Honor. Thank you. Just for
2  the record Brady Sullivan on behalf of petitioner, PDV USA.
3       I just want to, I guess, clarify at the outset, PDV was
4  a filed -- only a couple of hours ago, an amended certificate
5  of conferral.
6       THE COURT: I saw it.
7       MR. SULLIVAN: And I do -- thank you, Your Honor. So I
8  just wanted to be clear about the contents of that. The
9  Government has no objection to Mr. Rivera being required to
10 produce documents pursuant to the subpoena at issue in this
11 litigation subject to the -- the caveat noted in the
12 Government's statement about marking them confidential in the
13 New York litigation, which, of course, we would take no issue
14 with.
15      In response to a remark by Mr. Johnson that he's
16 willing to comply with an order of this court, if and when, the
17 Government's application, pursuant to our subpoena is -- is
18 granted, we think that is not the case, and does not make any
19 sense.
20      The Government produced these documents to Mr. Rivera.
21 They produced them pursuant to a criminal protective order.
22 The government has now stated, that they have an objection to
23 Mr. Rivera (inaudible) those documents to us. As far as we are
24 concerned, that is the end of the inquiry. There is nothing
25 for the Court to rule on, to authorize Mr. Johnson to access or

 1   produce these documents to us.  This happens frequently in
 2   litigation.  You receive documents under a protective order, a
 3   third party says, "We wanted them," they serve a subpoena.  You
 4   pick up the phone and you call the person that served them, and
 5   say, "We have a subpoena.  We need to produce these documents,
 6   but I note that you marked them confidential.  Do you object to
 7   us producing them?"  Sometimes they say "yes," sometimes they
 8   "no."  In this instance, the Government has said, "We do not
 9   objection, but there may be some sensitive financial
10   information in there, sot he documents should be designated
11   confidential."  In the other litigation, we think the outcome
12   should be no different here, Your Honor.
13           The last thing, I would just note, in terms of
14   clarifying the chronology here, we learned yesterday, that the
15   Government production was made, as Mr. Schimkat just
16   articulated, in August and September of 2023.  And one of the
17   issues here, in particular, when we're looking at the
18   chronology of our seeking relief, Interamerican represented, in
19   the civil, in October of 2023, the documents, the missing
20   documents, the indictment documents, as we call them in this
21   case, have not yet been produced, so, frankly, Your Honor, we
22   were misled as to when Mr. Rivera received these documents.  We
23   know now, but I just wanted to make -- I wanted to make that
24   clear for the record that we learned yesterday about the time
25   and production.

```
 1              Otherwise, Your Honor, I would be happy to address any
 2    questions by the Court.  I have nothing further.
 3              THE COURT:  The narrow question, raised by
 4    Mr. Schimkat, if I could just have your description that might
 5    benefit later conversation the difference between the documents
 6    that would be responsive to your subpoena to Mr. Rivera versus
 7    your subpoena to the Government.
 8              MR. SULLIVAN:  Yes, Your Honor, and the short answer is
 9    we don't know because we don't know what's in the Government
10    production.  Mr. Rivera has refused to tell us anything about
11    the nature of the production.  Now, having said that, I can do
12    my best to sort of describe by understanding --
13              THE COURT:  Well, Mr. Sullivan, let me try to
14    characterize it this way; what were you looking for differently
15    Mr. Rivera versus the Government?
16              MR. SULLIVAN:  Yes, Your Honor, the requested subpoena
17    to the Government is for documents quoted or referenced in the
18    criminal indictment against Mr. Rivera that have not been
19    produced to us.  It is a specific list of documents.  There's
20    about 50 of them.
21              THE COURT:  Got it.
22              MR. SULLIVAN:  And I am happy to direct the Court to
23    where those are listed in our papers.  That is the subpoena to
24    the Government.  A subpoena, for Mr. Rivera, calls for a
25    variety of topics, one of which, perhaps the most, is all
```

1  documents related to the consulting agreement at issue in our
2  litigation, a question to which Mr. Rivera had no objections
3  (inaudible) in objections.
4        So what we're seeking -- the delta between what we're
5  seeking from the government and what we're seeking from
6  Mr. Rivera is anything not quoted in the indictment, that's in
7  the government production, that's responsive to our subpoena.
8        THE COURT: Got it.
9        MR. SULLIVAN: And I hope that answers Your Honor's
10 question. I understand this is somewhat convoluted.
11       THE COURT: It's enough.
12       Okay. So I'm going to reiterate, Mr. Johnson, I don't
13 understand your position.
