# Exhibit 33

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
PDV USA, INC.,                                    :
                                                  :
       Plaintiff,                            :
                                                  :
v.                                                :  Case No. 20-cv-3699
                                                  :
INTERAMERICAN CONSULTING INC.,                    :
                                                  :
       Defendant.                            :
- - - - - - - - - - - - - - - - - - - - - - - - -

## PLAINTIFF'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANT

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff PDV USA, Inc. ("Plaintiff") hereby requests (the "Requests") that Defendant Interamerican Consulting Inc. ("Defendant"), produce the documents requested below for inspection and copying at the offices of Willkie Farr & Gallagher LLP, c/o Jeffrey Korn, Esq., 787 Seventh Avenue, New York, New York 10019, within 30 days from the date hereof.

### INSTRUCTIONS

1. In responding to these Requests, You are required to produce all Documents described below that are in Your possession, custody or control, including, for the purposes of illustration only, those Documents in the possession, custody or control of Your counsel (in this matter or any other action) or former attorneys, employees or other agents, regardless of location. A Document is within Your control, for example, if You have the right to obtain the Document or a copy of the Document from another Person having possession or custody of the Document. If any Document is in the possession or custody of another Person and

not currently within Your control, identify the Person (or Persons) from whom the Document may be obtained.

        2.        Produce all documents as they are kept in the normal course of business.

        3.        Each document request requires you to produce all responsive documents in their entirety, including all attachments and documents affixed thereto, without abbreviation or expurgation. If no documents responsive to a particular request exist or are within your control, the response should so state. In the event that you are able to provide only a portion of the document(s) called for in any particular document request, provide all document(s) that you are able to provide, and (i) identify the remaining documents and (ii) state the reason why you are unable to produce the remaining documents.

        4.        To the extent you refuse to respond to any document request, in whole or in part, on grounds of privilege or attorney work-product, you shall comply with and provide the information required by Local Civil Rule 26.2. Any redactions to documents shall be prominently identified with a mark indicating the location and size of the redacted area.

        5.        These discovery requests are continuing. Supplement your responses promptly if and when you obtain or locate additional responsive documents.

        6.        In the event that any document called for by the requests for production has been destroyed, lost, or otherwise discarded, identify the document request(s) to which that document was responsive and identify such document or documents as completely as possible, including, without limitation, the following information: the substance of the document or documents; last known custodian(s); date and method of disposal; person authorizing or directing the disposal; person disposing of the document or documents; reason(s) for the disposal; and whether any copy(ies) of the document or documents exist.

7. Produce, without redaction, the entirety of any document that contains responsive, non-privileged information.

8. The scope of your search for electronic data that is responsive to any request shall include all forms of electronic data collection, preservation, transmission, communication, and storage, including without limitation:

    a. All data generated and maintained in the ordinary course of business, including data stored on mainframe computers, with third parties, or on local and network computers and storage devices;

    b. Distributed, removable, or portable data, *i.e.*, information which resides on portable media and non-local devices, including home computers, laptop computers, magnetic or floppy discs, CD-ROMs, DVDs, solid-state and flash memory drives, cloud storage or other internet repositories (including e-mail hosted by web services such as Gmail), and handheld storage devices such as smart phones, tablets, and iPads;

    c. Forensic copy or backup data, including archive and backup data tapes and discs;

    d. Network data, including voicemail systems, e-mail servers, file and print servers, and fax servers;

    e. Legacy data, *i.e.*, retained data that has been created or stored by the use of software or hardware that has been rendered outmoded or obsolete;

    f. Metadata, *i.e.*, information regarding a particular data set which describes

    g. how, when, and by whom it was collected, created, accessed, and modified and how it is formatted; and

    h. Residual or deleted data, *i.e.*, data that is not active on a computer system, including data found on media free space, data found on media slack space, and data within files that have been functionally deleted.

9. You should produce Documents, including e-mail, in single-page tagged image file format ("TIFF"). Each image shall have a unique production number. Full text files, if any, should be delivered as document-level text files named for the first production number of

3

that document. Spreadsheets, video and audio recordings, presentation files (such as PowerPoint files), and database files shall be provided in native format, with an accompanying placeholder production-numbered TIFF file. Each Document produced in native format shall be clearly labeled to indicate the placeholder production number that corresponds to the placeholder production-numbered TIFF file for that Document.

