**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
PDV USA, INC.,
:
:
Plaintiff,
:
:
v.                                                        Case No. 20-cv-3699
:
:
INTERAMERICAN CONSULTING INC.,
:
:
Defendant.
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PDV USA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
RENEWED MOTION FOR SANCTIONS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ....................................................................................5

ARGUMENT ...........................................................................................................10

    I.    Interamerican Intentionally Spoliated Relevant Evidence....................................10

        A.    Interamerican Had an Obligation to Begin Preserving Relevant
Evidence by December 2017 at the Latest................................................. 11

        B.    Interamerican Failed to Preserve Relevant Evidence ................................ 12

        C.    Interamerican Intended to Deprive PDV USA of the Evidence and
Acted in Bad Faith ................................................................................... 17

        D.    The Spoliated Evidence Is Irretrievable and PDV USA Is
Prejudiced ................................................................................................ 19

    II.    The Court Should Order Sanctions Under Rule 37(e) as Well as Its Inherent
Authorities...........................................................................................................22

        A.    Because Interamerican Tendered False Statements at a Deposition,
in Sworn Interrogatory Responses, in Written Correspondence to
PDV USA, and in Signed Submissions to this Court, the Court
Should Order Default Judgment Against Interamerican and
Dismiss Its Counterclaims. ...................................................................... 22

        B.    The Court Should Order that Interamerican Is Precluded from
Introducing into Evidence Any Document that Interamerican
Failed to Produce to PDV USA Prior to this Case Being Stayed. ............ 23

        C.    The Court Should Enter an Adverse Inference that Interamerican
Deleted Documents with the Intent to Deprive PDV USA of
Favorable Evidence................................................................................... 24

        D.    The Court Should Award PDV USA Fees and Costs. .............................. 24

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Chambers v. Nasco, Inc.*,
   501 U.S. 32 (1991)................................................................11, 20

*Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*,
   337 F.R.D. 47, 58 (S.D.N.Y. 2020). ................................................19, 24

*DeCastro v. Kavadia*,
   309 F.R.D. 167 (S.D.N.Y. 2015) ......................................................24

*DMAC LLC v. City of Peekskill*,
   2012 WL 4459290 (S.D.N.Y. Sept. 26, 2012)........................................20

*Doubleline Cap. LP v. Oderbrech Fin., Ltd.*,
   2021 WL 1191527 (S.D.N.Y. Mar. 30, 2021) ...................................11, 12

*Freeman v. Giuliani*,
   691 F. Supp. 3d 32 (D.D.C. Aug. 30, 2023) ................................20, 21, 22

*Hice v. Lemon*,
   2021 WL 6053812 (E.D.N.Y. Nov. 17, 2021).....................................11, 17

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
   2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) .........................................25

*Miller v. Time-Warner Commc'ns, Inc.*,
   1999 WL 739528 (S.D.N.Y. Sept. 22, 1999).....................................11, 17

*Ottoson v. SMBC Leasing and Finance, Inc.*,
   268 F. Supp. 3d 570 (S.D.N.Y. 2017)..................................................11

*Pable v. Chicago Transit Auth.*,
   2023 WL 2333414 (N.D. Ill. Mar. 2, 2023).................................18, 22, 23

*StoneX Group, Inc. v. Shipman*,
   2024 WL 1509346 (S.D.N.Y. Feb. 25, 2024)..........................17, 18, 22, 23

*Swofford v. Eslinger*,
   2009 WL 10671171 (M.D. Fla. Dec. 1, 2009).........................................15

**Other Authorities**

Fed. R. Civ. P. 37(e) ........................................................... *passim*

## PRELIMINARY STATEMENT

PDV USA, Inc. ("PDV USA") seeks sanctions against defendant Interamerican Consulting, Inc. ("Interamerican") for its intentional spoliation of evidence.[1]

The extent of Interamerican's spoliation is staggering. Because of PDV USA's yearslong effort to recover documents from third parties, there is now no dispute that Interamerican, acting through its sole owner and officer, former Congressman David Rivera, failed to preserve thousands of responsive communications to and from Mr. Rivera. Many of those communications were exchanged on an encrypted WhatsApp message chat group (the "MIA Chat") that included Mr. Rivera and his closest associates (including his now criminal co-defendant), the purpose of which was to discuss the $50 million consulting agreement between Interamerican and PDV USA at issue in this litigation (the "Agreement"). They include communications about the Agreement itself, drafts of the original agreement and draft amendments (e.g., Ex. 1); communications about the invoices Mr. Rivera submitted to PDV USA (e.g., Ex. 2 at -7638, -7641–42; Ex. 3); communications about ████████████████████████████████████████ ████████████████████████████████████████████████ (Ex. 4); communications about the progress reports that Mr. Rivera submitted under the Agreement (Ex. 5); and communications with and about another U.S. Congressman that Mr. Rivera tried to convince to meet with senior officials of the Venezuelan government and senior executives at ExxonMobil ("Exxon") as part of the Agreement (Exs. 7, 8, 9). These and other (non-exhaustive) examples of the communications to/from Mr. Rivera that Interamerican indisputably failed to preserve are attached hereto as Exhibits 1–5, 7–9, 13–19, 30, 32–34, 36–38, and 41–46.

---

[1] The Court denied PDV USA's prior motion for sanctions as "premature" and permitted PDV USA to "renew" its motion "at a later juncture." ECF No. 246. Under the operative case schedule, PDV USA's renewed motion is due today. ECF No. 253.

Not only are these documents unquestionably responsive to PDV USA's document requests, they prove that Interamerican's pleadings, and much of Mr. Rivera's sworn testimony in this case, relied upon willful misrepresentations. For example, the foundation of Interamerican's counterclaims is that Mr. Rivera *never* worked for PDVSA or the regime of Nicolas Maduro, the president of Venezuela, and instead, the "whole purpose" of the Agreement was to "try and develop" a "strategic partnership between Exxon and CITGO." Ex. 6 at 211:22–212:4. Yet *hundreds* of unpreserved communications reflect a nearly day-by-day account of Mr. Rivera's attempt to broker a meeting between Exxon officials and *senior members of the Maduro regime*, including Maduro's Minister of Foreign Affairs Delcy Rodriguez, who also directed PDV USA's engagement of Interamerican in the first place. Exs. 7, 8, 9. They include █████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████ Ex. 7.[2] They include █████████████████████████████

████████████████████████████████████████████████ Ex. 8.    They include

communications in which Mr. Rivera ███████████████████████████████████████████

██████████████████████ Ex. 9; Ex. 10 at 818:11–20. And they include text messages in which Mr. Rivera explains that the reason he signed the Agreement with PDV USA was because

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████ Ex. 2 at -7620.

