UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

PDV USA, INC.,                                          :
                                                       :          20-CV-3699 (JGK) (RWL)
                        Plaintiff,                     :
                                                       :
        - against -                                    :          **DECISION AND ORDER:**
                                                       :          **SANCTIONS FEE AWARD**
INTERAMERICAN CONSULTING INC.,                         :              **(DKT. 299)**
                                                       :
                        Defendant.                     :
                                                       :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

On January 27, 2026, the Court issued a Decision and Order finding that the Defendant in this breach of contract case, Interamerican Consulting, Inc. ("Interamerican"), intentionally spoliated electronically stored information ("ESI") in bad faith causing prejudice to Plaintiff PDV USA, Inc. ("PDV USA"). (Dkt. 297 (the "Sanctions Order").) As sanctions, the Court awarded PDV USA an adverse inference instruction in its favor. The Court also awarded PDV USA legal fees and costs it would not have had to incur absent Interamerican's spoliation. "Among other things," the Court explained:

> PDV USA has had to litigate obtaining and continuing the stay that was put in place precisely for the purpose of giving PDV USA the opportunity to recover the spoliated ESI. PDV USA also has had to engage in substantial motion practice [in both New York and Florida] to obtain the unpreserved documents [from others]. And, PDV USA has incurred the cost of moving for sanctions. All of those are compensable economic prejudice for which an award of fees and costs should be given.

1

(*Id*. at 51-52.)  At the Court's direction, PDV USA has filed a fee application in connection with that award.[1]  (Dkts. 299-302, 310-12.)  Interamerican filed an opposing brief (Dkt. 313), and PDV USA filed a reply (Dkt. 314).  Having considered the application and all relevant circumstances, the Court awards fees in the amount set forth below.

### Legal Standards

The traditional approach to determining a fee award is the "lodestar" calculation, which is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("the lodestar … creates a 'presumptively reasonable fee'") (quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). The burden falls on the fee applicant to establish "entitlement to an award and documenting the appropriate hours expended and hourly rates."  *Hensley*, 461 U.S. at 437.

A "reasonable hourly rate is the rate a paying client would be willing to pay." *McDaniel v. County of Schenectady*, 595 F.3d 411, 414 (2d Cir. 2010) (internal quotation marks and citation omitted).  "The rates to be used in calculating the ... lodestar are the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  "[T]he relevant community for determining rates is the 'district in which the reviewing court sits.'"  *Vista*

---

[1] PDV USA's motion for fees does not request an award of costs.  (*See* Dkt. 299.)  Nor does its briefing.

*Outdoor Inc. v. Reeves Family Trust*, No. 16-CV-5766, 2018 WL 3104631, at *5 (S.D.N.Y. May 24, 2018) (quoting *In re Agent Orange Product Liability Litigation*, 818 F.2d 226, 232 (2d Cir. 1987)).  Here, that is the Southern District of New York.

The district court has "considerable discretion in determining what constitutes reasonable attorney's fees in a given case," due to the district court's "superior understanding of the litigation."  *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 151 (2d Cir. 2008) (internal quotation marks and citation omitted).  In exercising their discretion, courts determining a reasonable hourly rate "should bear in mind ***all*** of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."  *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (internal quotation marks and citation omitted).  Potentially applicable factors include the so-named *Johnson* factors, such as the level of skill required to properly perform the legal service, the novelty and difficulty of the issues presented, and the hourly rate regularly charged by the attorneys to their clients.[2]  Courts "should also bear in mind that a reasonable, paying client wishes

---

[2] "The twelve *Johnson* factors are:  "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  *Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).  Because "[t]he determination of fees should not result in a second major litigation," *Fox v. Vice*, 563 U.S. 826, 838 (2011) (internal quotation marks omitted), courts may consider the *Johnson* factors holistically, rather than applying each factor individually to the facts of the case.  *See Lochren v. County of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009)

to spend the minimum necessary to litigate the case effectively" and that "an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* (internal quotation marks and citation omitted).

