**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PDV USA, INC.,

Plaintiff,

v.

INTERAMERICAN CONSULTING, INC.,

Defendant.

No. 20-cv-03699-JGK

# DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**


I. PRELIMINARY STATEMENT …………………………………………………...4

II. STATEMENT OF FACTS………………………………………………………… 7

III. ARGUMENT…………………………………………………………………… 9

IV. CONCLUSION ………………………………………………………….......13

# TABLE OF AUTHORITIES

**Cases**

Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 585–86 (2d Cir. 2006) ……………………………………………………………………………..9,11,12

Hadden v. Consolidated Edison Co., 45 N.Y.2d 466, 469 (1978) ………………………………12

Jefpaul Garage Corp. v. Presbyterian Hosp., 61 N.Y.2d 442, 448 (1984) ………………………12

Michele Amoruso E Figli v. Fisheries Dev. Corp., 499 F. Supp. 1074 (S.D.N.Y. 1980)………..10

SEC v. Genovese, 553 F. Supp. 3d 24, 41 (S.D.N.Y. 2021) ……………………………………10

**Other Authorities**

Fed. R. Civ. P. 56 ……………………………………………………………………………9

.

## I. PRELIMINARY STATEMENT

PDV USA decries the Agreement with Interamerican as a "sham instrument of illegality," penned and performed by David Rivera as a phony, illusory contract to hide his working as an agent for the Venezuelan government. If PDV USA's narrative were believed, one would think PDV USA was somehow the victim of this affair and that Mr. Rivera's conviction vindicates PDV USA. But lost in PDV USA's hyperbolic narrative lies the underlying truth that, if anything, PDV USA played the role of puppet master which originated, orchestrated, administrated, and compensated the plan. If Mr. Rivera or Interamerican violated FARA, which they deny, then PDV USA did so even more.

Stripped of the taint of the conviction for Mr. Rivera's failing to register as a foreign agent under the Foreign Agents Registration Act ("FARA"), the business arrangement with PDV USA might seem like any other. A business (PDV USA for Citgo) hired a person of influence (Mr. Rivera) who used his network of influential people to advance the reputation of Citgo in the eyes of the American oil company elite (e.g., Exxon). The $50 Million Agreement, though lucrative by working class standards, in the global oil market where fortunes are measured and made daily, would not stand out. And the fact that Mr. Rivera focused his attention on Exxon only made sense, given its market dominance and historical differences with Venezuela itself, which would take considerable effort to convince Exxon that Citgo would be a dependable business partner. Desire and efforts to do business with Exxon, rather than viewed as a shadowy political move, could just as easily be viewed as smart business. The fact that PDV USA wanted to burnish Citgo's reputation in the eyes of corporate America to show that business can be done with Citgo, despite the checkered past of the Venezuelan government under Maduro, does not amount to a "coup" against Venezuela, because Venezuela, directly or indirectly, owns and controls Citgo. PDV USA

misdescribes the purpose of the arrangement. The parties intended to show that business could be done with PDV USA (and thus, Citgo) not to disparage Venezuela.

If this Court were to hold that the very operation of PDV USA (and thus, Citgo) in the United States was a big lobbying effort for Venezuela, and that anyone doing business for them *a priori* would be agents of Venezuela, this would create an untenable situation, causing any consultant advancing the causes of PDV USA or Citgo to register as an agent out of an abundance of caution. PDV USA acknowledges the purpose of the Agreement was "enticing" Exxon to do business, which comfortably fits in the description of "consulting." Not all business constitutes illegal agency work.

Interamerican does not dismiss the conviction of Mr. Rivera as an inconvenient historical footnote in this story. The seriousness of the verdict cannot be ignored—although Mr. Rivera fights to have it overturned—but PDV USA cannot say the failure to register as a foreign agent subverted the entire Agreement. First, PDV USA would have known Mr. Rivera was not a registered agent. Indeed, PDV USA did not register itself until years after the Agreement. Nor did PDV USA complain that the lack of registration impaired the contract. For the limited duration (90 days) of the Agreement, PDV USA openly engaged with Mr. Rivera and paid him handsomely as contracted. Nor did PDV USA ever complain about the people with whom Mr. Rivera associated, including, for example, Mr. Gorrin who was the person PDV USA charged with bringing Interamerican to the table. PDV USA's rhetoric mocking of Mr. Rivera's contract performance drips with hypocrisy because PDV USA knew what he did and never once complained. Only later was any frustration lodged, because the parties involved regretted having made a bad financial deal.