14       MR. JOHNSON: Your Honor, Mr. Sullivan, I think
15 conflates having a confidentiality provision with a protective
16 and they are just very different things. Right now these
17 documents are precluded -- or Mr. Rivera's counsel is precluded
18 not only from giving them to me to produce to Mr. Sullivan, but
19 from even giving them to Mr. Rivera except to the extent that
20 they believe they are necessary to aid in their limited
21 representation. I don't have the documents to produce to them.
22 If Your Honor decides to relieve the parties from the
23 restrictions of that protective order, then obviously, they
24 could be produced to me and I could then review them for
25 responsiveness and respond to the subpoena. But until the

```
 1   Court does that, the Government simply saying, "We have no
 2   problem with it," doesn't matter.  You wear the robe.  You say
 3   when the protective order applies and when it doesn't, Your
 4   Honor.  Until you say that happens, I can't do anything no
 5   matter how much PDV USA or Mr. Sullivan wants me to.  I simply
 6   have no idea what's in the documents.  I've asked Mr. Rivera's
 7   criminal counsel, if I'm forced to produce something, and I ask
 8   you to give them to me, "What will you do?"
 9           "We will not give them to you because we are precluded
10   from doing so under a protective order."
11           THE COURT:  Okay.  Okay.  All right.  That's -- you'll
12   have that court order that commands you to respond to the
13   subpoena notwithstanding the protective order, and you'll have
14   a 14-day dead line to produce.
15           MR. JOHNSON:  Your Honor, to be clear, you will be
16   releasing the criminal -- the Government and Mr. Rivera's
17   counsel in the criminal matter from the provisions of that
18   protective order so that they can produce them to me?
19           THE COURT:  A written order will follow, Mr. Johnson,
20   and it will be as clear as I can be, but Mr. Rivera will be
21   commanded to comply with the subpoena within 14 days from
22   today.
23           MR. SHOHAT:  May I say something -- may I say
24   something, Judge?
25           THE COURT:  Of course.
```

```
 1              MR. SHOHAT:  I represent again -- I'm Ed Shohat, and I
 2   represent Mr. Rivera in the criminal case (inaudible)
 3   Mr. Schimkat who represents the Government.
 4              Mr. Rivera does not have the documents.
 5              THE COURT:  Okay.
 6              MR. SHOHAT:  He doesn't --
 7              THE COURT:  He will.
 8              MR. SHOHAT: -- possess --
 9              THE COURT:  Mr. Shohat, this is a fallacy, and a very
10   frustrating one, so whatever has to be done within 14 days,
11   Mr. Rivera, by and/or through counsel, via the Box, through
12   which the Government produced it, will get, review, mark as
13   confidential, and produce, to Mr. Sullivan, 14 days.
14              MR. SHOHAT:  I know you answered this question once
15   before, this is going to be regardless of the provisions of the
16   protective order?  We'll be directed to comply with your order
17   when we have a protective order that says we can't.
18              Now, the Government filed yesterday, a motion in front
19   of Judge Damian to relieve it of the obligations of the
20   protective order, we think that matter will be resolved in due
21   course, one way or another, it may even fall to you to do, I
22   don't know, but it could -- but I don't see why we're doing
23   this while that protective order remains in place when the
24   matter is going to be resolved.
25              THE COURT:  Your concern has been noted.
```

```
 1              Does anyone have anything else?
 2              MR. SULLIVAN:  Not from petitioner, thank you.
 3              THE COURT:  Okay.  I appreciate your appearances.  You
 4   can all thank Mr. Pedrosa for being able to come in virtually
 5   instead of coming into the courtroom, and if there's anything
 6   else let me know now.  Okay.  All right.  Thank you.  You all
 7   are excused.
 8              MR. SHOHAT:  Take care, Your Honor.
 9              MR. SCHIMKAT:  Thank you, Your Honor.
10              MR. SULLIVAN:  Thank you.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2                          -  -  -
 3                 C E R T I F I C A T E
 4                          -  -  -
 5
 6         I, AMBER GABEL, Stenographic Reporter, State of
 7   Florida at Large, certify that I was authorized to and did
 8   stenographically transcribe the foregoing proceedings and that
 9   the transcript is a true and complete record of my stenographic
10   transcription of said proceedings.
11
12         Dated this 1st day of May, 2024.
13
14
15                         /s/ Amber Gabel
16                         _____
17                         AMBER GABEL, CR
18
19
20
21
22
23
24
25
```