10. Database information for Your production shall be provided in a ".dat" file, which contains the metadata fields as a delimited database load file. The data load file should contain the field headers indicating the contents of each field. Required fields of data are, but are not limited to:

- Beg Bates
- End Bates
- Begin Attachment
- End Attachment
- Native File Path (for native file productions)
- Page Count
- Custodian
- Duplicate Custodian(s)
- Time Sent (hh:mm:ss)
- Date Sent (mm/dd/yyyy)
- Date Received (mm/dd/yyyy)
- Time Received (hh:mm:ss)
- Last Modified (mm/dd/yyyy)
- Email Subject
- From
- To
- CC
- BCC
- Email Item Type (Email or Attachment)
- File Source Path
- File Name
- File Type
- File Source Extension
- Modified By, or in the alternative, Author or Last Author
- Hash Value (MD5 or SHA1/2 algorithm)
- Email Conversation/Thread ID

4

11. If, in responding to these Requests, You claim any ambiguity in interpreting a Request or a definition or instruction applicable thereto, You should not rely on such claim as a basis for refusing to respond, but you shall set forth as part of Your response to such Request the language deemed to be ambiguous and the interpretation chosen to be used in responding to the Request.

12. In the event that You claim that a Request is overly broad or unduly burdensome, You are requested to respond to that portion of the Request that is unobjectionable and specifically identify the respect in which You believe the Request is overly broad or unduly burdensome. If Your objection relates only to part of the Request, produce all Documents that do not fall within the scope of your objection.

13. Plaintiff expressly reserves the right to supplement these requests and to propound new requests, to the extent permitted by applicable law and rules.

14. These Requests shall not be construed as a waiver or abridgment of, and are not intended to waive, any argument or defense, or any objection to any of Your discovery requests, nor shall they be construed as any admission of fact.

15. Unless otherwise stated, these Requests seek documents and communications from the time period January 1, 2017 through present.

## **DEFINITIONS**

1. The definitions and rules of construction set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Rules for the United States District Court for the Southern District of New York (the "Local Rules") shall apply to these Requests. All terms not otherwise defined shall have their ordinary and common meanings.

2. "Action" means the above-captioned litigation and any pleadings filed in connection therewith.

3. "Agreement" means the consulting agreement entered into by and between PDV USA and Interamerican as of March 21, 2017.

4. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

6. "Communication" means the transmittal of information by any means, including, without limitation, transmittal by electronic means such as electronic mail, including via both Interamerican and personal email accounts, text messaging, instant messaging, online chat platforms, recordings, or postings on social media sites.

7. "Concern" or "concerning" shall mean relating to, referring to, describing, evidencing, constituting, or in any way logically or factually connected with the matter discussed, in whole or part, directly or indirectly.

8. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

9. "Interamerican," "You," or "Your" shall mean and refer to Interamerican, Consulting, Inc., as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates.

10. "PDV USA" means PDV USA, Inc., a subsidiary of PDV Holding, Inc., which in turn is a wholly-owned subsidiary of PDVSA, as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates.

11. "PDVSA" means the state-owned oil and natural gas company of the Bolivarian Republic of Venezuela, as well as its officers, directors, employees, agents, associates, partners, shareholders, subsidiaries, or affiliates.

12. The use of the singular form of any word includes the plural and vice versa.

13. All terms defined herein shall have the meanings set forth in Definition Nos. 1 through 12 above, whether such terms are capitalized in these Requests or not.

## REQUESTS FOR PRODUCTION

1. All Documents and Communications concerning the Agreement, including, without limitation, Documents and Communications concerning the negotiation, purpose, and scope of the Agreement.

2. All Documents and Communications concerning Interamerican's performance under the Agreement, including, without limitation, any services rendered by Interamerican pursuant to the Agreement.

3. All Documents and Communications concerning Interamerican's involvement in, interactions with, or activities regarding: Venezuela; the government of Nicolás Maduro; protests of or oppositions to the Nicolás Maduro regime; the "Citgo 6"; Leopoldo López; Raúl Gorrín; or lobbying of ExxonMobil with respect to a potential settlement of a dispute with the government of Venezuela.

4. All Documents and Communications concerning any funds paid by PDV USA or PDVSA to Interamerican.

7

      5.      All Documents and Communications concerning any payments made by Interamerican in connection with the Agreement.

      6.      All Documents and Communications concerning Interamerican's disbursement of any funds received from PDV USA or PDVSA.

      7.      All Documents and Communications concerning any payments made by Interamerican, directly or indirectly, to "the opposition for anti-Maduro protests," the "Citgo 6," Leopoldo López, Raúl Gorrín, Interglobal Yacht Management LLC, Esther Nuhfer, Communications Solutions, Hugo Pereira, Krome Agronomics LLC, or any Venezuelan opposition or anti-Maduro leaders, organizations, entities, parties, forces, or factions.