There are only two possible explanations for why these responsive communications were not produced to PDV USA by Interamerican—the first is that Interamerican unintentionally failed to preserve the communications, and the second is that it deliberately deleted them. PDV USA

---

[2] Unless otherwise noted, all emphases are added.

respectfully submits that the *only* plausible explanation is the latter.  For starters, Mr. Rivera *did* retain and produce to PDV USA a substantial number of responsive mobile and email messages from the *exact same time period* as some of the unpreserved mobile and email messages—in some instances even including messages sent or received on the same day—proving that Mr. Rivera retained *some* electronic data, yet failed to preserve *other* such data.  Further, there is overwhelming evidence of Mr. Rivera's intent:  Mr. Rivera encrypted many of the unpreserved mobile messages, his associates told him to ████████████████████████████████ ████████████████████████ and the unpreserved messages are highly inculpatory.  Ex. 2 at - 7672.  Mr. Rivera has already demonstrated a pattern of spoliation—he admitted (in an interrogatory response) to deleting another set of responsive documents during the pendency of this litigation—after specifically testifying that he did not do so.  Against all of this background, Interamerican has offered no plausible explanation for how these documents went missing.  Mr. Rivera originally told this Court that the government seized his phone in November 2017 and it "was never returned" to him, but that turned out to be completely false, and in any event cannot possibly explain the selective deletion of inculpatory messages.  As for his emails, Interamerican's excuse is that Mr. Rivera's "rivera2002" email account experienced a "server crash" in August 2020, but this also appears to be fabricated as there is not a shred of evidence of the supposed "crash," and, as with the government's seizure of his phone, the "crash" cannot explain the *selective* deletion of *some* responsive emails but not others.

Nor has Interamerican made any meaningful effort to investigate how or when the documents were lost, or to show what steps it took (at any time) to attempt to recover them.  Interamerican has not provided any testimony from a forensic expert or document vendor.  The Court afforded Interamerican an opportunity to explain the missing documents in the form of

spoliation interrogatories, but Interamerican responded that it was "unable to answer" questions about why the documents were no longer on Mr. Rivera's devices or what efforts it took to retrieve those documents. The best it has come up with is a scribbled notation on a Comcast internet bill from November 13, 2020 that says "dumpster recovery"—with no explanation of what that means—which apparently represents the sum total of Interamerican's efforts to remedy its spoliation.

It is also clear that whenever these documents were deleted, or lost, Interamerican was under a legal obligation to preserve them. By Interamerican's own admission, the unpreserved messages existed on Mr. Rivera's phone in November 2017, when he claims it was seized by the government. And Interamerican has also admitted that it was anticipating litigation in connection with the Agreement by December 2017 at the latest—which triggered a preservation obligation with respect to any documents related to the Agreement. Interamerican has offered no credible explanation for *when* the documents were lost, and it is not entitled to an inference that the mysterious loss conveniently occurred without Mr. Rivera's involvement between November 2017 and December 2017.

To make matters worse, and further supporting the imposition of serious sanctions, Interamerican made a series of false representations to PDV USA and this Court, all in an effort to cover up its spoliation and prevent PDV USA from recovering the deleted documents. Interamerican repeatedly, and falsely, stated that it was not in possession of discovery material that it had an obligation to produce to PDV USA. Mr. Rivera's deposition testimony about the unpreserved documents was contradicted by those same documents, which included his own mobile messages and emails. Interamerican offered demonstrably false explanations for why the documents went missing. These and other factors discussed below demonstrate intentional

spoliation, which warrants the most severe sanctions available pursuant to Rule 37(e)(2), as well as the Court's inherent authority.

Interamerican's primary defense is that, because PDV USA has recovered a significant number of these unpreserved documents from the government, including a 2017 image of Mr. Rivera's phone, PDV USA is not prejudiced and therefore sanctions are not warranted. As an initial matter, this argument ignores the *millions of dollars* in legal fees incurred by PDV USA, over two and a half years, both to recover the spoliated documents from third parties and litigate Interamerican's meritless objections. In any event, just because PDV USA managed to recover some—though, pointedly, not all—of the spoliated evidence from third parties does not excuse Interamerican's egregious discovery misconduct, including its knowingly false statements to the Court. This is why courts have inherent authority to impose sanctions for bad-faith spoliation irrespective of whether the spoliated evidence has been recovered from another source. If the facts here do not support the exercise of inherent-authority sanctions, it is difficult to imagine a set of facts that would.

PDV USA requests the following sanctions against Interamerican pursuant to Federal Rule 37(e) and the Court's inherent powers: terminating sanctions or, barring terminating sanctions, an adverse inference as to Interamerican's intentional spoliation, a preclusion order preventing Interamerican from relying on or disputing any of the unpreserved documents, and attorneys' fees to compensate PDV USA for extensive litigation that it would not have had to pursue if Interamerican complied with its preservation obligations and cooperated with PDV USA in recovering the missing documents.

## FACTUAL BACKGROUND

Although not disclosed to PDV USA until after the criminal indictment was unsealed, in November 2017, the FBI seized Mr. Rivera's phone and began surveilling Mr. Rivera, as well as

Esther Nuhfer and Hugo Perera, with whom Interamerican signed "subcontract" agreements that referenced the Agreement. Exs. 12 at 3, 14, 16. Consequently, Mr. Rivera sought "legal analysis and advice with respect to the [Agreement]" (Ex. 11 ¶ 5), and in December 2017, Mr. Rivera "retained the law firm of Cozen O'Connor to review and provide advice as to *any possible legal exposure resulting*" from the Agreement. *Id.* ¶ 3. In February 2018, Cozen O'Connor delivered to Mr. Rivera a "multi-page memo with an analysis of the [Agreement]." Ex. 6 at 242:4–15 (the "Cozen Memorandum").