"The rates used by the court should be current rather than historic hourly rates." *Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks and citation omitted). "Recycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under [the applicable statute] and compensation available in the marketplace," which "undermines [the statute's] central purpose of attracting competent counsel to public interest litigation." *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005). Accordingly, while a court may consider rates awarded in prior similar cases and its "own familiarity with the rates prevailing in the district," it also should "evaluat[e] ... [the] evidence proffered by the parties." *Id.* "[C]ourts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if no such evidence is submitted." *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *2 (S.D.N.Y. Sept. 1, 2010) (internal quotation marks and citation omitted).

Courts must exclude hours from the lodestar calculation that are "'excessive, redundant, or otherwise unnecessary' … and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley*, 461 U.S.

---

(summary order) ("district courts [need not] recite and make separate findings as to all twelve *Johnson* factors").

at 434).   At the same time, courts need not become "green-eyeshade accountants" looking to "achieve auditing perfection."   *Fox*, 563 U.S. at 838.   Courts retain "the discretion to make across-the-board percentage reductions to exclude unreasonable hours, colloquially referred to as 'trimming the fat.'"   *Abraham v. Leigh*, No. 17-CV-5429, 2020 WL 5512718, at *8 (S.D.N.Y. Sept. 14, 2020) (citing *In re Agent Orange Products Liability Litigation*, 818 F.2d at 237); *see also Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014).

### Discussion

PDV USA requests a fee award in a total amount of $1,903,142.62.   (Reply at 1.[3]) That amount consists of $1,850,444.87 in fees for 1,823.30 hours of work performed by PDV USA's lead counsel, Wilkie Farr & Gallagher LLP ("Wilkie Farr"),[4] as well as $52,697.75 in fees for 65.2 hours of work performed by PDV USA's local counsel in Florida, Jones Day ("Jones Day").[5]   The Court first addresses the attorneys' hourly rates, followed by an analysis of the time expended.

### A.      Hourly Rates

Over the course of the three-year plus period for which fees are sought, Wilkie Farr

---

[3] "Reply" refers to PDV USA's reply memorandum of law in support of its motion for fees at Dkt. 314.

[4] Declaration of Brady M. Sullivan, dated March 5, 2026, at Dkt. 311 ("Sullivan Decl.") ¶ 2; Supplemental Declaration of Brady M. Sullivan, dated April 10, 2026, at Dkt. 315 ("Supp. Sullivan Decl.") ¶ 2.  The hours and fees set forth in the initial Sullivan Declaration did not include the fees and hours expended in connection with the instant fee application itself.   Those additional hours and fees are provided by the Supplemental Brady Declaration.  (Supp. Sullivan Decl. ¶ 2.)

[5] Declaration of Elio Pedrosa, dated February 26, 2026, at Dkt. 312 ("Pedrosa Decl.") ¶ 3.

attorneys working on spoliation-related issues included three partners and a variety of associates and paralegals. (*See* Supp. Sullivan Decl. Ex. 2.) Jones Day's work was limited in time and scope, and the only relevant timekeepers from that firm are one partner and one associate. (*See* Pedrosa Decl. ¶ 4.) Both Wilkie Farr and Jones Day charged PDV USA at a discount off the firm's customary hourly rates. (Sullivan Decl. ¶ 5; Pedrosa Decl. ¶ 4.) Wilkie Farr's hourly rates varied over time as Wilkie both periodically raised its customary rates and periodically changed the discount provided to PDV USA. (Sullivan Decl. ¶ 5.) PDV USA paid all of Wilkie Farr's and Jones Day's fees at the discounted rates charged. (Sullivan Decl. ¶ 6; Pedrosa Decl. ¶ 6.)

### 1.    Wilkie Farr Rates

Wilkie Farr's hourly rates charged to and paid by PDV USA break down as follows. The large majority of work was performed by two attorneys: Brady Sullivan, who started as a senior associate when the relevant work began in December 2022 and became a partner in 2024; and Joshua Pereira, an associate. (*See generally* Supp. Sullivan Decl. Ex. 2.) As a senior associate, Sullivan's hourly rate fluctuated between a low of $947.75 and a high of $1,117.75. (*Id.* at ECF 2-4.) As a partner, Sullivan's hourly rate fluctuated between a low of $1,240 and a high of $1,533. (*Id.* at ECF 4-9.) Pereira's rate as an associate fluctuated between a low of $391 per hour and a high of $1,113 per hour in January 2025, which appears to be his last month working on the matter. (*Id.* at ECF 2-7.) From May 2025 onward, the associates performing the lion's share of work were Lindsay Hemminger ($738 to $861 per hour) and Amanda Cort ($643.50 to $693 per hour). (*Id.* at ECF 7-9.)