Had the owner of PDV USA (or Citgo) been anyone but Venezuela, there would have been no controversy here. No one could credibly suggest that the entire world did not know Venezuela, directly or indirectly, owned PDV USA and Citgo (an American legal entity), and that doing business with them in some fashion benefited the ultimate owner (Venezuela). A real debate exists, though, and one deserving of deep factual analysis, whether doing business for an entity owned and controlled by a foreign principal (here Venezuela) can only be done by a FARA-registered agent.

PDV USA makes an improper presumptive leap in equating a violation of FARA's registration law with making of an illegal contract with the unregistered agent. Congress did not invalidate unregistered agent contracts, nor express any intent to eviscerate the business dealings of the unregistered agents. Indeed, a foreign agent does not have to register for a period up to ten (10) days **after** entering contract for services to the foreign principal. FARA focused on registration and disclosure, not contract interdiction. An unregistered person or organization acting under the direction or control of a foreign principal faces stiff sanctions for violating the law, but nothing suggests the law should be expanded. After all, the fundamental tenets of the Agreement with PDV USA did not involve or require registration and centered on business principles not the political interests of Venezuela. In fact, when Venezuela's oil minister, Delcy Rodriguez, attempted to insert herself into a planned meeting with Exxon, over Mr. Rivera's strong recommendation against, Exxon canceled the meeting, proving, if anything, that the Agreement served a business purpose not a political one.

PDV USA now attempts to use the FARA conviction as an offramp to try and void the Agreement. But after receiving the benefit of the bargain it made with Interamerican, PDV USA should not be allowed to play the role of victim. It was not misled or compromised. It sought and

garnered the Agreement with Interamerican securing the services of Mr. Rivera and Interamerican. PDV USA even hoisted the Agreement when it struck first suing Interamerican to **enforce** the Agreement, not invalidate it. Even now PDV USA sues Interamerican but plays coy when it argues that its lawsuit "remains pending" only because Interamerican countersued. Instead, PDV USA hedges its bets. If it genuinely believed that the Agreement were illegal, PDV USA would have walked away from its claim long ago.

The core of PDV USA's Motion focuses on whether the Court should give collateral estoppel effect to Mr. Rivera's conviction and void the Agreement in hopes the Government's work has spared PDV USA of its own contractual undertaking. But enough disparities exist between issues and parties involved in the criminal prosecution that the Court should not *a fortiori* conclude that Interamerican's Agreement should face a similar fate.

While PDV USA casts aspersions at Interamerican and Mr. Rivera, not reflective in the least about its own role in the affair, much less accept any responsibility, it asks the Court to use the conviction to excuse PDV USA of its contractual obligation. This the Court should not do.

## II. STATEMENT OF FACTS

On March 21, 2017, PDV USA and Interamerican executed the Agreement with a term of March 21, 2017, to June 21, 2017. The Agreement defines "services" to include "strategic consulting services to the client." Plaintiff's Ex. 35. The Agreement was authorized by resolution of the PDVSA Board of Directors to hire Interamerican for the sum of $50 million. Plaintiff's Ex-1 at 170:5-171:1, 197:6-19; Ex-34.

At all times Interamerican believed that it was doing work for Citgo. In fact, his primary point of contact was with Eduardo Orsoni, Vice President of Legal Affairs for Citgo. Plaintiff's Ex. 41.

After entering the Agreement, PDV USA requested Interamerican to allow the Agreement to be assigned to PDVSA, but Interamerican refused this request, in part, because Mr. Rivera did not want to have to register as a foreign agent. Rivera specifically declined, explaining to Gorrin and the MIA group: "[A] contract with PDVSA Caracas requires registering with FARA which my attorney has told me is currently illegal due to Trump's sanctions on PDVSA, and not to touch it with a 50-foot pole, but it would be a scandal of monumental proportions." Plaintiff's Ex-25 at 99.