      8.      All Documents and Communications concerning the following payments and withdrawals:

      a.      March 27, 2017 wire transfer from Interamerican to Krome Argonomics LLC in the amount of $625,000;

      b.      March 31, 2017 wire transfer from Interamerican to Interglobal Yacht Management LLC in the amount of $625,000;

      c.      April 4, 2017 wire transfer from Interamerican to Interglobal Yacht Management LLC in the amount of $225,000;

      d.      April 5, 2017 wire transfer from Interamerican to Interglobal Yacht Management LLC in the amount of $200,000;

      e.      April 6, 2017 wire transfer from Interamerican to Interglobal Yacht Management LLC in the amount of $200,000;

      f.      April 11, 2017 wire transfer from Interamerican to Interglobal Yacht Management LLC in the amount of $625,000;

      g.      April 12, 2017 wire transfer from Interamerican to Interglobal Yacht Management LLC in the amount of $625,000;

      h.      April 21, 2017 wire transfer from Interamerican to Interglobal Yacht Management LLC in the amount of $625,000;

      i.      April 24, 2017 wire transfer from Interamerican to Interglobal Yacht Management LLC in the amount of $625,000;

j. March 27, 2017 wire transfer from Interamerican to Bern Consulting Inc. in the amount of $125,000;

k. May 25, 2017 wire transfer from Interamerican to Bern Consulting Inc. in the amount of $125,000;

l. August 26, 2017 check from Interamerican to Petrogaz Haiti in the amount of $100,000;

m. April 22, 2017 check from Interamerican to David Rivera in the amount of $99,174.40;

n. May 31, 2017 check from Interamerican to David Rivera in the amount of $50,000;

o. June 7, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000;

p. June 09, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000;

q. June 13, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000;

r. June 15, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000;

s. June 20, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000;

t. June 21, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000;

u. June 22, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000;

v. June 28, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000;

w. July 3, 2017 check bearing number 1102 from Interamerican to David Rivera in the amount of $10,000;

x. July 3, 2017 check bearing number 1103 from Interamerican to David Rivera in the amount of $10,000; and

y. July 5, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000;

z. July 7, 2017 withdrawal from Interamerican's account at

|  |  |
|---|---|
|  | JPMorgan Chase Bank, N.A. in the amount of $10,000; |
| aa. | July 9, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000; |
| bb. | July 10, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000; |
| cc. | July 11, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000; |
| dd. | July 20, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000; |
| ee. | July 22, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000; |
| ff. | July 27, 2017 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $10,000; |
| gg. | September 6, 2018 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $100,000; |
| hh. | September 6, 2018 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $382,402.44; |
| ii. | September 6, 2018 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $51,844.33; |
| jj. | September 6, 2018 withdrawal from Interamerican's account at JPMorgan Chase Bank, N.A. in the amount of $601,279.70. |
| kk. | September 30, 2017 payment received by Interamerican from Gazprombank Joint-Stock Company in the amount of $5,000,000. |

9. All bank account records reflecting (i) any funds paid by PDV USA or PDVSA to Interamerican; (ii) any payments made by Interamerican in connection with the Agreement; (iii) Interamerican's disbursement of any funds received from PDV USA or PDVSA; or (iv) any payments made by Interamerican, directly or indirectly, to "the opposition for anti-Maduro protests," the "Citgo 6," Leopoldo López, Raúl Gorrín, Interglobal Yacht Management LLC, Esther Nuhfer, Communications Solutions, Hugo Pereira, Krome Agronomics LLC, or any Venezuelan opposition or anti-Maduro leaders, organizations, entities, parties, forces, or factions.

10. All phone records reflecting any Communications concerning the Agreement or the Action.

11. All Documents and Communications with third-parties concerning the Agreement or the Action, including, but not limited to, Communications with reporters, other members of the media, or any of the individuals identified in Section A of Interamerican's Rule 26(a)(1) Disclosures.

12. The entirety of the Communication referred to in the May 13, 2020 CE Notificias Financieras (English) article entitled "PDVSA denounces former U.S. congressman for Payment of $US15M," in which Mr. Rivera is quoted as saying "ask the boys of Citgo 6" and "They handled that entire operation, including all the money, in coordination with the Venezuelan opposition . . . That's all I know."

13. The entirety of the Communication referred to in the May 14, 2020 Miami Herald article by Jay Weaver and Antonio Maria Delgado entitled "Rivera didn't register as a foreign agent in $50 million contract with Venezuela oil firm," in which Mr. Rivera is quoted as saying "All those funds went to the opposition for anti-Maduro protests in the summer of 2017. I never saw a penny of it."

14. All Documents or Communications concerning the copying, distribution, damage, destruction, deletion, or erasure of any Document requested in these Requests.

15. All Documents and Communications You intend to identify or rely on in responding to any interrogatories served by PDV USA in this Action.

16. All Documents and Communications You intend to use in Your defense of this Action.

Dated: New York, New York

11

September 15, 2021

                                      **WILLKIE FARR & GALLAGHER LLP**

By: /s/ Jeffrey B. Korn

    Jeffrey B. Korn
    Pia Keevil
    787 Seventh Avenue
    New York, New York 10019
    (212) 728-8000
    JKorn@willkie.com
    PKeevil@willkie.com

    Michael J. Gottlieb
    Sarah Wastler
    1875 K Street, N.W.
    Washington, D.C. 20006
    (202) 303-1000
    MGottlieb@willkie.com
    SWastler@willkie.com

    *Attorneys for Plaintiff PDV USA, Inc.*