Discovery in this matter initially ran from approximately September 2021 to November 2022. Some of the most important documents that PDV USA received during this time came from third parties, such as Ms. Nuhfer, Mr. Perera, associates of Raul Gorrín (another subcontractor), and Mr. Rivera's accountant. Exs. 13–19. Mr. Rivera should have had all of these documents— communications to and from him and documents signed by him—in his possession and should have produced them, but he did not, for reasons he has never explained. At his first deposition in July 2022, Mr. Rivera testified that he *did not know why some of Mr. Rivera's emails were produced while others were not*, Ex. 6 at 213:15–18, and that he *did not "go through [his] WhatsApp messages and attempt to delete or delete messages or information involving Raul Gorrin*." Ex. 20 at 419:20–420:3. On November 18, 2022, fact discovery closed, and the parties began preparing for summary judgment.

On December 5, 2022, an indictment against Mr. Rivera and Ms. Nuhfer was unsealed in the Southern District of Florida. Ex. 21 (the "Indictment"). The Indictment directly concerns the Agreement and goes to the heart of the issues in this case. *Id.* ¶ 3. The Indictment quoted from over fifty emails and WhatsApp messages, many of them encrypted, to and from Mr. Rivera— ranging from February 23, 2017 to April 5, 2018—that Interamerican had never produced to PDV

USA and that squarely contradicted Mr. Rivera's testimony and counterclaims. ECF No. 121-2 at 3–5 (the "Indictment Documents"). Interamerican claimed that it did not "possess[]" the Indictment Documents, ECF No. 123 at 2, and explained for the first time: "we believe they were on a phone which the FBI took control of back in [November] 2017, years before a lawsuit was filed. *And my clients never got the possession of that phone back*." Ex. 22 at 8:11–19. At the same time, Interamerican accused PDV USA of "improperly recruit[ing] this Court in its campaign to assist the government's prosecution of David Rivera." ECF No. 123 at 1. It hypothesized that the Indictment Documents may *not* "*even exist*." ECF No. 133 at 2. Interamerican also claimed that it was under no obligation to preserve documents in November 2017, the time of the phone seizure, because "[t]he mere fact that Mr. Rivera's phone was seized in November 2017 *in no way put him on notice that he was being investigated in connection with the [Agreement]*[.]" ECF No. 123 at 3, n.2.

In January 2023, the Court stayed the case "to provide time and opportunity for the production of certain text and other communications referred to as the 'Missing Documents.'" ECF No. 129 at 1. Interamerican agreed that the purpose of the stay was "'to provide time and opportunity for the production of' the [Indictment] Documents to Mr. Rivera in the criminal matter, at which time the documents could be produced by Interamerican." ECF No. 131 at 1. During the stay, in August and September of 2023—unbeknownst to PDV USA at that time—Mr. Rivera received a substantial document production from the government that PDV USA now knows included many of the Indictment Documents, as well as hundreds of additional responsive and inculpatory communications to and from Mr. Rivera (the "2023 Government Production"). *See* Ex. 23 at 5. Upon receiving the 2023 Government Production, neither Mr. Rivera nor Interamerican said anything to PDV USA or the Court. Then, at least a month *after* Mr. Rivera

received the production from the government, but before PDV USA learned about it, on October 3, 2023, Interamerican falsely represented to PDV USA and this Court, in connection with arguing that the stay should be lifted and the case should move forward, that the Indictment Documents had "*yet to be produced*."  ECF No. 155 at 1–2.

In November 2023, PDV USA first learned about the existence (though not the substance) of the 2023 Government Production from a memorandum the government filed on the docket in the criminal matter.  *See* ECF No. 157.  PDV USA demanded that Interamerican produce responsive documents from the 2023 Government Production, but Interamerican refused, and counsel claimed that he "*doubt[ed] that any discovery they have received [from the 2023 Government Production] is at all relevant to the issues in this case*."  ECF Nos. 158 at 2; 158-1 at 2.  Mr. Rivera later doubled down on this misrepresentation, stating that it was "*likely inaccurate*" for PDV USA to contend that the 2023 Government Production included "'*many more responsive emails and messages*' tha[n] what has been produced to PDV USA*."  Ex. 24 at 7.  Meanwhile, in opposing an extension of the stay in this action, Interamerican claimed it was "*speculative*" for PDV USA to argue that there were "'*additional*' *documents that Interamerican supposedly must produce from the*" criminal case.  ECF No. 164 at 2.

Following lengthy motion practice in this Court and in the Southern District of Florida— necessitated largely by Mr. Rivera's and Interamerican's claims that Mr. Rivera's *own text messages and emails* were somehow not in his possession, custody, or control, or were somehow immune from discovery because they were produced under the criminal protective order, *see* Exs. 25–27—on May 6, 2024, the Florida court ordered Mr. Rivera to produce to PDV USA all responsive documents from the government productions.  Ex. 28.  This Court entered a similar order on March 25, 2024.  ECF No. 166.  When Mr. Rivera finally sent the 2023 Government

Production to PDV USA on May 8, 2024, it included some, but not all, of the Indictment Documents. Thus, PDV USA was forced to separately pursue the remainder of the Indictment Documents from the government—serving a *Touhy* request and subpoena on the government on May 29, 2024. Ex. 29. On June 20, 2024, the government produced the remainder of the Indictment Documents to PDV USA, as well as thousands of unpreserved encrypted messages among Mr. Rivera, Ms. Nuhfer, Mr. Gorrin, and Mr. Perera concerning the Agreement.

On July 17, 2024, PDV USA moved for spoliation sanctions. ECF Nos. 208; 209. Interamerican's primary defense was that PDV USA had already recovered the missing documents from other sources and therefore suffered no prejudice. It claimed that it was "***extremely unlikely that any more documents (much less documents which are probative of PDV USA's claims) actually exist***." ECF No. 220 at 2.

However, on October 11, 2024, the government stated during a public hearing in the criminal matter that it had made additional voluminous productions to Mr. Rivera, which included a forensic clone of Mr. Rivera's cell phone, as well as "the entirety" of the "various e-mail accounts of both Mr. Rivera and various third parties" (the "2024 Government Production"). *See* ECF 247-2 at 6:7–23; 4:16–5:4. Once again, Interamerican said nothing to PDV USA about these productions and, for several months, refused to hand them over, in violation of the Court's March 25, 2024 discovery order. *See* ECF No. 247. Once again, PDV USA had to initiate motion practice over the same meritless objections by Interamerican that this Court previously rejected in affirming its March 25, 2024 order. ECF Nos. 241, 247. PDV USA was not in possession of the complete 2024 Government Production until March 13, 2025.