6

The two other partners who billed time on relevant work – Jeffrey Korn and Michael Gottlieb – had the same hourly rate as each other throughout the relevant timeframe. The rates charged for their work began at $1,317.50 per hour in December 2022, rose to $1,593.75 for the first third of 2023; decreased a bit for the remainder of 2023; jumped considerably in 2024 to $1,806.25 per hour; and reached their highest point in the first two months of 2026 at $1,974 per hour. (Supp. Sullivan Decl. Ex. 2.) Those two partners performed 107.1 hours of work combined, less than 6% of all hours for which fees are sought. The hourly rate for other associates whose work is at issue ranged from a low of $522.75 in December 2022 to a high of $1,228.50 in mid-2025. (*See generally id.*) The hourly rate charged for paralegal work ranged from a low of $238 in December 2022 to a high of $348.60 in the first two months of 2026. (*Id.*)

Inasmuch as a reasonable rate is what "a paying client would be willing to pay," *McDaniel*, 595 F.3d at 414, for counsel to litigate the case effectively, *Lilly*, 934 F.3d at 230, the fact that PDV USA actually paid the fees charged is a "strong" indicator of the reasonableness of those rates. *Rozell v. Ross-Holst*, 576 F. Supp.2d 527, 544 (S.D.N.Y. 2008) ("the range of rates that … counsel actually charge their clients … is obviously strong evidence of what the market will bear"); *Lilly v. County of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate"). Moreover, the rates charged and paid are below Wilkie's "customary" rates.[6] *See Doe 1 v. East Side Club, LLC*, No. 18-CV-11324,

---

[6] Interamerican carps that PDV USA's submission does not disclose counsel's customary rates, but rather only the discounted rates agreed upon with PDV USA. (Opp. at 5-6.) One does not need to know the actual customary rates, however, to know that PDV USA agreed to a discounted rate and did in fact pay that rate. Indeed, courts should be wary

7

2023 WL 4174141, at *6 (S.D.N.Y. June 23, 2023) (recognizing that "an attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of a reasonable hourly rate") (internal quotation marks omitted).

Also of note, the instant litigation is a complex commercial matter – far from just a "basic contract case" as Interamerican characterizes it.  (*See* Opp. at 6.[7])  The case involves allegations that the consulting agreement between the parties is a sham designed to provide cover for illegal efforts by Interamerican and its principal – David Rivera, a former U.S. Congressman – to broker the groundwork for a potential oil deal with Venezuela's Maduro regime in violation of federal law.  Through intentional spoliation of electronic evidence such as emails and text messages, Interamerican made obtaining discovery particularly challenging.  Interamerican compounded that difficulty by deflecting from and resisting PDV USA's efforts to track down the evidence.  As this Court found in the Sanctions Order, Interamerican engaged in "misrepresentations, obfuscations, half-truths, and shifting stories," which impeded PDV USA's ability to obtain material evidence.  (Sanctions Order at 39.)  And, Interamerican's actions ultimately forced PDV USA to pursue motion practice in the Southern District of Florida, where Rivera has been the subject of a federal criminal prosecution involving the same consulting agreement at issue

---

when presented with a firm's purported "customary" or "standard" rate.  The Court is familiar with the phenomenon by which it has become relatively common for big firms to give clients a discounted rate off the firm's standard rates.  In other words, it may be that "discount" rates are now the norm and therefore "customary."  Even then, the discounted percentage may vary from client to client and with the volume of work performed by the firm for the particular client.

[7] "Opp." refers to Interamerican's memorandum of law in opposition to PDV USA's motion for fees at Dkt. 313.

here.  Considering the complexities entailed, and the amount of money at issue ($35 million), the litigation warranted retention of highly skilled and experienced attorneys and the higher rates they are more likely to command.