Interamerican provided the services required under the Agreement. Rivera organized an initial meeting between the Texas Congressman and Exxon senior management on April 8. Plaintiff's Ex-25 at 38-39. The initial meeting took place on April 10, 2017, at Exxon headquarters in Dallas. Plaintiff's Ex-25 at 39.

PDV USA never complained or objected to Interamerican's performance under the Agreement. PDV USA never terminated the Agreement for cause. Plaintiff's Ex. 1; Rivera's deposition testimony p. 581: 15-18.

Between March 24 and April 19, 2017, PDV USA paid Interamerican a total of $20 million against five invoices for "strategic consulting services." On March 24, 2017, PDV USA paid Interamerican the first $5 million installment. Plaintiff's Ex-21. On April 10, 2017, PDV USA paid Interamerican the second invoice ($5 million). Plaintiff's Ex-21. Each of Interamerican's invoices contained a total of three words: "strategic consulting services." Plaintiff's Exs-36, 46, 49, 52, 64. On April 20, 2017, Rivera sent the fourth and fifth invoices totaling another $10 million to Pio Gonzalez. Plaintiff's Exs-50, 53 at 3. At no point during the Agreement's three-month term did PDV USA reject an invoice, request supporting documentation, invoke any cure right, or notify

Interamerican that its performance was deficient. Rivera's deposition testimony p. 581:15-18; Butts testimony 226:20-25.

Per the terms of the Agreement, Interamerican was required to submit bi-weekly progress reports. Ex-35 at 6.

PDV USA does not identify or cite any communications which occurred during the contract term (March 21, 2017, to June 21, 2017), in which PDV USA demanded a progress report, rejected an invoice as noncompliant, or invoked any cure right. Plaintiff's Exs-36, 46, 49, 52, 64; Ex-21.

PDV USA only objected to Interamerican's performance after conferring with the Department of Justice. *See* Coon Deposition, p. 76.

The United States prosecuted and eventually convicted David Rivera, personally, and not Interamerican, for alleged FARA registration violations.

## III. ARGUMENT

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The record here is replete with disputes of material fact—concerning the parties' intent, the nature and scope of services performed, whether performance was to PDV USA's "sole satisfaction," and whether any purported breach was material. Each of these disputes must be resolved by the trier of fact.

### a. FARA Registration Violations Do Not Void the Underlying Agreement

PDV USA, in its rush to impugn Interamerican's motives and practice, fail to abide by the only reported decision addressing the issue whether failure to register under FARA voids the underlying agreements. In fact, PDV USA cites only general law in the case of *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 585–86 (2d Cir. 2006), that courts should not be in the business of enforcing illegal contracts. PDV USA overlooked the only

reported case on the topic, *Michele Amoruso E Figli v. Fisheries Dev. Corp.*, 499 F. Supp. 1074 (S.D.N.Y. 1980), which held that a FARA violation would only void an agreement in the narrow scope of a contingent-fee arrangement based on the success of political activities. Similar to *Amoruso*, where the party attempted to escape contractual obligations, here, PDV USA's hides behind Mr. Rivera's conviction as an excuse to avoid payment on a contract that was performed. Applying the *Michele* court's rationale makes sense because FARA pertains to registration and disclosure, not performance of the underlying contract. Violating one is not tantamount to violating the other.

**b. <u>The Criminal Verdict Against David Rivera Does Not Collaterally Estop Interamerican.</u>**

PDV USA misapplies the doctrine of collateral estoppel to forestall the enforcement of Interamerican's Agreement. Fundamentally, a criminal case does not necessarily determine the outcome of a civil case. Here, the collateral estoppel argument fails for one simple reason: the issues are distinctly dissimilar between the criminal case and this civil case.

Collateral estoppel requires that: *"(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." SEC v. Genovese*, 553 F. Supp. 3d 24, 41 (S.D.N.Y. 2021). PDV USA's motion fails at least three of these prongs.