The 2024 Government Production, it turns out, contains some of the most damning unpreserved documents to date. *See, e.g.*, Exs. 5, 30.

9

Although PDV USA has been able to recover documents from the 2023 and 2024 Government Productions, other documents remain missing. For example, the government productions that PDV USA has been able to recover do not appear to contain any documents from Mr. Rivera's personal computer, which Interamerican testified contained responsive documents. Ex. 31 ¶ 17. Given that Interamerican failed to preserve responsive documents from *every other source* of ESI, it is highly likely that Interamerican also failed to preserve documents from Mr. Rivera's personal computer. Indeed, Interamerican still has not produced to PDV USA critical standalone files in this case—the types of files one would expect to find on a personal computer rather than a cellphone—such as an ███████████████████████ (e.g., Ex. 2 at -7681–83), a version of the Agreement that Mr. Rivera emailed to Mr. Gorrin (Ex. 32), and a version of Exhibit B to the Agreement which Mr. Rivera emailed to Mr. Gorrin for the purposes of ████████████████████████████████ (*id.*). In addition, there are dozens of photos, PDF files, and voice recordings that Mr. Rivera and others exchanged in the MIA Chat that are still missing. *See, e.g.*, Exs. 33, 34.

## ARGUMENT

### I.    Interamerican Intentionally Spoliated Relevant Evidence

Under Rule 37(e), the Court may sanction a party "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Rule 37(e)(1) authorizes, upon a finding of prejudice, sanctions to cure that prejudice, whereas Rule 37(e)(2) authorizes sanctions upon a finding that a party intended to deprive another party of information and requires no showing of prejudice. Fed. R. Civ. P. 37(e)(1)-(2). The "prejudiced party must not be held to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence, because doing so would allow parties

who have destroyed evidence to profit from that destruction." *Ottoson v. SMBC Leasing and Finance, Inc.*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017) (internal quotation marks omitted).

"In addition, the court may impose discovery sanctions pursuant to its inherent power to manage its own affairs." *Id.* (internal quotation marks omitted). Inherent authority sanctions may be imposed for "bad faith" spoliation, irrespective of whether the moving party satisfies the requirements of Rule 37(e). *Chambers v. Nasco, Inc.*, 501 U.S. 32, 47–49 (1991) (holding that the court's inherent power to impose sanctions for bad-faith conduct is not displaced by sanction scheme of statutes and rules); *see also Hice v. Lemon*, 2021 WL 6053812, at *7 (E.D.N.Y. Nov. 17, 2021) ("Sanctions are available by virtue of a court's inherent authority even in circumstances where Rule 37(e) is inapplicable, given that a party's falsification of evidence and attempted destruction of authentic, competing information threatens the integrity of judicial proceedings even if the authentic evidence is not successfully deleted.") (internal quotation marks omitted). *Miller v. Time-Warner Commc'ns, Inc.*, 1999 WL 739528 (S.D.N.Y. Sept. 22, 1999) is on point. In that case, the court held that the defendant was "not prejudiced" by the spoliation—plaintiff's erasure of "highly relevant" handwritten notes—"because sufficient traces of the writing remained to enable the parties to determine what words had been erased." *Id.* at *1–2. Nevertheless, the court awarded terminating sanctions pursuant to its inherent authority, including because of plaintiff's false statements concerning the spoliation. *Id.* at *3.

Each of the factors for Rule 37(e) sanctions as well as inherent authority sanctions are satisfied here.

### A. Interamerican Had an Obligation to Begin Preserving Relevant Evidence by December 2017 at the Latest

The obligation to preserve evidence arises when a party "should have known that the evidence may be relevant to future litigation." *Doubleline Cap. LP v. Oderbrech Fin., Ltd.*, 2021

WL 1191527, at *6 (S.D.N.Y. Mar. 30, 2021). The question for the Court is not whether the evidence "would be relevant to *this* litigation," but rather, "whether defendants knew or should have known that the evidence they destroyed may be relevant to future litigation." *Id.* (internal quotation marks omitted).

Here, Interamerican conceded in a sworn affidavit that it anticipated litigation concerning the Agreement no later than "December of 2017." Ex 11 ¶ 3. Specifically, Mr. Rivera stated that in December 2017, he "retained the law firm of Cozen O'Connor to review and provide advice as to *any possible legal exposure* resulting from" the Agreement. *Id.* Moreover, by Interamerican's own admission, it anticipated litigation with PDV USA once "PDV USA had refused to make further payments due and owing on the consulting contract with Interamerican." Ex. 12 at 3. Contrary to Interamerican's counterfactual claim that this happened in "late 2018," *id.*, PDV USA had refused to make further payments under the Agreement beginning in May of 2017 when PDV USA told Mr. Rivera that it was assigning the Agreement to PDVSA, which would be responsible for future payments (if any) and Mr. Rivera refused. Ex. 6 at 246:21–247:6. By December 2017— the same month Mr. Rivera retained outside counsel in anticipation of litigation and eight months after PDV USA had last made a payment on the Agreement, which ran from March 2017 to June 2017—Mr. Rivera sent another demand for payment to PDV USA (Ex. 35 at -0302), which PDV USA refused to honor.

**B.    Interamerican Failed to Preserve Relevant Evidence**

Document productions from third parties (including the government) in this matter reveal that Interamerican failed to preserve thousands of responsive communications while under an obligation to preserve them.

1) Responsive mobile messages:

12

Interamerican failed to preserve thousands of responsive texts and WhatsApp messages. *See, e.g.*, Exs. 1–4, 9, 30, 33, 34, 36–38, 40–42. As just a few examples, those messages include:

- An April 4, 2017 message from Mr. Gorrin to Mr. Rivera stating: ███████████
  ███████ Ex. 2 at -7628. Before PDV USA recovered these messages, Mr. Rivera testified that Mr. Gorrin was not "involved in helping to arrange meetings with Exxon." Ex. 20 at 363:9–21.

- An April 10, 2017 message from Mr. Gorrin to Mr. Rivera stating: ███████████
  ███████████ Ex. 2 at -7635. Mr. Rivera later responded: ██████████
  ███████████ *Id.* Before PDV USA recovered these messages, Mr. Rivera answered "no" to the question "did Delcy Rodriguez have any involvement in the work you did in connection with the [Agreement]." Ex. 6 at 109:14–17.