In other geographical areas and other types of cases, the hourly rates charged to and paid by PDV USA may well appear outlandish.  In the New York City area, however, comparable rates have been awarded as reasonable in commercial litigation.  For example, in a case for breach of loan guaranty decided two years ago, a court in this District found the hourly rates requested for counsel a bit much and applied a "10% cut across the board" to the requested rates.  *ATX Debt Fund 1, LLC v. Paul*, No. 19-CV-8540, 2024 WL 2093387, at *5 (S.D.N.Y. May 9, 2024).  Even with that cut, however, the rates awarded ranged from $1,381.50 to $1,777.50 per hour for partners, $697.50 per hour to $1,138.50 per hour for associates, and $535.50 per hour to $616.50 per hour for senior paralegals – rates the court characterized as "on par with rates approved in similar cases."[8]  *Id.*; *see also China AI Capital Limited v. DLA Piper LLP (US)*, No. 21-CV-10911, 2025 WL 2466633, at *4-5 (S.D.N.Y. May 22, 2025) (approving rates for a Gibson Dunn partner that started at $1,245 in 2021, rose to $1,675 by 2024, and averaged out to $1,408.57 per hour); *Adstra, LLC v. Kinesso, LLC*, No. 24-CV-2639, 2025 WL 1070034, at *6-7 (S.D.N.Y. Apr. 9, 2025) (awarding a Greenberg Traurig partner rate of $1,421 per hour and recognizing that "[i]n this district, partner billing rates in excess of $1,000 are 'not uncommon in the context of complex commercial litigation'") (internal quotation marks

---

[8] The post-cut dollar figures in *ATX Debt Fund 1* as set forth above were derived by cutting the requested rates by 10 percent.  *See ATX Debt Fund 1*, 19-CV-8540 (S.D.N.Y.) at Dkt. 233 ¶ 9 (listing requested rates).

omitted); *Wells Fargo Trust Co., N.A. v. Fast Colombia S.A.S.*, No. 23-CV-603, 2023 WL 8591953, at \*6, 9 (S.D.N.Y. Oct. 16, 2023) (after applying 20% cut, finding reasonable rates of up to $1,400 for a partner and nearly $1,000 for an associate), *R&R adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023).  Even as long as eight years ago partner rates of $1,170 and $1,260 per hour were deemed reasonable and "not excessive in the New York City 'big firm' market."  *Vista Outdoor, Inc. v. Reeves Family Trust*, No. 16-CV-5766, 2018 WL 3104631, at \*6 (S.D.N.Y. May 24, 2018); *see also Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20-MC-23, 2021 WL 1353756, at \*3 (S.D.N.Y. Apr. 12, 2021) (finding that rates of $1,175 and $1,350 per hour for partners at a large New York City law firm, "though on the higher end, [were] comparable to rates awarded in this jurisdiction").[9]

That said, "[t]here is an important evidentiary gap … in what [Plaintiff] has submitted to the Court in support of fees."  *Wells Fargo Trust Co., N.A.*, 2023 WL

---

[9]  The cases cited by Interamerican in support of considerably lower rates are outdated by a decade or more and therefore do not reflect current customary rates, and, in any event, are inapt.  (*See* Opp. at 5.)  Three of the cases are civil rights cases subject to a statutory fee shifting regime.  *See Coakley v. Webb*, No. 14-CV-8438, 2016 WL 1047079, at \*6 (S.D.N.Y. Mar. 10, 2016) (statutory fee shifting in a "short and relatively straight-forward" civil rights case); *Munoz v. Manhattan Club Timeshare Association, Inc.*, No. 11-CV-7037, 2014 WL 4652481, at \*4 (S.D.N.Y. Sept. 18, 2014) (determining reasonable fee in case under Americans with Disabilities Act based on rates for civil rights attorneys); *LV v. New York City Department of Education*, 700 F. Supp.2d 510, 518-19 (S.D.N.Y. 2010) (looking to rates awarded in civil rights cases to assess rate for representation of plaintiff by large Manhattan firm in civil rights class action case). "Although one could debate whether substantially higher rates are warranted for a corporate lawyer with the same number of years experience as a civil rights lawyer, the fact is the markets and billing considerations are different."  *Morris v. Eversley*, 343 F. Supp.2d 234, 247 (S.D.N.Y.2004) (Chin, J.).  Another case cited by Interamerican, which is similarly outdated, involved fee shifting pursuant to contract.  *Inter-American Development Bank v. Venti S.A.*, No. 15-CV-4063, 2016 WL 642381, at \*7-8 (S.D.N.Y. Feb. 17, 2016).