First, the parties in each case differ. The criminal case involved Mr. Rivera, personally. Interamerican, the entity, was not charged. The substantive issues differed too. The criminal jury decided whether David Rivera, as an individual, violated FARA by failing to register as a foreign agent. The Agreement existed whether Mr. Rivera registered or not. He did not expressly agree

and attest to being registered, and certainly PDV USA would have known whether he was registered but never flinched in going forward with Interamerican.

PDV USA wants to make the inferential leap that failure to register is tantamount to an illegal contract, but that leap comes up short. Mr. Rivera's convictions did not require the jury to find that the Agreement was void under New York contract law. Indeed, an unregistered foreign agent can violate FARA irrespective of whether his underlying commercial arrangements are otherwise valid. The Agreement did not require registration.

The authority PDV USA cites, *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, does not impose a per se voidness rule either. 448 F.3d 573 (2d Cir. 2006). Rather Beth Israel examines whether the contract furthers an illegal purpose, which is a fact-intensive process that requires the Court to evaluate the contract's central object, not simply whether a party violated a statute during performance. Here, the Agreement on its own would have been copasetic, and had the administrative lapse in registering under FARA not occurred, any inquiry into the legality of the Agreement would have been obviated.

**c. <u>Genuine Disputes of Material Fact Exist as to Whether Plaintiff Waived any Issue as to Interamerican's Performance.</u>**

Plaintiff attempts to argue in the alternative that, even if the Agreement is enforceable, Interamerican failed to perform to PDV USA's "sole satisfaction" and materially breached compliance and reporting provisions. However, both arguments fundamentally fail on the record.

PDV USA points to Interamerican's alleged failures to submit bi-weekly progress reports and to provide invoice supporting documentation. The record, however, reflects that PDV USA accepted five invoices reading only "strategic consulting services," paid each in full, and never invoked any cure or termination right during the three-month term.

Only years after the Agreement ended, and only after prompting from the Department of Justice, did PDV USA raised these objections to Interamerican's performance. Under New York law, waiver may be established by conduct evincing an intent not to enforce a contractual right. A party's knowing acceptance of performance and payment without objection may waive strict compliance with formal reporting conditions. *See e.g., Madison Ave. Leasehold, LLC v. Madison Bentley Assocs. LLC*, 30 A.D.3d 1, 5–7 (1st Dep't 2006), aff'd 8 N.Y.3d 59 (2006)); *Hadden v. Consolidated Edison Co.*, 45 N.Y.2d 466, 469 (1978). PDV USA cannot now resurrect those requirements as a post hoc basis for avoiding payment.

At a minimum, whether PDV USA—having accepted five invoices and paid $20 million without invoking any cure right or demanding reports—waived strict compliance poses a question of intent for the trier of fact. *See Jefpaul Garage Corp. v. Presbyterian Hosp.*, 61 N.Y.2d 442, 448 (1984); *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 585–86 (2d Cir. 2006)). Waiver cannot be determined at the summary judgment phase. As such, PDV USA's Motion for Summary Judgment should be denied.

**d. <u>Interamerican's Unjust Enrichment and Declaratory Judgment Claims Survive.</u>**

Interamerican asserts a claim for unjust enrichment in the alternative. If Court were to find the Agreement unenforceable, the record demonstrates that Interamerican conferred a benefit on PDV USA and its affiliates in the form of arranged meetings and access to policymakers, and that PDV USA accepted those benefits. Equity should not permit PDV USA to have benefited without compensating Interamerican for its efforts. PDV USA's contradicts is own argument that there is "no evidence that PDV USA was enriched by Interamerican" by confessing that meetings, only possible by Mr. Rivera's influence, occurred during the term.

The declaratory judgment claim turns on the same disputed facts and cannot be resolved on this record.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for summary judgment.

Dated: August 7, 2026.

Respectfully submitted,

*s/ Tucker H. Byrd*

**Tucker H. Byrd**
Florida Bar No. 381632
**BYRD CAMPBELL, P.A.**
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
Facsimile: (407) 392-2286
Primary Email: TByrd@ByrdCampbell.com
Secondary Email: Paralegal@ByrdCampbell.com
*Counsel for Defendant*