- Hundreds of WhatsApp messages between Ms. Nuhfer and Mr. Rivera related to the "agreement" between PDV USA and Interamerican (Ex. 36), the "invoices" (Ex. 37), and the assignment of the Agreement from PDV USA to PDVSA. Ex. 38. Before PDV USA recovered these messages, Mr. Rivera answered "no" to the question "[d]id Esther Nuhfer have any involvement in any work you did in connection with the consulting engagements," and he testified that he did not recall "ever communicating on WhatsApp" with Ms. Nuhfer about the Agreement. Ex. 6 at 152:2–8; Ex. 20 at 349:4–350:17.

Interamerican claimed that these unpreserved messages (mostly WhatsApp messages) were on a phone that the FBI seized in November 2017 but "never returned" to Mr. Rivera. Ex. 12 at 3–4.[3] When Interamerican imaged Mr. Rivera's phone in April 2022 as part of this litigation, the mobile messages in question were, according to Interamerican, no longer in Mr. Rivera's possession. *See* ECF No. 123 at 2. Thus, accepting Interamerican's representations as true, there is no dispute that the unpreserved mobile messages went missing at some point between November 2017 and April 2022. This raises two questions: how did they go missing, and when?

---

[3] In fact, PDV USA later discovered that the government *did* return the phone to Mr. Rivera's attorney in November 2017, Ex. 39, but Interamerican now claims that Mr. Rivera's attorney "would have discarded it." ECF No. 245.

On the first question, the only plausible explanation is that Mr. Rivera deleted them. Interamerican blames the government's November 2017 seizure of Mr. Rivera's phone, but that cannot explain why the messages in question went missing. Mr. Rivera indisputably retained access to his WhatsApp account—including pre-November 2017 messages—long after the government seized his phone, because he continued to send and receive WhatsApp messages after that time, and in 2022, he produced to PDV USA *some* responsive WhatsApp messages from pre-November 2017, but others had not been preserved. For example, Mr. Rivera produced responsive WhatsApp messages with Esther Nuhfer dated June 22, 2017, Ex. 40, but failed to preserve other responsive messages with Ms. Nuhfer from the same day. Ex. 41. Accordingly, someone affirmatively made the decision to delete certain of Mr. Rivera's pre-November 2017 WhatsApp messages but not others, and there is no plausible explanation for why that would have been done by anyone other than Mr. Rivera. Interamerican's blame-the-government theory makes sense only if one believes that the government imaged Mr. Rivera's phone, for purposes of building a criminal case against him, and then not only (a) deleted mobile messages from Mr. Rivera's iCloud and WhatsApp accounts, but also (b) deleted *only some* responsive messages—including foundational documents proving Interamerican's culpability in the government's case—but *not* other responsive messages before then returning the phone to Mr. Rivera shortly after it was seized.

As for the question of *when* the messages and emails were deleted, in the absence of any credible explanation by Interamerican, and recognizing the undisputed fact that the messages existed on Mr. Rivera's phone in November 2017, the Court can conclude that Mr. Rivera deleted them at some point between December 2017, when Interamerican admits that it anticipated litigation, and April 2022, when Interamerican claims it did not have them, especially considering

that some of the unpreserved documents themselves post-date December 2017.[4]  Interamerican is

not entitled to an inference that it conveniently deleted the messages during the few days between

the seizure of the phone and when Mr. Rivera acknowledges that he anticipated litigation.  And

even accepting Interamerican's unsupported assertion that its duty to preserve arose in "late 2018,"

it is still most plausible, on this record, that Interamerican deleted the documents after "late 2018"

rather than before.[5]

    2)  Responsive emails from rivera2002@comcast.net:

    Interamerican    also    failed    to    preserve    responsive    emails    from    his

"rivera2002@comcast.net" email address.  These include, as just a few examples:

- An April 10, 2017 email with ████████████████████████████████████
  ██████████████████████████████████████████████████████████████
  ████████████████████████████████████████████████████████ Ex.
  7.  Before PDV USA recovered these messages, Mr. Rivera answered "no" to the
  question "[H]ave you ever seen any talking points that were intended to be used in
  connection with the meeting you were trying to arrange with Exxon Mobil?"  Ex. 6 at
  271:14–17.

- A March 20, 2017 email that Mr. Rivera sent to Ms. Nuhfer████████████████
  ████████████ Ex. 43. ████████████████████ ECF No. 104-1 at 6.
  Before PDV USA recovered these messages, Mr. Rivera testified that he did not "have
  any input on the terms of the [A]greement," did not "provide any language to be
  included in the [A]greement," and did not "draft any portion of the" Agreement.  Ex. 6
  at 143:1–24.

- A November 2, 2017 email from Ms. Nuhfer to Mr. Rivera ████████████████
  ██████████████████████████████████████████████████████████████

---

[4] *See, e.g.*, Ex. 42; Exs. 14, 16 (subcontracts that Mr. Rivera claims were signed in December 2017
but backdated to March 2017).  *See also* Ex. 21 ¶¶ 82–83, ¶¶ 87–88.

[5] *See, e.g.*, *Swofford v. Eslinger*, 2009 WL 10671171, at *2 (M.D. Fla. Dec. 1, 2009) (imposing
adverse inference that defendants deleted documents from April 2006 to April 2007 "[e]ven if the
duty to preserve emails did not arise until" February 2007 because, where the spoliating party
offered the court "no means to determine when emails were deleted," the court could reasonably
infer that relevant emails were deleted after February 6, 2007).

███████████████████████████████████████████████

███████████   Ex. 5.  Before PDV USA recovered these messages, Mr. Rivera testified that Esther Nuhfer did not "have any involvement in any work [he] did in connection with" the Agreement.  Ex. 6 at 152:2–8.