8591953, at *7.  PDV USA has not provided any evidence to support the reasonableness of the rates tendered for several of the lawyers and staff – specifically, all associates and paralegals – who worked on this matter.[10]  "It has not even provided the most basic information necessary to assess the reasonableness of rates:  the years of experience of the particular attorneys and the type of experience they have had." *Id*. (citing *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, No. 18-CV-4437, 2021 WL 1549916, at *3 (S.D.N.Y. Apr. 20, 2021)).  "Inexplicably, [Plaintiff] has not provided any information regarding the experience of these attorneys and staff members.  Such information is required if [the Court is] to engage in the necessary 'case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'"  *Danaher Corp. v. Travelers Indemnity Co.*, No. 10-CV-0121, 2014 WL 4898754, at *4 (S.D.N.Y. Sept. 30, 2014) (quoting *Farbotko*, 433 F.3d at 209).

Interamerican called out this evidentiary gap in its opposition, noting that PDV USA had, at that time, not provided any information about the experience and qualifications of any of the attorneys from either Wilkie Farr or Jones Day.  (Opp. at 4-5.)  In reply, PDV USA submitted the "attorney biographies" for only the three Wilkie Farr partners.  Even then, the information concerning the partner who worked most on the case (both as partner and when he as an associate), Brady Sullivan, lists only the barest of information with no description or examples of his experience.  (*See* Supp. Sullivan Decl. Ex. 3 at ECF 9.)  Why PDV USA did not provide more fulsome information for Mr. Sullivan or any

---

[10] Interamerican also faults PDV USA for not providing expert testimony attesting to reasonable rates. (Opp. at 4.)  Expert testimony about rates certainly may be helpful, but it is not required.  Here, the Court has substantial guidance provided by other cases awarding fees.

11

information at all for the associates and paralegals remains a mystery. As a result, the Court is left with no information about the experience level of any of the associates or paralegals and no basis to determine the reasonableness of their rates as compared to the rates of associates with similar experience at other firms.[11]

Considering the foregoing lack of support, the Court finds it appropriate to apply a percentage cut to the rates of Mr. Sullivan and all Wilkie associates and paralegals. *See Capitol Records, LLC v. ReDigi Inc.*, No. 12-CV-95, 2022 WL 3348385, at \*4 (S.D.N.Y. Aug. 12, 2022) (reducing requested rates and explaining that "Courts have responded to a prevailing party's failure to provide adequate information supporting the reasonableness of a fees request in a number of ways. Among other courses of action, they have employed an across-the-board percentage reduction in the rates requested because of inadequate proof of the reasonableness of the hourly rate charged, or reduced rates from ones that might be deemed reasonable if adequate documentation were provided to ones that are much closer to the lower end of a reasonable range of billing rates") (internal quotation marks and citations omitted). In *Wells Fargo Trust Co., N.A.*, this Court applied a 20% discount to hourly rates of the White & Case firm due in part to a similar gap in evidence with respect to the experience of the attorneys whose rates were at issue. 2023 WL 8591953, at \*9. In that case, however, additional factors came into play. The 20%

---

[11] PDV USA's reply brief refers, without evidentiary support, to associates Pereira and Hemminger as "junior" associates. (Reply at 4.) While that distinguishes them from other levels of associates, the Court still has insufficient information from which to assess their experience. The Court also finds remarkable the rapidity of the rise in rates. For example, Associate Pereira's hourly rate skyrocketed from $391 in December 2022 to $1,113 in January 2025 – an increase of almost 285% in just over two years. (*See* Supp. Sullivan Decl. Ex 1 at ECF 2, 6.)

cut was warranted, "(i) given the relatively straightforward nature of the case, (ii) there being a single claim for breach of contract based on failure to pay installment payments, (iii) Defendant's litigation default, and (iv) the lack of any information about the experience of the particular lawyers and staff whose rates are at issue, and mindful of the Court's duty to exercise 'some responsibility to discipline the market.'" *Id*. (quoting *Charlestown Capital*, 2021 WL 1549916, at \*2).  In the instant case, the litigation has been far from straightforward; and, rather than laying down by default, Interamerican has opposed the litigation at every turn and stymied PDV USA's discovery efforts.  Accordingly, the Court finds that a lower rate cut of 15% is appropriate and reasonable.