As for how and when these emails went missing, Interamerican claims that the "rivera2002" Comcast email address experienced a "server crash" in August 2020. Ex. 12 at 4.  It claims that Mr. Rivera "had included all emails related to the [Agreement]" in a "folder" that was somehow not "destroyed" in the server crash.  *Id.*

These claims cannot be credited.  Interamerican never said anything to PDV USA about a "server crash" for nearly four years after it supposedly occurred.  The first PDV USA learned about it was when the Court forced Interamerican to respond to spoliation interrogatories.  ECF No. 166; Ex. 12 at 4.  To this day, Interamerican offers no competent evidence of the "server crash"— whatever that means—such as a report from a forensic analyst.  Its "evidence" consists exclusively of a handwritten notation on an Xfinity bill from late 2020 that says "dumpster recovery" and lists various phone numbers.  ECF No. 220 at 17–18; ECF No. 220-13.  But Interamerican offers no affidavit or other testimony explaining what this notation means, let alone how it evidences a "server crash."  *See* Ex. 12.  And the notion that Mr. Rivera "had included all emails related to the [Agreement]" in a "folder" that was not "destroyed" (Ex. 12 at 4) is demonstrably false because PDV USA uncovered (from third parties) many emails to/from the same email account that unquestionably "relate" to the Agreement but that were *not* preserved.  E.g., Exs. 43, 44.  Nor does it make any sense that a "server crash" would impact some emails on the account but not others merely because they were placed in a folder.  Interamerican also fails to explain how a Comcast "server crash" impacted only one of Mr. Rivera's numerous Comcast email accounts that he used to communicate about the Agreement and not the others.

16

3) Responsive emails from electrivera@comcast.net and responsive non-email electronic files:

Interamerican also failed to preserve emails from his "electrivera@comcast.net" email address, as well as non-email electronic files. These documents go to the heart of key issues in the case, including Interamerican's use of subcontractors, its alleged meetings with "U.S. Congressman 1," and its attempt to broker meetings with Exxon on behalf of the Maduro regime. *See* Exs. 49, 45, 46. Interamerican has not even attempted to explain why these documents were not preserved, nor has it argued that they went missing before September 2018.

**C.    Interamerican Intended to Deprive PDV USA of the Evidence and Acted in Bad Faith**

The record also demonstrates that Interamerican deleted evidence "with the intent to deprive" PDV USA of the information in litigation, Fed. R. Civ. P. 37(e)(2), and that it acted in bad faith sufficient to trigger the Court's inherent authority sanctions. "Courts in this Circuit have held that where a party has significantly failed in its obligation to preserve and collect documents, it is appropriate to infer intent to deprive. Other courts in this Circuit have inferred an intent to deprive through circumstantial evidence where the data loss could not be credibly explained other than by bad faith." *StoneX Group, Inc. v. Shipman*, 2024 WL 1509346, at *11 (S.D.N.Y. Feb. 25, 2024). Intent can also be inferred where the spoliating party has "offered no credible explanation for the loss of this ESI" and the spoliating party's explanations "d[o] not comport with . . . his own prior conduct." *Id.* at *12–13. "[F]alse statements" about the lost evidence and the spoliation "further support a finding of bad faith." *Id.* at *13 (spoliating party falsely testified at deposition that he could not "recall any situation where [he] deliberately tried to destroy evidence"). *See Hice*, 2021 WL 6053812, at *6 (inferring intent to deprive based on contradictory statements and affirmative evidence about attempts to hide unfavorable evidence); *Miller*, 1999 WL 739528, at *3 (awarding terminating sanctions and not lesser sanctions because "plaintiff's deliberate attempt

to destroy evidence was exacerbated by her repeated perjury on that subject"); *Pable v. Chicago Transit Auth.*, 2023 WL 2333414, at *33–34 (N.D. Ill. Mar. 2, 2023); *StoneX*, 2024 WL 1509346, at *14.

The following facts are more than sufficient to establish Interamerican's intent and bad faith.

- Mr. Rivera selectively deleted some messages but retained others from the exact same time period (sometimes the same day), and the communications that Mr. Rivera chose to delete are highly inculpatory and contradict Mr. Rivera's counterclaims and sworn testimony.

- Mr. Rivera encrypted many of the communications he subsequently deleted, and Interamerican's subcontractors messaged Mr. Rivera about ███████████ ███████████████████████████████████████████████████████████████. Ex. 2 at -7672.

- Interamerican testified in 2022 that it did not know why some of Mr. Rivera's emails were produced while others were not, Ex. 6 at 213:15–18, yet Interamerican now claims that responsive emails were lost in a server crash in August 2020 and that Mr. Rivera himself supposedly undertook efforts to recover them (though it does not say what those efforts were). ECF No. 220 at 17–18.

- Mr. Rivera testified that he did not "go through [his] WhatsApp messages and attempt to delete or delete messages or information involving Raul Gorrin." Ex. 20 at 419:20–420:3. That testimony was false, as evidenced by a subsequent interrogatory response in which Interamerican admitted to deleting a discrete set of messages with Mr. Gorrin (Ex. 47 at 2–3), as well as the fact that Mr. Rivera deleted hundreds of messages with Mr. Gorrin in the MIA Group Chat and elsewhere, as demonstrated herein.

- When PDV USA first discovered a small fraction of the unpreserved documents in the Indictment, Interamerican's response was to deny that the documents existed, question their "relevance," oppose a stay of the case to afford time to retrieve them, and attempt to proceed full steam ahead with its $30 million counterclaim before PDV USA could obtain access to the spoliated documents. *See* Factual Background at 8, *supra*.

- Interamerican failed to disclose the fact that the government seized Mr. Rivera's phone in November 2017 until it was forced to come up with an excuse for the missing documents in December 2022. In fact, at deposition, before the indictment was unsealed, Mr. Rivera falsely reassured PDV USA that all documents he gave to the FBI were also produced to PDV USA. Ex. 20 at 334:4–7.

- After the indictment was unsealed and Interamerican revealed the government phone seizure for the first time, Interamerican told this Court that the phone had never been returned to Mr. Rivera, and used that as an excuse for why it did not have access to the

documents quoted in the indictment. That turned out to be a false representation. *See* Argument Sec. I.B, *supra*.

- Interamerican also assured the Court that "[t]he mere fact that Mr. Rivera's phone was seized in November 2017 in no way put him on notice that he was being investigated in connection with the [Agreement]." ECF No. 123 at 3, n.2. That was a false statement; Mr. Rivera later admitted that "[b]ecause we all believed that we were under FBI investigation based on the seizure of my electronic devices in October, 2017, and confirmed FBI surveillance in November 2017, Perera, Nuhfer and I all wanted competent legal analysis and advice with respect to the CITGO/PDV USA contract." Ex. 11 ¶ 5.

- In response to PDV USA's spoliation interrogatories, Mr. Rivera stated that he "had included all emails related to the contract at issue in this litigation in a folder named 'Citgo,' none of which were destroyed in the server crash." Ex 12 at 3. That was a false statement, as evidenced by the fact that many responsive emails related to the Agreement *were* destroyed. Exs. 5, 7, 43, 44.