With respect to partners Korn and Gottlieb, for whom PDV USA belatedly provided information, the rates charged modestly exceed the range of rates found to be reasonable for similar big firm partners in Manhattan for roughly similar time periods.  Whereas the rates for Korn and Gottlieb ranged from $1,317.50 to $1,974 between December 2022 and early 2026 (*see* Supp. Sullivan Decl. Ex. 2), the rates deemed reasonable in the most recent of the cases cited above – including those relied upon by PDV USA – fell within a lower range.  *See China AI Capital Limited*, 2025 WL 2466633, at \*4-5 ($1,245 to $1,675); *Adstra*, 2025 WL 1070034, at \*6 ($1,421); *ATX Debt Fund 1*, 2024 WL 2093387, at \*5 ($1,381.50 to $1,777.50).  Accordingly, the Court applies a 15% cut to the rates of partners Korn and Gottlieb.  *See ATX Debt Fund 1*, 2024 WL 2093387, at \*5 (applying 10% cut to hourly rates that appeared "relatively high" compared to those awarded in other cases).

In short, the Court finds that the hourly rates for all Wilkie Farr timekeepers are reasonable after reducing them by *15%*.

13

### 2.    Jones Day Rates

Acting as local counsel for motion practice in federal court in Florida, Jones Day charged, and PDV paid, hourly rates for two attorneys.  Between January and July, 2024, partner Pedrosa's rate ranged from $1,020 to $1,147.50.  (Pedrosa Decl. ¶ 4.)  Between March and July, 2024, associate Fudenberg's hourly rate ranged from $640 to $680.  (*Id*.)  PDV USA, however, has not provided any information at all for the Court to be able to determine whether the Jones Day rates are reasonable – beyond the fact, albeit an important one, that the client paid them.  PDV USA did not submit any information about Pedrosa or Fudenberg's experience.  Nor did PDV USA provide any evidence or authority about customary rates in the Florida area where Pedrosa and Fudenberg practice.  As local counsel in Florida, Pedrosa and Fudenberg served as Florida-licensed attorneys located in Florida to assist PDV USA and Wilkie Farr with motion practice in the Southern District of Florida.  Under those circumstances, it would not be appropriate to assess the reasonableness of Pedrosa and Fudenberg's rates based on what is customary in the Southern District of New York.  *See Farbotko*, 433 F.3d at 208 ("The relevant community ... is the district in which the court sits").

Given the absence of any information about the attorneys' experience and the customary rates in the district in which they litigated, the Court applies a *20%* reduction to the Jones Day hourly rates.

### B.    Hours Worked

The hours for which a fee award is sought are many – more than 1,823 for the work of Wilkie Farr and 65 hours for the work of Jones Day.  That is not surprising.  The sanctions awarded for Interamerican's spoliation encompass litigation events spanning

14

more than three years. The relevant work can be categorized as follows: (1) repeat motion practice, prompted by objections of Interamerican, concerning the stay of this action to afford time to attempt to recover spoliated documents; (2) efforts to recover spoliated evidence from Interamerican in this Court, including motion practice over Interamerican's repeated objections; (3) efforts to recover spoliated evidence from Mr. Rivera, over his objections, in the Southern District of Florida; (4) efforts to recover spoliated evidence, again over Mr. Rivera's objections, from the United States government; (5) briefing and argument on PDV USA's motion for spoliation sanctions; and (6) the instant fee application. None of that work would have been necessary had Interamerican fully complied with its preservation obligations in the first place and produced the spoliated evidence in the normal course of discovery, which ended in 2022. At the least, the work – and associated fees – would have been substantially reduced had Interamerican and Rivera cooperated in recovering spoliated evidence rather than engaging in "misrepresentations, obfuscations, half-truths, and shifting stories." (Sanctions Order at 39.)