- After Mr. Rivera received the 2023 Government Production containing many of the Indictment Documents, Interamerican falsely represented to this Court that the Indictment Documents had "yet to be produced" in the criminal matter. ECF No. 155 at 1–2. Then, after admitting that the government had made a production, Mr. Rivera falsely represented that the production was not "relevant." ECF Nos. 158 at 2; 158-1 at 2.

- After PDV USA pointed out that the February 2018 Cozen Memorandum appeared nowhere on Interamerican's privilege logs, Interamerican told this Court that that was because Mr. Rivera "simply didn't have" the Cozen Memorandum "as of the time this case was initiated" in May 2020. ECF No. 233-3 at 12:11–20; 15:1–8. That was false. In an September 2024 Affidavit, Mr. Rivera stated that in "late 2021," a year after this lawsuit was initiated, he "provide[d] a copy of the memorandum" to Esther Nuhfer. Ex. 11 ¶ 7.

### D.    The Spoliated Evidence Is Irretrievable and PDV USA Is Prejudiced

The record suggests that responsive documents are still missing and that they "could support" PDV USA's case. *Charlestown Capital*, 337 F.R.D. at 66. Indeed, even in the absence of such evidence, courts infer the existence and importance of additional spoliated documents based on spoliated documents that the prejudiced party managed to recover from separate sources. For example, in *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, the spoliating party (the defendant) failed to preserve "hundreds" of important communications to and from the defendant's president that the plaintiff was able to recover from its own emails. 337 F.R.D. 47, 58, 63–66 (S.D.N.Y. 2020). The court reasoned that the spoliation of those recovered

communications raises questions about "the existence of other potentially probative emails not currently known to plaintiff' and held that "there can be no assurance that the recovered emails constitute all of the meaningful emails that could and should have been obtained in the first instance from the" president. *Id.* at 64–65 (internal quotation marks omitted). Here, like in *Charlestown*, the Court can reasonably infer the existence of other potentially probative emails that Interamerican failed to preserve but that have not been produced, based on the highly inculpatory communications that Interamerican failed to preserve but that have been retrieved from other sources.[6]

For its part, Interamerican has done *nothing* to attempt to retrieve the communications missing from Mr. Rivera's devices, or investigate when and how they went missing. PDV USA's spoliation interrogatories asked Interamerican to "describe with corroborating details and specific dates what efforts (if any) you have taken to retrieve any such Unproduced Documents, including any efforts to retrieve any such Unproduced Documents from WhatsApp, email servers that host Mr. Rivera's emails, the government (whom you contend seized Mr. Rivera's phone), and third-party senders/recipients of such Unproduced Documents who may have their own copies, such as Esther Nuhfer, Hugo Perera, or Raul Gorrín." Ex. 48 at 6. Interamerican's response describes no such efforts whatsoever (Ex. 12)—a significant factor weighing in favor of sanctions. *Cf. Charlestown Capital*, 337 F.R.D. at 63 (imposing Rule 37(e) sanctions where the spoliating party's

---

[6] *See also DMAC LLC v. City of Peekskill*, 2012 WL 4459290, at *3–4 (S.D.N.Y. Sept. 26, 2012) (finding that "additional relevant e-mails—favorable to plaintiffs—existed but were not produced" based on the contents of other emails that the moving party obtained from third parties); *Freeman v. Giuliani*, 691 F. Supp. 3d 32, 59–60 (D.D.C. 2023) (finding prejudice because, even though the court could not "accurately assess the full scope of the evidence that has been lost," the moving party showed "through discovery obtained from third parties, that had Giuliani properly satisfied his preservation and production obligations, he should be in possession of documentary evidence that goes to the heart of claims in this lawsuit").

"restoration efforts . . . were both untimely and inadequate"); *Giuliani*, 691 F. Supp. 3d at 61 ("party's failure to make any serious effort to recover the data was sufficient to demonstrate a conscious disregard of [their] preservation obligations.") (internal quotation marks omitted). And while taking no action to recover the unpreserved evidence, Interamerican has gone to great lengths to impede PDV USA's attempts to recover the documents from third parties; for example, arguing that the documents produced to Mr. Rivera in the criminal case, which consisted of messages found on Mr. Rivera's own cellphone, were not in Interamerican's possession, and taking the absurd position that a protective order prohibited Mr. Rivera's counsel from sharing discovery documents with his own client. Exs. 25–27.

To the extent Interamerican claims that no additional unpreserved, responsive documents exist, PDV USA and the Court have heard this claim from Interamerican before, and *each time* it has proven to be false. *See* ECF 123 (December 2022 letter to Court: "That Interamerican did not uncover some fifty-three messages, whose existence is only alleged in an Indictment, is hardly a valid reason to broadly reopen discovery[.]"); Ex. 24 at 7 (April 5, 2024 Interamerican Court filing falsely representing that it was "likely inaccurate" that the 2023 Government Production included "'many more responsive emails and messages' tha[n] what has been produced to PDV USA"); ECF No. 164 (March 2024 Interamerican letter to the Court falsely dismissing as "pure speculation" PDV USA's assertion that the 2023 Government Production was highly likely to contain responsive documents); ECF No. 220 at 2 (August 2024 Interamerican Court filing falsely claiming that it was "extremely unlikely" that more unproduced documents existed after PDV USA obtained the 2023 Government Production).

II.    **The Court Should Order Sanctions Under Rule 37(e) as Well as Its Inherent Authorities**

Determining an "appropriate sanction lies within the sound discretion of the trial court." *StoneX*, 2024 WL 1509346, at *14. Having demonstrated spoliation under both Rules 37(e)(1) and (e)(2)—as well as "bad faith conduct" sufficient to invoke the Court's inherent authority—PDV USA is entitled to the following sanctions.