### 1. Wilkie Farr Hours

Interamerican's opposition does not argue that the categories of work for which PDV USA seeks fees were not encompassed by the Court's sanctions award. (*See generally* Opp.) Interamerican does, however, raise several concerns about the amount of time reflected in the firm's billing records, some of which have merit, and some which do not. To begin, Interamerican asserts that Wilkie Farr staffed too many attorneys, with a team consisting of three partners and ten associates who billed time. (Opp. at 6.) That argument does not stand up to scrutiny. First, Interamerican does not explain why that

level of staffing was unreasonable for the work required.  Second, not all 13 attorneys worked on the matter at the same time.  As noted above, the vast majority of the at-issue fees came from time billed by three attorneys – Sullivan, Pereira, and Hemminger.  Third, some associates who worked on the case left the firm during the three-year span of relevant time, and so others substituted in.  The "team" thus was not staffed by 13 attorneys at any time.

Interamerican attributes several other shortcomings to Wilkie Farr's billing including "overstaffing tasks with multiple attorneys; billing disproportionate time for court filings; duplicative review of the same documents by multiple timekeepers, and excessive time spent on internal conferences," as well as entries that "are vague and inadequately detailed." (Opp. at 7.)  Interamerican points to certain examples, for some of which PDV USA has reasonable explanations.[12]  (Reply at 5-9.)

The Court has independently reviewed Wilkie Farr's 244 pages of billing records (many of which are redacted for entries not related to the tasks for which sanctions have been awarded).  (*See* Sullivan Decl. Ex. A.)  Based on that review, familiarity with the case, and the Court's experience with complex commercial litigation, the Court agrees with Interamerican that Wilkie Farr's billing records reflect some excess, duplication, and vagueness.  For example, between January 3 and 9, 2024, three attorneys spent a total

---

[12] PDV USA responds in part to Interamerican's examples of billing excess that PDV USA never would have had to take the actions it did if Interamerican had not opposed PDV USA.  (*See* Reply at 5-7.)  That is an accurate statement as far as it goes.  But just because certain litigation actions were warranted does not establish whether the amount of time spent on such actions was reasonable.  Similarly, PDV USA's correct assertion that one rationale behind a sanctions award is deterrence does not determine whether the work performed to secure sanctions was reasonable.

of approximately 19 hours to draft and file a three-page letter motion to extend a stay. (*Id.* at ECF 53; *see* Dkt. 160; *see also* Supp. Sullivan Decl. Ex. A at ECF 49 (four attorneys time totaling over 16 hours for three-page letter request for conference to address missing documents).)  That strikes the Court as excessive.

Examples of vague entries often include ones set off by the word "attention," as in "attention to motion for reconsideration" (Sullivan Decl. Ex. A at ECF 34, 7/10/2023 MJG) and "attention to emails" (*id.* at ECF 38, 8/9/2023 BMS).  Other entries at first appear detailed but in conjunction with the time billed is quite vague as to what was done.  For instance, on July 20, 2023, JP recorded 6.2 hours to "Prepare Motion for Reconsideration and exhibits for filing."  (*Id*. at ECF 35.)  Whether 6.2 hours may be deemed reasonable cannot be assessed without knowing what the vague term "prepare" encompassed.

To be clear, the bulk of Wilkie Farr's billing entries are sound and reflect reasonable expenditure of time.  But flawed entries and instances of excessive and duplicative time pepper the records.  Given the extensive billing entries over a three-year span that are at issue, "an item-by-item reduction in hourly rates or hours billed would be unwieldy, making an across-the-board reduction more appropriate."  *PharmacyChecker.com LLC v. National Association of Boards of Pharmacy*, No. 19-CV-7577, 2026 WL 972522, at *5 (S.D.N.Y. Apr. 10, 2026); *see also Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) ("Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded, ... and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application") (internal quotation marks and citations omitted); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp.3d 31, 57 (S.D.N.Y. 2015) ("It is common practice in

17

[the Second Circuit] to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate") (internal quotation marks and citations omitted).