A.    **Because Interamerican Tendered False Statements at a Deposition, in Sworn Interrogatory Responses, in Written Correspondence to PDV USA, and in Signed Submissions to this Court, the Court Should Order Default Judgment Against Interamerican and Dismiss Its Counterclaims.**

Terminating sanctions are reserved for "extreme circumstances," *StoneX*, 2024 WL 1509346, at *14, but Interamerican's discovery misconduct is precisely the circumstance contemplated by the federal rules. For example, in *Pable v. Chicago Transit Authority*, the court recommended that the District Judge dismiss the plaintiff's complaint with prejudice because the plaintiff repeatedly and intentionally deleted potentially relevant messages that he exchanged on a messaging application with individuals related to the lawsuit. 2023 WL 2333414, at *33–34. The plaintiff provided "completely incredible" excuses for why the messages were deleted, including that he no longer had the messages on his device because the individual with whom he exchanged the messages deleted them from the application. *Id.* at *16–17. Moreover, his attorney made false representations to the moving party and the court about the nature of the forensic collection of his client's phone. *Id.* at *2, *34. As another example, in *Freeman v. Giuliani*, the court awarded terminating sanctions where the defendant "forced the expenditure of judicial resources to assess and ensure compliance with the most basic of discovery obligations," including "six months and two court hearings." 691 F. Supp. at 64–65. In that case, like in *Pable*, Mr. Giuliani devised implausible excuses for his failure to preserve documents, such as blaming the government vendor for "wip[ing]" his phone of the data after it was seized, without examining whether the data existed

independently on the cloud. *Id.* at 56. *See also StoneX*, 2024 WL 1509346, at *14 (imposing terminating sanctions where the spoliating party "intentionally spoliate[d] multiple categories of ESI," "repeatedly lied in connection with his spoliation of that ESI, including under oath," and "fabricated implausible and contradictory explanations for his conduct").

Interamerican's misconduct warrants similar, if not more severe, sanctions. As detailed above, Mr. Rivera intentionally and selectively deleted a massive volume of responsive communications from his WhatsApp account, multiple email accounts, and likely other sources that eviscerate Interamerican's counterclaims and contradict much of his sworn testimony. In a brazen attempt to conceal its misconduct and ensure that PDV USA would never recover the spoliated evidence, Interamerican tendered false statements at a deposition, in sworn interrogatory responses, in written correspondence to PDV USA, and in signed submissions to this Court. It came up with excuses for why the documents went missing that have since been proven false. All the while, it made no efforts at all to investigate why (or when) the documents went missing, let alone attempt to retrieve the documents, such as by engaging a forensic vendor to run tests for deletion, or attempting to obtain the documents from hosted servers, third parties, or the government. In fact, Interamerican did everything it could to *prevent* PDV USA from recovering the documents from the government. Interamerican's misconduct has wasted significant judicial resources, needlessly prolonged this litigation, and made a mockery of the discovery rules.

**B.    The Court Should Order that Interamerican Is Precluded from Introducing into Evidence Any Document that Interamerican Failed to Produce to PDV USA Prior to this Case Being Stayed.**

Absent terminating sanctions, the Court should preclude Interamerican from relying on any electronic evidence that it failed to preserve—whether or not PDV USA has been able to recover it from other sources. Now that Mr. Rivera's spoliation scheme has been at least partly unraveled, and PDV USA has access to some of the documents Mr. Rivera destroyed, it would be

fundamentally unfair to permit Interamerican to weaponize those documents for its own benefit. Accordingly, the Court should order that Interamerican is prohibited from (1) offering its own interpretation (or disputing PDV USA's interpretation) of the meaning or significance of any documents that Interamerican failed to preserve at summary judgment or trial; (2) offering the same documents into evidence at trial; or (3) contesting the authenticity of the same documents.

### C.   The Court Should Enter an Adverse Inference that Interamerican Deleted Documents with the Intent to Deprive PDV USA of Favorable Evidence.

The Court should also instruct the jury that Interamerican intentionally spoliated evidence. As described above, Interamerican deleted emails, texts and WhatsApp messages, and other electronic files with the intent to deprive PDV USA of evidence that contradicted Mr. Rivera's sworn testimony and supported PDV USA's claims. PDV USA is entitled to an adverse inference as follows: *Defendant Interamerican spoliated evidence concerning the Agreement contained on Mr. Rivera's mobile phone (including WhatsApp messages), email accounts, and other electronic devices. Interamerican spoliated this evidence because it knew that the substance of the documents and communications would have tended to prove PDV USA's claims and defenses, and to disprove Interamerican's counterclaims and defenses. See DeCastro v. Kavadia*, 309 F.R.D. 167, 184 (S.D.N.Y. 2015) (ordering similar instruction).

### D.   The Court Should Award PDV USA Fees and Costs.

The Court should also impose monetary sanctions pursuant to Rule 37(e)(1), as well as its inherent authority. *See Charlestown*, 337 F.R.D. at 67–68. Because of Interamerican's spoliation, PDV USA has been forced to incur significant legal fees over a period of more than two years for (a) litigating PDV USA's motion to stay the case and motions to extend the stay so that PDV USA could recover some of the spoliated evidence (all of which Interamerican opposed, including based on false representations, as set forth above) (ECF Nos. 127, 132, 134, 137, 154, 160, 163, 165,

171); (b) obtaining the unpreserved documents from the government (Ex. 25); (c) seeking to compel Interamerican in this Court to produce the government productions to PDV USA (ECF Nos. 157, 247, 250); and (d) litigating this motion. *See Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at \*17 (S.D.N.Y. Mar. 12, 2018) (awarding fees and costs incurred in "(a) raising with Defendants and the Court the issue of ESI not initially produced . . .; (b) seeking to obtain substitute discovery via subpoenas served on third parties; and (c) bringing both its original and current motions for sanctions").

Dated: June 30, 2025
New York, New York

**WILLKIE FARR & GALLAGHER LLP**


By: */s/ Jeffrey B. Korn*
     Jeffrey B. Korn
     Brady M. Sullivan
     787 Seventh Avenue
     New York, New York  10019-6099
     (212) 728-8000
     JKorn@willkie.com
     BSullivan@willkie.com

     Michael J. Gottlieb (admitted *pro hac vice*)
     1875 K Street, N.W.
     Washington, D.C. 20006-1238
     (202) 303-1000
     MGottlieb@willkie.com

     *Attorneys for Plaintiff PDV USA, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiff PDV USA certifies, pursuant to Section III.E of Your Honor's Individual Practices in Civil Cases and Local Civil Rule 7.1, that the foregoing brief contains 8,423 words, excluding the parts of the brief exempted by Section III.E, according to the Word Count feature of Microsoft Word.

Dates: June 30, 2025

By: */s/ Jeffrey B. Korn*
Jeffrey B. Korn