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Fox*, 563 U.S. at 838.  Having done so here, the Court deems it reasonable to apply a modest percentage reduction of **15%** to the hours charged.  *See Gaffney v. Muhammad Ali Enterprises LLC*, No. 18-CV-8770, 2026 WL 1079850, at *6 (S.D.N.Y. Mar. 2, 2026) (applying "small" reduction of 10%), *R&R adopted*, 2026 WL 878993 (S.D.N.Y. Mar. 31, 2026); *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7962, 2025 WL 1183676, at *6 (S.D.N.Y. Apr. 4, 2025) ("Considering all billing entries, the Court finds that a 15% deduction should be applied across the board to account for redundancy and excess"), *R&R adopted*, 2025 WL 1184012 (S.D.N.Y. Apr. 23, 2025); *Siegel v. Bloomberg L.P.*, No. 13-CV-1351, 2016 WL 1211849, at *12 (S.D.N.Y. March 22, 2016) (reducing fee award by 15% to account for duplication, overbilling, and overstaffing).  *Cf. StoneX Group, Inc. v. Shipman*, No. 23-CV-613, 2025 WL 1212165, at *8-10 (S.D.N.Y. Apr. 25, 2025) (cutting fees by 65% due to multitude of issues with large firm's billing entries, and citing cases in which courts applied across-the-board cuts ranging from 30% to 75% due to deficiencies such as vague entries and excessive time).

### 2.    Jones Day Hours

The Jones Day billing records reflect relevant work performed for the four-month period from April through July 2024.  (Pedrosa Decl. Ex. A.)  The only charges are for the

work of partner Pedrosa and associate Fudenberg.  The billing entries are consistent with Jones Day's functioning as local counsel for motion practice in Florida related to attempting to obtain documents from Rivera.  The entries are sufficiently descriptive and appear reasonable.  The only potential deficiency is that many entries are billed in blocks of tasks, without differentiation of the specific time spent on each discrete task within the block.  Because block-billing "can complicate the district court's task of determining the reasonableness of the billed hours," *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022), the practice sometimes may warrant a reduction in fees.  *See, e.g.*, *Hines v. City of Albany*, 613 F. App'x 52, 55 (2d Cir. 2015) (finding no abuse of discretion where district court reduced fee award by 30% in part due to prevalence of block-billing); *Wise v. Kelly*, 620 F. Supp. 2d 435, 452 (S.D.N.Y. 2008) (reducing time for block-billed entries by 20%).

In this case, however, the Court can conclude that the total time spent for each block of tasks described is reasonable.  Accordingly, the Court finds no justification to apply a reduction to the 65.2 hours charged and paid on the basis of block-billing.  *See Raja*, 43 F.4th at 87 (explaining that block-billing "is permissible as long as the district court is still able to conduct a meaningful review of the hours for which counsel seeks reimbursement") (internal quotation marks omitted); *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp.3d 333, 343 (S.D.N.Y. 2016) (block-billing did not warrant reduction where the entries "contain[ed] sufficient detail and specificity so as to afford reasonable confidence that the time billed was productively spent, even if it is impossible to reconstruct the precise amounts of time allocable to each specific task listed in the block entry"); *Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13–CV–230, 2014 WL 3866090, at *6 (S.D.N.Y. Aug. 6, 2014) (declining to

reduce fees based on block-billing where the "entries [were] sufficiently detailed to convey to the reader the tasks for which [the attorneys] billed").

## C.      Calculation Of Fees

In sum, the Wilkie Farr fees should be reduced by 30% (15% for rates and 15% for hours).     Applying that percentage reduction to the total amount sought ($1,903,142.62), results in a Wilkie Farr fee award of $1,332,199.80.   Jones Day fees should be reduced by 20%, based on rate reduction alone.  Applying that percentage to the total amount sought ($52,697.75), results in a Jones Day fee award of $42,158.20. In total, then, PDV USA should receive a reasonable fee award of **$1,374,358.00**.  That amount may seem like a lot for just a portion of the discovery phase of this case.  But that is entirely due to Interamerican's spoliation and repeated obstruction of PDV USA's efforts to obtain the discovery to which it is entitled.  *See ATX Debt Fund 1*, 2024 WL 2093387, at *5 (noting that a party could not complain that fees were unreasonable after it "drove up the cost and complexity of litigation").

## Conclusion

For the reasons set forth above, the Court finds that PDV USA shall recover from Interamerican an amount totaling $1,374,358.00.   To the extent not discussed above, the Court has considered the parties' arguments and finds them to be either moot or without merit.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 299.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: May 11, 2026
       New York, New York

Copies transmitted this date to all counsel of record via ECF.